NICHOLAS J. HOFFMAN (SBN 284472)
  nhoffman@mcguirewoods.com
ARIA HANGVAL (SBN 336933)
  ahangval@mcguirewoods.com
McGUIREWOODS LLP
Wells Fargo Center – South Tower
355 S. Grand Avenue, Suite 4200
Los Angeles, California 90071-3103
Telephone: (213) 457-9840
Facsimile: (213) 457-9877

SAMUEL L. TARRY, JR. (*pro hac vice application forthcoming*)
  starry@mcguirewoods.com
McGUIREWOODS LLP
1750 Tysons Boulevard Suite 1800
Tysons, Virginia 22102-4215
Telephone: (703) 712-5425
Facsimile: (703) 712-5185

Attorneys for Defendant
ETSY, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AS YOU SOW, a 501(c)(3) non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ETSY, INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 24-cv-04203-SK<br><br>**DEFENDANT ETSY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**<br><br>**Judge:** Hon. Sallie Kim<br>**Date:** August 26, 2024<br>**Time:** 9:30 a.m.<br>**Location:** Courtroom C, 15th Floor |

## <u>TABLE OF CONTENTS</u>

**Page**

ISSUES TO BE DECIDED..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

      A.     About Etsy ................................................................................................2

      B.     Etsy's Terms of Use .................................................................................3

      C.     Users Must Agree to Etsy's Terms of Use as Part of the Registration Process..................................................................................................4

      D.     Employees of Greenfire Law, Acting as Plaintiff's Agent, Register for Etsy and Purchase the Products at Issue in the Complaint................................6

      E.     Greenfire Law Sends Etsy Proposition 65 Notices on Behalf of Plaintiff, Which the California Attorney General Subsequently Finds Have No Merit..........8

      F.     Plaintiff Files the Instant Complaint, Alleging it "Directed and Paid for" Products on Etsy's Website .......................................................................9

III.    LEGAL STANDARD .........................................................................................10

IV.     PLAINTIFF'S COMPLAINT MUST BE COMPELLED TO ARBITRATION ...............10

      A.     Plaintiff Entered Into a Valid Agreement to Arbitrate with Etsy............10

          1.     Plaintiff's Counsel Assented to Etsy's Terms of Use .................................11

          2.     Greenfire Law Bound Plaintiff to the Arbitration Agreement ...................13

      B.     The Parties' Agreement to Arbitrate Covers the Dispute at Issue Here.................15

      C.     Plaintiff's Proposition 65 Claims Can Be Compelled to Arbitration......................16

      D.     The Case Should Be Stayed Pending Arbitration ....................................18

V.      IN THE EVENT THE COURT DOES NOT COMPEL ARBITRATION, IT SHOULD TRANSFER VENUE.........................................................................18

VI.     CONCLUSION .....................................................................................20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. of Tex.*,
5
    571 U.S. 49 (2013) ........................................................................................ 19, 20

6

*Bosheares v. PeopleConnect, Inc.*,
    No. 22-35262, 2023 WL 4946630 (9th Cir. 2023)................................................. 14
7

*Chiron Corp. v. Ortho Diagnostics-Sys., Inc.*,
8
    207 F.3d 1126 (9th Cir. 2000) ............................................................................ 10

9

*Cione v. Foresters Equity Servs., Inc.*,
    58 Cal. App. 4th 625 (1997) ............................................................................... 16
10

11

*Deck v. Miami Jacobs Bus. College*,
    No. 3:12-cv-63, 2013 WL 394875 (S.D. Ohio Jan. 31, 2013) ............................... 17
12

*U.S. ex rel. Eisenstein v. City of New York, NY*,
13
    556 U.S. 928 (2009) .......................................................................................... 17

14

*In re Facebook Biometric Info. Privacy Litig.*,
15
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................................... 11

16

*First Options of Chic., Inc. v. Kaplan and MKS Invs., Inc.*,
    514 U.S. 938 (1995) .......................................................................................... 10
17

18

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................ 16

19

*Green Tree Fin. Corp.-Ala. v. Randolph*,
20
    531 U.S. 79 (2000) ...................................................................................... 15, 16

21

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009)............................................................................ 11
22

23

*Hofer v. Emley*,
    No. 19-cv-02205-JSC, 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ........................ 10, 18

24

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ........................................................................ 19, 20
25

26

*Iksanian v. CLS Transp. L.A.*,
    59 Cal. 4th 348 (2014)....................................................................................... 17

27

*Kai Peng v. Uber Techs., Inc.*,
28
    237 F. Supp. 3d 36 (E.D.N.Y. 2017)................................................................... 13

ii

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................... 11, 12, 13

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .................................................................................. 13

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 20 (1983) ............................................................................................... 18

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) ..................................................................... 13

*Net2Phone, Inc. v. Superior Ct.*,
    109 Cal. App. 4th 583 (2003) ..................................................................................... 20

*Pratel v. Freedman*,
    583 F.2d 42 (2d Cir. 1978) ...................................................................................... 14

*Precedo Cap. Grp. Inc. v. Twitter Inc.*,
    35 F. Supp. 3d 245 (S.D.N.Y. 2014) ....................................................................... 15

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) .................................................................................. 19

*In re Ring LLC Privacy Litig.*,
    No. 19-cv-10899, 2021 WL 2621197 (C.D. Cal. June 24, 2021) ........................... 12

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014) ..................................................................... 11

*Starke v. Gilt Groupe, Inc.*,
    No. 13-cv-5947, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2010) .............................. 11

*State v. Phillip Morris Inc.*,
    813 N.Y.S.2d 71 (N.Y. App. Div. 2006), *aff'd*, 869 N.E.2d 636 (N.Y. 2007) ...... 15

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 .......................................................................................................... 20

*T & M Solar & Air Conditioning v. Lennox Int'l Inc.*,
    83 F. Supp. 3d 855 (N.D. Cal. 2015) ....................................................................... 19

*Tamsco Props., LLC v. Langemeier*,
    597 F. App'x 428 (9th Cir. 2015) ............................................................................. 14

*Thompson-CSF, S.A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ...................................................................................... 14

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022) ................................................................................................. 17

iii

*Yanchor v. Kagan*,
    22 Cal. App. 3d 544 (Ct. App. 2d 1971) ................................................................. 14

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ..................................................................... 15

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................... 1, 19

California's Unfair Competition Law,
    Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................. 9

False Claims Act,
    28 U.S.C. § 3730 ................................................................................................ 17, 18

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ........................................................... *passim*

Labor Code Private Attorneys Generals Act,
    Cal. Labor Code § 2698 *et seq.* ............................................................................ 17

Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"),
    Cal. Health & Safety Code § 25249.6 *et seq.* ....................................................... *passim*

**Other Authorities**

California Attorney General's "No Merit" Letters ............................................... 9, 16, 17

Restatement (Third) of Agency § 2.02(1) ..................................................................... 14

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No.: 24-cv-04203-SK

1

**ISSUES TO BE DECIDED**

2     1.     Whether, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the Court

3  should compel Plaintiff's claims to arbitration based on the arbitration clause in Etsy's Terms of

4  Use and stay this case until the completion of that proceeding.

5     2.     Whether, in the event that this action cannot be compelled to arbitration, the action

6  must instead be transferred to New York based on Etsy's Terms of Use and pursuant to 28

7  U.S.C. § 1404(a).

8            **MEMORANDUM OF POINTS AND AUTHORITIES**

9  **I.     INTRODUCTION**

10    Acting on behalf of Plaintiff As You Sow, Plaintiff's counsel, Greenfire Law, P.C.

11  ("Greenfire Law") created accounts on Etsy and agreed to its Terms of Use.  Counsel then used

12  those accounts to purchase products from various third-party sellers on Etsy's marketplace, and

13  Plaintiff now claims in this lawsuit that the sale of those products violates California law.  But

14  Plaintiff's claims cannot be heard in this forum.  Plaintiff, through its counsel, agreed to binding,

15  mandatory arbitration of all claims "arising from or relating to the [Etsy] Services," including "any

16  products . . . bought, sold, . . . or listed through the Services."  Under the FAA, this Court must

17  enforce Plaintiff's binding agreement, send the case to arbitration, and stay the action pending

18  completion of the arbitration process.

19    First, Plaintiff entered into a valid agreement to arbitrate with Etsy when its counsel

20  registered to use Etsy.  Acting as agents of the Plaintiff, employees of Greenfire Law created

21  accounts on Etsy and clicked their agreement to Etsy's Terms of Use, which includes a valid

22  agreement to arbitrate.  As a result, under black-letter agency law, Plaintiff is bound to the arbitration

23  agreement just as if Plaintiff had itself registered to use Etsy.

24    Second, Plaintiff's Complaint falls within the scope of the arbitration agreement.  The parties

25  agreed to arbitrate any dispute "arising from or relating to" goods sold on Etsy's platform, or any

26  action taken, or statement made, by Etsy.  That is exactly what is at issue here:  Plaintiff alleges the

27  products it purchased violate California law, and that Etsy failed to provide warnings for those items.

28

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1    That ends the analysis.  Plaintiff is bound to arbitrate all claims against Etsy, and the case must be

2    compelled to arbitration.

3         Nor does it matter that Plaintiff brings purported claims "in the public interest" under

4    California's Safe Drinking Water and Toxic Enforcement Act of 1986 (commonly known as

5    "Proposition 65"), Cal. Health & Safety Code § 25249.6 *et seq.*  Nothing in Proposition 65 prohibits

6    arbitration, and the Supreme Court has expressly held that claims brought on behalf of the State are

7    arbitrable.  But in any event, Plaintiff is *not* suing in the public interest.  That is because the

8    California Attorney General has already *twice* declared that Plaintiff's claims against Etsy have no

9    merit, directed it *not* to sue, and expressly informed Plaintiff via public letter that it has no authority

10   to sue on behalf of the public.

11        Finally, while Etsy submits that this matter must be compelled to arbitration pursuant to the

12   FAA, it requests transfer of this action to New York if the Court declines to order arbitration.  Etsy's

13   Terms of Use contain a forum selection clause specifying that forum as the sole and exclusive one

14   for any potentially non-arbitrable dispute.  Plaintiff agreed to this venue through Etsy's Terms of

15   Use, and it is binding and enforceable here.[1]

16   **II.    FACTUAL BACKGROUND**

17        **A.    About Etsy**

18        Etsy is an online marketplace that connects millions of passionate and creative sellers with

19   buyers of their goods around the world.[2]  (*See* Compl. ⁋ 41.)  Etsy provides a platform for these

20   third-party sellers to market and sell their goods, but it is not a retailer itself:  it never takes

21   possession of any goods sold on its website, does not manufacture any goods for sale, and does not

22   sell any of its own products.  (*See id.* ⁋ 42 ("Defendant's online platform facilitates the sale of

23   products to end-users or online customers.").)  While Etsy sellers are responsible for their own

24   products and listing content, Etsy has longstanding policies prohibiting third-party sellers from

25

26   ───────────────

[1] Etsy is concurrently filing a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil

27   Procedure 12(b)(6) in the alternative to this Motion.  Should the Court grant this Motion, it need not address the arguments raised in the Motion to Dismiss.

28   [2] *See generally* https://www.etsy.com/about (accessed July 8, 2024).

offering certain items for sale, including the types of mercury-containing skin lightening creams at issue here.[3]  Etsy's Trust and Safety team uses both automated and manual controls to identify and remove listings that violate its policies.[4]  (*See generally id.* ₱ 45(e).)

**B.      Etsy's Terms of Use**

The terms that govern the use of Etsy's platform are its "House Rules," which are set forth in plain language on its site.[5]  The heart of these House Rules are Etsy's Terms of Use, which have their own dedicated page.[6]  Etsy's Terms of Use contain a binding arbitration agreement through which Etsy users agree to arbitrate their claims against Etsy (except in certain limited circumstances not at issue here).  The very top of this page states, in bold letters:

> **Please note that Section 11 of the Terms below contains a binding arbitration agreement and class action waiver for users in North and South America. By agreeing to the Terms, you and Etsy agree to submit any disputes between us exclusively to individual arbitration and not to sue in court, except in the limited circumstances described below.**

Section 11 of the Terms of Use contains a binding arbitration agreement.  The Section begins by stating, "you and Etsy . . . agree to submit our disputes exclusively to binding individual arbitration, and we won't sue each other in court before a judge or jury, except in the limited circumstances described below."  Ex. A (Etsy Terms of Use) to Decl. of Daniel Saad.  Subpart A of Section 11 continues:

> **A. Disputes that We'll Arbitrate.** You and Etsy agree to mandatory individual arbitration for all claims arising from or relating to the Services, these and prior versions of the Terms, any products, data, or content bought, sold, offered, accessed, displayed, transmitted, or listed through the Services, and actions or statements by Etsy or its users, in each case including disputes that arose before the effective date of these Terms (each, a "Dispute"). The exception is that we each may (1) bring qualifying individual claims in "small claims" court, so long as those claims remain in small claims court; and (2) seek injunctive relief in court for infringement or misuse of intellectual property rights (like trademarks, copyrights, and patents). All

---

[3]    *See    generally*    https://www.etsy.com/legal/policy/medical-claims/239976157654    and https://www.etsy.com/legal/policy/cosmetics-ingredients/1048080570782.

[4]    *See    generally*    https://www.etsy.com/news/etsys-2023-transparency-report-and-trust--safety-priorities (accessed July 17, 2024).

[5] *See generally* https://www.etsy.com/legal (accessed July 17, 2024).

[6] *See* https://www.etsy.com/legal/terms-of-use (accessed July 9, 2024).

1    other Disputes must be arbitrated, which means you and Etsy are each waiving your
2    right to sue in court and have a court or jury trial.

3    *Id.*  Section 11 specifies, "[t]o initiate arbitration, either you or we must file an arbitration demand

4    with the American Arbitration Association ('AAA')."  *Id.*  And it further specifies, "[e]xcept as

5    prohibited by law, these Terms and all disputes between us, shall be governed exclusively by New

6    York law, without regard to conflict-of-law rules, and U.S. federal law (including the Federal

7    Arbitration Act)."  *Id.*  Finally, the Section states that a new Etsy user can opt out of the arbitration

8    agreement within 30 days after first accepting Etsy's Terms.  *See id.* § 11.G.  These provisions in

9    Section 11 of Etsy's Terms of Use have not changed from September of 2023 to the present.  Saad

10   Decl. ¶ 52.

11       **C.       Users Must Agree to Etsy's Terms of Use as Part of the Registration Process**

12       To register for an Etsy account, a user must agree to its Terms of Use.  *See* Saad Decl. ¶¶ 4-

13   7.  When a user on Etsy's website clicks the link to register for an account, they are presented with

14   a launch window prompting them to register by creating a username and password or utilize

15   preexisting credentials from Google, Facebook, or Apple, as shown below:



4

*Id.* ¶¶ 4-5.   As set forth above, if a user chooses to use preexisting Google, Facebook, or Apple credentials, the registration pop-up window specifies "[b]y clicking Continue with Google, Facebook, or Apple, you Agree to Etsy's <u>Terms of Use</u> and <u>Privacy Policy</u>."   *Id.* ¶ 5.   Both the Terms of Use and Privacy Policy are hyperlinked in the launch window, as shown in the image above.   *Id.* ¶ 6.

      After registering for an account, each time a user signs into Etsy they must once again affirm they agree to Etsy's Terms of Use and Privacy Policy:



*Id.* ¶ 8.   Moreover, each time a user buys a product on Etsy, they are once again required to affirm that they agree to Etsy's Terms of Use and Privacy Policy as part of the purchase process.   *Id.* ¶¶ 10-14.   Specifically, as part of the purchase process, the user navigates to a "Review" screen containing the details of their order.   *Id.* ¶ 12.   The review screen contains a "Pay" button, and below that button reads: "By clicking the [Pay Button], you agree to Etsy's Terms of Use and Privacy Policy."   *Id.* ¶¶ 13-14 (setting forth example image).

**D.      Employees of Greenfire Law, Acting as Plaintiff's Agent, Register for Etsy and Purchase the Products at Issue in the Complaint**

Etsy keeps track of each user's registration date and time (when they also agreed to Etsy's Terms of Use) as part of its internal records in its ordinary course of business.  *Id.* ⁋ 9.  Etsy's records show that between September of 2023 and January of 2024, three users associated with Greenfire Law registered to use Etsy via its website and the "Continue with Google" option, and then purchased products from Etsy's platform.  *See id.* ⁋⁋ 15-48.  Importantly, in the Complaint, Plaintiff ***admits*** these individuals were acting as its agents, asserting that Plaintiff "directed and paid for the purchase of such products from www.etsy.com." (Compl. ⁋ 11.)

During the September of 2023 to January of 2024 time period, the registration, sign-in, and purchase process appeared as depicted and functioned as described above.  Saad Decl. ⁋⁋ 3, 52.  Accordingly, these users saw, and navigated, materially identical versions of the screens set forth above as part of the registration, sign-in, and purchase process.  *Id.* ⁋ 3.  Etsy's records further confirm that in the course of purchasing products, each of these users was presented with the check-out screen stating that by clicking the "Pay" button, they agreed to Etsy's Terms of Use and Privacy Policy.  *Id.* ⁋⁋ 31, 42, 52.    Accordingly, each of these users clicked buttons indicating their agreement to Etsy's Terms of Use multiple times.  The specific details of each user's registration and purchases are set forth below.

*Karishma Goswami (Student Clerk, Greenfire Law).*  Etsy's records show that on September 15, 2023, a user with the username "oryh2fk0v9dtjgn1" registered for an account with Etsy.  *Id.* ⁋ 17.  The full name provided by user "oryh2fk0v9dtjgn1" in their registration was "Karishma Goswami."  *Id.* ⁋ 21.  The LinkedIn profile for "Karishma Goswami" shows that she was employed as a "Student Clerk" at Greenfire Law, P.C. from January 2023 through July 2024.[7]  The email provided by user "oryh2fk0v9dtjgn1" had a "greenfirelaw.com" domain name.  *Id.* ⁋ 22.  Between September 20, 2023, and January 24, 2024, user "oryh2fk0v9dtjgn1" made five purchases, consisting of:

---

[7] *See* https://www.linkedin.com/in/karishma-krishna-goswami/ (last visited July 18, 2023).

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No.: 24-cv-04203-SK

a.  "Faiza Beauty Cream from Pakistan 100% Authentic Freshly Made," on September 20, 2023.

b.  A second purchase of "Faiza Beauty Cream from Pakistan 100% Authentic Freshly Made" on September 20, 2023.

c.  "Caro white Lightening Beauty Lotion" on January 13, 2024.

d.  "Parley Goldie Cosmetics original anti blemish cream" on January 13, 2024.

e.  "La unica Cream Casa Botanica," also on January 24, 2024.

*Id.* ꝑ 25.  The name and address listed for each of these purchases was "Rachel Doughty" in Berkeley, California.  *Id.* ꝑ 26. By visiting Etsy's website at least three separate times to make these purchases, Ms. Goswami necessarily clicked her agreement to Etsy's Terms of Service at least *six* times.  *Id.* ¶ 25.

*Greenfire Law User.*  On September 20, 2023, another user registered for Etsy's platform from the same IP address used by Ms. Goswani.  *Id.* ꝒꝒ 28, 34.  This user purchased "3 pcs (Faiza) original made in Pakistan," on that same day, and provided the name "Rachel Doughty" and the same address provided by Ms. Goswani for the purchase.  *Id.* ꝒꝒ 35, 37. To complete these actions, this user clicked their agreement to Etsy's Terms of Use at least twice. *Id.* ¶ 36.

*Nuria de la Fuente (Office Manager, Greenfire Law).*  Finally, on January 9, 2024, another user registered for Etsy's platform from the same IP address.  *Id.* ꝒꝒ 39, 44.  On that same day, the user purchased the following products:

a.  "Due beauty face Cream, Creme"

b.  "Magia Blanca de Michelle Marie"

c.  "Crema Blanqueadora"

d.  "Snow White Blemish and Anti-Aging Night Cream 50 ml"

*Id.* ꝑ 45.  The name and address listed for these purchases was Nuria de la Fuente in Berkeley, California.  *Id.* ꝑ 47.  By registering for Etsy and making these purchases, Ms. de la Fuente agreed to Etsy's Terms of Use at least twice.  *Id.* ¶ 46.  Greenfire Law's website lists Nuria de la Fuente as

1  its Office Manager.[8]  Moreover, Ms. de la Fuente emailed Etsy's counsel a copy of this Complaint

2  to effectuate its service.  Decl. of N. Hoffman ¶ 6.

3       In sum, acting as Plaintiff's agent, each of these individuals registered as users on Etsy's

4  platform through its website by clicking "Continue with Google" and creating an account, and then

5  purchased products through Etsy's check-out process.  Saad Decl. ¶¶ 17-48.  Accordingly, each

6  agreed to Etsy's Terms of Use at multiple times, and collectively they agreed to the Terms of Use

7  at least 10 times.  *See Id.* ¶ 25, 36, and 46.  And, while Etsy's Terms of Use allow users to opt out

8  of arbitration within 30 days after opening their account, none of these users contacted Etsy to opt

9  out of arbitration.  *Id.* ¶¶ 27, 38, 48.

10      **E.**      **Greenfire Law Sends Etsy Proposition 65 Notices on Behalf of Plaintiff, Which**
              **the California Attorney General Subsequently Finds Have No Merit**

11

12      On January 18, 2024, Ms. Rachel Doughty of Greenfire Law sent Etsy a Notice on behalf of

13  Plaintiff alleging that Etsy is violating California Health & Safety Code 25249.5 *et seq*., commonly

14  known as "Proposition 65," by allowing third-party sellers to sell certain skin-whitening creams on

15  Etsy's website, thereby allegedly exposing consumers to mercury and mercury compounds without

16  adequate warning.  *See* Ex. A to Hoffman Decl.  The Notice identified various products sold by

17  different third-party sellers on Etsy's website that allegedly contain mercury; among these products

18  are the "Faiza" products that were purchased and sent to Ms. Doughty.  *See id.* at 3.

19      Proposition 65 requires a private plaintiff seeking to pursue a lawsuit to first provide the

20  California Attorney General with a "certificate of merit" indicating they have conferred with an

21  expert and believe the action to be meritorious, along with "factual information sufficient to

22  establish the basis of the certificate[.]"  Cal. Health & Safety Code § 25249.7(d)(1).  The California

23  Attorney General, in turn, reviews this information and if it "believes there is no merit to the action,"

24  serves a public letter to the private plaintiff.  *Id.*  §  25249.7(e)(1)(A).

25      On March 13, 2024, the California Attorney General issued a public "No Merit" letter

26  regarding its review and investigation of Plaintiff's notice of violation and supporting documents.

27  

28  [8] *See* http://www.greenfirelaw.com/#attorneys (last accessed July 18, 2024)

*See* Ex. B to Hoffman Decl.[9]   In the letter, the Attorney General declared ***Plaintiff does not have authority to file a lawsuit to in the public interest:***

> **The 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations.  We ask that you withdraw the notice immediately**.

Ex. B to Hoffman Decl. (emphasis added).[10]

Two days after Plaintiff's counsel received the Attorney General's "No Merit" letter, Plaintiff's counsel served Etsy with a *second* notice of violation, regarding additional creams that allegedly contain mercury or mercury compounds.  *See* Ex. C. to Hoffman Decl.  On March 27, 2024, the Attorney General then issued a *second* materially identical "No Merit" letter, confirming that Plaintiff's second notice was also meritless due to Plaintiff's failure to provide factual information to support the certificate of merit, and that Plaintiff similarly had *no authority* to try to enforce the second notice on behalf of the public.  *See* Ex. D to Hoffman Decl.  The Complaint does not mention either of these letters.

### F.      Plaintiff Files the Instant Complaint, Alleging it "Directed and Paid for" Products on Etsy's Website

The Complaint alleges that "AS YOU SOW has directed and paid for the purchase" of "skin lightening products that contain mercury or mercury compounds" from sellers on Etsy's platform.  (*Id.* ⁋ 11.)  Among the products listed are the "Faiza," "Due Beauty Cream," and "Magia Blanca de Michelle Marie" products previously purchased by Greenfire Law employees.  (*Id.* ⁋ 68.)[11]  On the basis of its allegations regarding these products, Plaintiff alleges that Etsy violated Proposition 65 (the First and Second Causes of Action) and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the Third Cause of Action).

---

[9]  The letter is posted on the California Attorney General's website at https://oag.ca.gov/system/files/media/letter-2024-00232.pdf (last accessed July 18, 2024).

[10]  Additional context regarding the Attorney General's letters is set forth in Etsy's Motion to Dismiss—although the Court need not reach that Motion in the event it grants this Motion.

[11] The complaint also lists "Miss Key Crema Blanqueadora;" it is unclear if that is the same product as the "Crema Blanqueadora" product purchased by Ms. de la Fuente.

III.   **LEGAL STANDARD**

Where an agreement to arbitrate falls within the FAA's ambit, the court's role on a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."   *Chiron Corp. v. Ortho Diagnostics-Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).   If the answer to both of these questions is yes, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."   *Id.* (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 228 (1985) (citing 9 U.S.C. §§ 3, 4).   If the FAA requires that a dispute be compelled to arbitration, then the Court must stay the case until the conclusion of that proceeding. *See* 9 U.S.C. § 3.

IV.   **PLAINTIFF'S COMPLAINT MUST BE COMPELLED TO ARBITRATION**

The FAA governs the enforceability of Etsy's arbitration agreement.[12]   Under the FAA's two-step test, the Court must compel arbitration of this dispute.   First, a valid agreement exists because Plaintiff's agent agreed to Etsy's Terms of Use in a manner that created a binding contract to arbitrate.   Second, Plaintiff's dispute with Etsy here is within the scope of the arbitration agreement.   Etsy addresses each of these analytical steps in turn.

A.   **Plaintiff Entered Into a Valid Agreement to Arbitrate with Etsy**

In determining whether a valid agreement to arbitrate exists, courts generally "apply ordinary state-law principles that govern the formation of contracts."   *First Options of Chic., Inc. v. Kaplan and MKS Invs., Inc.*, 514 U.S. 938, 944 (1995).   Here, that question is governed by New York law (which is in accord with California law on the relevant principles set forth below).[13]   Under New

---

[12] Etsy's arbitration provision is part of a "contract evidencing a transaction involving commerce," 9 U.S.C. § 2, because Etsy operates an online platform for the purchase and sale of goods across state lines.   The FAA also applies to the agreement because it expressly specifies as much.   *See* Ex A § 11 to Saad Decl.; *see also Hofer v. Emley*, No. 19-cv-02205-JSC, 2019 WL 4575389, at *11 (N.D. Cal. Sept. 20, 2019) (holding FAA applies where agreement "expressly states that arbitration under the Agreement is governed by the FAA").

[13] Etsy's Terms of Use specify application of New York law.   *See* Ex. A § 11 to Saad Decl.   "A

York law, Plaintiff's counsel assented to Etsy's Terms of Use on Plaintiff's behalf, and that assent creates a valid agreement to arbitrate.  Moreover, that agreement binds Plaintiff under black-letter agency law.

**1.     Plaintiff's Counsel Assented to Etsy's Terms of Use**

"To form a contract, there must be a mutual manifestation of assent, whether by written or spoken word or by conduct."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (noting that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term" (quotation marks and citations omitted).)  "When there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms."  *Id.* at 74-75.  Inquiry notice, in turn depends on the "clarity and conspicuousness of arbitration terms," and, in the context of terms on a website, "the design and content of the relevant interface."  *Id.* at 75 (quotation marks and citation omitted).

Plaintiff's agents agreed to Etsy's Terms of use via a standard, widely-accepted contract-creation process.  As discussed above, each of the three Greenfire Law users was presented with a registration pop-up window informing them that by clicking "Continue," they agreed to Etsy's Terms of Use.  *See* Section II.D, *supra*.  Each clicked "Continue" to proceed.  *Id.*  Each user then made purchases by navigating a payment process that once again informed them that by clicking "Pay," they agreed to Etsy's Terms of Use.  *Id.*  Each clicked "Pay" to complete their purchases.  *Id.*

Courts applying both New York and California law have routinely enforced substantially identical contract-creation processes and have compelled online users to arbitration.  *See, e.g.*, *Starke v. Gilt Groupe, Inc.*, No. 13-cv-5947, 2014 WL 1652225, at *2-3 (S.D.N.Y. Apr. 24, 2010)

---

federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits."  *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal.  2016).  California gives effect to the parties' chosen law unless the chosen state has no "substantial relationship to the parties or their transaction" or application of that state's law would violate a "fundamental policy" of California.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (citation omitted).  "A substantial relationship exists in a state where a party is domiciled, resides, or is incorporated;" here, Etsy's principal place of business is in New York.  *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1197-98 (N.D. Cal. 2014).

(clicking "Shop Now,' above language stating that by clicking the button "you agree to the Terms of Membership," creates a valid agreement "regardless of whether [the user] actually read the contract's terms," and collecting cases); *accord In re Ring LLC Privacy Litig.*, No. 19-cv-10899, 2021 WL 2621197, at \*5 (C.D. Cal. June 24, 2021) (explaining courts hold a "binding contract" exists "where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately above or below a button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account").

The Second Circuit's decision in *Meyer* dictates the outcome here.  At issue in *Meyer* was whether the plaintiff had entered into a valid agreement to arbitrate his claims against Uber.  The plaintiff had clicked a button marked 'Register,' underneath which the screen stated: "'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY,' with hyperlinks to the Terms of Service and Privacy Policy."  *Id.* at 76.  The dispositive question, explained the Court, was whether "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law."  *Id.*  The court then concluded that "the design of the screen and language used render the notice provided reasonable as a matter of law," noting that the "Register" button and call to action were both "spatially coupled" (they were next to each other) and "temporally coupled" (in that they appear "at a place and time" that the customer would expect).  *Id.* at 78 (citation omitted).  "Moreover, the language '[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."  *Id.* at 78-79.  On that basis, the Second Circuit found that the plaintiff had assented to the terms, explaining that "a reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked the hyperlink or not."  *Id.* at 79-80.

The facts here are even more compelling than in *Meyer*.  As set forth in Section II.C, the buttons to register for an account, sign into Etsy, and purchase a product through Etsy, all appear directly above—and are thus spatially and temporally coupled—with language stating that by clicking the relevant button, the user agrees to Etsy's Terms of Use.  And here too, the Terms of Use are hyperlinked and take the user directly to a page telling users, at the top of the page, that the

Terms contain an arbitration clause.  This notice is "reasonable as a matter of law," and thus a user who registers, signs in, or purchases a product on Etsy "unambiguously manifest[s] his assent to [Etsy's] Terms of Service[.]"  *Id.* at 80.  What is more, Plaintiff's lawyers each went through the click-to-assent process multiple times, and collectively some 10 times.  These facts leave no doubt that Greenfire Law and its employees were aware of the Terms of Service and unquestionably assented to them.

There also can be no argument that Etsy's arbitration clause is unconscionable. "Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be [unenforceable] according to its literal terms." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (quotation marks and citation omitted).  "Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable."  *Id.*  Here, even setting aside that courts—including the *Meyer* and *Stark* courts—have routinely enforced materially identical online agreements, Etsy's Terms of Use are fair and reasonable on their face.  The Terms preview the arbitration clause, in bold, and the provision itself clearly explains the nature of the agreement and that the parties are giving up the right to sue each other or have claims heard by a jury.  *See* Ex. A § 11 to Saad Decl.  And, critically, the Terms of Use expressly provide a user the opportunity to ***opt out*** of arbitration if they wish (an opportunity that Greenfire Law did not avail itself of).  The presence of an "opt out" option renders the arbitration clause conscionable.  *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017) ("Courts applying New York law have considered an opt-out provision an important, if not dispositive, factor in rejecting challenges to procedural unconscionability.") (collecting authority); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("[T]he existence of a meaningful right to opt-out of arbitration necessarily renders the arbitration clause (and the delegation clause specifically) procedurally conscionable as a matter of law." (quotation marks and alterations omitted)).

### 2. Greenfire Law Bound Plaintiff to the Arbitration Agreement

Greenfire Law not only agreed to the arbitration agreement, but they did so as the agents of the Plaintiff.  Under New York law, an attorney is an agent of their client and binds their client when

13

acting within the scope of their authority.  *See Pratel v. Freedman*, 583 F.2d 42, 48 (2d Cir. 1978) ("[A]n attorney is his client's agent and representative; . . . Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority.")*; accord Yanchor v. Kagan*, 22 Cal. App. 3d 544, 548 ("An attorney is an agent of his client . . . .  Hence, the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied)." (citations omitted).  Accordingly, Plaintiff is bound by the agreement as well.

Plaintiff here *admits* that Greenfire Law was acting as Plaintiff's agent and within the scope of its authority when it did so: "AS YOU SOW has ***directed and paid*** for the purchase of such products from www.etsy.com."  (Compl. ¶ 11 (emphasis added).)  By directing Greenfire Law to make those purchases, Plaintiff necessarily granted Greenfire Law the authority to do so, including the authority to register for Etsy's website and agree to its Terms of Service.  *See* Restatement (Third) of Agency § 2.02(1) ("An agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives.").  Greenfire Law could have opted Plaintiff out of arbitration but did not do so.  *See Bosheares v. PeopleConnect, Inc.*, No. 22-35262, 2023 WL 4946630, at *1 (9th Cir. 2023) ("[T]o avoid the arbitration requirement of the Terms of Service ('TOS'), an attorney should create an account on behalf of a client and then opt out of arbitration on that client's behalf.").

New York recognizes that a non-signatory may be bound to an agreement to arbitrate where the nonsignatory's agent, acting in the scope of its authority, agrees to be bound.  *See Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement." (quotation marks and citations omitted)); *accord Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015) ("[W]hen a nonsignatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory.").  So it is here.  Because Greenfire Law was acting as Plaintiff's agent and within the scope of its authority when it agreed to Etsy's Terms of Use, Plaintiff itself is also bound by the Terms of Use and the arbitration

---

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No.: 24-cv-04203-SK

agreement therein.[14]

### B.    The Parties' Agreement to Arbitrate Covers the Dispute at Issue Here

Because Plaintiff entered into a valid agreement to arbitrate with Etsy, this Court's next step is to determine whether the parties' dispute falls within the scope of that agreement.  This step is easy.  The Terms of Use provide that the parties will arbitrate the following:

> [A]ll claims arising from or relating to the Services,[15] these and prior versions of the Terms, any products, data, or content bought, sold, offered, accessed, displayed, transmitted, or listed through the Services, and actions or statements by Etsy or its users, in each case including disputes that arose before the effective date of these Terms (each, a "Dispute").

Ex. A § 11.A to Saad Decl.  Here, the parties dispute concerns "products . . . bought . . . through the Services [*i.e.*, Etsy's website]" and is thus within the scope of the parties' agreement.  Plaintiff also alleges Etsy operates the Etsy marketplace, but has failed to "provide[] a Proposition 65 warning to any consumer who bought" the products at issue.  (Compl. ¶¶ 45(d), 66).  The claims thus also concern Etsy's alleged "actions or statements," which also fall within the scope of the arbitration agreement.

To the extent there is any dispute as to whether the parties' agreement to arbitrate covers this dispute, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000) (internal citations omitted).  In determining whether the resisting party has met its burden, "[a] court must defer to arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' and 'doubts should be resolved in favor of coverage."  *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 971 (N.D. Cal. 2015) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986)); *accord  State v. Phillip*

---

[14] Plaintiff also ratified Greenfire Law's conduct by paying for the products and then serving Proposition 65 Notices (and pursuing this suit) on the basis of those purchases.  *See Precedo Cap. Grp. Inc. v. Twitter Inc.*, 35 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) ("Even in the absence of actual or apparent authority, a person may still be liable as a principal if he affirms or ratifies an act done by one who purports to be acting for the ratifier.").

[15] "Services" is defined within the Terms of Use as the user's use of "Etsy.com, Pattern by Etsy, our mobile apps, and the other services provided by Etsy[.]"  Ex. A § 1 to Saad Decl.

*Morris Inc.*, 813 N.Y.S.2d 71, 75 (N.Y. App. Div. 2006), *aff'd*, 869 N.E.2d 636 (N.Y. 2007) ("Any doubts as to whether an issue is arbitrable will be resolved in favor of arbitration" in light of the fact that "[a]rbitration is strongly favored under New York law.");   *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 641-42, 68 (1997) ("As indicated by the United States Supreme Court, the FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

### C.    Plaintiff's Proposition 65 Claims Can Be Compelled to Arbitration

Plaintiff may argue that Proposition 65 claims cannot be compelled to arbitration because they are brought "in the public interest." Cal. Health & Safety Code § 25249.7(d) (allowing a private plaintiff to bring claims "in the public interest" if certain requirements are met). But that would be wrong. Plaintiff is ***not*** bringing its case in the public interest. The AG's "No Merit" letters expressly state as much:

> Based on our review of the notice, we have concluded that you have failed to provide sufficient information to indicate that there is a credible basis to conclude that there is merit to each element of the action on which plaintiff will have the burden of proof and that the information relied on does not prove that any affirmative defense has merit. ***The 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations***.

Ex. B to Hoffman Decl. (emphasis added); *see also id.* at 2 (reiterating that "the 60-day notice does not give AYS authority to file suit in the public interest"). Plaintiff is necessarily suing only in its *own* interest; nothing prevents it from advancing that interest in arbitration.

But even if the Plaintiff were suing in the public interest (it is not), its claims would still be subject to arbitration. Nothing in Proposition 65 mandates a judicial forum or otherwise prohibits arbitration of a Proposition 65 claim. *See generally* Cal. Health & Safety Code § 25249.5 *et seq.*; *cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (alteration, citation omitted)); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ("[E]ven claims arising under a statute

16

designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions." (quotation marks, citation, alteration omitted)).

Moreover, recent Supreme Court authority confirms that an action brought by an individual Plaintiff on behalf of the "State" *can* be compelled to arbitration under the FAA.  In *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), the plaintiff brought a claim under the California Labor Code Private Attorney Generals Act (PAGA). In a separate prior action, the California Supreme Court had held that a PAGA plaintiff sues as an "agent or proxy" of the State, and that as a result an employee PAGA action could not be compelled to arbitration.  *Iksanian v. CLS Transp. L.A.*, 59 Cal. 4th 348, 382 (2014)).  In *Viking River*, the Court explained, "nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of [9 U.S.C.] § 2."  596 U.S. at 652 n.4.  In other words, a party suing on behalf of the "State" or the "public" can be compelled to arbitration under the FAA where otherwise appropriate.

Pursuant to *Viking River*, an agreement to arbitrate is enforceable under the FAA where the plaintiff purports to act on behalf of the State or the undifferentiated "public"—a "single agent, single principal" claim.  *See id.* at 657 (holding that "[n]on-class representative actions in which a single agent litigates on behalf of a single principal" (*e.g.*, the State of California) may be compelled to arbitration under the FAA).[16]  That is exactly what Plaintiff is purporting to do here (notwithstanding the California Attorney General's "No Merit" letters).  Here too, Plaintiff purports to step into the shoes of a public prosecutor and sue "in the public interest," purportedly on behalf of the "State of California."  Plaintiff acting as an agent of this "single principal." can be compelled to arbitrate its Proposition 65 claims under Viking River.  *See also, e.g., Deck v. Miami Jacobs Bus.*

---

[16] The Supreme Court's prior jurisprudence on *qui tam* actions provides additional reasoning for why a plaintiff bringing a claim on behalf of the government is not equivalent to the government itself bringing the claim.  As the Court previously explained (in the context of determining whether individual or governmental time periods apply to a False Claims Act appeal), "[t]he United States' status as a 'real party in interest' in a *qui tam* action does not automatically convert it to a party. . . . When, as here, a real party in interest has declined to bring the action or intervene, there is no basis for deeming it a party."  *U.S. ex rel. Eisenstein v. City of New York, NY*, 556 U.S. 928, 934-35 (2009).

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No.: 24-cv-04203-SK

*College*, No. 3:12-cv-63, 2013 WL 394875, at *7 (S.D. Ohio Jan. 31, 2013) ("While the [False Claims Act] action was necessarily 'brought in the name of the Government,' it still represents a claim belonging to the Plaintiffs themselves. Because the FCA dispute is a 'dispute arising out of or relating to this enrollment agreement,' it falls within the broad scope of the arbitration clause Plaintiffs signed.").

### D.   The Case Should Be Stayed Pending Arbitration

Etsy maintains that the entirety of Plaintiff's claims must be compelled to arbitration and requests a stay of this action pending completion of the arbitration. *See* 9 U.S.C. § 3. But in the event the Court determines that any part of the dispute is not arbitrable (which it should not do), it should order arbitration of the remaining claims and stay this proceeding. "The FAA does not permit a court to decline to enforce a valid arbitration provision, even if some claims arising from the same transaction or occurrence cannot be compelled to arbitration." *Hofer v. Emley*, No. 19-cv-02205-JSC, 2019 WL 4575389, at *9 (N.D. Cal. Sept. 20, 2019). Rather, the Court must compel all claims that *can* be compelled and stay the remainder of the case pursuant to 9 U.S.C. § 3. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (recognizing that the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement"); *accord Clifford*, 38 Cal. App. 5th at 750.

## V.   IN THE EVENT THE COURT DOES NOT COMPEL ARBITRATION, IT SHOULD TRANSFER VENUE

Etsy submits, for the reasons set forth above, that the FAA requires that the Court compel Plaintiff's claims to arbitration. If, however, this Court declines to order Plaintiff to arbitration, then Etsy requests that the Court transfer venue of this action to the U.S. District Court for the Southern District of New York.[17]

As set forth in Section IV.A.1 *supra*, Plaintiff is bound by Etsy's Terms of Use as a result of

---

[17] The Court need only decide whether to transfer venue in the event that it finds that none of Plaintiff's claims may be compelled to arbitration. As set forth in Section IV.D, should the Court find that any claim be compelled to arbitration, then the FAA requires that the Court stay the case until the conclusion of that proceeding. Etsy reserves its right to raise the issue of appropriate venue as necessary at such time.

its agent's actions. [18]   In addition to containing an arbitration provision, those Terms of Use also specify: "Etsy is based in New York, so if there are claims between you and Etsy that aren't subject to arbitration, you and Etsy each agree to litigate those claims **exclusively** in state or federal court in New York, New York, and to submit to the personal jurisdiction of those courts." Ex. A § 11.I to Saad Decl.

A motion to transfer venue under 28 U.S.C. § 1404(a) is the proper method of enforcing a forum selection clause contained in a contract. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. of Tex.*, 571 U.S. 49, 52 (2013).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The parties' forum-selection clause is "presumptively valid," *T & M Solar & Air Conditioning v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015), and it plainly applies to Plaintiff's claims in this action. When reviewing a § 1404(a) motion to transfer, the court should give a valid forum selection clause "controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59-60 (citation omitted).  "The party seeking to avoid the forum selection clause bears 'a heavy burden of proof.'"  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).  They must point to "exceptional circumstances unrelated to the convenience of the parties that make transfer inappropriate." *T & M*, 83 F. Supp. 3d at 868 (citing *Atl. Marine*, 571 U.S. at 63).  As the Supreme Court has explained, a party who agrees to a forum selection clause "waive[s] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for

---

[18] Agency principles aside, enforcement of a forum selection clause is not necessarily limited to the parties who signed the agreement.  In cases "where the alleged conduct of [] nonparties is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'"  *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

1  their pursuit of the litigation."  *Atl. Marine*, 571 U.S. at 64.[19]

2       Plaintiff's purported "representative capacity" under Proposition 65 does not change the

3  outcome.  For the reasons set forth in Section IV.C, Plaintiff is *not* suing in a representative capacity.

4  Moreover, even if Plaintiff were doing so, the forum-selection clause should still be enforced against

5  it.  *Cf. Net2Phone, Inc. v. Superior Ct.*, 109 Cal. App. 4th 583, 589 (2003) (holding forum-selection

6  clause enforceable against public interest group asserting "representative standing" under the UCL).

7  **VI.  CONCLUSION**

8       Etsy respectfully requests that this Court compel Plaintiff's claims to arbitration and stay

9  this proceeding or, in the alternative, transfer this action to the U.S. District Court for the Southern

10  District of New York.

11

12  Dated: July 18, 2024               McGuireWoods LLP

13

14                        By: */s/ Nicholas J. Hoffman*

15                           Nicholas J. Hoffman
                         Samuel J. Tarry (*PHV forthcoming*)

16                           Aria Hangval
                         Attorneys for Defendant

17                           ETSY, INC.

18

19

20

21

22

23

24  ───────────────
[19] The "exceptional circumstances" inquiry is restricted to public-interest factors, and those factors
will "rarely defeat a transfer motion."  *Id.*  Courts, for instance, may decline to enforce a forum

25  selection clause if the plaintiff establishes that the clause is invalid due to fraud or coercion; if
transferring the action would effectively deny the plaintiff of their day in court; or if transfer "would

26  contravene a strong public policy of the forum in which suit is brought."  *Sun v. Advanced China*

27  *Healthcare, Inc.*, 901 F.3d 1081, 1088-90 (quoting *Bremen*, 407 U.S. at 15).  Plaintiff cannot meet
its heavy burden to show that these factors "overwhelmingly disfavor a transfer" here.  *Atl. Marine*,

28  571 U.S. at 67.

1

**CERTIFICATE OF SERVICE**

2      I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is Wells Fargo Center, South

4 Tower, 355 S. Grand Avenue, Suite 4200, Los Angeles, California 90071-3103. On July 18, 2024,

5 I caused the service of the foregoing document described as **DEFENDANT ETSY, INC.'S**

6 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO**

7 **COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**, addressed

8 as follows:

9

10    Rachel S. Doughty                                        Attorneys for Plaintiff
      Jennifer Rae Lovko                                       AS YOU SOW
11    **GREENFIRE LAW, PC**
      2748 Adeline Street, Suite A
12    Berkeley, CA 94703
      Telephone: (510) 900-9502
13    Fax: (510) 900-9502
      Email: rdoughty@greenfirelaw.com
14         rlovko@greenfirelaw.com

15

16  ☒    **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing
            correspondence for mailing with the United States Postal Service.  Under that practice, it
17          would be deposited with the United States Postal Service that same day in the ordinary
            course of business.  Such envelope(s) were placed for collection and mailing with postage
18          thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business
            practices.

19  ☒    **(BY ELECTRONIC TRANSMISSION):** I caused such document to be served
            electronically to the person's electronic service address by transmitting a PDF format copy
20          of such document(s) to each person at the e-mail addresses set forth above.

21

22      I declare under penalty of perjury under the laws of the United States of America that the

23 foregoing is true and correct.

24      Executed on July 18, 2024, at Los Angeles, California.

25
                                           /s/ Miguelina Mendez
26                                         Miguelina Mendez

27

28
                                    21