1  NICHOLAS J. HOFFMAN (SBN 284472)
      nhoffman@mcguirewoods.com
2  ARIA HANGVAL (SBN 336933)
      ahangval@mcguirewoods.com
3  McGUIREWOODS LLP
4  Wells Fargo Center – South Tower
   355 S. Grand Avenue, Suite 4200
5  Los Angeles, California 90071-3103
   Telephone: (213) 457-9840
6  Facsimile: (213) 457-9877

7  SAMUEL L. TARRY, JR. (*pro hac vice application forthcoming*)
8     starry@mcguirewoods.com
   McGUIREWOODS LLP
9  1750 Tysons Boulevard Suite 1800
   Tysons, Virginia 22102-4215
10 Telephone: (703) 712-5425
   Facsimile: (703) 712-5185
11

12 Attorneys for Defendant
   ETSY, INC.
13

14                 **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
15

16

17 AS YOU SOW, a 501(c)(3) non-profit          Case No.: 24-cv-04203-SK
   corporation,
18                                             **DEFENDANT ETSY, INC.'S REQUEST**
            Plaintiff,                         **FOR JUDICIAL NOTICE IN SUPPORT**
19                                             **OF MOTION TO DISMISS PLAINTIFF'S**
                                               **COMPLAINT FOR FAILURE TO STATE**
20      v.                                     **A CLAIM**

21 ETSY, INC. and DOES 1-20, inclusive,        **Judge:** Hon. Sallie Kim
                                               **Date:** August 26, 2024
22          Defendants.                        **Time:** 9:30 a.m.
                                               **Location:** Courtroom C, 15th Floor
23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

Pursuant to Federal Rule of Evidence 201, Defendant Etsy, Inc. ("Etsy"), by and through its undersigned counsel, respectfully requests that the Court take judicial notice of Exhibits 1-14, true and correct copies of which are attached hereto.  Etsy submits this Request for Judicial Notice in support of its concurrently filed Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (*quoting MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Etsy requests that the Court take judicial notice of the following documents:

1.    Plaintiff's First Notice of Violation, which Plaintiff served on January 18, 2024.  This document is referenced in Plaintiff's Complaint, and an incomplete version is attached as Exhibit 1 to the Complaint.  *See* Complaint, ¶ 74, Ex. 1.  The Court should be able to consider the complete version of the document.  Further, the complete version is a matter of public record since it is publicly available on the California Attorney General's website: https://oag.ca.gov/system/files/prop65/notices/2024-00232.pdf (last accessed July 17, 2024). Judicial notice is appropriate.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (under the doctrine of incorporation by reference, a court can consider the complete version of a document referenced in a plaintiff's complaint); *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1049 (N.D. Cal. 2005) ("[T]he court may consider a document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned."); *King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (a court may take "judicial notice of the

undisputed and publicly available information displayed on government websites").  A true and correct copy of this document is attached hereto as **Exhibit 1.**

2.    <u>The California Attorney General's March 13, 2024 Letter in response to Plaintiff's first Notice of Violation</u>.  The California Attorney General's March 13, 2024 letter is a matter of public record and is publicly available on the California Attorney General's website: https://oag.ca.gov/system/files/media/letter-2024-00232.pdf (last accessed July 17, 2024).  Judicial notice is appropriate.  *See King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (a court may take "judicial notice of the undisputed and publicly available information displayed on government websites"); *Daugherty v. Experian Info. Solutions, Inc*., 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) ("The opinions of State Attorney Generals are judicially noticeable."); *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1091 n.4 (C.D. Cal. 2013) (same);  *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("courts routinely take judicial notice of letters published by the government"); *County of Santa Clara v. Astra USA, Inc*., 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a government website).  A true and correct copy of this document is attached hereto as **Exhibit 2.**

3.    <u>Plaintiff's Second Notice of Violation, which Plaintiff served on March 15, 2024</u>. This document is referenced in Plaintiff's Complaint, and an incomplete version is attached as Exhibit 2 to the Complaint.  *See* Complaint, ¶ 75, Ex. 2.  The Court should be able to consider the complete version of the document.  Further, the complete version is a matter of public record since it is publicly available on the California Attorney General's website: https://oag.ca.gov/system/files/prop65/notices/2024-01113.pdf (last accessed July 17, 2024). Judicial notice is appropriate.  *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018) (under the doctrine of incorporation by reference, a court can consider the complete version of a document referenced in a plaintiff's complaint); *Busey v. P.W. Supermarkets, Inc*., 368 F. Supp. 2d 1045, 1049 (N.D. Cal. 2005) ("[T]he court may consider a document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned."); *King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (a court may take "judicial notice of the

1  undisputed and publicly available information displayed on government websites").  A true and

2  correct copy of this document is attached hereto as **Exhibit 3.**

3      4.  The California Attorney General's March 27, 2024 Letter in response to Plaintiff's

4  second Notice of Violation.  The California Attorney General's March 27, 2024 letter is a matter of

5  public  record  and  is  publicly  available  on  the  California  Attorney  General's  website:

6  https://oag.ca.gov/system/files/media/letter-2024-01113.pdf (last accessed July 17, 2024).  Judicial

7  notice is appropriate.  *See King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (a court

8  may take "judicial notice of the undisputed and publicly available information displayed on

9  government websites"); *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193

10 (N.D. Cal. 2012) ("The opinions of State Attorney Generals are judicially noticeable."); *Nichols v.*

11 *Brown*, 945 F. Supp. 2d 1079, 1091 n.4 (C.D. Cal. 2013) (same);  *Smith v. Los Angeles Unified Sch.*

12 *Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("courts routinely take judicial notice of letters

13 published by the government"); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022,

14 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a government website).  A

15 true and correct copy of this document is attached hereto as **Exhibit 4.**

16     5.  Plaintiff's first Complaint filed on March 18, 2024 in California Superior Court,

17 Alameda County, Case No. 24CV068179.  *See United States ex rel. Robinson Rancheria Citizens*

18 *Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (The court "may take notice of

19 proceedings in other courts, both within and without the federal judicial system, if those proceedings

20 have a direct relation to matters at issue") (citation omitted); *Glendale-Pasadena Airport Auth. v.*

21 *Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court may take judicial notice of

22 documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012)

23 (courts "may take judicial notice of ... undisputed matters of public record, including documents on

24 file in federal or state courts").  A true and correct copy of this document is attached hereto as

25 **Exhibit 5.**

26     6.  Plaintiff's Request for Dismissal of its first Complaint against Etsy filed in

27 California Superior Court, Alameda County, Case No. 24CV068179 on April 26, 2024.  *See United*

28 *States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

1992) (The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court may take judicial notice of documents filed in state courts);  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record, including documents on file in federal or state courts").  A true and correct copy of this document is attached hereto as **Exhibit 6.**

7.     The "Final Statement of Reasons" published by California's Office of Environmental Health Hazard Assessment ("OEHHA") (May 14, 1997).  *See Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (a court may take judicial notice of "records and reports of administrative bodies") (citation omitted);  *Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012) (taking judicial notice of guidance document from government website);  *Mack v. S. Bay Beer Distribs., Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of records and reports of state administrative bodies), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991);  *Interstate Nat. Gas. Co. v. S. Cal. Gas. Co*., 209 F.2d 380, 385 (9th Cir. 1953) (judicially noticing government agency records and reports).  A true and correct copy of this document is attached hereto as **Exhibit 7.**

8.     The California Attorney General's Opinion Letter regarding the Scope of a Pre-Suit Notice issued on October 20, 2008.  It is publicly available on the California Attorney General's website  at   https://oag.ca.gov/system/files/media/CEH%20jewelry%20notice%20letter.pdf   (last accessed July 17, 2024).  *See King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (a court may take "judicial notice of the undisputed and publicly available information displayed on government websites"); *Daugherty v. Experian Info. Solutions, Inc*., 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) ("The opinions of State Attorney Generals are judicially noticeable."); *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1091 n.4 (C.D. Cal. 2013) (same);  *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("courts routinely take judicial notice of letters published by the government"); *County of Santa Clara v. Astra USA, Inc*., 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a government website).  A

1   true and correct copy document is attached hereto as **Exhibit 8.**

2         9.    The Superior Court's Order in the case entitled *Consumer Advoc. Grp., Inc. v. Food*

3   *Land*, Case No. 19STCV18754 (Los Angeles Super. Ct., February 8, 2024). *See United States ex*

4   *rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (The

5   court "may take notice of proceedings in other courts, both within and without the federal judicial

6   system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-*

7   *Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court

8   may take judicial notice of documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126,

9   1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record,

10  including documents on file in federal or state courts"). A true and correct copy document is

11  attached hereto as **Exhibit 9.**

12        10.    The Superior Court's Order in the case entitled *Consumer Advoc. Grp., Inc. v.*

13  *Kreassive, Inc*., Case No. 22CV024552 (Alameda Super. Ct., March 19, 2024). *See United States*

14  *ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (The

15  court "may take notice of proceedings in other courts, both within and without the federal judicial

16  system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-*

17  *Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court

18  may take judicial notice of documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126,

19  1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record,

20  including documents on file in federal or state courts"). A true and correct copy document is

21  attached hereto as **Exhibit 10.**

22        11.    The Superior Court's Order in the case entitled *Consumer Advoc. Grp., Inc. v. The*

23  *Kroeger*, Case No. 19STCV25041 (Los Angeles Super. Ct., March 1, 2024). *See United States ex*

24  *rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (The

25  court "may take notice of proceedings in other courts, both within and without the federal judicial

26  system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-*

27  *Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court

28  may take judicial notice of documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126,

1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record, including documents on file in federal or state courts").  A true and correct copy document is attached hereto as **Exhibit 11.**

12.     The Superior Court's Order in the case entitled *Consumer Advoc. Grp., Inc. v. Walmart, Inc*., Case No. 22STCV21493 (Los Angeles Super. Ct., January 5, 2024).  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court may take judicial notice of documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record, including documents on file in federal or state courts").  A true and correct copy document is attached hereto as **Exhibit 12.**

13.     The Superior Court's Order in the case entitled *Embry v. B&G FoodN. Am., Inc.*, Case No. RG20057491 (Alameda Super. Ct. Aug. 14, 2023).  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted); *Glendale-Pasadena Airport Auth. v. Ciry of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (a district court may take judicial notice of documents filed in state courts); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (courts "may take judicial notice of ... undisputed matters of public record, including documents on file in federal or state courts").  A true and correct copy document is attached hereto as **Exhibit 13.**

1    DATED: July 18, 2024                Respectfully submitted,

2

3                                        McGUIREWOODS LLP

4

5                                  By:   /s/ Nicholas J. Hoffman

6                                        Samuel L. Tarry, Jr. (*PHV Forthcoming*)
                                         Nicholas J. Hoffman
7                                        Aria Hangval
                                         Attorneys for Defendant
8                                        ETSY, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1



RACHEL S. DOUGHTY
2748 Adeline Street, Suite A
Berkeley, CA 94703
Phone: (510) 900-9502, ext. 706
Email: rdoughty@greenfirelaw.com
www.greenfirelaw.com

January 18, 2024

*By Electronic Mail and U.S. Mail*

Etsy, Inc.
ATTN: Josh Silverman, CEO
jsilverman@etsy.com

ATTN: Colin Stretch, Chief Legal Officer
cstretch@etsy.com
117 Adams St
Brooklyn, NY 11202

ATTN: Etsy Regulatory Request for Regulators or Government Officials
regulatory-intake@etsy.com

RE:     <u>**60-Day Notice of Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) & Demand for Supply Chain Identification**</u>

Dear Mr. Silverman and Mr. Stretch:

This firm represents As You Sow ("Noticing Party") in connection with this notice of violations of California's Safe Drinking Water and Toxic Enforcement Act of 1986, which is codified at California Health & Safety Code section 25249.5, et seq. ("Proposition 65"). As You Sow is a non-profit organization working to create a safe, just, and sustainable world in which protecting the environment and human rights is central to corporate decision making.

This letter constitutes notice to the addressee that they have violated and continue to violate provisions of Proposition 65 and its implementing regulations. Specifically, the Alleged Violator—Etsy, Inc. ("Violator")—to which this letter is addressed has violated and continues to violate the warning requirement at section 25249.6 of the California Health & Safety Code, which provides, "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual[.]"

Pursuant to California Health & Safety Code section 25249.7, subdivision (d), the Noticing Party, as defined in that section, intends to bring an enforcement action against the Violator sixty (60) days after effective service of this notice unless the public enforcement agencies listed in the attached Certificate of Service have commenced and are diligently prosecuting an action to rectify these violations. A summary of Proposition 65 and its implementing regulations, prepared by the Office of Environmental Health Hazard Assessment, the lead agency designated under

Proposition 65, is enclosed with the copy of this notice served to the Violator. The specific details of the violations that are the subject of this Notice are provided below.

### Description of Violations

The Violator has contravened the warning requirement at section 25249.6 of the California Health and Safety Code, which provides, "[no] person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving a clear and reasonable warning to such individual." Violators have manufactured, produced, packaged, imported, supplied, distributed, sold or otherwise provided the consumer products containing mercury listed below directly to consumers through the Violator's website without providing the clear and reasonable warnings required by Proposition 65 and its implementing regulations, dating at least as far back as January 2, 2023, and continuing each day through the present.

- Time Period of Exposure:  The violations have been occurring since at least January 2, 2023, and continuing to this day.

- Provision of Proposition 65 Implicated:  This Notice of Violation covers the "warning provision" of Proposition 65, which is found at California Health and Safety Code, section 25249.6, and its implementing regulations.

- Chemical Involved:  The listed chemical involved in this notice of violation is mercury and mercury compounds. This chemical is recognized by the State of California as a developmental toxin. Exposure to mercury or mercury compounds occurs through ingestion, inhalation, and dermal absorption when skin-lightening creams, sold on Etsy.com's website, are applied.

- Types of Products: The specific types of products causing the violations are skin-lightening, whitening, and "smoothing" creams containing 1 ppm or more mercury or mercury compounds, including but not limited to those products specifically listed below in **Table 1**.

### Table 1

| Product | Etsy Storefront[1] |
|---|---|
| Aneeza Gold Beauty Face Cream | NaturalSkincarStudio |
| Aneeza Gold Beauty Face Cream | OkinArewa |
| Aneeza Gold Beauty Face Cream | PetsUniqueBeautyCent |
| BeBe Special Cream | Apsarabazaars |
| Carotone | Hayveen |
| Carotone | Mama23store |
| Carotone | perfectobeautycouk |
| Carotone | QueeNikWealth |
| CCM | Apsarabazaars |
| CCM Perfect 365 White Cream | Apsarabazaars |

---

[1] The Notice covers all skin-lightening, whitening, and "smoothing" creams containing mercury or mercury compounds, including those products listed in Table 1, whether or not sold at the storefront listed. The Storefront is provided as a courtesy so that Etsy.com can more efficiently locate and remove dangerous products from its website.

Proposition 65 Notice
January 18, 2024

| Chandni Whitening Cream | Diamonds Group |
|---|---|
| Crema la Milagrosa | Bulkmayoreo99 |
| Crema la Milagrosa | NATURALbyLLC |
| Deluxe Nadinola Bleaching Cream | TheDetoxClub |
| Due Beauty Cream | MystiqueArtShop |
| Due Beauty Cream | WholesaleByHuma |
| Faiza | BeautyShopIndia |
| Faiza | Nova Jewels Art |
| Faiza | Creations4all786 |
| Faiza | Cosmeticss4All |
| Faiza | DiamondsGroup |
| Faiza | iMinoosh |
| Faiza | KUCHIDRESS |
| Faiza | MystiqueArtShop |
| Faiza | WeddingbyASRBoutique |
| Faiza | WholesaleByHuma |
| Face Fresh Beauty Cream | IMinoosh |
| Face Fresh Beauty Cream | BeautyShopIndia |
| Goree Day Avocado and Aloevera | IMinoosh |
| Goree Day and Night Whitening Cream | Nova Jewels Art |
| Goree Day and Night Whitening Cream | OverseasTrend |
| Goree Day and Night Whitening Cream | ObserverFinds |
| Goree Day and Night Whitening Cream | PariAfghanShop |
| Goree Day and Night Whitening Cream | PakistanShop2023 |
| La Tia Mana Crema Limpiadora y Curativa | La Tia Mana |
| Miss Key Crema Blanqueadora | OceansBeautyWellness |
| Nunn Care | BotanicaMexicana |
| Nunn Care | bulkmayoreo99 |
| Nunn Care | GiftofHealthByPaul |
| Nunn Care | Menwomengiftshop |
| Nunn Care | Naturallylifee |
| Nunn Care | NATURALbyLLC |
| Nunn Care | TruVaShopTreasures |
| Nunn Care | Wellnessrootsstore |

| Nunn Care | YadyTreasures |
|---|---|
| Snow White Armpit Whitening Underarm Cream | ShopSheida |

Description of Exposures:  This Notice addresses consumer product exposures to mercury and mercury compounds resulting from the acquisition, purchase, storage, consumption, or reasonably foreseeable use of cosmetics used to lighten, whiten, or "smooth" skin. Mercury is an additive or active ingredient in such cosmetics. Use of the items listed above in Table 1, as well as other items containing mercury as an active ingredient, results in human exposures to mercury.[2] Mercury exposure occurs in three main routes: ingestion, inhalation, or dermal absorption. Ingestion may occur post-application due to insufficient hand washing prior to eating or preparing food or touching of the mouth. Inhalation may occur due to the significant amount of mercury vapor produced by use of these creams, which can affect all household members. Dermal absorption may occur as these products are designed and specifically marketed for direct contact with skin. These exposures occur in residences throughout California where the products are used. No clear and reasonable warning is provided with these products regarding the developmental toxicity of using these products or specifically of mercury.

Pursuant to California Code of Regulations, title 11, section 3100, a Certificate of Merit is attached.[3]

### Lack of Non-English Warning

A number of the products listed in Table 1 include non-English labeling. Those products additionally violate California Code of Regulations, title 27, section 25602, subdivision (b), for failing to carry warnings in the non-English language on the label.

### Resolution of Claims Being Noticed

Based on the allegations set forth in this Notice, the Noticing Party intends to file a citizen enforcement lawsuit against the Violator unless it agrees to remedy the violations set forth above. If the Violator is interested in resolving this dispute without resort to expensive and time-consuming litigation, please contact the Noticing Party through its counsel identified below.

### Preservation of Relevant Evidence

This Notice also serves as a demand that the Violator preserve and maintain all relevant evidence, including all electronic documents and data, pending resolution of this matter. Such relevant evidence includes but is not limited to all documents relating to mercury released from or during the storage, shipment, and use of skin lightening creams; purchases and sales information for such products; communications with any person relating to actual or potential exposures to mercury from the use of such products; representative exemplars of each unit of any of the brands listed above in Table 1 sold since January 2022; the content of internet displays for the products causing the violations; and all communications regarding the alleged violations.

---

[2] These products are also illegal adulterated cosmetics sold in violation of FDA regulations. (See 21 C.F.R. § 700.13(d)), and California's Sherman Act.

[3] A second copy of the entire notice and Certificate of Merit is served on the Attorney General, clearly marked "Attorney General Copy: Contains Official Information Pursuant to Evidence Code Section 1040" with all supporting documentation required by 11 Cal. Code Regs., § 3102 attached thereto.

### Parties

This Notice is provided on behalf of the following organization:

  As You Sow
  Responsible Individual: Danielle Fugere
  Main Post Office
  As You Sow
  PO Box 751
  Berkeley, CA 94701
  (510) 735-8158


The Noticing Parties can be contacted through counsel as identified below:

Rachel Doughty
Greenfire Law, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
rdoughty@greenfirelaw.com

### Demand for Supply Chain Contacts

Pursuant to California Code of Regulations title 27, article 6, section 25600.2, subdivision (g) you must <u>promptly</u> provide As You Sow (through its counsel) with the names and contact information for each of the manufacturers, producers, packagers, importers, suppliers, and distributors of each of the products listed above in Table 1. **We expect to receive this information within a week.**


 Sincerely,

*[signature: Rachel S. Doughty]*

Rachel S. Doughty
Greenfire Law, PC

Attachments:

       Certificate of Merit (All Recipients)

       Certificate of Merit Support (Attorney General only)

       Certificate of Service (All Recipients)

       *The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary* ("Summary") (Noticed Party Only)

# Certificate of Merit

California Health & Safety Code Section 25249.7, Subdivision (d)

I, Rachel Doughty, hereby declare:

1. This Certificate of Merit accompanies the attached sixty-day notice(s) in which it is alleged the parties identified in the notices have violated Health and Safety Code section 25249.6 by failing to provide clear and reasonable warnings.

2. I am the attorney for the noticing party.

3. I have consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action.

4. Based on the information obtained through those consultations, and on all other information in my possession, I believe there is a reasonable and meritorious case for the private action. I understand that "reasonable and meritorious case for the private action" means that the information provides a credible basis that all elements of the plaintiff's case can be established and the information did not prove that the alleged violator will be able to establish any of the affirmative defenses set forth in the statute.

5. The copy of this Certificate of Merit served on the Attorney General attaches to it factual information sufficient to establish the basis for this certificate, including the information identified in Health and Safety Code section 25249.7(h)(2), i.e., (1) the identity of the persons consulted with and relied on by the certifier, and (2) the facts, studies, or other data reviewed by those persons.


Dated: January 18, 2024          Greenfire Law, PC

                         By:     _Rachel S. Doughty_

                                 Rachel Doughty

6

# <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, am over the age of 18 years and not a party to this case. I am employed in the County of Alameda. My business address is 2748 Adeline Street, Suite A, Berkeley, CA 94703.

On January 18, 2024, I caused to be served the following documents:

- 60-Day Notice of Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) & Demand for Supply Chain Identification [to the entire service list]
- Certificate of Merit [to the entire service list]
- The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary ("Summary") [to Etsy.com ]
- Support for Certificate of Merit [to the Office of the California Attorney General only]

I served the foregoing documents on those located on the attached service list as designated below.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 18, 2024 in Berkeley, California.

*Nuria de la Fuente*
Nuria de la Fuente

1

# ELECTRONIC UPLOAD SERVICE LIST

**SERVED BY: 60 - DAY NOTICE PORTAL**

Attorney General Rob Bonta
https://oag.ca.gov/prop65/add-60-day-notice

**SERVED BY: U.S. MAIL**

District Attorney Robert Priscaro
Alpine County
P.O. Box 248
Markleeville, California 96120

District Attorney David M.  Brandy
Trinity County
P.O. Box 310
Weaverville , California 96093

District Attorney Todd D.  Riebe
Amador County
708 Court Street
Jackson, California 95642

District Attorney Sally O.  Moreno
Madera County
300 S. St.
Suite 300
Madera, California 93637

District Attorney Jason Anderson
San Bernardino County
300 West 3rd St
Floor 6
San Bernardino, California 0

District Attorney Cynthia Zimmer
Kern County
1215 Truxtun Ave
4th floor
Bakersfield, California 93301

District Attorney Michael Ramsey
Butte County
25 County Center Dr.
Administration Building
Oroville, California 95965

District Attorney Cassandra
Jenecke
Tuolumne County
423 North Washington St
Sonora, California 95370

District Attorney David Eyster
Mendocino County
P.O. Box 1000
Ukiah, California 95482

District Attorney Kimberly Lewis
Merced County
550 West Main St
Merced, California 95340

District Attorney Susan J. Krones
Lake County
225 North Forbes St
Lakeport, California 95453

City Attorney Nora V. Frimann
San Jose
200 East Santa Clara Street
16th Floor
San Jose, California 95113

District Attorney Stacey Eads
Humboldt County
825 5th st
Fourth Floor
Eureka, California 95501

District Attorney Cynthia Campbell
Modoc County
204 S Court Street
Suite 202
Alturas, California 96101

District Attorney Krishna A.
Abrams
Solano County
675 Texaas St
Suite 4500
Fairfield, California 94533

District Attorney David Anderson
Mono County
278 Main Street
P.O. Box 617
Bridgeport, California 93517

District Attorney Sandra Groven
Sierra County
100 Courthouse Square
Room B1, P.O. Box 457
Downieville, California 95936

 District Attorney Walter Wall
Mariposa County
P.O. Box 730
Mariposa, California 95338

City Attorney Susan Alcala Wood
Sacramento City
915 I St
4th Floor
Sacramento, California 95814

District Attorney Brenden Farrell
Colusa County
310 6th St
Colusa, California 95932

District Attorney Katherine Micks
Del Norte County
450 H St
Rm 171
Crescent City, California 95531

District Attorney Dwayne Stewart
Glenn County
P.O. Box 430
Willows, California 95988

District Attorney George  Marquez
Imperial County
940 West Main St
Suite 102
El Centro, California 92243

2

District Attorney Sarah Hacker
Kings County
1400 West Lacey Blvd.
Hanford, California 93230

District Attorney George  Gascon
Los Angeles County
211 W. Temple St
Suite 1200
Los Angeles, California 90012

District Attorney Todd Spitzer
Orange County
300 N. Flower St
Santa Ana, California 92703

District Attorney Joel Buckingham
San Benito County
419 4th St
Hollister, California 95023

District Attorney Stephen M.
Wagstaffe
San Mateo County
400 County Center
Third Floor
Redwood City, California 9406

District Attorney Stephanie A.
Bridgett
Shasta County
1355 West St
Redding, California 96001

District Attorney James Kirk
Andrus
Sisikiyou County
P.O. Box 986
Yreka, California 96097

District Attorney Jeff Laugero
Sanislaus County
832 12th St
Suite 300
Modesto, California 95353

District Attorney Jennifer Dupre
Sutter County
463 2nd St
Suite 102
Yuba City, California 95991

District Attorney Matthew  Rogers
Tehama County
P.O. Box 519
Red Bluff, California 96080

District Attorney Clint Curry
Yuba County
215 Fifth St
Suite 152
Marysville, California 95901

**SERVED BY: EMAIL & U.S. MAIL**

CEO Josh Silverman
Etsy, Inc
117 Adams St.
Brooklyn, New York 11202
jsilverman@etsy.com

Chief Legal Officer Colin Stretch
Etsy, Inc
117 Adams St.
Brooklyn, New York 11202
cstretch@etsy.com

Regulatory Intake for Etsy, Inc
Regulatory  Intake
Etsy, Inc
117 Adams St.
Brooklyn, New York 11202
regulatory-intake@etsy.com

CEO Josh Silverman
Etsy, Inc
117 Adams St.
Brooklyn, New York 11202
jsilverman@etsy.com

Chief Legal Officer Colin Stretch
Etsy, Inc
117 Adams St.
Brooklyn, New York 11202

cstretch@etsy.com
District Attorney Jeff W.  Reisig
Yolo County
301 Second Street
Woodland, California 95695
cfepd@yolocounty.org

District Attorney Paul E.  Zellerbach
Riverside County
3072 Orange St
Riverside, California 92501
prop65@rivcoda.org

District Attorney Thomas L.  Hardy
Inyo County
168 North Edwards St
Independence, California 93526
inyoda@inyocounty.us

District Attorney Alexandra Grayner
San Francisco
350 Rhode Island St.
San Francisco, California 94103
alexandra.grayner@sfgov.org

District Attorney Gregory D.  Totten
Ventura County
800 Victoria Ave
Suite 314

Ventura, California 93009
daspecialops@ventura.org
Program Coordinator Devin Chandler
Lassen County
2950 Riverside Dr
Susanville, California 96130
dchandler@co.lassen.ca.us

Deputy City Attorney Henry Lifton
San Francisco
1390 Market St
7th Floor
San Francisco, California 94102
Prop65@sfcityatty.org

District Attorney Anne Marie Schubert
Sacramento County
901 G Street
Sacramento, California 95814
Prop65@sacda.org

District Attorney David  Hollister
Plumas County
520 Main St
Room 404
Quincy, California 95971
davidhollister@countyofplumas.com

Deputy District Attorney Stacey Grassini
Contra Costa County

900 Ward St
Martinez, California 94553
sgrassini@contracostada.org
District Attorney Morgan Briggs Gire
Placer County
10810 Justice Center Drive
Roseville, California 95678
prop65@placer.ca.gov

District Attorney Lisa Smittcamp
Fresno County
2100 Tulare St
Fresno, California 93721
damail@fresnocountyca.gov

District Attorney Jeffrey S. Rosell
Santa Cruz County
701 Ocean St
Room 200
Santa Cruz, California 95060
Prop65DA@santacruzcounty.us

District Attorney Pamela Y. Price
Alameda County
7776 Oakport St
Suite 650
Oakland, California 94621
CEPDProp65@acgov.org

District Attorney Summer Stephan
San Diego County
330 West Broadway St
San Diego, California 92101
SanDiegoDAProp65@sdcda.org

District Attorney Allison  Haley
Napa County
1127 First St
Suite C
Napa, California 94559
DA@countyofnapa.org

District Attorney Phillip J. Cline
Tulare County
221 South Mooney Blvd
Visalia, California 93291
Prop65@co.tulare.ca.us

District Attorney Jeannine M.  Pacioni
Monterey County
1200 Aguajito Rd
Monterey, California 93940
Prop65DA@co.monterey.ca.us

District Attorney Bud  Porter
Santa Clara County
70 West Hedding St
San Jose, California 95110
EPU@da.sccgov.org

Deputy District Attorney Eric J.  Dobroth
San Luis Obispo County
County Government Center Annex
4th floor
San Luis Obispo, California 93408
edobroth@co.slo.ca.us

District Attorney Tori Verber Salazar
San Joaquin County
222 E. Weber Ave
Room 202
Stockton, California 95202
DAConsumer.Environmental@sjcda.org

District Attorney Jill Ravitch
Sonoma County
600 Administration Drive
Santa Rosa, California 95403
Jeannie.Barnes@sonoma-county.org

District Attorney Christopher Dalbey
Santa Barbara County
1112 Santa Barbara St
Santa Barbara, California 93101
DAProp65@co.santa-barbara.ca.us

District Attorney Jesse Wilson
Nevada County
201 Commercial St
Nevada City, California 95959
DA.Prop65@co.nevada.ca.us

City Attorney Mark Ankcorn
San Diego
1200 Third Ave
Suite 1620
San Diego, California 92101
CityAttyProp64@sandiego.gov

District Attorney Barbara Yook
Calaveras County
891 Mountain Ranch Rd.
San Andreas, California 95249
Prop64Env@co.calaveras.ca.us

Assistant District Attorney James Clinchard
El Dorado County
778 Pacific St
Placerville , California 95667
EDCDAPROP65@edcda.us

District Attorney Lori E.  Frugoli
Marin County
3502 Civic Center Dr
Room 145
San Rafael, California 94903
consumer@marincounty.gov

4

# <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, am over the age of 18 years and not a party to this case. I am employed in the County of Alameda. My business address is 2748 Adeline Street, Suite A, Berkeley, CA 94703.

On January 18, 2024, I caused to be served the following documents:

- 60-Day Notice of Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) & Demand for Supply Chain Identification
- Certificate of Merit

I served the foregoing documents on those located on the attached service list as designated below.

(X)      By First Class Mail:            Deposited the above documents in a sealed envelope with the United States Postal Service, with the postage fully paid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 18, 2024 in Berkeley, California.

*Nuria de la Fuente*
Nuria de la Fuente

# <u>SERVICE LIST</u>

Hydee Feldstein Soto

Los Angeles City Attorney

200 N. Main Street, Suite 800

Los Angeles, CA 90012

1

Exhibit 2

**ROB BONTA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA  94612-0550

Public:  (510) 879-1300
Telephone:  (510) 879-1300
Facsimile:  (510) 622-2270
E-Mail:  Susan.Fiering@doj.ca.gov

March 13, 2024

By U.S. mail and electronic delivery

Rachel S. Doughty, Esq.
2748 Adeline Street, Suite A
Berkeley, CA 94703
rdoughty@greenfirelaw.com

RE:      Proposition 65 Notice No. 2024-00232

Dear Ms. Doughty:

     We write to you pursuant to the Attorney General's authority under Health and Safety Code section 25249.7, subdivision (e)(1)(A), which is part of the Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Proposition 65."  We have reviewed the above 60-day notice of violation and accompanying certificate of merit that As You Sow LLC ("AYS") sent to Etsy, Inc. on January 18, 2024.  The notice alleges that the company sells products that expose persons to mercury and mercury compounds without providing a clear and reasonable warning.

     Based on our review of the notice, we have concluded that you have failed to provide sufficient information to indicate that there is a credible basis to conclude that there is merit to each element of the action on which plaintiff will have the burden of proof and that the information relied on does not prove that any affirmative defense has merit.  The 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations.  We ask that you withdraw the notice immediately.  Our position is discussed in more detail below.

     Proposition 65 requires companies with ten or more employees to provide clear and reasonable warnings to persons prior to knowingly and intentionally exposing them to chemicals known to cause cancer or reproductive toxicity.  (Health & Saf. Code, § 25249.6.)  Persons acting in the public interest can bring a private action to enforce Proposition 65 at least sixty days after sending a 60-day notice to the alleged violators and public enforcers, unless the Attorney General or other public enforcer is diligently prosecuting an action against the violation.  (*Id.*, § 25249.7, subd. (d).)  Before sending a 60-day notice alleging a failure to warn, the private enforcer must consult with an expert who has reviewed facts, studies, or other data regarding the alleged exposure to the listed chemical.  Based on the consultation, the person sending the notice or his or her attorney must execute a certificate of merit stating his or her

Rachel Doughty, Esq.
March 13, 2024
Page 2

belief that, based on the consultation, "there is a reasonable and meritorious case for the private action." (*Id.*, subd. (d)(1).)  The enforcer must attach to the Attorney General's copy of the certificate of merit factual information sufficient to establish the basis of the certificate of merit. The Attorney General must maintain this information in confidence. (*Id.*, subds. (d)(1), (i).)  The certificate of merit must document both exposure to the chemical and that there "is merit to each element of the action on which the plaintiff will have the burden of proof."  (Cal. Code Regs., tit. 11, § 3101, subd. (a).)  Further, the certifier must certify that "the information relied upon does not prove that any affirmative defense has merit."  (*Ibid.*)  If the Attorney General believes there is no merit to the action after reviewing the certificate of merit and meeting and conferring with the private enforcer, the Attorney General must serve a letter on the noticing party and the alleged violator stating this position and make the letter available to the public.  (Health & Saf. Code, § 25249.7, subd. (e)(1).)

The referenced 60-day notice alleges that the company exposes persons to mercury in certain products without providing the required warning.  We are not able to disclose the contents of the supporting information for the certificate of merit.  However, based on our review, we have concluded that you have failed to provide sufficient information to indicate that there is a credible basis to conclude that there is merit to each element of the action on which plaintiff will have the burden of proof and that the information relied upon does not prove that any affirmative defense has merit.  Thus, the 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations, and we ask that you withdraw the notice immediately.

Sincerely,

/S/ *Susan S. Fiering*

SUSAN S. FIERING
Deputy Attorney General

For     ROB BONTA
Attorney General

cc:     Etsy, Inc. ATTN: Josh Silverman, CEO
        jsilverman@etsy.com

        Etsy, Inc., ATTN: Colin Stretch, Chief Legal Officer
        cstretch@etsy.com
        117 Adams St Brooklyn, NY 11202

        Etsy, Inc., ATTN: Etsy Regulatory Request for Regulators or Government Officials
        regulatory-intake@etsy.com

SF1994IN0809

Exhibit 3



RACHEL S. DOUGHTY
2748 Adeline Street, Suite A
Berkeley, CA 94703
Phone: (510) 900-9502, ext. 706
Email: rdoughty@greenfirelaw.com
www.greenfirelaw.com

March 15, 2024

<u>*By Electronic Mail and U.S. Mail*</u>

Etsy, Inc.
117 Adams St
Brooklyn, NY 11202
ATTN: Josh Silverman, CEO
jsilverman@etsy.com
ATTN: Colin Stretch, Chief Legal Officer
cstretch@etsy.com
ATTN: Etsy Regulatory Request for Regulators or Government Officials
regulatory-intake@etsy.com

Maria Villasenor
dba Capirotada Store
3721 S. 6000 W.
W. Valley City, UT 84128

Sherley Sajous
Registered Agent for
Oceans Beauty & Wellness LLC
573 NW 101 St
Miami, FL 33150
sajous85@gmail.com

> **RE:** **60-Day Notice of Violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) & Demand for Supply Chain Identification**

Dear Mr. Silverman and Mr. Stretch, et.al:

This firm represents As You Sow ("Noticing Party") in connection with this notice of violations of California's Safe Drinking Water and Toxic Enforcement Act of 1986, which is codified at California Health & Safety Code section 25249.5, et seq. ("Proposition 65"). As You Sow is a non-profit organization working to create a safe, just, and sustainable world in which protecting the environment and human rights is central to corporate decision making.

Page 2 of 6
Proposition 65 Notice
March 15, 2024

This letter constitutes notice to the addressees that they have violated and continue to violate provisions of Proposition 65 and its implementing regulations. Specifically, the alleged Violators to which this letter is addressed have violated and continue to violate the warning requirement at section 25249.6 of the California Health & Safety Code, which provides, "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual[.]"

As to Etsy, Inc., this letter serves as a supplemental 60-Day Notice and does not replace the January 18, 2024 60-Day Notice sent to Etsy, Inc.

Pursuant to California Health & Safety Code section 25249.7, subdivision (d), the Noticing Party, as defined in that section, intends to bring an enforcement action against the Violators sixty (60) days after effective service of this notice unless the public enforcement agencies listed in the attached Certificate of Service have commenced and are diligently prosecuting an action to rectify these violations. A summary of Proposition 65 and its implementing regulations, prepared by the Office of Environmental Health Hazard Assessment, the lead agency designated under Proposition 65, is enclosed with the copy of this notice served to the Violators. The specific details of the violations that are the subject of this Notice are provided below.

## Description of Violations

The Violators have contravened the warning requirement at section 25249.6 of the California Health and Safety Code, which provides, "[no] person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving a clear and reasonable warning to such individual." Violators have manufactured, produced, packaged, imported, supplied, distributed, sold or otherwise provided the consumer products containing mercury listed below directly to consumers through Etsy.com's website without providing the clear and reasonable warnings required by Proposition 65 and its implementing regulations, dating at least as far back as January 2, 2023, and continuing each day through the present.

- Time Period of Exposure:  The violations have been occurring since at least January 2, 2023 and are continuing to this day.

- Provision of Proposition 65 Implicated:  This Notice of Violation covers the "warning provision" of Proposition 65, which is found at California Health and Safety Code, section 25249.6, and its implementing regulations.

- Chemical Involved:  The listed chemical involved in this notice of violation is mercury and mercury compounds. This chemical is recognized by the State of California as a developmental toxin. Exposure to mercury or mercury compounds occurs through ingestion, inhalation, and dermal absorption when skin-lightening creams, sold on Etsy.com's website, are applied.

- Types of Products: The specific types of products causing the violations are skin-lightening, whitening, and "smoothing" creams containing 1 ppm or more mercury or mercury compounds, including but not limited to those products specifically listed below in **Table 1**.

**Table 1**

| Product | Thumbnail of Product | Etsy Storefront[1] | Parties Noticed |
|---|---|---|---|
| Deluxe Nadinola Bleaching Cream |  | PureJamaicanStore | Etsy, Inc. |
| Jing Zhuang Jinyiqi ("Yiqi") |  | IGOTBEAUTYSTORE | Etsy, Inc. |
| La Tia Mana Crema |  | NaturalByLLC | Etsy, Inc. |
| La Tia Mana Crema |  | CapirotadaStore | Etsy, Inc.<br><br>Maria Villasenor dba Capirotada Store |
| La Tia Mana Crema |  | TruVaShopTreasures | Etsy, Inc. |
| Magia Blanca de Michelle Marie Crema Blanqueadora |  | OceansBeautyWellness | Etsy, Inc.<br><br>Oceans Beauty & Wellness LLC |
| Miss Key Crema Blanqueadora |  | OceansBeautyWellness | Etsy, Inc.<br><br>Oceans Beauty & Wellness LLC |
| Parley Beauty Cream |  | GoldieCosmetics | Etsy, Inc. |
| Parley Beauty Cream |  | DYSHOPPINGCENTER | Etsy, Inc. |

---

[1] This Supplemental Notice covers all skin-lightening, whitening, and "smoothing" creams containing mercury or mercury compounds, including those products listed in Table 1, whether or not sold presently at the storefront listed.

- <u>Description of Exposures:</u>  This Notice addresses consumer product exposures to mercury and mercury compounds resulting from the acquisition, purchase, storage, consumption, or reasonably foreseeable use of cosmetics used to lighten, whiten, or "smooth" skin. Mercury is an additive or active ingredient in such cosmetics. Use of the items listed above in Table 1, as well as other items containing mercury as an active ingredient, results in human exposures to mercury.[2] Mercury exposure occurs in three main routes: ingestion, inhalation, or dermal absorption. Ingestion may occur post-application due to insufficient hand washing prior to eating or preparing food or touching of the mouth. Inhalation may occur due to the significant amount of mercury vapor produced by use of these creams, which can affect all household members. Dermal absorption may occur as these products are designed and specifically marketed for direct contact with skin. These exposures occur in residences throughout California where the products are used. No clear and reasonable warning is provided with these products regarding the developmental toxicity of using these products or specifically of mercury.

Pursuant to California Code of Regulations, title 11, section 3100, a Certificate of Merit is attached.[3]

## Resolution of Claims Being Noticed

Based on the allegations set forth in this Notice, the Noticing Party intends to file a citizen enforcement lawsuit against the Violator unless it agrees to remedy the violations set forth above. If the Violator is interested in resolving this dispute without resort to expensive and time-consuming litigation, please contact the Noticing Party through its counsel identified below.

## Preservation of Relevant Evidence

This Notice also serves as a demand that the Violator preserve and maintain all relevant evidence, including all electronic documents and data, pending resolution of this matter. Such relevant evidence includes but is not limited to all documents relating to mercury released from or during the storage, shipment, and use of skin lightening creams; purchases and sales information for such products; communications with any person relating to actual or potential exposures to mercury from the use of such products; representative exemplars of each unit of any of the brands listed above in Table 1 sold since January 2022; the content of internet displays for the products causing the violations; and all communications regarding the alleged violations.

## Parties

This Notice is provided on behalf of the following person and organization:

As You Sow
2201 Broadway
Oakland, CA 94612
(510) 735-8158

---

[2] These products are also illegal adulterated cosmetics sold in violation of FDA regulations (see 21 C.F.R. § 700.13(d)), and California's Sherman Act.

[3] A second copy of the entire notice and Certificate of Merit is served on the Attorney General, clearly marked "Attorney General Copy: Contains Official Information Pursuant to Evidence Code Section 1040" with all supporting documentation required by 11 Cal. Code Regs., § 3102 attached thereto.

Page 5 of 6
Proposition 65 Notice
March 15, 2024

The Noticing Parties can be contacted through counsel as identified below:

Rachel Doughty
Greenfire Law, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
rdoughty@greenfirelaw.com

## Demand for Supply Chain Contacts

Pursuant to California Code of Regulations title 27, article 6, section 25600.2, subdivision (g) you must <u>promptly</u> provide As You Sow (through its counsel) with the names and contact information for each of the manufacturers, producers, packagers, importers, suppliers, and distributors of each of the products listed above in Table 1. **We expect to receive this information within a week.**

Sincerely,

Rachel S. Doughty
Greenfire Law, PC

Attachments:

Certificate of Merit (All Recipients)

Certificate of Merit Support (Attorney General only)

Certificate of Service (All Recipients)

*The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary* ("Summary") (Noticed Parties Only)

# Certificate of Merit

California Health & Safety Code Section 25249.7, Subdivision (d)

I, Rachel Doughty, hereby declare:

1. This Certificate of Merit accompanies the attached sixty-day notice(s) in which it is alleged the parties identified in the notices have violated Health and Safety Code section 25249.6 by failing to provide clear and reasonable warnings.

2. I am the attorney for the noticing party.

3. I have consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action.

4. Based on the information obtained through those consultations, and on all other information in my possession, I believe there is a reasonable and meritorious case for the private action. I understand that "reasonable and meritorious case for the private action" means that the information provides a credible basis that all elements of the plaintiff's case can be established and the information did not prove that the alleged violator will be able to establish any of the affirmative defenses set forth in the statute.

5. The copy of this Certificate of Merit served on the Attorney General attaches to it factual information sufficient to establish the basis for this certificate, including the information identified in Health and Safety Code section 25249.7(h)(2), i.e., (1) the identity of the persons consulted with and relied on by the certifier, and (2) the facts, studies, or other data reviewed by those persons.

Dated: March 15, 2024                    Greenfire Law, PC

                              By:

                                   Rachel Doughty

6

Exhibit 4

**ROB BONTA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA  94612-0550

Public:  (510) 879-1300
Telephone:  (510) 879-1300
Facsimile:  (510) 622-2270
E-Mail:  Susan.Fiering@doj.ca.gov

March 27, 2024

By U.S. mail and electronic delivery

Rachel S. Doughty, Esq.
2748 Adeline Street, Suite A
Berkeley, CA 94703
rdoughty@greenfirelaw.com

RE:     Proposition 65 Notice No. 2024-01113

Dear Ms. Doughty:

     We write to you pursuant to the Attorney General's authority under Health and Safety Code section 25249.7, subdivision (e)(1)(A), which is part of the Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Proposition 65."  We have reviewed the above 60-day notice of violation and accompanying certificate of merit that As You Sow LLC ("AYS") sent to Etsy, Inc. on January 18, 2024.  The notice alleges that the company sells products that expose persons to mercury and mercury compounds without providing a clear and reasonable warning.

     Based on our review of the notice, we have concluded that you have failed to provide sufficient information to indicate that there is a credible basis to conclude that there is merit to each element of the action on which plaintiff will have the burden of proof and that the information relied on does not prove that any affirmative defense has merit.  The 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations.  We ask that you withdraw the notice immediately.  Our position is discussed in more detail below.

     Proposition 65 requires companies with ten or more employees to provide clear and reasonable warnings to persons prior to knowingly and intentionally exposing them to chemicals known to cause cancer or reproductive toxicity.  (Health & Saf. Code, § 25249.6.)  Persons acting in the public interest can bring a private action to enforce Proposition 65 at least sixty days after sending a 60-day notice to the alleged violators and public enforcers, unless the Attorney General or other public enforcer is diligently prosecuting an action against the violation.  (*Id*., § 25249.7, subd. (d).)  Before sending a 60-day notice alleging a failure to warn, the private enforcer must consult with an expert who has reviewed facts, studies, or other data regarding the alleged exposure to the listed chemical.  Based on the consultation, the person sending the notice or his or her attorney must execute a certificate of merit stating his or her

Rachel Doughty, Esq.
March 27, 2024
Page 2

belief that, based on the consultation, "there is a reasonable and meritorious case for the private action." (*Id.*, subd. (d)(1).)  The enforcer must attach to the Attorney General's copy of the certificate of merit factual information sufficient to establish the basis of the certificate of merit. The Attorney General must maintain this information in confidence.  (*Id.*, subds. (d)(1), (i).)  The certificate of merit must document both exposure to the chemical and that there "is merit to each element of the action on which the plaintiff will have the burden of proof."  (Cal. Code Regs., tit. 11, § 3101, subd. (a).)  Further, the certifier must certify that "the information relied upon does not prove that any affirmative defense has merit."  (*Ibid.*)  If the Attorney General believes there is no merit to the action after reviewing the certificate of merit and meeting and conferring with the private enforcer, the Attorney General must serve a letter on the noticing party and the alleged violator stating this position and make the letter available to the public.  (Health & Saf. Code, § 25249.7, subd. (e)(1).)

The referenced 60-day notice alleges that the company exposes persons to mercury in certain products without providing the required warning.  We are not able to disclose the contents of the supporting information for the certificate of merit.  However, based on our review, we have concluded that you have failed to provide sufficient information to indicate that there is a credible basis to conclude that there is merit to each element of the action on which plaintiff will have the burden of proof and that the information relied upon does not prove that any affirmative defense has merit.  Thus, the 60-day notice does not give AYS authority to file suit in the public interest, or to settle claims based on the alleged violations, and we ask that you withdraw the notice immediately.

Sincerely,

/S/ *Susan S. Fiering*

SUSAN S. FIERING
Deputy Attorney General

For    ROB BONTA
Attorney General

cc:    Etsy, Inc. ATTN: Josh Silverman, CEO (via U.S. mail and electronic delivery)
117 Adams St.
Brooklyn, NY 11202
jsilverman@etsy.com

Etsy, Inc., ATTN: Colin Stretch, Chief Legal Officer (via electronic delivery only)
cstretch@etsy.com

Etsy, Inc., ATTN: Etsy Regulatory Request for Regulators or Government Officials (via electronic delivery only)
regulatory-intake@etsy.com

Rachel Doughty, Esq.
March 27, 2024
Page 3


Maria Villasenor dba Capirotada Store (via U.S. mail and electronic delivery)
3721 S. 6000 W.
W. Valley City, Utah 84128

Sherley Sajous (via U.S. mail and electronic delivery)
Registered Agent for Oceans Beauty & Wellness LLC
573 NW 101 St.
Miami, FL 33150
Sajous85@gmail.com


SF1994IN0809

Exhibit 5

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
03/18/2024 at 02:49:12 PM
By: Damaree Franklin,
Deputy Clerk

Rachel S. Doughty (State Bar No. 255904)
Jennifer Rae Lovko (State Bar No. 208855)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
Fax: (510) 900-9502
rdoughty@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

AS YOU SOW, a 501(c)(3) non-profit corporation,

          Plaintiff,

    v.

ETSY, INC.,

          Defendant.

Case No. ___24CV068179___

**COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)**

1

1.      Plaintiff AS YOU SOW brings this action as a representative in the public interest to protect the citizens of the State of California from unknowingly exposing themselves to toxic mercury or mercury compounds added as active ingredients in skin lightening creams marketed, distributed, and sold to Californians through the website www.etsy.com. By this Complaint, plaintiff AS YOU SOW seeks an order enjoining Defendant ETSY, INC. to either (1) prevent third parties from selling skin lightening products that contain mercury or mercury compounds to California consumers on Defendant's website, www.etsy.com or (2) comply with Proposition 65's warning requirement by providing a clear and reasonable warning to California customers prior to their purchase of skin lightening products that contain mercury or mercury compounds on www.etsy.com. Plaintiff also seeks civil penalties as provided for under Proposition 65 and other appropriate relief.

### Venue And Jurisdiction

2.      This Court has jurisdiction over this action pursuant to Health and Safety Code section 25249.7, which allows enforcement of Proposition 65 in any court of competent jurisdiction, and pursuant to California Constitution, article VI, section 10, because this case does not present a cause given by statute to other trial courts.

3.      This court has jurisdiction over Defendant because it has sufficient minimum contacts in the State of California, and/or otherwise purposefully avails itself of the California market.

4.      Plaintiff has met the statutory requirements for notice to bring this citizen suit enforcement action under Health and Safety Code section 25249.7 and its implementing regulations.

5.      Venue is proper in the Superior Court of California, Alameda County, pursuant to Code of Civil Procedure sections 393 and 395, because this court is a court of competent jurisdiction, because plaintiff seeks civil penalties against Defendant, because one or more instances of wrongful conduct occurred and continue to occur in Alameda County, and/or because Defendant conducted and continues to conduct business in this county with respect to the consumer products at issue in this case.

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

**Parties**

6.      Plaintiff AS YOU SOW is a 501(c)(3) non-profit corporation dedicated to, among other causes, the protection of the environment, toxics reduction, the promotion and improvement of human health, and the improvement of worker and consumer rights. AS YOU SOW has, since 1992, been one of the leading enforcers of Proposition 65, bringing hundreds of manufacturers and whole industries into compliance as part of its work to promote corporate accountability, ensure safer consumer products, and create a sustainable marketplace that does not degrade the planet. AS YOU SOW brings this action as a private attorney general in the public interest pursuant to Health & Safety Code section 25249.7, subdivision (d).

7.      Defendant ETSY, INC. is a business entity with ten or more employees doing business within the scope of Proposition 65. (Health & Saf. Code, § 25249.11.)

**Statutory And Regulatory Background**

8.      Overwhelmingly enacted by the voters of California in 1986 as "Proposition 65," the Safe Drinking Water and Toxic Enforcement Act "is a remedial statute intended to protect the public." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal. 4th 294, 314.)

9.      Proposition 65 declared the People's right to be "informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm." (Health & Saf. Code Div. 20, Ch. 6.6 Note, § 1, subd. (b).)

10.      Under Proposition 65:

> No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in section 25249.10.

(Health & Saf. Code, § 25249.6.)

11.      A "person in the course of doing business" does not include any person employing fewer than 10 employees in his or her business; any city, county, or district or any department or agency thereof or the state or any department or agency thereof or the federal government or any

3

department or agency thereof; or any entity in its operation of a public water system as defined in Section 116275. (Health & Saf. Code, § 25249.11, subd. (b).)

12.    An exposure to a listed chemical contained in a consumer product "results from a person's acquisition, purchase, storage, consumption, or other reasonably foreseeable use of a consumer good, or any exposure that results from receiving a consumer service." (27 Cal. Code Regs., § 25602 subd. (b).)

13.    A "knowingly" exposure occurs where the party responsible for such exposure has:

> knowledge of the fact that a discharge of, release of, or exposure to a chemical listed pursuant to Section 25249.8(a) of the Act is occurring. No knowledge that the discharge, release or exposure is unlawful is required.

(27 Cal. Code Regs., § 25102, subd. (n).)

14.    Neither Proposition 65 nor the regulations use the phrase "constructive knowledge" or language commonly associated with the concept, such as "should know" or "reason to know." Similarly, Proposition 65 nor the regulations applicable to this case use the phrase "actual knowledge" as well. *See Lee v. Amazon, Inc*., 76 Cal.App.5th 200 (2002). Further, it has been found that there are circumstances in which constructive knowledge is sufficient to require provision of a warning. (*Id*).

15.    According to the Office of Environmental Health Hazard Assessment (OEHHA), a warning meets the "clear and reasonable" requirements of Proposition 65 only if it includes: (1) a symbol consisting of a black exclamation point in a yellow equilateral triangle with a bold black outline[1]; (2) the symbol shall be placed to the left of the text of the warning, in a size no smaller than the height of the word "WARNING"; (3) the word "WARNING:" in all capital letters and bold print; and (4) the words, "This product can expose you to chemicals including [name of one or more chemicals], which is [are] known to the State of California to cause [cancer, birth defects or other reproductive harm or cancer and birth defects or other reproductive harm]." (27 Cal. Code Regs., §

---

[1] Where the sign, label or shelf tag for the product is not printed using the color yellow, the symbol may be printed in black and white.

4

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

25603, subd. (a).) Where a warning is being provided for an exposure to a single chemical the words "chemicals including" may be deleted from the warning content. (*Id*).

16.     For internet purchases, the warning may be provided by including a clearly marked hyperlink using the word "**WARNING**" on the product display page, or by "otherwise prominently displaying the warning to the purchaser prior to completing the purchase." (27 Cal. Code Regs., § 25602, subd. (b).) "For purposes of this subarticle, a warning is not prominently displayed if the purchaser must search for it in the general content of the website." (*Id*.)

17.     Where a sign or label used to provide consumer information about a product is in a language other than English, "the warning must also be provided in that language in addition to English." (27 Cal. Code Regs., § 25602, subd. (d).)

18.     Through its strong notice provisions, Proposition 65 helps to protect California's drinking water sources from contamination; allows consumers to make informed choices about the products they buy; and gives Californians the tools they need to protect themselves from exposure to toxic chemicals.

19.     Proposition 65 provides that any person who "violates or threatens to violate" the statute may be enjoined in any court of competent jurisdiction. (Health & Saf. Code, § 25249.7.) "Threaten to violate" is defined to mean "to create a condition in which there is a substantial probability that a violation will occur." (*Id.* at § 25249.11, subd. (e).)

20.     In addition, any person who violates Proposition 65 is liable for civil penalties not to exceed $2,500 per day for each violation, recoverable in a civil action. (Health & Saf. Code, § 25249.7, subd. (b).)

21.     Private parties are entitled to bring an action in the public interest to enforce Proposition 65 under Health and Safety Code, section 25249.7, subdivision (d).

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR
VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

**General Allegations of Fact**

**A.  Defendant operates www.etsy.com in the course of doing business.**

22.    Defendant is a "person in the course of doing business" as that term is defined at Health and Safety Code section 25249.11, subdivision (a). (*Lee v. Amazon, Inc.*, 76 Cal.App.5th 200, 249 (2022).)

23.    Defendant owns and operates a global marketplace located at the website www.etsy.com

24.    Defendant's online platform facilitates the sale of products by third parties to end-users or online customers. In 2023, this platform was used by over 6 million sellers and 91 million buyers.

25.    Defendant posted a consolidated gross merchandise sales of $32 billion in fiscal year 2023 with market presence on multiple continents, including Asia, Europe, and the Americas.

26.    Defendant provides some level of business service for each product sold through its website, including the skin lightening products at issue in this case.

27.    In exchange for the following services, Defendant earns fixed fees, a percentage of sales, per-unit activity fees, interest, or some combination thereof from each of the approximately 6 million third party sellers utilizing www.etsy.com:

    a)  Defendant attracts customers to the web site and advertises items across the web through offsite advertisements.

    b)  Defendant assists third parties with the creation and management of their shops and products.

    c)  Defendant offers Etsy Purchase Protection for buyers, providing reimbursement to buyers for products not received or not received timely, product received as damaged, and products not matching the listing description and photos.

    d)  Defendant has the authority to moderate seller content, which includes listings, messages, reviews, images, videos, and all other posted content posted. ETSY, INC. retains the right to employ enforcement mechanisms on an account when its policies are not followed.

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

1    e)  Defendant has the ability to hold seller funds, deactivate a listing, restrict a listing from
2        some or all members, or suspend an account.

3    28.    Third party sellers would not have the ability to reach Defendant's billions of
4  customers, including those in California, without access to the Defendant's marketplace at
5  www.etsy.com, and Defendant would not have as many business opportunities or as high profit
6  margins absent its partnership with third party sellers.

7    29.    Defendant does not give customers, or private enforcers, access to the legal name,
8  physical address, or contact information for third party sellers through online platform.

9  **B.  Exposure to mercury or mercury compounds is reasonably foreseeable.**

10    30.    On July 1, 1990, OEHHA identified and listed "mercury and mercury compounds" as
11  chemicals known to the State of California to cause developmental toxicity, pursuant to Proposition
12  65. Mercury and mercury compounds became subject to Proposition 65's "clear and reasonable
13  warning" requirement one year later on July 1, 1991. (Health & Saf. Code, §§ 25249.8, 25249.10,
14  subd. (b); 27 Cal. Code Regs., § 27001, subd. (c).)

15    31.    Mercury is broadly known to be an intentionally added ingredient in products claiming
16  skin lightening qualities.

17    32.    Mercury is an effective skin lightener because it penetrates deep into the skin where it
18  interacts with cells known as melanocytes, which produce the pigment known as melanin, a chemical
19  that darkens the skin. Mercury replaces a critical enzyme in melanocyte cells, which shuts off the
20  production of melanin and causes the skin to lighten. Mercury is also a well-known, effective anti-
21  bacterial for the treatment of acne.

22    33.    Generally, mercury exists in three forms:  elemental mercury, inorganic mercury
23  compounds, and organic mercury. Mercury is toxic to humans in all forms. The most commonly used
24  active ingredient in skin lightening creams is inorganic mercury because it can be absorbed into the
25  cream readily and easily.

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR
VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

34.     Californians acquire, purchase, store, consume, use, and/or dispose of skin lightening creams containing mercury from third party sellers who operate product pages at www.etsy.com.

35.     Reasonably foreseeable use of skin lightening creams containing mercury causes those Californians and their household members to be exposed to mercury and mercury compounds in three main routes: ingestion, inhalation, or dermal absorption.

36.     Ingestion occurs post-application as a result of normal hand-to-mouth behavior, such as eating or preparing food.

37.     Inhalation occurs when mercury vapor off-gasses from the creams.

38.     Dermal absorption occurs with each reasonably foreseeable application of a skin lightening cream to the user's skin. Skin lightening creams that contain mercury are designed and specifically marketed for direct contact with skin.

39.     Exposure to a cream user's household members is foreseeable because use of the product results in contamination of household air and surfaces, and household members come into direct contact with the skin of the primary user of the cream.

40.     Because Californians purchase skin lightening creams containing mercury through the Etsy web site throughout California, exposures to mercury occur and continue to occur in residences where the products are used and in locations in which the products are disposed, including on property not owned or controlled by Defendant.

41.     Each reasonably foreseeable use of skin lightening creams containing mercury—whether by ingestion, inhalation, or dermal absorption—results in continuing and ongoing exposure to mercury or mercury compounds because mercury has a half-life in the body of two months, and of decades in the brain.

42.     Since 1973, the Food and Drug Administration has warned against the use of mercury in cosmetics, due to ease of exposure and bioaccumulation:

> It is well known that mercury compounds are readily absorbed through the unbroken skin as well as through the lungs by inhalation and by intestinal absorption after ingestion. Mercury is absorbed from topical application and is accumulated in the body, giving rise to numerous adverse effects. … Cosmetic preparations containing

8

1
2

mercury compounds are often applied with regularity and frequency for prolonged periods. Such chronic use of mercury-containing skin-bleaching preparations has resulted in the accumulation of mercury in the body and the occurrence of severe reactions.

3
4

(21 C.F.R. § 700.13(b).)

5

43.     The California Department of Public Health recommends that when someone has a

6
7

skin lightening cream they believe contains mercury, that person should immediately dispose of the cream at a household hazardous waste facility.

8

**C. Defendant knowingly and intentionally exposed and continues to expose Californians to skin lightening creams that contain mercury or mercury compounds.**

9
10

44.     Beginning at least in 2014 and continuing to present, Defendant ETSY, INC. has

11
12

permitted third parties access to its online marketplace in order to sell skin lightening, whitening, and "smoothing" creams containing mercury or mercury compounds ("PRODUCTS"), and specifically including those listed below in Table 1.

13

45.     Defendant knows that the PRODUCTS were sold to consumers in California.

14
15

46.     Customers who purchase skin lightening creams from www.etsy.com are presumed to have used them. (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 250.)

16

47.     Each of the PRODUCTS listed in Table 1 is a multi-use product.

17
18
19

48.     Defendant has never provided a Proposition 65 warning to any consumer who bought a PRODUCT, despite the fact that many consumers are still using, and being exposed to mercury through the use of the PRODUCTS, and Defendant's knowledge of that fact.

20
21
22
23
24

| Table 1: Noticed Consumer Products | |
| --- | --- |
| PRODUCTS[2] | Etsy Storefront[3] |
| Deluxe Nadinola Bleaching Cream | TheDetoxClub; PureJamaicanStore |
| Due Beauty Cream | MystiqueArtShop; WholesaleByHuma |

25
26
27

[2] The product names listed in Table 1 are provided to assist in identification only and are not exhaustive of possible name variations under which the PRODUCTS are or may be listed at www.etsy.com.
[3] The Etsy storefront names listed in Table 1 are provided to assist in identification only and are not exhaustive of possible storefronts under which the PRODUCTS are or may be listed at www.etsy.com.

28

9

| Faiza | MystiqueArtShop; KUCHIDRESS |
| La Tia Mana Crema Limpiadora y Curativa | CapirotadaStore; NaturalByLLC; TruVaShopTreasures |
| Miss Key Crema Blanqueadora | OceansBeautyWellness |

49.  The PRODUCTS contain mercury or mercury compounds.

50.  Since 2014 and continuing to present, multiple health and safety agencies across the globe issued health alerts, announced investigations into, and advised consumers to beware of skin lightening products, including for the PRODUCTS, because they contain dangerously high levels of mercury or mercury compounds, including:

a)  **Deluxe Nadinola Bleaching Cream**: New York City Public Health Warning

b)  **Due Beauty Cream**: New York City Public Health Warning

c)  **Faiza**: New York City Public Health Warning; European Union Rapex Warning

d)  **La Tia Mana Crema Limpiadora y Curativa**: FDA Warning

e)  **Miss Key Crema Blanqueadora**: New York City Public Health Warning

51.  Defendant ETSY, INC. uses a combination of automated systems and human review by enforcement specialists to review seller items that are in violation of Defendant's policies. This review includes consideration of regulatory reports from government agencies.

52.  According to public health experts, skin whitening cosmetic products likely contain mercury if (1) the product packaging is in a foreign language and does not contain an ingredient label; (2) the product is manufactured in Pakistan; (3) the product claims to whiten or bleach the skin. If these three factors are present, Defendant should either prohibit the sale of the product, require a Proposition 65 warning regarding the mercury content of the product, or test the product to confirm the presence or absence of mercury in the product line.

53.  On December 22, 2023, Plaintiff sent a letter to ETSY, INC. to inform the company that several mercury-containing skin lightening products were being posted and sold on its website and such products are toxic to consumers and should not be sold in California or in the United States.

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

54.     On January 18, 2024, Plaintiff sent sixty-day Notices of Violation ("NOTICE") to ETSY, INC. listing the PRODUCTS.

55.     Despite its knowledge that skin whitening creams may contain mercury or mercury compounds, ETSY, INC. has permitted, and continues to permit, third party sellers access to www.etsy.com to sell skin lightening creams that it knows contain toxic amounts of mercury to California consumers.

**D.  Defendant has exposed Californians to mercury and mercury compounds without providing a clear and reasonable warning to consumers.**

56.     Defendant has not posted any Proposition 65 warnings for mercury in skin lightening creams at issue in this case.

**E.  Notice of Violation**

57.     A true and correct copy of NOTICE, dated January 18, 2024, is attached as **Exhibit 1** to this Complaint.

58.     In the NOTICE, Plaintiff warned ETSY, INC. that, as a result of its sales of the PRODUCTS, purchasers and users in the State of California were being exposed to mercury resulting from consumer's reasonably foreseeable use, without the individual purchasers and users first having been provided with a "clear and reasonable warning" regarding such toxic exposures, as required by Proposition 65.

59.     The NOTICE included, *inter alia*, the following information: the name, address, and telephone number of the noticing individual; the name of the alleged violator; the statute violated; the approximate time-period during which violations occurred; and descriptions of the violations, including the chemical involved, the routes of toxic exposure, the type of products causing the violations ("skin lightening, whitening, and 'smoothing' creams containing mercury or mercury compounds"), and exemplars of the PRODUCTS (identified in Table 1 herein). Defendant ETSY, INC. and the California Attorney General were provided copies of the NOTICE by mail. Additionally, Defendant was provided with a copy of a document entitled "The Safe Drinking Water and Toxic

11

1  Enforcement Act of 1986 (Proposition 65): A Summary," which is also known as Appendix A to title

2  27 of California Code of Regulations section 25093.

3       60.    The NOTICE included a certificate of merit, executed by Plaintiff's attorney stating

4  that the person executing the certificate had consulted with one or more persons with relevant and

5  appropriate experience or expertise who has reviewed the facts, studies, or other data regarding

6  exposure to the listed chemical that is the subject of the NOTICE, and that, based on that information,

7  the person executing the certificate believes there is a reasonable and meritorious case for this private

8  action. Factual information sufficient to establish the bases of the certificate of merit was attached to

9  the certificate of merit served on the California Attorney General for the NOTICE.

10       61.    No public prosecutor has commenced and is diligently prosecuting an action against

11  the violations at issue herein, although the notice period provided in Health and Safety Code section

12  25249.7 has elapsed.

### First Cause Of Action

### (Violation of Health & Saf. Code, § 25249.6)

15       62.    Plaintiff realleges and incorporates each and every allegation contained in the

16  preceding paragraphs as though fully set forth herein.

17       63.    Under Proposition 65:

18       No person in the course of doing business shall knowingly and intentionally expose
19       any individual to a chemical known to the state to cause cancer or reproductive
     toxicity without first giving clear and reasonable warning to such individual, except
20       as provided in section 25249.10.

21  (Health & Saf. Code, § 25249.6.)

22       64.    Mercury and mercury compounds are present in the PRODUCTS in such a way as to

23  expose individuals in California to mercury and mercury compounds.

24       65.    The PRODUCTS were distributed, sold, or offered for sale in California and so require

25  a "clear and reasonable warning" under Proposition 65.

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR
VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

66.     Defendant has had constructive and actual knowledge that the PRODUCTS contain mercury or mercury compounds.

67.     Consumers are not provided with a clear and reasonable warning prior to purchase of the PRODUCTS.

68.     Consumers are not provided with a clear and reasonable warning prior to use of the PRODUCTS.

69.     In the course of its business, Defendant makes possible and intends for third parties to sell the PRODUCTS to California consumers.

70.     Defendant, in the course of doing business in California, has violated Health and Safety Code section 25249.6 by knowingly and intentionally exposing California consumers to mercury or mercury compounds without first giving clear and reasonable warning to such individuals who were or who would become exposed to mercury or mercury compounds through dermal contact, ingestion, and/or inhalation during the reasonably foreseeable uses of the PRODUCTS.

71.     Defendant has caused Californians to be exposed to a listed chemical in violation of Proposition 65, whether such exposure is classified as a consumer exposure, environmental exposure, none of the above, all of the above, some of the above, or otherwise.

72.     Under Health and Safety Code section 25249.7, subdivision (b), this Court has authority to assess against Defendant a maximum civil penalty not to exceed $2,500 per day for each violation of Proposition 65 that has occurred and continues to occur.

73.     Under Health and Safety Code section 25249.7, subdivision (a) this Court is authorized to enjoin Defendant to comply with Proposition 65 now and at all times in the future.

**Second Cause of Action**

**(Violation of 27 Cal. Code Regs., §§ 25602 and 25603)**

74.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs as though fully set forth herein.

13

75.     Defendant has violated and continue to violate California Code Regulations, Title 27, section 25603, subdivision (a) because no warning is not prominently displayed on the product description page on www.etsy.com and may not be displayed at all to a purchaser prior to completing the purchase.

76.     Defendant has violated and continue to violate California Code Regulations, Title 27, section 25602, subd. (b) because Defendant has never provided a Proposition 65 warning in any non-English language used on the labels for the PRODUCTS on www.etsy.com.

77.     To date, although at least some of the PRODUCTS remain in use, Defendant has failed and continue to fail to provide a clear and reasonable warning as required by Health and Safety Code section 25249.6 to users of the PRODUCTS.

78.     As a direct result of Defendant's acts and omissions, the general public in California has been regularly, unlawfully, and involuntarily exposed to mercury and mercury compounds, which are known to the State of California to be developmental toxins.

79.     Under Health and Safety Code section 25249.7, subdivision (b), this Court has authority to assess against Defendant a maximum civil penalty not to exceed $2,500 per day for each violation of Proposition 65 that has occurred and continues to occur.

80.     Under Health and Safety Code section 25249.7, subdivision (a) this Court is authorized to enjoin Defendant to comply with Proposition 65 now and at all times in the future.

**Prayer For Relief**

81.     WHEREFORE, Plaintiff prays the Court:

A.      Grant civil penalties pursuant to Health and Safety Code section 25249.7, subdivision (b)(1) against ETSY, INC. in the amount of up to $2,500 per day for each violation;

B.      Enter such injunctions or other orders as are necessary pursuant to Health and Safety Code section 25249.7, subdivision (a) to prevent ETSY, INC. from exposing persons within the state of California to the developmental toxins mercury and mercury compounds caused by the reasonably foreseeable use of the PRODUCTS without providing clear and reasonable warnings;

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

C.      Award Plaintiff reasonable attorneys' fees and costs pursuant to Code of Civil Procedure, section 1021.5 and as otherwise appropriate; and

D.      Grant such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: March 18, 2024            GREENFIRE LAW, PC

By: _____
Rachel Doughty
Attorney for Plaintiff
AS YOU SOW

15

COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR
VIOLATIONS OF PROPOSITION 65 (HEALTH & SAF. CODE, § 25249.6 et seq.)

Exhibit 6

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER: 208855

NAME: Jennifer Rae Lovko
FIRM NAME: Greenfire Law, APC
STREET ADDRESS: 2748 Adeline Street, Suite A
CITY: Berkeley    STATE: CA    ZIP CODE: 94703
TELEPHONE NO.: (510)900-9502    FAX NO.:
E-MAIL ADDRESS: rlovko@greenfirelaw.com
ATTORNEY FOR *(name):* Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Rene C. Davidson Courthouse

PLAINTIFF/PETITIONER: As You Sow, a 501(c)(3) non-profit corporation
DEFENDANT/RESPONDENT: Etsy, Inc., et al

| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>24CV068179 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice    (2) ☒ Without prejudice
   b. (1) ☒ Complaint    (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name):*                on *(date):*
   (4) ☐ Cross-complaint filed by *(name):*                on *(date):*
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☐ Other *(specify):**

2. *(Complete in all cases except family law cases.)*
   The court ☐ did   ☒ did not   waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: 04/26/2024

Jennifer Rae Lovko
_____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:
_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint  - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

---
*(To be completed by clerk)*

4. ☐ Dismissal entered as requested on *(date):*
5. ☐ Dismissal entered on *(date):*                as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy

Date: _____    Clerk, by _____, Deputy

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. January 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>*www.courts.ca.gov* |
|---|---|---|

CIV-110

| | |
|---|---|
| PLAINTIFF/PETITIONER:   As You Sow, a 501(c)(3) non-profit corporation<br>DEFENDANT/RESPONDENT:   Etsy, Inc., et al | CASE NUMBER:<br>24CV068179 |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1.  The court waived court fees and costs in this action for *(name):*

2.  The person named in item 1 is *(check one below):*

    a.  ☐  not recovering anything of value by this action.

    b.  ☐  recovering less than $10,000 in value by this action.

    c.  ☐  recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3.  All court fees and court costs that were waived in this action have been paid to the court *(check one):*   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          ▶ _____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form     Save this form     Clear this form

1

## PROOF OF SERVICE

2
3
4

I am employed in the County of Alameda. My business address is 2748 Adeline Street, Suite A, Berkeley, California 94703. I am over the age of 18 years and not a party to the above-entitled action. Document(s) served:

5

- **REQUEST FOR DISMISSAL (CIV-110)**

6
7

On April 26, 2024, I served the foregoing document(s) on the parties in this action, located on the attached service list as designated below:

8
9

( )   <u>By First Class Mail:</u>                    Deposited the above documents in a sealed envelope with the United States Postal Service, with the postage fully paid.

10
11

( )   <u>By Personal Service:</u>                   I personally delivered each in a sealed envelope to the office of the address on the date last written below.

12
13
14
15

( )   <u>By Overnight Mail:</u>                     I caused each to be placed in a sealed envelope and placed the same in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for.

16
17
18

(x)   <u>By Electronic Transmission:</u>           Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

19
20
21

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 26, 2024, in Berkeley, California.

22
23
24

_____
Jessica San Luis

25
26
27
28

1

1

## SERVICE LIST

2

| Nicholas J. Hoffman | By Electronic Transmission |
|---|---|
| Joseph T. Rezabek | |
| McGuireWoods LLP | |
| Wells Fargo Center | |
| South Tower | |
| 355 S. Grand Ave, Ste 4200 | |
| Los Angeles, CA 90071-3103 | |
| NHoffman@mcguirewoods.com | |
| JRezabek@mcguirewoods.com | |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 7

FINAL STATEMENT OF REASONS

ADOPT SECTION 12903, *NOTICES OF VIOLATION*
TITLE 22, DIVISION 2, CALIFORNIA CODE OF REGULATIONS

The Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as Proposition 65 (hereinafter referred to as "the Act"), requires businesses to provide clear and reasonable warnings prior to knowingly and intentionally exposing individuals to chemicals that have been listed by the State as known to cause cancer or reproductive toxicity [Health and Safety Code Section 25249.6]. The Act also prohibits businesses from knowingly discharging listed chemicals into sources of drinking water [Health and Safety Code Section 25249.5].

Exemptions from the warning requirement and the discharge prohibition are provided in the Act. Warnings are not required when the business responsible for the exposure to a listed chemical can show that the exposure occurs at a level that poses no significant risk of cancer (defined in regulation as a risk not exceeding one excess case of cancer in 100,000 individuals exposed over a 70-year lifetime), or that does not exceed the "no observable effect level" divided by 1,000 for reproductive toxicants.

By Executive Order W-15-91, the Office of Environmental Health Hazard Assessment (OEHHA) was designated as the lead agency for the implementation of the Act.

Procedural Background

On December 13, 1995, OEHHA held a workshop to receive public comment on the clarification of information to be included in a 60-day notice of intent to sue. OEHHA, working with the Attorney General's Office, proposed to draft regulations to specify information that should be included in 60-day notices served under the Act. Details regarding this proposal are contained in a document entitled, "Draft Clarification of 60-day Notice Requirements." Based upon the comments received during the workshop, OEHHA decided to proceed with the adoption of regulations. With assistance from the Attorney General's Office, draft regulations were prepared and a notice of proposed rulemaking action was published on July 5, 1996 in the California Regulatory Notice Register. A public hearing was held on August 23, 1996 to receive public comments.

Purpose of the Final Statement of Reasons

This final statement of reasons sets forth the reasons for the final language adopted by OEHHA for section 12903 and responds to the objections and recommendations submitted regarding that section. Government Code section 11346.9(a)(3) requires that the final statement of reasons contain a summary of each objection or recommendation made regarding the specific adoption, amendment, or repeal proposed, together with an explanation of how the proposed action has been changed to accommodate each objection or recommendation, or the reasons for making no change. It further provides that this requirement applies only to objections or recommendations

specifically directed at the proposed action or the procedures followed in proposing or adopting the action.

Specific Findings

OEHHA has considered the alternatives available to determine which would be more effective in carrying out the purpose for which the regulation was proposed, or would be as effective and less burdensome to affected private persons than the proposed regulation. The only other alternative considered by OEHHA was to not adopt a regulation addressing notices of violation under the Act. As will be discussed in the subsequent sections, the need to establish clear, consistent requirements which such notices must meet to be considered acceptable is plainly indicated by California's experience with actual notices that have been given by private parties. OEHHA has rejected the alternative of not adopting a regulation on this basis and has determined that no alternative would be more effective than, or as effective and less burdensome to affected persons than the proposed regulation. The proposed regulation does not create any additional requirements that could result in an adverse economic impact on businesses, nor does it impose any mandate on local agencies or school districts.

Necessity for the proposed regulation

Violations of either the warning requirement or the discharge prohibition are enforced through civil lawsuits filed by the Attorney General, by district attorneys, by specified city attorneys, or by any person acting in the public interest [Health and Safety Code Section 25249.7]. The Act allows private persons to file civil actions to enforce its provisions, but only under the following circumstances:

> (d) Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation. [Health and Safety Code section 25249.7; emphasis added.]

Thus, the statute does not permit the citizen merely to provide notice of its intent to sue. Instead, the citizen must provide notice of "the violation which is the subject of the action." While this term is not specifically defined, it mandates two things: first, that the actual violation be described in the notice in some way, and second, that the subject of the action is then limited to the violation for which notice was given. If a "violation" was not included in the notice, it cannot be part of the action.

Accordingly, the content, manner and service, and time of service have substantial legal effects on the public, potential private plaintiffs, regulated entities, and enforcement agencies. Because the statute provides relatively little definition of the notice requirements, there is a need for

guidance on these matters. In the absence of further guidance, substantial controversies have arisen in enforcement litigation concerning the nature of these requirements.

Proposition 65's notice provision appears to be modeled generally after similar "citizen suit/60-day notice" provisions of certain federal environmental laws, such as the Clean Water Act. (See 33 U.S.C. § 1365(b)(1)(A).) In a recent appellate court examination of the notice issue, the Third Circuit in Public Interest Group of New Jersey v. Hercules, Inc., 50 F.3d 1239 (3rd Cir. 1995), described the function of the Clean Water Act notice as follows:

> In deciding whether to initiate an enforcement action, the EPA and the state must be provided with enough information to enable them intelligently to decide whether to do so. At the same time, the alleged violator must be provided with enough information to be able to bring itself into compliance. We will judge the sufficiency of the plaintiffs' 60-day notice letter in terms of whether it accomplishes these purposes.

(Id., at 1249.) Thus, the first focus of a citizen suit notice is to enable the prosecutor "intelligently" to decide whether to file suit. Where a notice provides no real description of the claim, it cannot perform that function. Typically, federal agencies administering statutes with similar sixty-day notice provisions have adopted regulations specifying the required content of the notices (Clean Air Act: 40 CFR §§54-54.3; Clean Water Act, 40 CFR §§135-135.1; Safe Drinking Water Act: 40 CRF §§135.10-135.13; Toxic Substances Control Act: 40 CFR §§702.60-702.62; Resource Conservation and Recovery Act: 40 CFR §254; Surface Mining Control and Reclamation Act: 30 CFR §700.13).

Second, the notice allows the defendant an opportunity to cure the violation. Under Proposition 65, penalties of up to $2,500 per day per violation are provided. Once informed of the violation, the defendant can bring the violation to a halt, and at least prevent the accrual of any further liability for penalties. While this would not by itself necessarily prevent a civil action, since a plaintiff may sue for penalties for past violations, the limitation of continuing liability nonetheless is quite significant. As noted by the court in Public Interest Group of New Jersey v. Hercules, Inc., *supra,* the alleged violator must be provided sufficient information to bring itself into compliance because it is compliance with the Proposition 65 requirements that protects the public and the environment.

Finally, it is critical to understand that under Proposition 65, the citizen plaintiff obtains the right to proceed "in the public interest." It also obtains the right to seek civil penalties, 75% of which would go to the state, and 25% to the plaintiff. Such influence over whether or not penalties will be collected for the public treasury is not to be taken lightly. As a condition precedent to establishing a citizen's right to proceed in the public interest on that matter, and to collect funds for the public treasury, the notice requirement should not be dismissed as a mere technicality.

As a general matter, any notice "is directed to someone who is to act or refrain from acting in consequence of the information contained in the notice." (Bird v. McGuire (1963) 216 Cal.App.2d 702, 713.) As another court stated, "Notices, like that herein involved, are not

designed nor purposed as mere scraps of paper nor empty formalities." (Gianni v. City of San Diego (1961) 194 Cal.App.2d 56, 63.) Thus, failure to give some reasonable effect to the notice requirement not only would be contrary to the wording of the statute, but contrary to the principles of notice established in a wide variety of contexts.

These provisions are important not only in enabling law enforcement officials to investigate a notice, but in defining the scope of the private person's right to sue under the statute. Since the notice must identify "the violation which is the subject of the action," other violations that are not adequately described in the notice cannot properly be a part of the private action. It has been suggested that this requirement could lead to piecemeal litigation, as a private person identifies different categories of products in violation of the law, and provides successive sixty-day notices. This, however, is a necessary consequence of the letter and purpose of the citizen suit provision, which is to allow private persons to identify particular violations, provide law enforcement authorities with an opportunity to prosecute them, and to bring actions only where law enforcement authorities do not do so. Private parties are not granted the unlimited right to prosecute violations that is granted to law enforcement authorities, and the notice provision reflects this.

Accordingly, OEHHA is proposing to adopt Section 12903 to specify the requirements for sixty-day notices in order to assure that such notices actually further the purposes described above.

One commenter (C-6) objected that the statement in the Initial Statement of Reasons that the citizen suit provision "is modeled generally after" similar provisions in federal laws and should be removed because it "is jumping to a reasonable but unsupported conclusion." The reference has been modified to read "appears to be modeled generally after."

One commenter (C-12) disputed the conclusion in the fiscal Impact Section that there would be no additional costs or savings for the affected entities. This commenter, which has given sixty-day notices in the past, asserts that the regulation will increase its costs of mailing and processing notice letters, and will increase its litigation costs as issues of proper notice are litigated. The agency disagrees. There should be little or no increase in mailing costs. As to litigation, the agency has found that there has been an increasing amount of litigation concerning the legal requirements for a sixty-day notice, and the provisions of this regulation will reduce that litigation by specifying a number of requirements that otherwise would be determined through expensive litigation.

Section 12903

**Subsection (a). General.**

Subsection (a) will provide that a notice under the statute is a notice meeting the requirements of the proposed regulation, and that actions by private persons under the statute must be brought in compliance with these regulations. While many Proposition 65 regulations adopt a "safe harbor" format (i.e., conduct outside the scope of the regulations is not prohibited, it simply is not specifically authorized), Section 12903 is not a "safe harbor" regulation. A notice must comply

with these regulations, or it does not confer upon a private person the authority to commence an action under Health and Safety Code section 25249.7(d).

Two commenters (C-6, C-7) stated that the second sentence of this section is surplusage and should be deleted. The first sentence points out that a notice under the statute must meet the requirements of section 12903. The commenters are correct that this should give rise to the inference that the statute requires such a notice before an action may be commenced by a private person, therefore no further language should be necessary. The agency does not wish to rely on this inference, however, but wishes to make the provision explicit. In addition, the agency wished to make clear that a non-complying notice does not leave the court with authority to fashion whatever remedy it deems appropriate, but instead means that the private person had no legal ability to commence an action under the statute. (We note, however, that the agency has avoided using the term "jurisdiction." That term is commonly used with reference to actions under federal statutes, because federal courts are courts of limited jurisdiction. This term may not be appropriate with respect to California courts, and might implicate other issues concerning the court's authority to entertain the dispute, which the agency did not wish to address in this regulation.)

Another commenter (C-4) suggested that the second sentence of this section should be modified to delete the phrase "the provisions" and replace it with "all relevant requirements." The reference has been changed to "all requirements" in order to use language parallel with the first sentence's reference to "all requirements." This avoids any possibility that someone would claim that the use of the term "provisions" in the second sentence had a different meaning than the use of the term "requirements" in the first sentence.

One commenter (C-7) suggested that the phrase "meeting all requirements of this section" be replaced with "including the information required by subsection (b)." This suggestion was not adopted, because the requirements of the section do not just address information that must be included in the notice, but other issues such as the manner of service and the computation of time.

One commenter (C-6) suggested that language is needed to avoid unclear or misleading notices, proposing that a sentence be added providing:

> A notice shall not be deemed sufficient if compliance with any of these requirements, or the notice taken as a whole, is obscure, contradictory or evasive.

This suggestion has not been adopted. The agency finds the terms "obscure, contradictory or evasive" to be too vague to be applied in this context in a helpful manner.

**Subsection (b). Contents of Notice.**

Subsection (b) of Section 12903 sets forth requirements relating to the information that must be included in a notice.

**Paragraph (b)(1). General Information.**

Many notices are sent to businesses, particularly out-of-state businesses, that are not familiar with the requirements of this law. The party giving the notice may not describe, or accurately describe, those requirements. Accordingly, it was determined that a concise summary should be provided to the alleged violator. An earlier draft of the proposed regulatory language, which was circulated informally, specified the contents of this summary, and required it to be included in the notice. Based on comments concerning that proposal, it was concluded that such a summary should be presented in a way that makes clear that it constitutes the lead agency's summary of the statute, not that of the private party.

The text of OEHHA's summary appears as Appendix A to the proposed regulation. The summary is intended only to provide general information to the lay person about the provisions of the statute, and does not represent an interpretation of the law.

This paragraph requires that a summary of the requirements of the statute ("Summary"), which was attached as Exhibit A, be attached to sixty-day notices.

One commenter (C-12) objected to the requirement of providing a summary of the statute with a notice. The agency has concluded, however, that given a lack of knowledge about the statute, particularly among relatively small businesses and out-of-state businesses that sell products into California, general information concerning the statute is needed in order to give meaning to the particular violations alleged in the notice. Thus, the requirement of providing a summary will be retained.

A number of comments were made on the summary of the statute that would be required to accompany the notice. (C-6, C-10, C-12) A number of these comments claimed that the summary actually misstates the law, or asked for other changes that appeared to be designed to incorporate regulatory changes through changes in the summary. As was pointed out previously in this Statement of Reasons, the summary is not intended to have the force and effect of law, or to obviate the need for competent legal advice. It is simply intended to provide general information to the recipient. Indeed, the summary itself specifically so states.

One commenter (C-2) suggested that the summary should state that Proposition 65 provides that the warning requirement does not apply where it is preempted by federal law. While this is correct (and would be correct even if the statute did not so specify), the doctrine of preemption is complex and its application varies depending on the specific provisions of the federal statute at issue. Accordingly, this general statement would provide no useful guidance to the party receiving the notice, and the agency has decided not to include it in the summary.

One commenter (C-10) suggested that the summary include examples of "safe harbor" warning language. This suggestion was not adopted, because it would not be possible to include such language, along with a description of the circumstances under which the language may be used, while maintaining the brevity of the summary. As stated in the summary, if further information is needed, OEHHA is available for assistance.

One commenter (C-6) suggested redrafting the section entitled "Clear and Reasonable Warnings" in a manner that the agency does not think entirely tracks the existing regulations. Thus the suggested language was not adopted.

One commenter (C-6) noted some ambiguity in the last line of the paragraph, which has now been corrected to read "Exposures are exempt from the warning requirement if they occur less than twelve months after the date of listing of the chemical." (A corresponding change has been made to the description of the twenty-month exemption from the discharge requirement.)

One commenter (C-12) suggested that the description of the discharge requirement did not accurately reflect that provision of the statute because it does not reflect that a violation occurs not only where a listed chemical enters a source of drinking water, but also where it "probably will pass" into a source of drinking water. This has been corrected.

One commenter (C-6) suggested rewriting the paragraph on exemptions from the discharge provision in a manner that does not appear to track the existing regulations. Another commenter (C-12) asserted that the phrase "the amount detected", was ambiguous. The last sentence has been rewritten to directly track the relevant language and to clarify ambiguity. It is not intended to address any issues that have not been resolved by regulation. In the fmal version, it now reads:

> A significant amount means any detectable amount, except an amount that would meet the "no significant risk" or "no observable effect" test if an individual were exposed to such an amount in drinking water.

One commenter (C-6) suggested that the headings concerning the risk based exemptions in the "exemptions" section of the summary be changed to "Exposures to carcinogens which are exempt: and "Exposures to reproductive toxins which are exempt. The agency found this change to be somewhat confusing, because it makes it appear that the carcinogen or reproductive toxin itself is exempt. The heading for reproductive toxins is changed to state "at 1,000 times the level in question."

A commenter (C-6) suggested that the last sentence of the paragraph describing the "no significant risk" exemption was unclear. It has been modified to read "identify specific 'no significant risk' levels for more than 250 listed carcinogens."

A commenter (C-6) suggested that the title of the section concerning exemptions from the discharge requirement is clumsy and misleading. The agency did not find the suggested alternative to be better, and retained the language as contained in the proposed regulations.

**Paragraph (b)(2). Description of Violation.**

Experience over the last several years has shown that many notices do not describe the nature of the alleged violation in an intelligible manner. This makes it difficult for public prosecutors to

evaluate the merit and significance of the alleged violation. In addition, if a civil action is filed based on such a notice, a controversy then exists concerning the proper scope of the suit. In a number of instances, private plaintiffs have sought through discovery or other procedures to expand the scope of the civil action significantly beyond the scope that one would reasonably infer from the notice. This also makes it difficult or impossible for the alleged violator to cure any violation prior to litigation, thereby impeding the achievement of the goals of the statute through quick compliance.

On the other hand, some alleged violators have demanded that the notice include the specific evidence by which the violation would be proven and evidence negating affirmative defenses that might be raised by the alleged violator in litigation. While such information is useful, the production of such evidence does not appear to be required by the operative statutory phrase, i.e., "notice of the violation which is the subject of the action." Thus, the proposed regulation simply provides that the notice "shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation," and specifies the information needed to comply with that standard.

The information requirements set forth in subsection (b) are intended to ensure that notices provide adequate information necessary for the recipients to evaluate the nature and scope of the alleged violation.

Subparagraph (b)(2)(A) sets forth required elements of all notices, as follows:

(i). *name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity:*  Identification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action.

(ii). *name of the alleged violator(s):*  Identification of the alleged violator is basic information necessary to allow any evaluation of the alleged violation. In addition, this assures that any civil action will be limited to those parties identified in the notice.

In some instances, a single notice may identify as many as 50 or 100 alleged violators. This format may be convenient where the different violators have committed basically the same type of violation, which can be described in a single notice. The proposed regulation does not preclude the use of these types of notices, nor does it require a group or industry-wide notice. A person may provide separate notices to different violators concerning the same type of violation, as long as each individual notice contains all information required by the regulation.

(iii). *the approximate time period during which the violation is alleged to have occurred:* This information is important to allow investigation of the facts and analysis of the overall scope and importance of the alleged violation. This includes determining whether the chemical involved in the alleged violation is in fact subject to the

requirements of the Act at the time period in question, or was exempt because the statutory grace period had not expired.

(iv).  *the name of each listed chemical involved in the alleged violation:*  The chemicals subject to the Act are determined pursuant to specific standards set in the Act (Health and Safety Code Section 25249.8), and published in the *California Regulatory Notice Register* and the California Code of Regulations. (See 22 CCR Section 12000.) Nearly 600 different chemicals have been placed on this list to date, at different times since 1987. Existing regulations provide guidance for determining levels of exposure to listed chemicals which are exempt from the Act (i.e., levels which pose "no significant risk" of cancer, or which represent the "no observable effect level" divided by 1,000 for reproductive toxicants). The regulations also specify levels of exposure to particular chemicals that are exempt from the Act (22 CCR Section 12701-12711, 12801-12805).

A violation does not consist of exposure to toxic chemicals in general, but of exposure to a particular chemical on the Proposition 65 list. Because of their different properties, different chemicals raise very different issues in determining whether there is a violation. For example:

- Some chemicals are intended constituents present at up to 50% of a product by volume; others are "trace contaminants" present in concentrations measured in parts per billion, and which are found only through sophisticated analytical methods;

- The chemicals have a wide range of potencies. Exposures to toluene at levels not exceeding 7,000 micrograms (inhaled) per day are deemed to be exempt from the Act, while exposures to 2,3,7,8-tetrachlorodibenzodioxin (dioxin) must be below 0.000005 microgram (5 one-millionths of a microgram) per day in order to be deemed to be exempt;

- Some chemicals have been on the list since February 27, 1987, while others were added as recently as September 1, 1996.

In short, knowledge of the particular chemicals involved in the alleged violation is critical to a public agency's ability to intelligently act on the notice. Moreover, if the citizen does not know whether a particular listed chemical is involved in an exposure or a discharge, it is hardly in a position to charge the defendant with violating the statute.

Subparagraph (b)(2)(B) specifies information required as part of notices alleging a violation of Health and Safety Code section 25249.5, the prohibition against discharges into drinking water sources. Where the notice alleges a violation of the "discharge" requirement, it should identify the "source of drinking water" into which a listed chemical is being discharged, to enable investigation. The requirement encompasses both current or potential sources.

Subparagraph (b)(2)(C) specifies that all notices alleging a violation of Health and Safety Code section 25249.6, the warning requirement, identify the route of exposure involved -- i.e., dermal

contact, inhalation, or ingestion. Because the human body's ability to absorb different chemicals varies substantially by route of exposure, this is important information in investigating the potential merit of any claim

Subparagraph (b)(2)(D) specifies that all notices alleging a violation of the Act for failure to warn about exposures from consumer products must identify the product or service or category of product or service involved. This issue has been one of the most problematic in evaluating notices.

Most notices adequately describe the products involved in the alleged violation, e.g., "ceramic dishes" or "spray paint." In some instances, however, the notices describe the products that are to be the subject of the action only in very broad terms, such as "various aerosol, paint, adhesive and/or automotive products, including but not limited to..." or "various chemical products, sold in bulk or as finished products(.)" This reference to the products is totally inadequate to describe the nature of the violation that is claimed. The descriptions are so general that they would appear to encompass virtually any product that might be made by certain companies. To notify the Attorney General of "the violation which is the subject of the action" as required by the Act, there must be some description of those products, otherwise the notice simply declares a general intent to sue this defendant under this law, which does not satisfy the statute.

This is not to suggest that a citizen must describe the product by some obscure product identification number, or describe spray paints by every shade. Clearly, it would be sufficient simply to say "aerosol spray paint," "car wax" or "paint thinner " Such a description would at least identify the category of products that will be the subject of the action, and would enable the public agency to focus the investigation.

In some instances, notices use the phrase "including but not limited to" with respect to both the chemicals and the products involved. Clearly, such expansive language provides no additional information concerning the claimed violation, and under the proposed regulation, would not be considered in any way to expand the alleged violation for which proper notice has been given.

For each product or category of product identified, the specific chemical also must be identified, pursuant to the requirements of subparagraph (b)(2)(A)(iv). In some instances, notices have been provided that identify a long list of chemicals, and a number of products, without indicating which chemicals are alleged to be present in which products. This completely defeats the purpose of identifying the chemicals in question, and would not be permitted under the proposed regulation.

A notice that does not identify specific products, or that purports to identify "all products made by Company X" or for identification of chemicals states "all chemicals on the list" does not comply with this section.

Subparagraph (b)(2)(E) specifies that all notices alleging a violation of the Act for failure to warn about occupational exposures must provide the following information:

(i) *the general geographic location of the unlawful exposure to employees, or where the exposure occurs at many locations, a description of the occupation or type of task performed by the exposed persons:* Most occupational exposures are alleged to take place at a given worksite, i.e., a factory or office, and the regulation would require that this location be identified. Some exposures, however, might be alleged to occur to a given category of workers at a variety of locations, so the regulation would allow identification in that manner where appropriate.

(ii) *where the alleged violator is the manufacturer or distributor of the chemical or products causing the exposure, the notice shall identify products in the same manner as set forth for consumer product exposures:* In some instances, the occupational exposure is caused by the use of a chemical or other product in the workplace. In those instances, the provider of the chemical or product should be identified (if it is an alleged violator), as should the product in question. The same information requirements for notices involving consumer products in subparagraph (b)(2)(D) apply.

Subparagraph (b)(2)(F) specifies that all notices alleging a violation of the Act for failure to warn about environmental exposures identify the general geographic location of the source of the unlawful exposure, and whether the unlawful exposure occurs beyond the property owned or controlled by the alleged violators. For environmental exposures, identification of the general location of the source of the exposure is sufficient. Some alleged environmental exposures occur to persons within the confines of the premises of the facility in question, while others are alleged to occur to persons on premises outside the facility. Since the manner of providing warnings to these different persons differs substantially, this information is needed to evaluate the allegation, and the regulation requires that the notice specify whether the exposure occurs beyond the property owned or controlled by the alleged violators.

One commenter (C-6) objected that the statement in the Initial Statement of Reasons that "many notices do not describe the nature of the alleged violation" is overstated. This commenter states that only a few notices, and only by one particular litigant, are subject to this comment. The agency disagrees. Of over 2,500 notices received by the Attorney General to date under the statute, several hundred notices raised substantial issues concerning their adequacy, and these were not confined to those given by one particular litigant. At the same time, some organizations consistently have given notices that were completely adequate.

One commenter (C-12) asserted the "irony" that enforcers would be required to give "more elaborate" notices than the warnings required to people who are exposed to listed chemicals. This is a function of the fact that a clear and reasonable warning under the statute can be provided in concise and direct terms, indeed, must be concise in order to be read in the information-rich consumer environment. A notice of violation, in contrast, requires a variety of more specific information in order to achieve its function under the statute. Compliance with the Proposition 65 requirements is a fundamental part of protecting public health and the environment. Therefore, there needs to be adequate information provided to encourage quick correction of the violation.

One commenter (C-6) objected that the Initial Statement of reasons reference to "dioxin" is inaccurate because the "listed chemical in question is 2,3,7,8 TCDD, which is only one of a number of compounds properly identified as 'dioxins'." The Initial Statement of Reasons actually refers to "'dioxin' (2,3,7,8-tetrachlorodibenzodioxin)[.]" Thus, the objection is not entirely accurate. Nonetheless, the reference has been changed to refer to 2,3,7,8-tetrachlorodibenzodioxin (dioxin).

The Initial Statement of Reasons used "utility pole technicians" as an example of an employee for which description of the occupation or type of task performed would be more appropriate than a description of the location of the worksite. One commenter (C-1) objected to the use of this example on the ground that there is no exposure to Proposition 65 chemicals to utility pole technicians. The example mentioned was intended to be hypothetical, and not to suggest whether there is an exposure to those employees. It was used as an example of a situation in which it would be impractical to designate the location at which each employee is exposed (since there are thousands of them), but where a description of the task performed would clearly inform the alleged violator of the nature of the violation.

One commenter (C-7) objected that the requirement that occupational exposure notices identify the occupation or type of task performed by the exposed persons would be extremely difficult, if not excessively lengthy. This appears to be based on a misunderstanding of the proposed regulation. This language is not a requirement for all occupational exposure notices, but only an alternative for those situations in which description of the occupation or task performed by the exposed persons is simpler, equally informative, and more practical than identifying multiple locations.

The original draft seemed to cause some confusion among commenters (e.g., C-7) concerning the circumstances under which the occupational exposure occurs due to the use of a product sold for use in the workplace. As originally drafted, subsection (b)(2)(E)(ii) could be interpreted to require that notices in such cases meet both the consumer product notice requirements, and all other occupational exposure notice requirements. The text has been modified slightly to make clear that where the occupational exposure is caused by a product used in the workplace, and the provider of the product (rather than the employer), is the alleged violator, identification of the product in a manner that would meet the requirements for a consumer product satisfies the regulation. A description of the location of the exposure is not necessary. If an employer is an alleged violator, however, then the geographic description requirements under subsection (b)(2)(E)(i) also must be satisfied. For example, suppose that a noticing party alleged that a product sold exclusively for occupational use by employees in their workplace resulted in an exposure that required a warning. If the manufacturer of the product were the only alleged violator, then the notice must identify the product properly, but need not identify the locations of the exposure. Such information would not be necessary to enable the alleged violator to understand the nature of the alleged violation. If the employer were an alleged violator, however, the location (or task description) requirement must be satisfied. If manufacturer and employer are both alleged violators, then both requirements must be satisfied.

One commenter (C-3) objected to the requirement that the notice contain "only brief and reasonably clear information" on the ground that these terms are vague and unnecessarily limit the scope of what must be set forth in the notice. The agency agrees that the term "brief" should be removed, since whether the notice can be given in "brief" terms depends on whether the nature of the violations alleged can be expressed briefly. The term "reasonably clear" will be retained, however, because the agency wishes to assure that the regulations are not interpreted in a manner that would require the notice to provide information in a manner that is more precise than necessary to assure that the recipients of the notice are given the proper information.

One commenter (C-2) requested that the name and address of the employer in whose workplace the alleged violation has occurred be included in the notice. Another commenter (C-3) suggested that the term "general geographic location" is vague and requires further definition. Where this term was used concerning occupational exposures, section 12903(b)(2)(E), it has been replaced with the phrase "identification of the facility or workplace." This identification may be through describing the general geographic location, or other information that would identify the workplace, e.g., "the Acme Refinery in Smallsville," or "each Acme Auto Glass replacement store in Los Angeles County." The language does not require identification of the specific location of the exposure within the facility or workplace, e.g., a particular office or piece of equipment.

Where this term, "general geographic location", was used in reference to environmental exposures, it has been replaced with the phrase "the location of the source of the exposure, or where numerous sources of the exposure are alleged, the location need not be stated if the notice identifies each facility or source of exposure by stating those common characteristics that result in the allegedly unlawful exposure in a manner sufficient to distinguish those facilities or sources from others for which no violation is alleged." This language has been added because there are some situations in which the alleged violator operates, owns, or controls a number of facilities with similar characteristics that are alleged to result in exposures requiring a warning. If the nature of the violation can be described with sufficient specificity without reference to the location of each facility, it adds no useful information to require the identification of each location. Moreover, if an alleged violator operates fifty facilities with common characteristics, but a notice of violation states the address of only forty of them, nothing is gained by excluding from the action the ten facilities for which no address was given, but which clearly would be understood from the notice to be subject to the same claim. While the specific street address is the clearest way to identify the facility, it is not required. A noticing party that does not provide an address, however, assumes the burden of providing a description that complies with the regulation. The agency notes that the statute requires notice to the District Attorney of each county in which a violation occurs, thus, regardless of the terms of the notice, it would be valid only as to facilities within those counties for which the District Attorney is given notice.

In addition, in response to a comment (C-6) this reference has been divided into two sentences, and the term "unlawful exposure" has been modified to read "exposure for which a warning allegedly is required". The sentence now reads "The notice shall state whether the exposure for which a warning allegedly is required occurs beyond the property owned or controlled by the alleged violators."

One commenter (C-11) suggested that the phrase "or the category of consumer product or services" and the phrase "of the nature" be deleted from subsection (2)(D). Inclusion of the latter phrase "of the nature" is necessary to assure that the regulation is not interpreted to require identification of the precise items, e.g., the individual cans of paint. The term "category," however, may be too broad, because it may be interpreted as allowing extremely general descriptions such as "paints and coatings," "cosmetics" or other commonly used descriptions of broad categories of products. Accordingly, the term "category" has been deleted, and replaced with the term "specific type." The agency thinks this term will require a somewhat more particular description, e.g., "aerosol spray paint," "typewriter correction fluid," or "paint stripper," without requiring an unnecessarily particular identification of the product.

One commenter (C-7) urged the agency to remove the requirement that the products be described with sufficient specificity to distinguish products for which no violation is alleged from products identified in the notice. This commenter stated that such a requirement would require the noticing party "to investigate the alleged violator's product lines exhaustively in order to distinguish the listed category of products or services from the company's other product or services that may be in compliance with Proposition 65." The language in question, however, would not create any such investigative burden, it simply would require the noticing party to limit the terms of its notice to those products about which it has information to justify alleging a violation. Other products, whether investigated or not, should be left out of the notice.

One commenter (C-4) suggested that a provision be added concerning consumer product notices that would require that it "may not contain any subcategories of products for which there is no good faith basis for alleging a violation." The commenter points out that "overbroad" notices diminish the value of the notice to the prosecutor and the regulated entity. The agency agrees with this view, and discourages private parties from providing overbroad notices. Nonetheless, the specific proposal was not adopted, because it was found to be difficult to define and would create an issue concerning the information available to the noticing party at the time of giving the notice. Two provisions of the proposed regulation already address this issue in part. First, subsection (b)(2)(D) provides that the notice must identify the products that not only identifies the nature of the items, but sufficient "to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged." Thus, if the notice is extremely broad, it may not satisfy this requirement. In addition, subsection (b)(2)(B) provides that the notice must identify the chemical to which exposure is alleged. In order to clarify the application of this provision to consumer products, the final regulation has added a sentence to the end of subsection (b)(2)(D) providing that "[t]he identification of chemical pursuant to subsection (b)(2)(A)(iv) must be provided for each product or service identified in the notice." By requiring that the chemicals in question be identified for each product in the notice, rather than simply setting forth a long list of chemicals that may or may not be contained in some or all of the products identified in the notice, the regulation should make it more difficult to send a notice without a good faith basis for believing that certain specific chemicals are present in each particular product alleged in the notice. Moreover, a private person that proceeded with a civil action without adequate basis could be subject to sanctions under the relevant provisions of the Code of Civil Procedure.

-14-

One commenter (C-6) noted that the notice requirements are more detailed than the requirements for clear and reasonable warnings, and suggests "comparable" rulemaking on that issue. The agency will consider this suggestion, but it is beyond the scope of this rulemaking.

A number of commenters suggested that more specific information should be required where it is available to the noticing party, in that party's possession, or "feasible." (C-4, C-5, C-9) The agency declines to adopt any provision that would vary the notice requirements depending on what is available to or in the possession of the notice party, for two reasons. First, adoption of an "availability" standard would create litigation in any subsequent private action concerning the nature of the information that was available to the noticing party at the time the notice was given. Under such a test, a notice could be found invalid, after months of litigation, not because the information it provided was inadequate, but because it is subsequently discovered that some information that was not in the notice in fact was available when the notice was given. The agency has written the notice requirements so that a defense based on an inadequate notice can be raised and resolved at the outset of any litigation, before substantial resources have been expended, and so that the validity of the notice can be determined from the four corners of the notice itself, with additional information required only as necessary to establish the meaning or vagueness of the text of the notice.

Second, adoption of an "availability" standard would imply that a noticing party is entitled to provide less information in the notice if it has conducted less investigation and therefore has less information available to it or in its possession. A person wishing to bring an enforcement action "in the public interest" has an obligation to obtain enough information to provide an adequate notice before proceeding, and absent such information, should not commence the process. Of course, a concerned citizen may wish to bring a possible violation to the attention of public prosecutors or a business, without possessing the information needed to provide a complete notice of violation under the law. Such an informal notice may be quite valuable and achieve the citizen's objectives, because it may result in a public enforcement action or voluntary correction by the business. Notices that will have the legal effect of allowing private persons to proceed "in the public interest," however, must provide certain basic information.

The agency encourages noticing parties to provide complete information concerning the specific evidence of violation either as part of the notice, or soon thereafter. While such information is not needed to give adequate notice of the nature of the violation, it may be necessary to enable the alleged violator to identify the specific problem and take steps to remedy it immediately. A person seeking to proceed "in the public interest" should take any steps that might help bring a halt to the very violations of which it complains. In addition, a party seeking to recover attorney's fees pursuant to Code of Civil Procedure section 1021.5 must demonstrate a "necessity of private enforcement." A party that withheld information that would have enabled the defendant to remedy the violation upon receipt of the notice, which might have rendered litigation concerning future conduct unnecessary, might not be able to satisfy the court that private enforcement was necessary under the statute.

**Paragraph (b)(3)**

Some notices allege violations that involve two or more of the following categories of exposures: environmental, occupational, and consumer product exposures. This paragraph clarifies that, where more than one category of violations is alleged, the notice requirements for each applicable category must be satisfied.

**Paragraph (b)(4)**

As noted above (see discussion on paragraph (b)(2) on page 7), the proposed regulation is not intended to require that highly technical information be provided, to require disclosure of the evidence by which a violation will be proven, or to otherwise turn the notice requirement into a trap for the unwary. Accordingly, paragraph (b)(4) specifies that the following information need not be provided because, in the agency's view, they are not needed to adequately identify the nature of the alleged violation:

- the specific retail outlet or time or date at which the product which is the subject of the notice was purchased;
- the level of exposure to the chemical in question;
- the specific admissible evidence by which the person will attempt to prove the violation;
- the UPC number, SKU number, model or design number or stock number or more specific identification for notices involving consumer products; or
- the lot, block or other legal description of the property in question, for notices involving geographic areas.

While the above information may be helpful and could be provided in an effort to resolve the matter prior to litigation, it is not legally mandated.

A number of commenters suggested that more specific information concerning products, such as SKU numbers, UPC codes, and copies of labels should be provided in or with the notice. (C-4, C-5, C-9, C-10, C-11) The agency has not adopted this suggestion. This type of information is not necessary to notify the alleged violator or public prosecutors of "the violation which is the subject of the action," which is all that is required by the statute. More general identification of the type of product will give all recipients sufficient information concerning the basic nature of the claim, and those products to which it applies. Identification of specific codes and product numbers would simply increase the possibility that products that clearly fall within a description of the products in question might be excluded from the action simply because the business uses different numbers for them, even though they are similar in all relevant characteristics. For example, a product that is identical in content, but comes in three different size containers (8, 16, and 32 ounces) may have different UPC codes and be considered separate Stock Keeping Units. If the notice adequately stated "Brand X Waterless Hand Cleaner," however, there would be no reason to exclude from the scope of the action different size containers simply because their UPC codes or SKU numbers were not provided.

One commenter (C-7) suggested that the reference in subsection (b)(4)(D) to "consumer" products should be changed to include industrial products, for which occupational exposures may

be alleged. The considerations that justify this provision with respect to consumer products also apply to industrial-use products. Accordingly, the word "consumer" has been deleted, as has the word "the" where it appeared at the end of the sentence.

A number of commenters objected to subsection (b)(4), which specifies certain information that does not need to be in the notice. (C-3, C-4, C-5, C-9, C-10, C-11) The agency has decided to retain this provision, because it is necessary to accomplish one of the objectives of the regulation, which is to provide guidance for businesses and private individuals concerning the notice requirements, both what is necessary and what is not necessary. This also will reduce litigation concerning the validity of notices. Stating certain items that need not be in the notice, where the agency thinks they are not necessary to follow the letter and purpose of the statute, will eliminate disputes in litigation concerning notices that do not include those items.

One commenter (C-6) proposed adding a sentence to subsection (b)(4) providing that it is not an exclusive or complete list of the information that is not required, and that the fact that information is not included in the list of "non-required" information does not mean that it is required. This suggestion was not adopted because it is unnecessary. Only those items required by the terms of the remainder of the regulation are required, and the fact that an item does not appear in the list of "non-required" items would not justify the inference that it is required.

One commenter (C-8) suggested that subsection (b)(4) be revised to include a requirement that sufficient specificity in the notice "should allow the recipient to understand the particular model or variation which is the subject of the notification." This suggestion was not adopted. While the model or variation may be material in some cases, in many it will not be, and slightly different models should not be excluded due to a failure to reference them in the notice. Moreover, in many instances it will not be possible for the noticing party to be aware of slightly different models or formulae used by a manufacturer.

**Subsection (c). Service of Notice.**

The statute provides no guidance concerning the manner of service. However, since the notice has important legal effects, and disputes have arisen concerning the fact of service, it is necessary to adopt regulations that specify the manner of service.

The proposed regulation provides that notices may be served by first class mail or in a manner which meets the provisions for service of a summons and complaint under the California Code of Civil Procedure.

In order that the parties receiving the notice can determine that the service requirements have been met, a service certificate is required. This should not be burdensome to persons giving notice, because ordinary prudence suggests that such documentation should be prepared in the event of a later dispute over the fact of service.

The provision in paragraph (c)(3) concerning the persons served is intended simply to track the statute. Two issues have arisen concerning these requirements. First, in some instances, parties

have sued concerning sales of a consumer product throughout the entire state, while giving notice only to one or a few district attorneys. With respect to a consumer product, the "violation occurs" wherever the product is used in a manner that creates an exposure without a warning, or where it is purchased. Thus, a notice confers the right to sue under Proposition 65 only as to violations occurring within each county for which the district attorney was notified.

Second, the statute requires notice to "any city attorney in whose jurisdiction the violation is alleged to occur." In this context, the term "city attorney" means only those city attorneys specifically authorized to bring suits by Health and Safety Code section 25249.7(c), i.e., "any city attorney of a city having a population in excess of 750,000." Although the statute allows a "city prosecutor" to sue with the consent of the district attorney, the notice is required to be served only on a "city attorney," not any city prosecutor. Moreover, since only the specified city attorneys have an unqualified right to sue, there is no point in requiring service of the notice on other city attorneys who lack legal authority to take action on the notice. Since the district attorney will receive the notice, and the ability of other city prosecutors relies on the consent of the district attorney, notice to the district attorney satisfies the statute.

One commenter (C-9) objected that service by first class mail should not be permitted to assure that prompt and timely notice is given. The agency has not adopted this recommendation. The agency, in the informal draft circulated in the fall of 1995, proposed requiring the notices to be served in the same manner as a summons and complaint in a civil action. After reviewing comments on that proposal and considering the matter, however, the agency concluded that postage pre-paid first class mail, with a contemporaneously prepared certificate of service, and the allowance of additional time (five, ten, or twenty days) to account for mailing time, is sufficient to assure prompt and timely service.

Another commenter (C-9) suggested that the notice should be addressed to the chief executive officer, chief legal officer, or agent for service of process of the business entity, because failure to do so can delay receipt of the notice by responsible officers. At the same time, for many businesses, there is no publicly available list of corporate officials. Accordingly, the agency has added a provision stating that where an entity has a current registration with the California Secretary of State that identifies a Chief Executive Officer, President, or General Counsel of the corporation, the notice shall be addressed to that person.

One commenter (C-2) suggested that the regulation require that notices alleging occupational exposures be served on the California Division of Occupational Safety and Health (Cal-OSHA), since Cal-OSHA regulations incorporate Proposition 65 requirements and can be enforced by Cal-OSHA. The statute requires that notice be served on the alleged violator and the specified public enforcement officials, and the agency does not have the authority to require that it be served on other parties. Of course, either a noticing party or a party receiving a notice may send the notice to Cal-OSHA if it wishes to encourage Cal-OSHA to become involved in the enforcement process with respect to the alleged violations.

**Subsection (d). Computation of Time.**

-18-

The statute does not establish specific provisions for the computation of time. To provide greater certainty to all participants in the process, subsection (d) specifies that time is computed essentially as it would be in civil litigation.

First, it provides that the sixty days runs from the date of service as calculated under Code of Civil Procedure section 1013, and in paragraph (d)(3), that the first and last day are calculated as provided under section 12 of the Code of Civil Procedure. Thus, where a notice is served by hand, the first day of the sixty day period is the next day. Where it is served by first class mail within the State of California, there is a five-day extension, an additional ten days within the United States, etc., as provided in the referenced code sections.

In some instances, the sixtieth day after service of the notice may fall on a legal holiday. To assure that the law enforcement agencies are not under any circumstances deprived of the full sixty-day period to determine whether to take action without any possibility of a citizen suit being filed first, the regulation (specifically paragraph (d)(2)), would extend the sixty-day period where the sixtieth day falls on a legal holiday. It is necessary to specify this because it is not clear that Code of Civil Procedure section 12a would apply here. That code section applies wherever "the last day for the performance of any act provided or required by law to be performed within a specified period of time" falls on a defined legal holiday. Under Proposition 65, the sixtieth day is not the last day on which a prosecutor may file suit; it is simply the final day of the waiting period before which a private party may sue. Indeed, a private suit would be barred any time the public prosecutor commenced an action first, even if it occurred substantially after the expiration of the sixty day period. To avoid any dispute over this issue, the regulation would provide that there is an extension wherever the sixtieth day is a legal holiday.

OEHHA notes that "legal holiday" under this provision is defined in a manner that includes all Saturdays, all Sundays and other specified holidays. It also defines holidays to include a day on which any government office is closed "insofar as the business of that office is concerned." As applied to this situation, this would mean that any day upon which the office of the district attorney that files the suit, the office of the Attorney General, or the court in which the action is filed, are closed, is a legal holiday.

One commenter (C-12) objected that the provision of subsection (d)(2), is beyond the agency's authority because it improperly extends the sixty-day period under the statute, and does not eliminate any uncertainty or ambiguity. The agency disagrees. A number of statutes specifically provide a manner of computing time under various circumstances, which suggests that such time-computing provisions can be considered ambiguous. In addition, in this instance, the regulation takes only the modest step of assuring that the time is not computed in a manner that actually could deprive the public prosecutors of having the full sixty days to act on the notice.

**Appendix A**

Subsection (b)(1) of the proposed regulation requires that general information regarding Proposition 65 in the form of an attachment entitled, "The Safe Drinking Water and Toxic

-19-

Enforcement Act of 1986 (Proposition 65): A Summary," accompany the notice. Appendix A provides the text of that attachment.

Appendix A provides basic information about Proposition 65 by summarizing the provisions of the statute, with references to certain provisions found in regulations (e.g., clarification on what constitutes a "clear and reasonable" warning, the definition of "no significant risk" and reference to information and procedural requirements governing notices of violations). This summary is intended to furnish the recipient of a notice with background information about the law that it is alleged to have violated.

Exhibit 8



**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA 94612-0550

Public:   (510) 622-2100
Telephone:   (510) 622-2183
Facsimile:   (510) 622-2270
E-Mail: Harrison.Pollak@doj.ca.gov

October 30, 2008

The Honorable Presiding Justice Ignazio Ruvolo
  and the Associate Justices
Court of Appeal, First District, Fourth Division
350 McAllister Street
San Francisco, California 94102-3600

RE:   *Urban Outfitters, Inc. and Urban Outfitters West LLC v. Alameda County Superior Court*
      <u>California Court of Appeal, First District Case No. A122860</u>

Dear Presiding Justice Ruvolo and Associate Justices,

     The Attorney General submits this response to the referenced petition for writ of mandate ("Petition") pursuant to the Court's orders dated October 9 and October 23, 2008.  We thank the Court for this opportunity to respond.

## I.    INTRODUCTION

     Petitioners, Urban Outfitters, Inc. and Urban Outfitters West LLC ("Petitioners"), challenge an order by the trial court compelling discovery in a Proposition 65 case that Real Party in Interest, Center for Environmental Health ("CEH"), is prosecuting under Proposition 65's private enforcement provision.  (Health & Saf. Code, § 25249.7, subd. (d).)[1]  The Attorney General takes no position on whether the trial court erred in granting the discovery motion.  We ask, however, that if the Court grants the writ and rules in a manner that limits discovery, the Court distinguish this case from an action that a public enforcer brings in the name of the People of the State of California to enforce Proposition 65, since public enforcers are not subject to the 60-day notice requirement that gives rise to this dispute.  (Compare § 25249.7, subd. (c) to § 25249.7, subd. (d)(1).)

     In this letter brief, we address an issue that the Court may not reach, but that is central to Petitioners' claim.  The gravamen of Petitioners' argument is that the 60-day notice that CEH provided as a prerequisite to filing this Proposition 65 private enforcement action – and thus, the

---

     [1]"Proposition 65" is the commonly-used name for the Safe Drinking Water and Toxic Enforcement Act of 1986, which is codified at Health and Safety Code sections 25249.5 *et seq.* Throughout this letter brief, unless otherwise noted, references to statutory sections are to the Health and Safety Code.

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 2

complaint – does not encompass all "jewelry," as it purports to do.  Instead, the notice is limited to the single exemplar of Petitioners' jewelry that the 60-day notice lists – the so-called "Skull Ring." (Petition, p. 3.)  While we agree that the 60-day notice does not encompass all jewelry, we do not agree that it is limited to the Skull Ring.  Properly construed, the 60-day notice applies to all of Petitioners' jewelry that, based on the totality of information in the 60-day notice, a reasonable person would understand allegedly requires a warning under Proposition 65.

We also address an issue that should not be intertwined with whether CEH adequately described the product at issue in the 60-day notice.  The separate issue is what evidence CEH has to support the allegation that jewelry Petitioners sell besides the Skull Ring requires a warning.  CEH must have enough evidence to "establish the basis" for its belief that the allegation has merit. (Health & Saf. Code, § 25249.7, subd. (d)(1).)  The extent of a plaintiff's evidence when it sends a 60-day notice does not control whether the notice properly identifies the type of product that the notice covers.

## II.   ARGUMENT

### A.   The 60-Day Notice is a Prerequisite to Filing a Private Action to Enforce Proposition 65.

Private parties have the authority to enforce Proposition 65, but only if they provide at least 60 days notice of the violation to the alleged violator, to the Attorney General, and to other public prosecutors.  (§ 25249.7, subd. (d)(1).)[2]  In actions to enforce the Proposition 65 warning requirement (§ 25249.6), the notice must contain a certificate of merit, in which the attorney for the noticing party must certify that he or she has consulted with someone with "relevant and appropriate experience or expertise," and that based on the consultation, the attorney believes that there is a reasonable and meritorious case for the private action.  (§ 25249.7, subd. (d)(1).)  The noticing party also must submit underlying information "sufficient to establish the basis of the certificate" to the Attorney General.  (*Id.*)

The 60-day notice is a prerequisite to any lawsuit that a private citizen brings to enforce Proposition 65.  (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* ("*Kintetsu II*") (2007) 150 Cal.App.4th 953, 963; *Yeroushalmi v. Miramar Sheraton* ("*Miramar*") (2001) 88 Cal.App.4th 738, 748, fn. 8.)  Courts dismiss actions where the notices do not meet applicable requirements.  (See, e.g., *Consumer Defense Group v. Rental Housing Industry Members* (2006) 137 Cal.App.4th 1185, 1221 ("*Rental Housing*"); *DiPirro v. American Isuzu Motors, Inc.* ("*Isuzu Motors*") (2004) 119 Cal.App.4th 966, 972; *Miramar*, 88 Cal.App.4th at pp. 748-50.)

---

[2]A second condition placed on private parties is that they may pursue a private action only if the Attorney General or other public prosecutor has not commenced, and is not diligently prosecuting, an action against the violation.  (§ 25249.7, subd. (d)(2).)

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 3

The 60-day notice requirements serve several important purposes. A 60-day notice provides the public prosecutor the means to assess whether to intervene on behalf of the public, and it affords the accused the opportunity to forestall litigation by settling with the plaintiff or by curing any violation. (*Kintetsu II*, 150 Cal.App.4th at pp. 963-64.) The Office of Environmental Health Hazard Assessment ("OEHHA"), which adopted regulations to implement Proposition 65, also noted that the notice requirement ensures that the private enforcer's ability to proceed in the public interest and to seek civil penalties "is not to be taken lightly." (Petition, Exh. 8, p 188 (Final Statement of Reasons).)

**B.     The 60-Day Notice Must Provide Sufficient Information to Assess the Nature of the Alleged Violation.**

OEHHA has promulgated a regulation that sets forth the required contents of a 60-day notice. (Cal. Code Regs., tit. 27, § 25903, subd. (a) [former tit. 22, § 12903, subd. (a)].)[3] A notice must satisfy the requirements of section 25903 to be valid. (*Id.*; *Kintetsu II*, 150 Cal.App.4th at p. 966.)

The regulation instructs that a 60-notice shall provide "adequate information from which to allow the recipient to assess the nature of the alleged violation." (Cal. Code Regs., § 25903, tit. 27, subd. (b)(2).) The information must be "reasonably clear," and "expressed in terms of common usage and understanding." (*Id.*) In its Final Statement of Reasons, OEHHA explained that the term "reasonably clear" ensures that the regulation is not interpreted to require that the notice is "more precise than necessary to assure that the recipients of the notice are given the proper information." (Petition, Exh. 8, p. 198.)

Sixty-day notices that allege failure to provide a clear and reasonable warning must identify the noticing party and the names of the alleged violators, the approximate time period when the violations occurred, the name of each listed chemical involved in the violation, and the route of exposure by which exposure is alleged to occur. (Cal. Code Regs., tit. 27, § 25903, subds. (b)(2)(A), (C).) Where the alleged violation involves a consumer product, the notice also must identify the product. (*Id.*, subd. (D).) The specificity with which it must identify the product lies at the heart of this dispute.

---

[3]On June 18, 2008, the Proposition 65 regulations were moved from title 22 to title 27 of the Code of Regulations. Most of the regulations, including the former section 12903, were renumbered from 12xxx to 25xxx. In this letter brief, we refer to section 25903 by its new section number, but it is the same regulation as the former section 12903. A chart with the renumbered regulations is available at www.oehha.ca.gov/prop65/pdf/title22to27.pdf.

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 4

     **C.**     **A 60-day Notice that Alleges Violations of Proposition 65 Based on a Consumer Product Must Identify the Product With Sufficient Detail to Inform a Reasonable Person Which Types of Product Allegedly Require a Warning.**

The issue of how much information a 60-day notice must provide about a consumer product being sold in violation of Proposition 65 has been one of the most problematic in evaluating notices. (See Petition, Exh. 8, p. 195 (Final Statement of Reasons).) Section 25903 provides some guidance, but it does not establish a bright-line test. The regulation states that the 60-day notice shall identify the product as follows:

> For notices of violation of Section 25249.6 of the Act involving consumer product exposures, the name of the consumer product or service, or the specific type of consumer product or services, that cause the violation, with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged.

(Cal. Code Regs., § 25903, subd. (b)(2)(D).)

There are thus three components to evaluating the product description in a 60-day notice. First, the notice must adequately identify "the consumer product. . . or the specific type of consumer product." Second, the notice must inform the recipients of the nature of the items. The recipients include the Attorney General and other public prosecutors, as well as the alleged violator. (§ 25249.7, subd. (d)(1).) Third, the notice must allow the recipients to distinguish between products that allegedly are in violation of the Proposition 65 warning requirement and those that are not. (*Kintetsu II*, 150 Cal.App.4th at p. 966.) The second and third components of the product description requirement relate back to the underlying purposes of the 60-day notice: to give notice recipients an opportunity to assess the allegations, and to allow the alleged violators to cure the violation. (*Id.* at pp. 963-64.)

Something that is *not* required of a 60-day notice is that it identify each specific unit or item within a product type. Otherwise the distinction in the quoted part of section 25903 between the "name of the consumer product" and the "specific type of consumer product," both of which are allowed, would have no meaning. By way of illustration, in the Final Statement of Reasons, OEHHA explains that, because "aerosol spray paint" adequately describes spray paint, it would not be necessary to list in the 60-day notice every shade of spray paint that the notice covers. (Petition, Exh. 8, p. 195.) Other examples of sufficiently narrow categories are "car wax" and "paint thinner." (*Id.*) OEHHA further explains that allowing the noticing party to inform recipients *of the nature* of the items that allegedly cause the violations allows for some use of categories. According to OEHHA, "[i]nclusion of the phrase 'of the nature' is necessary to assure that the regulation is not interpreted to require identification of the precise items, e.g., the individual cans of paint." (*Id.* at p.

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 5

199.)  The regulation itself recognizes that the noticing party does not need to provide a UPC number, SKU number, model or design number, stock number, or other more specific identification of products, to sufficiently inform the recipients which types of product are subject to the notice. (Cal. Code Regs., tit. 27, § 25903, subd. (b)(4)(D).)

That is not to say that every product category provides sufficient detail about an alleged violation.  In fact, OEHHA rejected as too broad the term "category" in this section of the regulation – as in, the notice must describe the *category* of consumer product.  (Petition, Exh. 8, p. 199 (Final Statement of Reasons).)  The agency explained that using the term "category" may be interpreted to allow "extremely general descriptions such as 'paints and coatings,' cosmetics' or other commonly used descriptions of broad categories of products." (*Id.*)  Instead of "category," OEHHA used "specific type," which it felt would "require a somewhat more particular description, e.g., 'aerosol spray paint,' 'typewriter correction fluid,' or 'paint stripper,' without requiring an unnecessarily particular identification of the product." (*Id.*)

The question, then, is how much specificity is required to identify a "specific type of consumer product" (Cal. Code Regs., tit. 27, § 25903, subd. (b)(2)(D)) in a manner that complies with the statutory requirement to provide "notice of the alleged violation" (§ 25249.7, subd. (d)(1))?  The *Kintetsu II* Court faced this question when it considered notices directed at a variety of tobacco products sold in hotels and then smoked at various locations on the premises.  (*Kintetsu II*, 150 Cal.App.4th at p. 970.)  The court upheld notices that specified "cigars," presumably because cigars are a readily identifiable product distinct from other types of tobacco products.  (*Id.*; see also *Miramar*, 88 Cal.App.4th at p. 746 [treating "cigar" as an adequate description of the product type].)  But the *Kintetsu II* Court found notices invalid where they simply identified "tobacco products," reasoning that "'tobacco products' encompasses a wide variety of products and therefore does not give the [alleged violator] sufficient notice because it is impossible to discern which product [the plaintiff] alleges was sold in violation of the required warnings." (*Kintetsu II*, 150 Cal.App.4th at p. 970.)

Any articulation of a rule must serve the two essential purposes of the notice, i.e., to provide public officials and alleged violators sufficient information to assess the allegations, and to allow the alleged violator to cure the violation.  That means that the product description must give enough information for the notice recipient to conduct a meaningful investigation into the allegations.  If the notice alleges violations based on products that are so dissimilar in function or in composition, or if it alleges violations based on the presence of a long list of chemicals, then the recipient may not know where even to begin the investigation, making meaningful review impossible.  (See *Rental Housing*, 137 Cal.App.4th at p. 1212.)  But if the notice identifies a commonly-understood type of product that allegedly triggers the Proposition 65 warning requirement based on similar exposures, the recipient can use the information to conduct an investigation.  The notice would comply with OEHHA's mandate that the notice be "reasonably clear," and "expressed in terms of common usage and understanding." (Cal. Code Regs., tit. 27, § 25903, subd. (b)(2).)  The appropriate test is whether the entirety of the 60-day notice informs a reasonable person the types of product to which the notice applies.

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 6

As discussed in the next section, defining the product category merely as "jewelry," without supplying specific examples of jewelry subject to the notice or including additional information about the alleged violations, would not provide an adequate product description. In this case, however, CEH did both.

**D.      Petitioners Could Determine from CEH's 60-Notice the "Specific Type of Product" That Allegedly Requires a Clear and Reasonable Warning to Comply with Proposition 65.**

According to the Petitioners, the 60-day notice they received from CEH applies only to the Skull Ring. Petitioners claim that "the Notice is, on its face, too vague to cover anything but the specifically identified exemplar." (Petition, p. 38.) But Petitioners disregard additional information in the 60-day notice that can assist in their investigation. We believe the notice provides sufficient information to allow the recipient to determine which of its jewelry allegedly requires a warning, and which jewelry does not.

In the first place, while the 60-day notice to Petitioners identifies a single ring that Petitioners sold, the ring is part of a list of 23 "non-exclusive" examples of jewelry subject to the notice. (Petition, Exh. 7, pp. 167-168 (Notice of Violation).) The list contains rings, necklaces, earrings, bracelets, pearl beads, and hair clips. (*Id.*) Petitioners therefore are correct when they observe that the term "'jewelry'. . . could mean earrings, it could mean necklaces, or it could mean something as far fetched as a hair accessory." (Petition, p. 38.) By providing Petitioners with a list of examples of what it means by "jewelry," CEH left no doubt that the term applies to items beyond the Skull Ring.

Furthermore, the 60-day notice that Petitioners received does not simply say that all "jewelry" requires a warning. The notice explains that the jewelry causing the violations "is made of and contains Lead." (NOV, Petition, Exh. 7, p. 163.) The notice then describes where the lead is found, albeit this task is made difficult by the fact that the lead appears to be ubiquitous. The notice states that lead is contained in "the metallic and non-metallic parts of the jewelry," and that "non-metallic cords of bracelets and necklaces contain Lead, as does the pearl coating on imitation pearls and the metallic components such as beads, pendants, clasps, posts and other components of the jewelry." (*Id.*) This information informs a reasonable person receiving the notice that jewelry made with lead-containing materials allegedly requires a warning, which, in turn, allows the recipient to look further into the matter.

Petitioners contend that the 60-day notice must inform them "with certainty" which pieces of jewelry allegedly require a warning. (Petition, p. 38.) But CEH does not need to provide them with a comprehensive list at the notice stage. The notice is supposed to trigger an investigation, not obviate the need for one. Here, there is enough information to distinguish between jewelry with lead and other products that Petitioners sell, such as jewelry without lead, shoes, clothing, and other accessories that are not jewelry. (See *Kintetsu II*, 150 Cal.App.4th at p. 970 [upholding notice where "[t]he recipient of the notice may distinguish cigars from other products it sold"].) The 60-

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 7

day notice alleges that the jewelry with lead requires a warning. It makes no allegation concerning the other products. Upon receiving such a notice, it would be reasonable for Petitioners to request additional information about their jewelry from suppliers, or take samples from their shelves for testing. They also could glean information about likely sources of lead in jewelry from California's ban on lead-containing jewelry. (§§ 25214.1 *et seq.*)[4] While CEH ultimately will have to prove that Petitioner "knowingly and intentionally" caused each exposure to lead without a warning (§ 25249.6), that does not place the burden on CEH to identify every alleged violation without the alleged violator having to conducts its own investigation.

The notice to Petitioners stands in marked contrast to the 60-day notices that the Court rejected in *Rental Housing, supra*, 137 Cal.App.4th 1185. *Rental Housing* involved settlements between a "front corporation prosecuting the private enforcement action on behalf of a law firm who consist of self-proclaimed bounty hunters" and a trade group representing apartment owners and managers. (*Id.* at p. 1189.) The *Rental Housing* settlements purported to resolve and to release the defendants for alleged Proposition 65 violations occurring at over 1,000 apartment complexes from exposures to dozens of chemicals, where some of the exposures were "'so unlikely as to be virtually imaginary.'" (*Id.* at pp. 1190, 1211 [quoting the Attorney General].) The 60-day notices targeted exposures to chemicals found in second-hand smoke, combustion materials, hobby-related materials, construction materials, potable water systems, paints, finishes, coatings, furniture, furnishings, window treatments, brass hardware, metal surfaces, electrical wiring, natural gas, liquid fuel, and fuel oil combustion, automobile parking facilities, designated loading/unloading locations, transportation services, apartment cleaning and maintenance, exterior and common areas cleaning and maintenance, landscaping maintenance and pesticides, electronic equipment and associated cables, and office supplies and equipment. (*Id.* at 1192-97.) The exposures were alleged to occur in or around swimming pools, jacuzzis, hot tubs, exercise facilities, indoor clubhouses, meeting rooms and other indoor common areas, laundry rooms, public restrooms, food and beverage service operations, areas with alcoholic beverages, salons, areas around emergency generators, maintenance shops or areas, and dry-clean facilities. (*Id.* at 1197-99.) In the Court's view, these allegations were "so broad as to be, literally meaningless." (*Id.* at p. 1211.) The notices "utterly fail[ed] the requirement that they identify each facility or source of exposure in a manner sufficient to *distinguish* those facilities or sources from others for which no violation is alleged." (*Id.* (emphasis in original).)

---

[4]California enacted a ban on lead-containing jewelry a month before Petitioners received the 60-day notice. (Assem. Bill No. 1681 (2005-2006 Reg. Sess.) [Health & Saf. Code, §§ 25214.1 *et seq.*].) The statute defines jewelry as "[a]ny of the following ornaments worn by a person," and any "bead, chain, link, pendant, or other component" of such an ornament. (§ 25214.1, subd. (j).) The listed ornaments are an anklet, arm cuff, bracelet, brooch, chain, crown, cuff link, decorated hair accessories, earring, necklace, pin, ring, and body piercing jewelry. (*Id.*) The statute sets standards for the amount of lead that can be in certain materials used to make jewelry. (§§ 25214.1, 25214.2.) As companies doing business in California, Petitioners are presumed to know the law. (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1506.)

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 8

The *Rental Housing* Court invited readers to put themselves into the shoes of the public prosecutor charged with reviewing whether to commence litigation based on these notices: "[i]f all the notice conveys is that-well, it's a building with paint, furniture and a parking lot – or if the notice is so much shotgun boilerplate covering every carcinogenic molecule currently known – then meaningful review is impossible." (*Id.* at p. 1212.) In the Court's view, the notices did not differentiate the subject properties "from pretty much everything else in the world." (*Id.* at p. 1213.)

The *Rental Housing* Court's rejection of the 60-day notices sheds light on why CEH's notice to Petitioners about lead in jewelry is valid. The notice lists a single product category (jewelry), it provides a list of 23 examples of jewelry subject to the notice, it alleges exposure to a single chemical (lead), and it explains where the lead is found. (Petition, Exh. 7, pp. 163-68 (Notice of Violation).) Unlike the "fact-bereft boilerplate" in the *Rental Housing* notices (*Rental Housing*, 137 Cal.App.4th at p. 1211 (quoting *Miramar*, 88 Cal.App.4th at p. 750)), the information in the jewelry notice allows the public prosecutor, and the company, to investigate further. Equipped with the information in the notice, a reasonable notice recipient can identify in Petitioners' stores or catalogues the type of product that the notice targets and obtain samples for testing, or request additional information from suppliers and manufacturers to help determine which jewelry contains lead and thus, according to the notice, requires a warning.

In sum, the information in CEH's 60-day notice allows Petitioners, and public prosecutors reasonably to determine which jewelry sold by Petitioners allegedly requires a warning to comply with Proposition 65. The fact that they may need to conduct an additional investigation does not render the 60-day notice invalid.

>    **E.     Whether CEH Has Sufficient Evidence to Support the 60-Day Notice Is a Separate Issue From Whether the Notice, on its Face, Makes Reasonably Clear What Types of Product it Covers.**

Petitioners correctly observe that "a Proposition 65 Plaintiff cannot serve a broad Notice of Violation in the hopes of finding some alleged violation that might 'turn up' in discovery." (Petition, p. 41.) It is true that courts do not allow "a sweeping notice to be based on 'conjectures' or 'unverified probabilities' rather than 'hard evidence.'" (*Id.* p. 37 (citing *Rental Housing*, 137 Cal.App.4th at pp. 1211-12).) But that does not mean that the private plaintiff must identify every item that fits within a properly-described product category before serving the 60-day notice. Whether the notice adequately describes the product that allegedly requires a warning, and whether there is sufficient evidence to support the allegation, are distinct issues. (See *Kintetsu II, supra*, 150 Cal.App.4th at p. 967 ["[t]he adequacy of the notice and of the investigation are separate issues].")

The certificate of merit that accompanies a private enforcer's 60-day notice must state that

> the person executing the certificate has consulted with one or more
> persons with relevant and appropriate experience or expertise who has
> reviewed facts, studies, or other data regarding the exposure . . . and

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 9

> that, based on that information, the person executing the certificate
> believes there is a reasonable and meritorious case for the private
> action.

(§ 25249.7, subd. (d)(1).)  Factual information sufficient to establish "the basis of the certificate of merit" must be attached to the copy of the certificate of merit that is served on the Attorney General. (*Id.*)  The certifier must have a basis to conclude that there is merit "to each element of the action on which the plaintiff will have the burden of proof."  (Cal. Code Regs., tit. 11, § 3101.)  The factual information must include sufficient "facts, studies, or other data" to support the alleged violation. (*Id.*, § 3102, subd. (c)(1).)

This requirement ensures that a private enforcer has enough evidence to provide a basis for the belief that there is a reasonable and meritorious case.  It does not require the plaintiff to have all of the evidence ahead of time.  The discussion in *Rental Housing* about "unverified probabilities" that Petitioners cite is thus distinguishable.  (Petition, p. 37)  The allegations in the *Rental Housing* notices covered such a vast array of alleged violations, the Court concluded that the private plaintiff could not possibly have gathered evidentiary support for each allegation:

> For example, [the notices] allege no facts that any specific tenants are
> engaged in arts and crafts using ceramic glazes made by specific
> manufacturers, or any specific apartments have roofs that are known,
> for certain, to contain asbestos, or have water fixtures made of brass,
> or are painted with certain brands of aerosol primers, or contain
> carpets which are known for certain to include certain "foams," or are
> cleaned with certain brands of carpet steam cleaner or have tile
> polished with floor polishes containing silica, or have their grounds
> maintained with mineral-based fertilizers or even have photocopy
> machines that use toner containing "carbon black respirable sized
> aerosols."  No, it's all a matter of probabilities – the theory is that
> somewhere among [plaintiff's] targets there's just gotta be an
> apartment that fits one of those descriptions.

(*Rental Housing*, 137 Cal.App.4th at p. 1212.)

Petitioners equate these unsupported contentions to CEH's purported belief that "just because one piece of jewelry (an earring) may contain lead, another different piece of jewelry (a hair accessory) must also contain lead," but they are different.  (Petition, p. 39.)  On the face of CEH's jewelry notices, it is clear that CEH did more than simply "go to the internet and find some common objects (e.g., furniture, paper, carpeting) which *may* 'contain' a substance on the regulatory carcinogen list," which is how the Court characterized the plaintiff's investigation in *Rental Housing*.  (*Rental Housing*, 137 Cal.App.4th at p. 1215 (emphasis in original).)  At a minimum, CEH obtained and found lead in 23 different pieces of jewelry, made with many different materials. In fact, as Petitioners note, CEH has sued more than 200 companies for selling lead-containing

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 10

jewelry without a warning. (Petition, p. 19.)  In 60-day notices to each company, CEH identified specific examples of jewelry with lead, indicating that CEH has tested literally hundreds of different pieces of jewelry.[5]  While CEH only may have confirmed with testing that there is lead in one piece of jewelry that Petitioners sell, its extensive work in this area appears to provide a reasonable basis for concluding that other jewelry Petitioners sell also contains lead.

While a private plaintiff does not need to have evidence for each item that falls within a properly-described and supported category when it send the 60-day notice, that is not to say that it needs *no* evidence.  A private plaintiff's evidentiary support for a 60-day notice is subject to review throughout the course of the litigation.  It falls to the Attorney General to evaluate in the first instance whether there is sufficient evidentiary support for the notice. (§ 25249.7, subd. (d)(1).)  If the Attorney General concludes that there is not sufficient evidence, then it may contact the noticing party, although, with limited exceptions, the Attorney General must keep the information confidential. (§ 25249.7, subd. (i); Cal. Code Regs., tit. 11, § 3103, subd. (b).)[6]  Thus, if CEH had sent only one jewelry notice, to one company, alleging that jewelry with lead requires a warning, and submitted to the Attorney General test results of only one ring, the Attorney General might have concluded that the evidence did not provide a reasonable basis for the broad product description.  In that case, the Attorney General could have informed CEH not to commence an action. (Cal. Code Regs., tit. 11, § 3103, subd. (a).)  As the Court recognized in *Isuzu Motors, supra*, requiring would-be private enforcers to provide evidence to the Attorney General in support of the allegations in the 60-day notice "increases the Attorney General's understanding of the claim's likelihood of success, allowing that office to focus its efforts to discourage filing of the truly frivolous." (*DiPirro v. American Isuzu Motors, Inc.*, 119 Cal.App. 4th at p. 792.)

Once litigation commences, the defendants will have an opportunity through discovery to determine what evidence supports the plaintiff's contentions, and to challenge the sufficiency of the evidence at trial or through motion practice.

The courts also have an opportunity to review the private plaintiff's evidence.  Upon the conclusion of an action where the court determines there was no actual or threatened exposure to a listed chemical, the court can review the factual basis for the certificate of merit and, if appropriate, order sanctions. (§ 25249.7, subd. (h)(2).)  Or if a case settles, the court can (and should) review the evidence of the alleged violations to determine whether the award of attorney's fees and the penalty amount are reasonable, as it must to approve a private settlement. (§ 25249.7, subd. (f)(4).)  If it appears that the private plaintiff sent a notice about a broad category for which it had insufficient evidence, or if there is scant evidence to demonstrate that the proposed settlement resolves actual violations, then there would be little or no public benefit justifying a fee award. (See Cal. Code

---

[5]Sixty-day notices are posted on the Attorney General's website, at www.caag.state.ca.us/prop65/.

[6]No inferences shall be drawn where the Attorney General makes no response concerning a certificate of merit. (*Id.*, § 3103, subd. (c).)

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 11

Regs., tit. 11, § 3201, subd. (b)(1) ["[i]f there is no evidence of an exposure for which a warning plausibly is required, there is no public benefit, even if a warning is given"].) The court could instruct the parties to limit the scope of the relief, including attorneys fees, if the only public benefit has been to remedy violations based upon sales of the Skull Ring.

> **F.  Any Discussion About the Requirements for a 60-Day Notice, or the Relationship Between 60-Day Notices and Subsequent Litigation, Should Distinguish Between Private and a Public Actions to Enforce Proposition 65, Because Public Enforcers Are Not Required to Send a 60-Day Notice.**

Our last point is an important one if the Court rules on the scope of CEH's notice, or on the relationship between the notice and discovery. Enforcement actions may be brought under Proposition 65 "in the name of the people of the State of California" only by the Attorney General, by District Attorneys, and by certain city attorneys. (§ 25249.7, subd. (c).) Public enforcers do not need to send a 60-day notice before initiating an enforcement action. (*Id.*) Therefore, when a public enforcer files an action to enforce Proposition 65, it must satisfy the mandate of due process to provide "formal notice of potential liability," but the public enforcer is not required to comply with the statutory and regulatory requirements for a 60-day notice. (See *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.)

By contrast, private enforcers bring Proposition 65 actions "in the public interest," not "in the name of the people." (§ 25249.7, subd. (d).) In order to assume of mantle of suing in the public interest, the private enforcer must send a 60-day notice that complies with the regulatory requirements for the notice. (Cal. Code Regs., § 25903, subd. (a); *Miramar, supra,* 88 Cal.App.4th 738, 748, fn. 8.) Applying these procedural requirements to private plaintiffs is important to address the concern noted by our Supreme Court that private rights of action not result in "an explosion of assertedly unwarranted or unduly burdensome individual lawsuits brought by professional plaintiffs and bounty-hunting attorneys against business establishments." (*Angelucci v. Century City Supper Club* (2007) 40 Cal.4th 160, 178, fn. 10 [specifically noting such concerns about Proposition 65, and noting limitations on private Unfair Competition Law actions adopted by the voters].)

Therefore, any discussion about the requirements for a 60-day notice, and the implications of the 60-day notice on the rest of the litigation, would apply only to a Proposition 65 action that a private enforcer brings. We ask the Court to make this distinction if it reaches the issue of the adequacy, or effect of, CEH's 60-day notice to Petitioners.

## III.  CONCLUSION

In sum, the product description in a 60-day notice is sufficiently clear if it informs a reasonable person what specific types of a product allegedly require a warning to comply with Proposition 65. The 60-day notice in this case potentially encompasses a broad spectrum of jewelry

Presiding Justice Ruvolo and Associate Justices
October 30, 2008
Page 12

with lead, but information in the notice allows the recipients to assess the allegations and, if
necessary, to cure the alleged violations.  Whether CEH has sufficient evidence to establish the
basis for its allegations is a separate inquiry.

                              Respectfully submitted,

                              HARRISON M. POLLAK
                              Deputy Attorney General

                    For     EDMUND G. BROWN JR.
                            Attorney General

HMP:al

Exhibit 9

CIV-130

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** STATE BAR NUMBER:<br>NAME:  Willis M. Wagner (SBN 310900); Rica Santos (SBN 328826)<br>FIRM NAME:  Arnold & Porter Kaye Scholer<br>STREET ADDRESS:  Three Embarcadero Center, Tenth Floor<br>CITY:  San Francisco   STATE: CA   ZIP CODE: 94111<br>TELEPHONE NO.: (415) 471-3100   FAX NO.: (415) 471-3400<br>EMAIL ADDRESS:  will.wagner@arnoldporter.com; rica.santos@arnoldporter.com<br>ATTORNEY FOR *(name)*:  Santa Maura Spice and Garlic Co., Inc. | ***FOR COURT USE ONLY***<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>4/02/2024 12:00 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Lopez, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles

STREET ADDRESS: 111 N Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles, 90012

BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Consumer Advocacy Group, Inc.

DEFENDANT/RESPONDENT: Santa Maura Spice and Garlic Co., Inc., et al.

| | |
|---|---|
| **NOTICE OF ENTRY OF JUDGMENT<br>OR ORDER**<br><br>*(Check one):*   [x] **UNLIMITED CASE**<br>(Amount demanded<br>exceeded $35,000)      [ ] **LIMITED CASE**<br>(Amount demanded was<br>$35,000 or less) | CASE NUMBER:<br>19STCV18754 |

**TO ALL PARTIES :**

1.  A judgment, decree, or order was entered in this action on *(date)*: March 19, 2024

2.  A copy of the judgment, decree, or order is attached to this notice.

Date:   April 1, 2024

Willis M. Wagner

(TYPE OR PRINT NAME OF   [x] ATTORNEY   [ ] PARTY WITHOUT ATTORNEY)

▶  _____ (SIGNATURE)

Form Approved for Optional Use<br>Judicial Council of California<br>CIV-130 [Rev. January 1, 2024]

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

*www.courts.ca.gov*

**CIV-130**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Consumer Advocacy Group, Inc.<br>DEFENDANT/RESPONDENT: Santa Maura Spice and Garlic Co., Inc., et al. | CASE NUMBER:<br>19STCV18754 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL

### NOTICE OF ENTRY OF JUDGMENT OR ORDER

***(NOTE: You cannot serve the* Notice of Entry of Judgment or Order *if you are a party in the action. The person who served the notice must complete this proof of service.)***

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

       Street address:
       City:
       State and zip code:

   c. Name of person served:

       Street address:
       City:
       State and zip code:

   b. Name of person served:

       Street address:
       City:
       State and zip code:

   d. Name of person served:

       Street address:
       City:
       State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(TYPE OR PRINT NAME OF DECLARANT)

▶

_____
(SIGNATURE OF DECLARANT)

Page 2 of 2

CIV-130 [Rev. January 1, 2024]

### NOTICE OF ENTRY OF JUDGMENT OR ORDER

Electronically Received 02/20/2024 08:54 PM

**ARNOLD & PORTER KAYE SCHOLER LLP**
Willis M. Wagner (SBN 310900)
Rica Santos (SBN 328826)
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
Telephone:  415.471.3100
Facsimile:  415.471.3400
will.wagner@arnoldporter.com
rica.santos@arnoldporter.com

*Attorney for Defendant*
SANTA MAURA SPICE AND GARLIC CO., INC.

**FILED**
Superior Court of California
County of Los Angeles

**03/19/2024**

David W. Slayton, Executive Officer / Clerk of Court

By: _____   Deputy
E. Ma Rayes

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC., in the public interest, | Case No. 19STCV18754 [Consolidated with 19STCV35730 and 20STCV40297] |
| Plaintiff, | |
| v. | **[PROPOSED] JUDGMENT GRANTING DEFENDANT SANTA MAURA SPICE AND GARLIC CO., INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| FOOD LAND MARKET, *et al.*, | |
| Defendants. | |
| CONSUMER ADVOCACY GROUP, INC., in the public interest | Judge: Hon. Thomas Long |
| Plaintiff, | Date:   February 8, 2024 Time:   8:30 a.m. Dept.:  48 |
| v. | |
| BODEGA LATINA CORPORATION dba EL SUPER, *et al.*, | |
| Defendants. | |
| CONSUMER ADVOCACY GROUP, INC., in the public interest | |
| Plaintiff, | |
| v. | |
| SANTA MAURA SPICE & GARLIC CO., INC, *et al.*, | |
| Defendants. | |

On January 17, 2024, Defendant Santa Maura Spice and Garlic Co., Inc. ("Santa Maura") filed a Motion for Judgment on the Pleadings ("Motion"). On February 2, 2024, Defendant Bodega Latina Corporation filed a joinder to the Motion.

On January 26, 2024, Plaintiff Consumer Advocacy Group, Inc. ("Plaintiff" or "CAG") filed an opposition to the Motion. Santa Maura filed its reply on February 1, 2024. On February 5, 2024, Plaintiff filed an ex parte application for leave to file a sur-reply in opposition to the Motion and Santa Maura filed an opposition that day. On February 6, 2024, the Court granted Plaintiff's ex parte application for leave to file a sur-reply.

In the Motion, Santa Maura argued that Plaintiff's eight Proposition 65 pre-suit notices of violation associated with this case failed to strictly comply with the notice requirements set forth in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1), and as a matter of law, Plaintiff lacked authroity to prosecute its Proposition 65 clams on behalf of the public interest.[1] Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) provides that "For all notices, the notice shall identify: (1) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." Each of Plaintiff's eight pre-suit notices of violation stated, "Violators may contact CAG concerning this Notice through its designated person, its attorney, Reuben Yeroushalmi." Mr. Yeroushalmi does not dispute that his is CAG's outside counsel. Santa Maura argued that the information provided in the pre-suit notices did not strictly comply with the requirements in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) because Mr. Yeroushalmi is not a responsible individual "within" CAG, which compelled dismissal of the case without leave to amend. Plaintiff argued that it substantially complied with the pre-suit notice requirements under Cal. Code Regs., tit. 27, § 25903(b)(2)(A) by designating its outside attorney, Mr. Yeroushalmi, in its pre-suit notices as the respnsible individual.

On February 8, 2024, the Court heard argument from the parties on Santa Maura's Motion. Having considered the Motion and reply, Plaintiff's opposition and sur-reply, all other papers

---

[1] The pre-suit notices were dated July 15, 2019; August 21, 2019; March 3, 2020; July 28, 2020; July 28, 2020; July 28, 2020; November 5, 2020; and November 5, 2020.

[PROPOSED] JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
US 175467338v1

submitted, and arguments made by the parties, the Court issued a Final Order granting the Motion. Attached hereto as **Exhibit A** is a copy of the Final Order issued by the Court on February 8, 2024.

For the reasons stated in more detail in the attached Final Order, the Court hereby **GRANTS** Santa Maura's Motion.  In granting the Motion, the Court finds that:

1.      Santa Maura's request that the Court take judicial notice of pre-suit notices of violation served by Plaintiff in this matter is **GRANTED**.  These notices are attached as Exhibits A, D-L, and N to Santa Maura's Request for Judicial Notice.

2.      Santa Maura's request that the Court take judicial notice of unpublished orders and Santa Maura's supplemental request for judicial notice are **DENIED** as irrelevant, because the orders are unpublished and nonprecedential.  These orders are attached as Exhibits B, C, M, and O to Santa Maura's Request for Judicial Notice and as Exhibit A to Santa Maura's Supplemental Request for Judicial Notice.

3.      CAG's request that the Court take judicial notice of pleadings in other cases, unpublished and nonprecedential trial court orders, and regulatory policies for heavy metals in spices are **DENIED** as irrelevant.  These documents are attached as Exhibits 1-2, 5-8, and 12-14 to CAG's Request for Judicial Notice.

4.      CAG's request that the Court take judicial notice of a Final Statement of Reasons, Senate floor analysis, a notice of violation, letters from the Attorney General, and a list of all notices of violation is **GRANTED**.  These documents are attached as Exhibits 3, 4, 9-11, and 15 to CAG's Request for Judicial Notice.

5.      As a matter of law, a private Proposition 65 enforcer must strictly comply with the requirements of Cal. Code. Regs., tit. 27, § 25903(b)(2)(A)(1) ("Section 25903(b)(2)(A)(1)"), which provide that "[f]or all notices, the notice shall identify . . . the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity."  Courts may infer statutory or regulatory intent for strict compliance when a "detailed and specific mandate" is provided or "the intent of [the] statute can only be served by demanding strict compliance with its terms." *Prang v. Los Angeles County Assessment Appeals Board No. 2*, 54

1   Cal. App. 5th 1, 19  (2020).  The Court finds, over Plaintiff's objection, that Section

2   25903(b)(2)(A)(1) requires strict compliance.   As a result, the pre-suit notices must include the

3   name and contact information for a responsible individual "within" CAG, not its outside counsel.

4   6.       The plain language of Section 25903(b)(2)(A)(1) provides a detailed and specific mandate:

5   that a pre-suit notice must fulfill "all requirements of this section" and that such notice "shall

6   identify" the name and contact information of a responsible individual "within" the noticing entity.

7   7.       By contrast, other requirements in Section 25903 are more generalized.  *See* Section

8   25903(b)(2)(A)(3) (requiring pre-suit notices include the "approximate time period during which the

9   violation is alleged to have occurred").

10  8.       Plaintiff's argument that Section 25903(b)(2)(A)(1) should be read to include an outside

11  counsel would render meaningless the word "within", an interpretation which courts should avoid.

12  *See Plantier v. Ramona Municipal Water Dist.*, 7 Cal. 5th 372, 386 (2019).

13  9.       Elsewhere in Proposition 65 statutes and regulations, where an outside counsel is authorized

14  to act on behalf of a private enforcer, the text explicitly permits such action.  *See, e.g.,* Health &

15  Safety Code § 25249.7(d)(1) (providing that "the notice of the alleged violation shall include a

16  certificate of merit executed by the attorney for the noticing party, or by the noticing party, if the

17  noticing party is not represented by an attorney.").

18  10.      Based on the pleadings, information subject to judicial notice, and the arguments made at

19  hearing, the Court finds that none of the pre-suit notices associated with this case strictly complied

20  with the requirement set forth in Section 25903(b)(2)(A)(1).  It is undisputed that Plaintiff's

21  attorney, Mr. Yeroushalmi, was its "designated person" whose contact information was provided in

22  the eight pre-suit notices. It is also not disputed that Mr. Yeroushalmi acted as outside counsel when

23  sending the pre-suit notices, and therefore, as a matter of law, was not a responsible individual

24  within the noticing entity as required by Section 25903(b)(2)(A)(1).

25  11.      Because Plaintiff's pre-suit notices did not strictly comply with Section 25903(b)(2)(A)(1),

26  Plaintiff lacks jurisdiction to proceed as a private enforcer under Proposition 65 and this action is

27  dismissed without leave to amend.  The Motion is granted as to Santa Maura and the joining

28  defendant Bodega Latina Corporation, DBA: El Super.

[PROPOSED] JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

US 175467338v1

Accordingly, it is hereby **ORDERED** that:

1.  Judgment is **GRANTED** in favor of Defendants Santa Maura Spice and Garlic Co.,
    Inc. and Bodega Latina Corporation, and against the entire Complaint;

2.  Plaintiff shall take nothing by way of its Complaint; and

3.  Defendants are awarded their costs of suit (in an amount to be supported by a
    forthcoming Memorandum of Costs).

~~This action is hereby **DISMISSED** in its entirety and with prejudice.~~

**IT IS SO ORDERED.**


DATED: 03/19/2024 _____

Hon. Thomas D. Long
Judge of the Los Angeles Superior Court

~~[PROPOSED]~~ JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

US 175467338v1

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

**19STCV18754**                                                     February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                           8:30 AM
**MARKET, et al.**

Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Reuben Yeroushalmi (Telephonic) (via CourtConnect)

For Defendant(s): Willis M. Wagner (via CourtConnect) (Telephonic); JAMES FENDT for

Garth Neal Ward (via CourtConnect) (Telephonic)

**NATURE OF PROCEEDINGS:** DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Government Code §§68086, 70044, and California Rules of Court, Rule 2.956, Regina Vega, CSR #: 12612, certified shorthand reporter is appointed as an official Court Reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The matter is called for hearing.

The Court issues a Tentative Ruling and hears oral argument.

On the Court's own motion, the Final Status Conference scheduled for 09/09/2024 is advanced to this date and continued to 10/07/2024 at 09:00 AM in Department 48 at Stanley Mosk Courthouse (October 7, 2024).

On the Court's own motion, the Non-Jury Trial (Seven-Day Time Estimate) scheduled for 09/23/2024 is advanced to this date and continued to 10/21/2024 at 09:00 AM in Department 48 at Stanley Mosk Courthouse.

The discovery and motion cut-off dates are reset based on the new Trial date.

The Court takes the matter under submission.

Notice is waived.

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                          February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                           8:30 AM
**MARKET, et al.**

Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

LATER:

The Court, having taken the matter under submission, now rules as follows:

The DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS filed by Santa Maura
Spice and Garlic Co., Inc. on 01/17/2024 is Granted.

On May 30, 2019, Plaintiff Consumer Advocacy Group, Inc. filed this Proposition 65 action
against Defendant Santa Maura Spice and Garlic Co., Inc. and others.

The operative Complaint is the Second Amended Complaint, filed on January 11, 2021.

This case was later related and consolidated with Consumer Advocacy Group, Inc. v. Bodega
Latina Corporation, DBA: El Super (Case No. 19STCV35730) and Consumer Advocacy Group,
Inc. v. Santa Maura Spice and Garlic Co., Inc. (Case No. 20STCV40297).

On January 17, 2024, the Defendant filed a Motion for Judgment on the Pleadings. On February
2, 2023, Bodega Latina Corporation, DBA: El Super (Case No. 19STCV35730) filed a notice of
joinder.

On February 5, 2024, the Plaintiff filed an Ex Parte Application for Leave to File a Sur-reply. On
February 6, 2024, the Court granted the application, deemed the Proposed Sur-reply filed (Ex
Parte Application, Declaration of Yeroushalmi, Exhibit. B ["Sur-Reply"]), and deemed the
Defendant's Opposition to the Ex Parte Application filed as a Sur-sur-reply.

At the hearing, the Court took the matter under submission.

I. PROCEDURAL DEFICIENCIES

Although the substantive part of the Plaintiff's Opposition technically fits on 15 pages, the
Plaintiff used too-small font in footnotes and contained more than 28 lines per page, thereby
exceeding the 15-page limit for an Opposition. (See California Rules of Court, Rule 3.113[d];
see also California Rules of Court, Rule 2.104 [font size must not be smaller than 12 points].)
The most egregious example is a page containing 27 lines of text, plus 13 additional lines of
footnote text in a tiny font size—which would take up more than 13 lines of text if in the proper
font size. (Opposition at p. 13.)

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                        8:30 AM
**MARKET, et al.**

Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

Nevertheless, the Court considered the over-long Opposition.

II. REQUESTS FOR JUDICIAL NOTICE

The Defendant's Request for Judicial Notice of Exhibits A, D - L, N is Granted.

The Defendant's Request for Judicial Notice of Exhibits B, C, M, O and Supplemental Request for Judicial Notice of Exhibit A are Denied as irrelevant. These orders are unpublished and nonprecedential. (See Santa Ana Hospital Medical Center v. Belshe (1997) 56 Cal.App.4th 819, 831 ["a written trial court ruling has no precedential value"].)

The Plaintiff's Request for Judicial Notice Nos. 1 - 2, 5 - 8, 12 (pleadings in other cases and unpublished and nonprecedential trial court orders) is Denied as irrelevant.

The Plaintiff's Request for Judicial Notice Nos. 13 - 14 (Regulatory Policies for Heavy Metals in Spices – a New York Approach) is Denied as irrelevant.

The Plaintiff's Request for Judicial Notice Nos. 3, 4, 9 - 11, 15 is Granted.

III. DISCUSSION

A Motion for Judgment on the Pleadings is the functional equivalent to a general Demurrer. (Lance Camper Mfg. Corp. v. Republic Indemnity Co. of Am. (1996) 44 Cal.App.4th 194, 198.) Like Demurrers, Motions for Judgment on the Pleadings challenge the legal sufficiency of the allegations, not their veracity. (Donabedian v. Mercury Ins. Co. (2004) 116 Cal.App.4th 968, 994.) The Court "must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed." (Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc. (2006) 138 Cal.App.4th 1215, 1219 - 1220.)

a. Plaintiff Did Not Comply With All Pre-Suit Notice Requirements

"Before bringing a Prop. 65 action in the public interest, a private plaintiff must provide a pre-suit notice containing sufficient information about the claim to (1) the Attorney General and other public prosecutors, to allow them to adequately investigate the claim's basis, and (2) the alleged violator, to allow it an opportunity to cure the violation. . . . Failure to comply with pre-suit notice requirements is grounds for dismissal, and deficiencies cannot be cured after the

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                    February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**            8:30 AM
**MARKET, et al.**

| | |
|---|---|
| Judge: Honorable Thomas D. Long | CSR: Regina Vega, #12612 |
| Judicial Assistant: Emily Ma Reyes | ERM: None |
| Courtroom Assistant: Sandra Brown | Deputy Sheriff: None |

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

complaint is filed." (Council for Education & Research on Toxics v. Starbucks Corp. (2022) 84 Cal.App.5th 879, 899 - 900 (Starbucks Corp.).)

One requirement of the pre-suit notice is that it must identify "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." (California Code of Regulations, Title 27, §25903, subd.[b][2][A].)

The Defendant argues that all eight pre-suit notices that the Plaintiff served did not comply with the pre-suit notice requirements because they did not identify a responsible individual "within" the Plaintiff. (Motion at pp. 1 - 2.)

The Plaintiff argues that "meaning of 'within the entity' must be interpreted in a manner consistent with the purpose of the regulations" because "[t]he purpose of the notice and its contents is to provide alleged violators and public enforcers an opportunity to assess the merits." (Opposition at p. 10; see id. at pp. 9 - 14.) Accordingly, the Plaintiff argues that it substantially complied with the notice requirement and "CAG's notices to Santa Maura make clear that it has opted to designate its attorney as its agent for communication concerning the notice." (Id. at p. 12.)

1. Strict Compliance Required for the Contents of the Pre-Suit Notice

"When a court attempts to discern the meaning of a statute, 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning.' [Citation.]" (Meyer v. Sprint Spectrum L.P. (2009) 45 Cal.4th 634, 639 - 640.)

"Although courts sometimes construe statutory mandates liberally to effectuate their remedial purpose [citation], strict compliance with a statute is warranted when our Legislature evinces its intent that the statute's requirements are to be followed precisely. We may infer such an intent when (1) 'the Legislature has provided a detailed and specific mandate' [citations], or (2) 'the intent of [the] statute can only be served by demanding strict compliance with its terms' [citation]." (Prang v. Los Angeles County Assessment Appeals Board No. 2 (2020) 54 Cal.App.5th 1, 19 (Prang).)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                        February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                      8:30 AM
**MARKET, et al.**

| | |
|---|---|
| Judge: Honorable Thomas D. Long | CSR: Regina Vega, #12612 |
| Judicial Assistant: Emily Ma Reyes | ERM: None |
| Courtroom Assistant: Sandra Brown | Deputy Sheriff: None |

The plain language of Proposition 65 provides a detailed and specific mandate. The notice of the violation "shall mean a notice meeting all requirements of this section," and "[n]o person shall commence an action to enforce the provisions of the Act . . . except in compliance with all requirements of this section." (California Code of Regulations, Title 27, §25903, subd.[a].) One of these requirements is identifying "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity" within the notice. (California Code of Regulations, Title 27, §25903, subd.[b][2][A].) This is a specific requirement for who the individual must be.

By contrast, other requirements for the notice are more generalized. For example, the notice shall identify "the approximate time period during which the violation is alleged to have occurred." (California Code of Regulations, Title 27, §25903, subd.[b][2][A].) For drinking water violations, the notice shall include "a general identification of the discharge or release and of the source of drinking water into which the discharges are alleged to have occurred." (California Code of Regulations, Title 27, §25903, subd.[b][2][B].) "Approximate" and "general" are less specific requirements under their plain language.

The Plaintiff argues that the Defendant's "unduly constrained reading would frustrate the purpose of the provision." (Opposition at p. 10.) This is essentially an argument that the intent of the statute ("to provide alleged violators and public enforcers an opportunity to assess the merits," Opposition at p. 10) can still be served without strict compliance. (Cf. Prang, supra, 54 Cal.App.5th at p. 19 [intent for strict compliance can be inferred when "the intent of [the] statute can only be served by demanding strict compliance with its terms"].) However, the Plaintiff does not refute that "the Legislature has provided a detailed and specific mandate," from which the Court may infer the Legislature's intent that the statute's requirements are to be followed precisely. (Ibid.)

It is true that "substantial compliance with statutory directives will suffice if the purpose of the statute is thereby satisfied." (Downtown Palo Alto Com. for Fair Assessment v. City Council (1986) 180 Cal.App.3d 384, 395; see In re K.H. (2022) 84 Cal.App.5th 566, 603 - 604; see also Sur-reply at pp 4 - 5.) However, the Final Statement of Reasons for Section 12903 ("FSOR"), on which the Plaintiff relies (Opposition at pp. 4, 10), does not prove that the purpose of section 25903 is satisfied by identifying the noticing entity's attorney. The FSOR notes that "many notices do not describe the nature of the alleged violation in an intelligible manner," which makes it difficult or impossible for the alleged violator to cure any violation prior to litigation, thereby impeding the achievement of the goals of the statute through quick compliance. (Plaintiff's Request for Judicial Notice, Exhibit 3 at pp. 7 - 8.) The notice's required information

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                    February 8, 2024
CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND                               8:30 AM
MARKET, et al.


Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

is "intended to ensure that notices provide adequate information necessary for the recipients to evaluate the nature and scope of the alleged violation." (Id. at p. 8.) With respect to identifying the responsible individual within the noticing entity, "Identification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action." (Ibid.) Identifying the noticing entity's attorney, rather than an individual within the entity, is contrary to the goal of curing violations without litigation.

At the hearing, Plaintiff's Counsel reiterated the arguments about substantial compliance and referred to Stasher v. Harger-Haldeman (1962) 58 Cal.2d 23 (Stasher), cited in the Sur-reply. The Plaintiff characterizes this case as one where courts "routinely held that requirements subject to a preceding "shall" are satisfied by substantial compliance." (Sur-reply at p. 4.) According to the Plaintiff, "the California Supreme Court has found that a former civil code section requiring that a document 'shall recite' a specified list of items was satisfied by substantial compliance." (Ibid.) In Stasher, the California Supreme Court made clear that "[s]ubstantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance[,] then mere technical imperfections of form or variations in mode of expression" should not be considered noncompliance. (Stasher, supra, 58 Cal.2d at p. 29.) The Court affirmed that the sales contract at issue was substantially compliant because it contained the essential details, and the imperfections were in complying with the letter of the statute while fully complying with the substance and spirit of the statute. (Id. at pp. 31 - 33.)

Here, the Plaintiff's notice does not comply with all matters of substance. It is undisputed that only Reuben Yeroushalmi was identified; he is an agent of the Plaintiff as its attorney, but he is not "within" the Plaintiff's entity. (See Opposition at pp. 12 - 13.) Thus, the notice identifies a substantively different individual than what is required by the statute.

Plaintiff's Counsel also argued that he should be considered the appropriate contact person because Proposition 65 cases can be very complicated. This contention was also mentioned in the Opposition: "Given that the purpose of the contact information requirement in Section 25903(b)(2)(A) is to facilitate communication concerning the details of the violation with both public enforcers and violators, and given the scientifically-intensive and complex issues of law and fact involved in assessing an alleged violation, construing 'individual within the entity' to preclude a corporate enforcer from designating an attorney for that purpose would tend to frustrate the purpose of the regulations. Interpreted broadly to effectuate the statute's remedial purpose, 'within the entity' means having power to speak on behalf of the entity." (Opposition at

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

**19STCV18754**                                                          February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                            8:30 AM
**MARKET, et al.**


Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

p. 10.) But if that was what the Legislature had intended, then it could have required the identification of any individual who can speak on behalf of the entity, rather than an individual "within" the entity. The Plaintiff's interpretation would render "within" meaningless, and "[i]nterpretations that render statutory language meaningless are to be avoided." (Plantier v. Ramona Municipal Water Dist. (2019) 7 Cal.5th 372, 386.)

Plaintiff's Counsel also compared the purpose of the required information here to the purpose of the Certificate of Merit, deeming them both to be methods of contacting the noticing entity. As noted by Defendant's Counsel at the hearing, this comparison actually weighs against the Plaintiff's argument because that statutory language expressly permits Counsel to sign the Certificate of Merit: "the notice of the alleged violation shall include a certificate of merit executed by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney." (Health & Safety Code §25249.7, subd.[d][1].) This confirms that if the Legislature had intended for outside Counsel to be the designated individual under section 25903, subdivision (b)(2)(A), it would have stated so.

The Plaintiff cites Yeroushalmi v. Miramar Sheraton (2001) 88 Cal.App.4th 738 (Miramar) for that court's "emphasis on 'the purpose of the notice provision' and the 'intent to further settlement and public enforcement' [which] is far more consistent with a substantial compliance analysis than it is with an insistence on strict compliance." (Opposition at p. 5; see Id. at pp. 6 - 7, 15; Sur-reply at p. 6.) There, the information that was argued to be in substantial compliance was information about the violation itself. (Miramar, supra, 88 Cal.App.4th at pp. 745 - 746.) One notice was "inadequate by any measure, because it fails to state, in even the simplest terms, just what the violation was." (Id. at p. 746.) Two other notices also "[did] not even give enough information to discern just what the violation was." (Id. at p. 747.) The noticing entities argued that "the statute must be given a broad interpretation, to further its basic remedial objectives," and therefore "their broad general notices should be deemed sufficient." (Ibid.) The court focused on the requirement that the notice include the name of the product "with sufficient specificity" and the location of exposure "in a manner sufficient to distinguish those facilities or sources from others for which no violation is alleged." (Id. at pp. 745 - 746 [quoting California Code of Regulations, Title 27, §25903, subds.[b][2][D], [b][2][F]].) The court "conclude[d] that the framers of the initiative intended that the notice contain sufficient facts to facilitate and encourage the alleged polluter to comply with the law, and to encourage the public attorney charged with enforcement to undertake its duty," and the notices at issue—lacking sufficient facts to identify the alleged violation—gave "no notice at all." (Id. at p. 750.) The Miramar court had to consider what information was "sufficient"—an undefined and ambiguous term. Here, there is no ambiguity: the notice "shall identify . . . a responsible individual within the noticing

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                          February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                    8:30 AM
**MARKET, et al.**

Judge: Honorable Thomas D. Long              CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes           ERM: None
Courtroom Assistant: Sandra Brown            Deputy Sheriff: None

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

entity." (California Code of Regulations, Title 27, §25903, subd.[b][2][A].)

The Plaintiff (and its Counsel at the hearing) relied heavily on Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America (2007) 150 Cal.App.4th 953 (Kintetsu). (See Opposition at pp. 5 - 7, 9 - 15, 17 - 18; Sur-reply at pp. 3 - 4, 6 - 8.) In that case, "Circle K Stores, Inc. was erroneously sued as Circle K Co., and Circle K. Citing no legal authority, it argues that the notice was insufficient because it was incorrectly named." (Kintetsu, supra, 150 Cal.App.4th at p. 972.) The Court of Appeal determined that Circle K forfeited its right to contest the notice on the ground that it was improperly named because by filing a Demurrer, it had sought a Dismissal on grounds other than personal jurisdiction. (Ibid.) The Plaintiff argues that the Court of Appeal's rejection of Circle K's "challenge to the validity of the notice on the grounds that it failed to strictly comply with Section 25903(B)(2)(a)'s requirement that the notice 'shall identify . . . the name of the alleged violator' . . . is manifestly at odds with [Defendant]'s contention that the requirements Section 25903(B)(2)(a) are subject to strict compliance." (Opposition at pp. 5 - 6.) According to the Plaintiff, if strict compliance was required, the then failure to correctly identify "the name of the alleged violator" "would have been grounds for dismissal in its own right, independent of any challenge to personal jurisdiction." (Id. at p. 6.) The Court did not analyze whether the notice was substantially compliant despite the incorrect name of the violator, and "cases are not authority for propositions not considered." (B.B. v. County of Los Angeles (2020) 10 Cal.5th 1, 11, quotation marks omitted.)

The Kintetsu court did, however, consider the notice requirements with respect to the inclusion of mandatory information. (Kintetsu, supra, 150 Cal.App.4th at pp. 973 - 974.) Section 12903, subdivision (b)(1) states that each notice "shall include as an attachment a copy of 'The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary' (see Appendix A) prepared by the lead agency." (California Code of Regulations, Title 27, §25903, subd.[b][1].) The court concluded that the failure to follow that requirement rendered the notice invalid because the notice failed to satisfy a mandatory prerequisite. (Kintetsu, supra, 150 Cal.App.4th at pp. 973 - 974.) The Plaintiff's notice here also fails to satisfy a mandatory prerequisite: it does not identify "a responsible individual within the noticing entity."

The Court finds that the pre-suit notice requirements that are the subject of this motion are identified in a detailed and specific mandate, so the "Legislature evinces its intent that the statute's requirements are to be followed precisely." (Prang, supra, 54 Cal.App.5th at p. 19.) Additionally, the specific use of the terms "shall" and "all" confirm that the Legislature intended that "all" requirements identified "shall" be satisfied as a prerequisite to commencing a Proposition 65 action. Therefore, the Court concludes that the notice requirements must be

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 48

19STCV18754                                                  February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**          8:30 AM
**MARKET, et al.**

| | |
|---|---|
| Judge: Honorable Thomas D. Long | CSR: Regina Vega, #12612 |
| Judicial Assistant: Emily Ma Reyes | ERM: None |
| Courtroom Assistant: Sandra Brown | Deputy Sheriff: None |

strictly construed and that substantial compliance is insufficient. As a result, the notice requirements must include all required information, including the responsible individual within the noticing entity.

## 2. Plaintiff Did Not Identify an Individual "Within" the Entity

Between July 15, 2019 and November 5, 2020, the Plaintiff issued eight pre-suit notices of violation against the Defendant and others. (Defendant's Request for Judicial Notice, Exhibits E - L.) Each notice states, "Violators may contact CAG concerning this Notice through its designated person, its attorney, Reuben Yeroushalmi . . . ." The Certificates of Merit also identify Reuben Yeroushalmi as "the attorney for the noticing party." The Plaintiff concedes that Reuben Yeroushalmi is only an agent of the Plaintiff as its attorney. (See Opposition at pp. 12 - 13.)

Because the notices did not include the required identifying information of "a responsible individual within the noticing entity," they are noncompliant, and the action is subject to dismissal. (See Starbucks Corp., supra, 84 Cal.App.5th at pp. 899 - 900.)

The motion is Granted.

## b. Defendant's Alternative Arguments Not Properly Noticed

Alternatively, the Defendant argues that the notices are defective for lack of proper service on all district attorneys and failure to sufficiently allege the name of each chemical. (Motion at p. 13.) In passing, the Defendant also contends that unpublished trial court orders regarding different Defendants bind the Plaintiff the purposes of collateral estoppel. (Id. at pp. 2, 10 - 11.)

"A notice of motion must state in the opening paragraph the nature of the order being sought and the grounds for issuance of the order." (California Rules of Court, Rule 3.1110[a].) The Defendant's Notice of Motion specifies the grounds for the motion as only "Plaintiff's failures to comply with the pre-suit notice requirements" because "the notices fail to 'identify the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity.'"

The Court therefore does not address the Defendant's unnoticed alternative arguments.

## IV. CONCLUSION

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 48

**19STCV18754**                                           February 8, 2024
**CONSUMER ADVOCACY GROUP, INC. vs FOOD LAND**                    8:30 AM
**MARKET, et al.**

Judge: Honorable Thomas D. Long            CSR: Regina Vega, #12612
Judicial Assistant: Emily Ma Reyes         ERM: None
Courtroom Assistant: Sandra Brown          Deputy Sheriff: None

Accordingly, the Motion for Judgment on the Pleadings is hereby Granted in favor of Defendant Santa Maura Spice and Garlic Co., Inc. and Bodega Latina Corporation, DBA: El Super.

Because "deficiencies [of the notice] cannot be cured after the complaint is filed" (Starbucks Corp., supra, 84 Cal.App.5th at pp. 899 - 900), no leave to amend is granted.

The Defendant is ordered to submit a Proposed Judgment within five days.

Judgment is to be entered for Defendant Santa Maura Spice and Garlic Co., Inc. against Plaintiff Consumer Advocacy Group, Inc., in the public interest on the Amended Complaint (2nd) filed by Consumer Advocacy Group, Inc. on 01/11/2021 for a total of $0.00.

Judgment is to be entered for Defendant Santa Maura Spice and Garlic Co., Inc., a California Corporation and Defendant Bodega Latina Corporation DBA El Super, a Delaware Corporation against Plaintiff Consumer Advocacy Group, Inc., in the public interest on the Amended Complaint (1st) filed by Consumer Advocacy Group, Inc., on 10/21/2020 for a total of $0.00.

Non-Appearance Case Review re Submission of Proposed Judgment is scheduled for 02/21/2024 at 09:00 AM in Department 48 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

SEE NUNC PRO TUNC MINUTE ORDER OF 02/08/2024 1:30 PM

1

**PROOF OF SERVICE**

2

    I am over eighteen years of age and not a party to this action.  I am employed in the County

3

of San Francisco, State of California.  My business address is Three Embarcadero Center, 10th

4

Floor, San Francisco, CA 94111.

5

    On April 1, 2024, I served the following documents:

6

7

    **NOTICE OF ENTRY OF JUDGMENT OR ORDER**

8

I served the documents on the following persons:

| | |
|---|---|
| Reuben Yeroushalmi<br>Shohini Sengupta<br>Priyanshi Singh<br>Kendall Klyczek<br>Gunvir Batth<br>Ryan Dewberry<br>YEROUSHLAMI & YEROUSHALMI<br>9100 Wilshire Boulevard, Suite 240<br>Beverly Hills, CA  90212<br>reuben@yeroushalmi.com<br>shohini@yeroushalmi.com<br>priyanshi@yeroushalmi.com<br>kendall@yeroushalmi.com<br>gunvir@yeroushalmi.com<br>ryan@yeroushalmi.com<br>service@yeroushalmi.com | Attorneys for Plaintiff<br>Consumer Advocacy Group |
| Garth Ward<br>Lewis Brisbois Bisgaard & Smith LLP<br>550 West C Street<br>Suite 1700<br>San Diego, CA  92101<br>garth.ward@lewisbrisbois.com | Counsel for Defendant<br>BODEGA LATINA<br>CORPORATION dba EL SUPER |
| James Robert Maxwell<br>ROGERS JOSEPH O DONNELL<br>Robert Dollar Building<br>311 California Street, 10th Floor<br>San Francisco CA 94104<br>Tel: (415) 956-2828<br>Email: jmaxwell@rjo.com | Attorney for Defendants<br>WILLIAMS SONOMA, INC.<br>TRADER JOE S COMPANY  and<br>TRADER JOE S EAST, INC. |

- 1 -

PROOF OF SERVICE

The documents were served by the following means:

**E r S r E**. I transmitted the document(s) to the persons at the electronic notification addresses listed above on April 1, 2024 before 6:00 p.m. PDT.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  April 1, 2024        Signature:  _____

                                          Marie   ambrano

PROOF OF SERVICE
US 174316478V1

Exhibit 10

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY          STATE BAR NUMBER: 235473

NAME: Ho-El Park, Esq.
FIRM NAME: LAW OFFICE OF HO-EL PARK, P.C.
STREET ADDRESS: 3230 E. Imperial Hwy. Suite 300
CITY: Brea                          STATE: CA      ZIP CODE: 92821
TELEPHONE NO.: (714) 523-2466       FAX NO.:
EMAIL ADDRESS: info@hparklaw.com
ATTORNEY FOR (name): Defendant, Kreassive LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson Courthouse

PLAINTIFF/PETITIONER: Consumer Advocacy Group, Inc.
DEFENDANT/RESPONDENT: Kreassive LLC, Et. Al.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
03/22/2024 at 09:10:24 AM
By: Angela Linhares,
Deputy Clerk

| NOTICE OF ENTRY OF JUDGMENT OR ORDER | CASE NUMBER: |
|---|---|

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

(Check one):   [x] **UNLIMITED CASE**         [ ] **LIMITED CASE**
                   (Amount demanded              (Amount demanded was
                   exceeded $35,000)             $35,000 or less)

CASE NUMBER:
22CV024552

**TO ALL PARTIES :**

1. A judgment, decree, or order was entered in this action on (date): March 19, 2024

2. A copy of the judgment, decree, or order is attached to this notice.

Date: March 22, 2024

Ho-El Park

(TYPE OR PRINT NAME OF [x] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶ _____ (SIGNATURE)

Form Approved for Optional Use
Judicial Council of California
CIV-130 [Rev. January 1, 2024]

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

www.courts.ca.gov

**CIV-130**

| PLAINTIFF/PETITIONER: Consumer Advocacy Group, Inc.<br>DEFENDANT/RESPONDENT: Kreassive LLC, Et. Al. | CASE NUMBER:<br>22CV024552 |
|---|---|

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*
   3230 E. Imperial Hwy. Suite 300
   Brea, CA  92821

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☒ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):*  March 22, 2024

   b. from *(city and state):*  Brea, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
      Reuben Yeroushalmi
      Street address: 9100 Wilshire Blvd., Suite 240W
      City: Beverly Hills
      State and zip code: CA  90212

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:
      Doll Amir & Eley LLP (Attn: Gregory L. Doll)
      Street address: 725 S. Figueroa St., Suite 3275
      City: Los Angeles
      State and zip code: CA  90017

   d. Name of person served:

      Street address:
      City:
      State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached: 7

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 22, 2024

Ho-El Park
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

Page 2 of 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

| | |
|---|---|
| Consumer Advocacy Group, Inc.<br><br>        Plaintiff/Petitioner(s)<br>vs.<br>Kreassive, Inc., a California Corporation et al<br>        Defendant/Respondent(s) | No.    22CV024552<br><br>Date:   03/19/2024<br>Time:   11:40 AM<br>Dept:   19<br>Judge:  Stephen Kaus<br><br>ORDER re: Ruling on Submitted Matter filed by Kreassive, LLC, a California Limited Liability Company (Defendant) on 02/21/2024 |

The Court, having taken the matter under submission on 02/28/2024, now rules as follows:

Defendant Kreassive, LLC's ("Defendant") motion for judgment on the pleadings to Plaintiff Consumer Advocacy Group, Inc.'s ("Plaintiff") Complaint is GRANTED without leave to amend. (Code Civ. Proc., § 438; 11 C.C.R., § 3101, subd. (b); 27 C.C.R., § 25903.)

Plaintiff's pre-suit Notices of Violation ("Notices") fail to comply with the requirements of 27 C.C.R., § 25903 in that it fails to "identify: 1. the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity".

Defendant's other contention is that  language in Plaintiff's certificate of merit materially deviates from the language expressly provided in the regulation in that it attests that the signatory has consulted an expert "with regard to exposure to the listed chemical that is the subject of this action" instead of "with regard to alleged exposure to the listed chemical that is the subject of this action." The omission of the word "alleged" changes the meaning of the sentence so that it does not refer to the exposure that is the subject of this action, but rather to exposure to the chemical in general.

As Plaintiff cannot amend defective pre-suit Notices after litigation has commenced, leave to amend is denied. (*Tola v. Bryant* (2022) 76 Cal.App.5th 746, 756.)

PROCEDURAL DEFECTS

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

Presentation of extrinsic evidence is not proper on a motion for judgment on the pleadings. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999.)

Here, Plaintiff has offered the Declaration of Michael Marcus in Support of its Opposition. Notwithstanding this defect, the Court has considered Plaintiff's Opposition on the merits, but declines to consider the Declaration of Michael Marcus or its attachments.

OBJECTIONS TO EVIDENCE

Defendant's objections to the Declaration of Michael Marcus and its exhibits are sustained in their entirety as the presentation of extrinsic evidence is not proper on a motion for judgment on the pleadings. (*Cloud*, *supra*, 67 Cal.App.4th at p. 999.)

REQUESTS FOR JUDICIAL NOTICE

Defendant's Requests for Judicial Notice ("RJN") is granted as to:
• Exhibits 1-4 (Evid. Code, § 452, subd. (h)),
• Exhibit 9 (Evid. Code, § 452, subd. (b); (c); (h)), and
• Exhibits 12; 13 (Evid. Code, § 452, subd. (d)(1).

Defendant's RJN is denied as to Exhibits 5-8; 10; 11; 14; 15 and 16.

Plaintiff's RJN is granted as to:
• Exhibits 1, 2, 5, 6, 7, 8, 12 (Evid. Code, § 452, subd. (d)(1)), and
• Exhibits 3, 4 (Evid. Code, § 452, subd. (c).

Plaintiff's RJN is denied as to Exhibits 9, 10, 11 and 13.

Where judicial notice is granted under Evidence Code section 452 (d), judicial notice is only taken of the fact that these documents are part of a court record. Judicial notice is not taken of the truth of any statements contained therein. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

Defendant's Objections to Plaintiff's Request for Judicial Notice are noted. The Court recognizes that several of the cases identified are distinguishable from the present case and only takes judicial notice of the fact that Exhibits 1, 2, 5, 6, 7, 8 and 12 are court records. (Evid. Code, § 452, subd. (d).) The Court's judicial notice of these documents as court records does not extend to anything further.

**BACKGROUND**

This is a Proposition 65 case based on the presence of lead and cadmium in products identified as Dried Aster, Dried Thistle, Dried Edible Green and Korean Veggie mix. (Complaint ¶ 17; 22.)

ORDER re: Ruling on Submitted Matter filed by Kreassive, LLC, a
California Limited Liability Company (Defendant) on
02/21/2024

Page 2 of 6

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

Defendants' motion for judgment on the pleadings is based on Plaintiff's failure to satisfy the pre-suit notice requirements for Proposition 65. (MPA p. 4:26-5:14.)

Specifically, Plaintiff's pre-suit notices ("Notices") fail to provide the name and contact information for the noticing individual or a responsible individual within the noticing entity. (Demurrer MPA p.4:28-5:5.) Additionally, the declaration concerning how the certificates of merit were obtained materially deviates from the requirements identified under California Code of Regulations Title 11, § 3101(b).

Motion for Judgment on the Pleadings – Legal Standard

A motion for judgment on the pleadings performs the same function as a general demurrer but is made after the time for demurrer has expired. (*Cloud*, *supra*, 67 Cal.App.4th at p. 999.)

Like a demurrer, any defect upon which a motion for judgment on the pleadings is based must appear on the face of the pleadings or from any matter which may be judicially noticed. (Code Civ. Proc. §, 438, subd. (d).)

Although leave to amend is to be liberally granted, it is not error to deny leave to amend when there is no "reasonable possibility" that the plaintiff can state a cause of action. (*Tola*, *supra*, 76 Cal.App.5th at p. 756.) The burden of proving the "reasonable possibility" of cure by amendment is on the plaintiff. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590.)

Proposition 65 Pre-Suit Notice Requirements

A Proposition 65 enforcer must strictly comply with the requirements stated in Title 27 California Code of Regulations ("CCR") section 25903. This section indicates what "shall" be in included in a "Notice of Violation."

Proposition 65 permits private persons to enforce Proposition 65 "in the public interest" after sending "notice of an alleged violation … to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator." (Health & Saf. Code, § 25249.7, subd. (d)(1).)

The required contents of the Notice of Violation are set out in 27 C.C.R., § 25903 in relevant part as follows:

(a) For purposes of Section 25249.7(d) of the Act, "notice of the violation which is the subject of the action" (hereinafter "notice") shall mean a notice meeting all requirements of this section. No person shall commence an action to enforce the provisions of the Act "in the public interest" pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section.

(b) Contents of Notice.

---

ORDER re: Ruling on Submitted Matter filed by Kreassive, LLC, a
    California Limited Liability Company (Defendant) on
    02/21/2024

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

(1) General Information. Each notice shall include as an attachment a copy of "The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary" (see Appendix A) prepared by the lead agency. This attachment need not be included in the copies of notices sent to public enforcement agencies. A copy of this attachment may be obtained by writing to the Office of Environmental Health Hazard Assessment at P.O. Box 4010, Sacramento, CA 95812-4010.

…

(2) Description of Violation . . .

(A) For all notices, the notice shall identify: 1. the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity

. . .

(27 C.C.R. 25903.)

## DISCUSSION

### Defective Pre-suit Notice of Violation

Here, Plaintiff's purported "notice" was defective because it failed to provide the "name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity" in compliance with 27 CCR 25903(b)(2)(A). The name and contact information for a plaintiff's attorney is different from the "name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." (27 C.C.R., § 25903, subd. (b)(2)(A).)

In addition, the Court notes that the specificity of the language at issue evinces legislative intent for strict compliance with the requirements identified in 27 C.C.R., § 25903 (b).

### 27 CCR 25903's Detailed and Specific Mandate Evinces Legislative Intent for Strict Compliance

27 C.C.R., § 25903 includes a detailed and specific mandate.

The plain text of 27 C.C.R., § 25903 (a) provides that "No person shall commence an action to enforce the provisions of the Act "in the public interest" pursuant to Section 25249.7 (d) of the Act except in compliance with all requirements of this section." (27 C.C.R., § 25903, subd. (a).)

Here, certain aspects of the regulation are specific while other aspects are more general.

We may infer legislative intent for strict compliance when the Legislature has provided a detailed and specific mandate. (*Prang v. Los Angeles County Assessment Appeals Board No. 2* (2020) 54 Cal.App.5th 1, 19.)

Here, the specificity of the subsections requiring that the pre-suit notice provide the "name,

ORDER re: Ruling on Submitted Matter filed by Kreassive, LLC, a California Limited Liability Company (Defendant) on 02/21/2024

Page 4 of 6

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity" (27 C.C.R., § 25903, subd. (b)(2)(A)) suggests legislative intent for strict compliance.

By contrast, other requirements within 27 C.C.R., § 25903 expressly permit less specificity, indicating that substantial compliance is sufficient:

• "the approximate time period during which the violation is alleged to have occurred" (27 C.C.R., § 25903(2)(A)(3))
• "a general identification of the discharge or release" ((27 C.C.R., § 25903(2)(B))
• "the name of the consumer product or service … with sufficient specificity to inform the recipients of the nature of the items" (27 C.C.R., § 25903(2)(D), and
• "the general geographic location of the unlawful exposure " (27 C.C.R., § 25903 (2)(E)(1).)

Here, because the pre-suit notice requirements that are the subject of this motion are identified in a detailed and specific mandate, the "Legislature evinces its intent that the statute's requirements are to be followed precisely." (*Prang*, *supra*, 54 Cal.App.5th at p. 19.) Additionally, the specific use of the terms "shall" and "all" confirm that the Legislature intended that "all" requirements identified "shall" be satisfied as a prerequisite to commencing a Proposition 65 action "in the public interest."
The Notice allows the recipient to communicate directly without the extra layer and expense of lawyers. Parties can communicate directly with each other.

Noncompliance with Certificate of Merit Requirements

Noncompliance with prelitigation certificate of merit requirements mandates dismissal of a private enforcer's cause of action. (*Center for Self-Improvement & Community Development v. Lennar Corp* (2009) 173 Cal.App.4th 1543, 1554.)

"Proposition 65 notice provisions are analogous to the claims presentation requirements in important respects. The Tort Claims Act requires timely presentation of a written claim to, and rejection of that claim by, the public entity as conditions precedent to suit for money or damages against that body. [Citations.] The purpose of the claims presentation statutes is to give the public entity sufficient information so it can adequately investigate claims and settle them, if appropriate, without incurring the time and expense of litigation. [Citation.] Similarly, the Proposition 65 notice requirements afford the public prosecutors 60 days to assess the merits of the claim and concentrate efforts on discouraging the filing of a frivolous suit, or resolving matters with the alleged violator prelitigation." (*Lennar*, *supra*, 173 Cal.App.4th at p. 1555.)

11 C.C.R., § 3101 (b) provides:

The Certificate of Merit shall contain certification that … "I have consulted with at least one person with relevant and appropriate experience or expertise … regarding the *alleged* exposure to the listed chemical that is the subject of the action." (emphasis added)
Instead, the Certificate of Merit that Plaintiff served on Defendant states "I have consulted with

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

at least one person with relevant and appropriate experience or expertise … regarding the exposure to the listed chemical that is the subject of the action."

The elimination of the word "alleged" changes the subject matter of the consultation from the exposure to the chemical alleged in the claim to exposure to the chemical in general. Thus, the Certificate of Merit is not adequate.

A code-compliant Certificate of Merit is an element of the notice requirement. (*Lennar*, *supra*, 173 Cal.App.4th at p. 1551.) Therefore, a non-compliant certificate of merit mandates dismissal of the private enforcer's cause of action. (*Id*. at p. 1554.)

CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted without leave to amend. (Code Civ. Proc., § 430.10, subd. (e).)

Dated :  03/19/2024

Stephen Kaus / Judge

_____

ORDER re: Ruling on Submitted Matter filed by Kreassive, LLC, a
   California Limited Liability Company (Defendant) on            Page 6 of 6
   02/21/2024

| | |
|---|---|
| # SUPERIOR COURT OF CALIFORNIA<br># COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>03/19/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Mendola |

| | |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |
| PLAINTIFF/PETITIONER:<br>Consumer Advocacy Group, Inc. | |
| DEFENDANT/RESPONDENT:<br>Kreassive, Inc., a California Corporation et al | |

| CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6 | CASE NUMBER:<br>22CV024552 |
|---|---|

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Ruling on Submitted Matter filed by Kreassive, LLC, a Califor... entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Brett Howard Oberst
Doll Amir & Eley LLP
boberst@dollamir.com

Ho El Park
Law Office of Ho-El Park PC
info@hparklaw.com

Reuben Yeroushalmi
Yeroushalmi & Associates
lawfirm@yeroushalmi.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/19/2024                    By:

A. Mendola, Deputy Clerk

Exhibit 11

**ARNOLD & PORTER KAYE SCHOLER LLP**
Willis M. Wagner (SBN 310900)
Rica Santos (SBN 328826)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: 415.471.3100
Facsimile: 415.471.3400
will.wagner@arnoldporter.com
rica.santos@arnoldporter.com

*Attorney or   e endants*
THE KROGER CO.
THE KROGER CO. OF MICHIGAN
FOODS CO.

**FILED**
Superior Court of California
County of Los Angeles

**03/28/2024**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ Deputy
M. Ventura

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC., in the public interest,<br><br>Plaintiff,<br><br>     v.<br><br>THE KROGER CO., an Ohio Corporation<br>THE KROGER CO. OF MICHIGAN, a Michigan Corporation, FOODS CO., a business entity form unknown  and DOES 1-10,<br><br>Defendants. | Case No. 19STCV25041<br><br>[~~PROPOSED~~] **JUDGMENT GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge:  Hon. Jon R. Takasugi<br><br>Date:  March 1, 2024<br>Time:  9:30 a.m.<br>Dept.:  17 |

*Electronically Received 03/13/2024 08:57 PM*

On February 5, 2024, Defendants The Kroger Co., The Kroger Co. of Michigan, and Foods Co. (collectively, "Defendants") filed a Motion for Judgment on the Pleadings ("Motion").

On February 13, 2024, Plaintiff Consumer Advocacy Group, Inc. ("Plaintiff" or "CAG") filed an ex parte application for leave to file an oversized brief regarding the Motion. The Court held a hearing on this application on February 15, 2024, and granted the application. On Febraury 16, 2024, Plaintiff Consumer Advocacy Group, Inc. ("Plaintiff" or "CAG") filed an opposition to the Motion. Defendants filed their reply on February 23, 2024.

In the Motion, Defendants argued that Plaintiff's Proposition 65 pre-suit notice of violation associated with this case failed to strictly comply with the notice requirements set forth in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1), and as a matter of law, Plaintiff lacked authority to prosecute its Proposition 65 claims on behalf of the public interest.[1] Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) provides that "For all notices, the notice shall identify: (1) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." Plaintiff's notice of violation stated, "Violators may contact CAG concerning this Notice through its designated person within the entity, its attorney, Reuben Yeroushalmi." Mr. Yeroushalmi does not dispute that he is CAG's outside counsel. Defendants argued that the information provided in the pre-suit notice did not strictly comply with the requirements in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) because Mr. Yeroushalmi is not a "responsible individual" within CAG, which compelled dismissal of the case without leave to amend. Plaintiff argued that it substantially complied with the pre-suit notice requirements under Cal. Code Regs., tit. 27, § 25903(b)(2)(A) by designating its outside attorney, Mr. Yeroushalmi, in its pre-suit notices as the respnsible individual.

On March 1, 2024, the Court heard argument from the parties on Defendants' Motion. Having considered the Motion and reply, Plaintiff's opposition, all other papers submitted, and arguments made by the parties, the Court issued a Final Order granting the Motion. Attached hereto as **Exhibit A** is a copy of the Final Order issued by the Court on March 1, 2024.

---

[1] The pre-suit notice was dated August 17, 2018.

PROPOSED JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

1    For the reasons stated in more detail in the attached Final Order, the Court hereby **GRANTS**

2    Defendants' Motion.  In granting the Motion, the Court finds that:

3    1.    As a matter of law, a private Proposition 65 enforcer must strictly comply with the

4    requirements of Cal. Code. Regs., tit. 27,    25903(b)(2)(A)(1) (  Section 25903(b)(2)(A)(1)  ), which

5    provide that    f or all notices, the notice shall identify . . . the name, address, and telephone number

6    of the noticing individual or a responsible individual within the noticing entity and the name of the

7    entity.    The plain language of Section 25903(b)(2)(A)(1) excludes outside counsel.

8    2.    The California Court of Appeals in *Consumer Advoc. Grp., Inc. v.    ntetsu   nters. Am.*, 150

9    Cal. App. 4th 953 (2007) did not conclude that only substantial compliance was required to comply

10   with Proposition 65 pre-suit requirements.  Notably, the defect in    *ntetsu*    where Plaintiff failed to

11   include a defendant's full name    was not analogous to the defect here.  Moreover, the court in

12   *ntetsu* did not discuss strict versus substantial compliance, instead holding that the company had

13   waived its right to contest how it was named by seeking dissmial on grounds other than personal

14   jursidiction.

15   3.    Based on the pleadings, information subject to judicial notice, and the arguments made at

16   hearing, the Court holds that the pre-suit notice associated with this case does not strictly comply

17   with the requirements set forth in Section 25903(b)(2)(A)(1).  It is undisputed that Plaintiff's

18   attorney, Mr. Yeroushalmi, was its   designated person   whose contact information was provided in

19   the pre-suit notice.  It is also not disputed that Mr. Yeroushalmi acted as outside counsel when

20   sending the pre-suit notice, and therefore, as a matter of law, was not a responsible individual within

21   the noticing entity as required by Section 25903(b)(2)(A)(1).

22   4.    Moreover, even if substantial compliance was the standard under Section 25903(b)(2)(A)(1),

23   which the Court disagrees with, Plaintiff's designation of Mr. Yeroushalmi as the responsible

24   individual does not substantially comply with the regulation.

25   5.    Because Plaintiff's pre-suit notice did not strictly or substantially comply with Section

26   25903(b)(2)(A)(1), Plaintiff lacks jurisdiction to proceed as a private enforcer under Proposition 65

27   and this action is dismissed without leave to amend.  The Motion is granted as to The Kroger Co.,

28   The Kroger Co. of Michigan, and Foods Co.

~~PROPOSED~~  JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

Accordingly, it is hereby **ORDERED** that:

1. Judgment is **GRANTED** in favor of Defendants The Kroger Co., The Kroger Co. of Michigan, and Foods Co., and against the entire Complaint

2. Plaintiff shall take nothing by way of its Complaint  and

3. Defendants are awarded their costs of suit (in an amount to be supported by a forthcoming Memorandum of Costs).

This action is hereby **DISMISSED** in its entirety and with prejudice.

**IT IS SO ORDERED.**

DATED: 03/28/2024

Hon. Jon R. Takasugi

Jon R. Takasugi / Judge

---

3

~~PROPOSED~~  JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

US 175612180v1

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 17

19STCV25041                                                          March 1, 2024
**CONSUMER ADVOCACY GROUP, INC. vs THE KROGER**              9:30 AM
**CO., et al.**

Judge: Honorable Jon R. Takasugi          CSR: Jane Hong-Elsey CSR#11975
Judicial Assistant: M. Ventura            ERM: None
Courtroom Assistant: J. Shuton            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Reuben Yeroushalmi (VIA LA COURTCONNECT)

For Defendant(s): WILL WAGNER FOR Margaret Carew Toledo (VIA LA
COURTCONNECT)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Judgment on the Pleadings

Pursuant to Government Code sections 68086, 70044 and California Rules of Court, rule 2.956, Jane Hong-Elsey CSR#11975, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The matter is called for hearing.

The Court's tentative ruling is posted online for parties and counsel to review.

After hearing oral argument, the Court adopts its tentative ruling as the final order of the court, as follows:

Defendant's motion for judgment on the pleadings is GRANTED.

On July 18, 2019, Plaintiff filed the instant action against the Kroger Co., the Kroger Co. of Michigan, and Foods Co. (collectively, Defendants), alleging a violation of Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 17

19STCV25041                                                    March 1, 2024
**CONSUMER ADVOCACY GROUP, INC. vs THE KROGER**              9:30 AM
**CO., et al.**

Judge: Honorable Jon R. Takasugi          CSR: Jane Hong-Elsey CSR#11975
Judicial Assistant: M. Ventura            ERM: None
Courtroom Assistant: J. Shuton            Deputy Sheriff: None

---

On 2/5/2024, Defendant moved for a judgment on the pleadings.


On 2/16/2024, Plaintiff opposed.


Discussion


Defendant argues that it is entitled to a judgment on the pleadings because Plaintiff's Notice of Violation is defective, and Prop 65 requires strict compliance with pre-suit notice requirements.


In support of the first contention (i.e, the Notice is defective), Defendant argues that Plaintiff's Notice does not identify a responsive individual "within" the noticing entity.


Pre-suit notice was designed to accomplish two things: (1) to provide the public prosecutor the means to assess whether to intervene on the public's behalf, and (2) to afford the target of the notice the opportunity to avoid litigation by settling with the plaintiff or by curing any violation. (Consumer Advoc. Grp., Inc. v. Kintetsu Enters. Am. (2007) 150 Cal. App. 4th 953, 963–64.) Against that backdrop, Proposition 65 requires that the notice identify "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." Cal. Code Regs. tit. 27, § 25903(b)(2)(A)(1) (emphasis added). CAG fails to satisfy this requirement.


Here, Plaintiff's Notice states that "[v]iolators may contact CAG concerning this Notice through its designated person within the entity, its attorney, Reuben Yeroushalmi." (See e.g., D's Ex. G, at 1.) Defendant contends this is insufficient because Plaintiff's outside counsel is not a

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 17

| | |
|---|---|
| 19STCV25041 | March 1, 2024 |
| CONSUMER ADVOCACY GROUP, INC. vs THE KROGER CO., et al. | 9:30 AM |

| | |
|---|---|
| Judge: Honorable Jon R. Takasugi | CSR: Jane Hong-Elsey CSR#11975 |
| Judicial Assistant: M. Ventura | ERM: None |
| Courtroom Assistant: J. Shuton | Deputy Sheriff: None |

"responsible individual within" CAG.

In support of the second contention (i.e., Prop. 65 requires strict compliance), Defendant cites Prop. 65's express language which provides:

For purposes of Section 25249.7(d) of the Act, "notice of the violation which is the subject of the action" (hereinafter "notice") shall mean a notice meeting all requirements of this section. No person shall commence an action to enforce the provision of the Act "in the public interest" pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section.

In opposition, Plaintiff argues that its Notices were properly served, and even assuming they were not, only substantial, rather than strict, compliance is required.

In support of the first contention, Plaintiff notes that there is nothing in the statute that actually limits the phrase of "individual within the noticing entity" in 27 CCR § 25903(b)(2)(A)(1) to mean "officer, director, or employee. Indeed, as noted by Plaintiff, OEHHA created a defined term, "employee" at the outset of the Chapter that would seem to capture what Defendant contends the phrase "person within the entity." (27 CCR, § 25102(h).) As such, Plaintiff contends that if OEHHA had intended to apply the notice requirement to only officer, director, or, employee, OEHHA could have used the language of "employee" rather than "person within the entity." By using this broader language, Plaintiff contends that non-employee agents qualified as appropriate contact persons.

In support of the second contention, Plaintiff characterizes the ruling of Kintetsu, supra, as having concluded that only substantial compliance with the requirements of section 25903(B)(2)(a) was necessary.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 17

19STCV25041                                                           March 1, 2024
**CONSUMER ADVOCACY GROUP, INC. vs THE KROGER**                       9:30 AM
**CO., et al.**

Judge: Honorable Jon R. Takasugi           CSR: Jane Hong-Elsey CSR#11975
Judicial Assistant: M. Ventura             ERM: None
Courtroom Assistant: J. Shuton             Deputy Sheriff: None

After review, the Court disagrees with Plaintiff.

As for the issue of Notice, Plaintiff does not cite any statutory language or case law which would suggest that outside counsel would constitute an individual "within" the noticing entity. Thus, while the Court understands Plaintiff's contention that there is no indication that this category of individuals must be limited to a director, officer, or employee, Plaintiff has not provided any basis for why outside counsel would fall within this category. Given that the language "individual within the noticing entity" would, on its face, appear to exclude outside counsel, Plaintiff offers no explanation as to why OEHHA would have used this language without any further definition if it contemplated that outside counsel should be included in this definition.

As for the issue of compliance, the Court is not persuaded of Plaintiff's interpretation of Kintetsu. In Kintetsu, one defendant, Circle K Stores, Inc., "argue[d] that the notice was insufficient because it [Circle K Stores, Inc.] was incorrectly named" having been listed as "Circle K Co." and "Circle K" in the notice and the complaint. (Kintetsu, supra, 150 Cal.App.4th at 972.) The Court of Appeal rejected Circle K Stores, Inc.'s challenge to the validity of the notice on the grounds that it failed to strictly comply with Section 25903(B)(2)(a)'s requirement that the notice "shall identify … the name of the alleged violator", ruling that "[b]y seeking a dismissal on grounds other than personal jurisdiction, Circle K Stores, Inc. forfeited its right to contest the notice on the ground that it was improperly named." (Ibid.)

The Court understand Plaintiff's argument that if failure to strictly comply was required then failure to strictly comply with the requirement of Section 25903(B)(2)(a) to identify "the name of the alleged violator" would have been grounds for dismissal in its own right, independent of any challenge to personal jurisdiction. However, this is an inference of Plaintiff's, and is not expressly stated by the Kintetsu Court, nor is it a question that was actually considered by the Court. Rather, the Kintetsu Court did not consider the questions of whether or not the failure to properly name Circle K was fatal to the claim, or whether or not there was still substantial

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 17

19STCV25041                                                              March 1, 2024
**CONSUMER ADVOCACY GROUP, INC. vs THE KROGER**                          9:30 AM
**CO., et al.**

Judge: Honorable Jon R. Takasugi          CSR: Jane Hong-Elsey CSR#11975
Judicial Assistant: M. Ventura            ERM: None
Courtroom Assistant: J. Shuton            Deputy Sheriff: None

compliance, because it found that Circle K had forfeited the right to raise the issue. As such, it is a overstatement of the holding to say that the Kintestu Court concluded that only substantial compliance was necessary with Prop. 65 requirements.

Moreover, Plaintiff is assuming a false equivalency between the facts here and in Kintetsu. In Kintetsu, Plaintiff failed to include Circle K's full name—Circle K Stores, Inc.—in the Notice, and instead Noticed them as "Circle K Co./Circle K". Here, by contrast, the question is whether or not the individual named in Plaintiff's Notice satisfies the very definition of an individual within the noticing entity as a required by statute. The Court disagrees that these defects are analogous. As such, the Court is not persuaded that Plaintiff has shown that it substantially complied with Section 25903(B)(2)(a) requirements.

Proposition 65 expressly states that pre-suit notices much meet "all requirements of [the] section, and that "[n]o person shall commence an action to enforce the provision of the Act "in the public interest" pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section." (Cal. Code Regs. tit. 27, § 25903(a) (emphases added). Proposition 65 requires that the notice identify "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." Cal. Code Regs. tit. 27, § 25903(b)(2)(A)(1)

Here, Plaintiff listed outside counsel as the responsible individual within the noticing entity, and could not identify any legal basis on which this Court could rely on to conclude that outside counsel fell within the meaning of the statute. Second, while the Court questions Plaintiff's contention that only substantial compliance with pre-suit notice requirements is necessary, the Court also concludes that, even assuming it is, Plaintiff has not shown that its listing of outside counsel still substantially complied with the statute.

Based on the foregoing, Defendant's motion for judgment on the pleadings is granted.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 17

**19STCV25041**                                                    March 1, 2024
**CONSUMER ADVOCACY GROUP, INC. vs THE KROGER**                    9:30 AM
**CO., et al.**

Judge: Honorable Jon R. Takasugi          CSR: Jane Hong-Elsey CSR#11975
Judicial Assistant: M. Ventura             ERM: None
Courtroom Assistant: J. Shuton             Deputy Sheriff: None

---

It is so ordered.


Dated: March 1, 2024


Hon. Jon R. Takasugi
Judge of the Superior Court


Later out of the presence of counsel, the Court orders counsel to submit a Judgment of Dismissal within 20 days.

Non-Appearance Case Review re Submittal of Judgement of Dismissal is scheduled for 03/28/24 at 11:00 AM in Department 17 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

1

**<u>PROOF OF SERVICE</u>**

2

I am over eighteen years of age and not a party to this action.  I am employed in the County

3

of San Francisco, State of California.  My business address is Three Embarcadero Center, 10th

4

Floor, San Francisco, CA 94111.

5

On March 13, 2024, I served the following documents:

6

7

**PROPOSED  JUDGMENT GRANTING DEFENDANTS**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

8

9

I served the documents on the following persons:

10

| | |
|---|---|
| Reuben Yeroushalmi<br>Shohini Sengupta<br>Priyanshi Singh<br>Kendall Klyczek<br>Gunvir Batth<br>Ryan Dewberry<br>Yeroushlami & Yeroushalmi<br>9100 Wilshire Boulevard, Suite 240<br>Beverly Hills, CA  90212<br>reuben@yeroushalmi.com<br>shohini@yeroushalmi.com<br>priyanshi@yeroushalmi.com<br>kendall@yeroushalmi.com<br>gunvir@yeroushalmi.com<br>ryan@yeroushalmi.com<br>service@yeroushalmi.com | Attorneys for Plaintiff<br>Consumer Advocacy Group |

11

12

13

14

15

16

17

18

19

20

21

The documents were served by the following means:

22

_____**E    r    S r     E**_____.  I transmitted the document(s) to the persons at the

23

electronic notification addresses listed above on March 13, 2024 before 6:00 p.m. PDT.

24

I declare under penalty of perjury under the laws of the State of California that the foregoing

25

is true and correct.

26

27

Dated:  March 13, 2024                    Signature: _____

28

Marie    ambrano

- 1 -

PROOF OF SERVICE

Exhibit 12

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY                    STATE BAR NUMBER
NAME: Rachel E.K. Lowe (SBN 246361); Gregory S. Berlin (SBN 316289)
FIRM NAME: ALSTON & BIRD LLP
STREET ADDRESS: 350 South Grand Avenue, 51st Floor
CITY: Los Angeles                    STATE: CA   ZIP CODE: 90071
TELEPHONE NO.: (213) 576-1000   FAX NO.: (213) 576-1100
EMAIL ADDRESS: rachel.lowe@alston.com; greg.berlin@alston.com
ATTORNEY FOR (name): WALMART INC. and WAL-MART.COM, INC.

**FOR COURT USE ONLY**

**Electronically FILED by
Superior Court of California,
County of Los Angeles
1/25/2024 1:00 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By L. Kulkin, Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA  90401
BRANCH NAME: Santa Monica Courthouse

PLAINTIFF/PETITIONER: CONSUMER ADVOCACY GROUP, INC.

DEFENDANT/RESPONDENT: WALMART, INC., et al.

| NOTICE OF ENTRY OF JUDGMENT OR ORDER | CASE NUMBER: |
|---|---|
| *(Check one):*  ☒ **UNLIMITED CASE** (Amount demanded exceeded $35,000)   ☐ **LIMITED CASE** (Amount demanded was $35,000 or less) | 22STCV21493 |

**TO ALL PARTIES:**

1. A judgment, decree, or order was entered in this action on *(date)*: January 19, 2024

2. A copy of the judgment, decree, or order is attached to this notice.

Date: January 25, 2024

Gregory S. Berlin
(TYPE OR PRINT NAME OF    ☒ ATTORNEY   ☐ PARTY WITH OUT ATTORNEY)

▶ *[signature]*
(SIGNATURE)

**Page 1 of 2**

Electronically Received 01/17/2024 06:21 PM

1   RACHEL E.K. LOWE (State Bar No. 246361)
    GREGORY S. BERLIN (State Bar No. 316289)
2   ISAAC WALRATH (State Bar No. 317767)
    SAMANTHA K. BURDICK (State Bar No. 329952)
3   **ALSTON & BIRD LLP**
    350 South Grand Avenue, 51st Floor
4   Los Angeles, CA 90071-1410
    Telephone:      213-576-1000
5   Facsimile:      213-576-1100
    E-mail: rachel.lowe@alston.com
6           greg.berlin@alston.com
            isaac.walrath@alston.com
7           sam.burdick@alston.com

8   Attorneys for Defendants
    WALMART INC. and
9   WAL-MART.COM, INC. (erroneously sued as "WAL-MART.COM INC.")

**FILED**
Superior Court of California
County of Los Angeles

01/19/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ Deputy
          K. Metoyer

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                      **COUNTY OF LOS ANGELES**

12

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC., in the public interest, | Reservation ID: 718589925312 |
| Plaintiff, | Case No. 22STCV21493 |
| v. | Assigned for all purposes to: The Hon. Mark A. Young – Dept. M |
| WALMART, INC., a Delaware Corporation; WAL-MART.COM INC., a Delaware Corporation; LANDAU UNIFORMS, INCORPORATED, a Mississippi Corporation; JFC INTERNATIONAL, INC., a California Corporation; and DOES 1-70, | [~~PROPOSED~~] JUDGMENT GRANTING DEFENDANTS WALMART INC. AND WAL-MART.COM, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| Defendants. | Date:    January 5, 2024 Time:   8:30 a.m. Dept:   M |

21

22

23

24

25

26

27

28

[~~PROPOSED~~] JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JUDGMENT**

On December 8, 2023, Defendants Walmart Inc. and Wal-Mart.com, Inc. (collectively, "Walmart") filed a Motion for Judgment on the Pleadings ("Motion").  On December 12, 2023, Defendant Landau Uniforms, Inc., filed a joinder to the Motion.  On December 13, 2023, Defendant JFC International, Inc., filed a joinder to the Motion.

On December 21, 2023, Plaintiff Consumer Advocacy Group, Inc. ("Plaintiff" or "CAG") filed an opposition to the Motion. Walmart filed its reply on December 28, 2023.  On January 2, 2024, Plaintiff filed an ex parte application for leave to file a sur-reply in opposition to the Motion and Walmart filed an opposition that day. Plaintiff re-filed an amended ex parte application seeking leave to file a sur-reply on January 3, 2024, and Walmart filed an amended opposition that day. On January 4, 2024, the Court **DENIED** Plaintiff's ex parte application for leave to file a sur-reply on the grounds that Plaintiff failed to meet the standard required for ex parte relief.

In the Motion, Walmart argued that Plaintiff's seven Proposition 65 pre-suit notices of violation associated with this case failed to strictly comply with the notice requirements set forth in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1), and as a matter of law, Plaintiff had no authority to prosecute its Proposition 65 claims on behalf of the public interest.[1]  Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) provides that "For all notices, the notice shall identify: (1) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity."  Each of Plaintiff's seven pre-suit notices of violation stated, "Violators may contact CAG concerning this Notice through its designated person, its attorney, Reuben Yeroushalmi, 9100 Wilshire Boulevard, Suite 240W, Beverly Hills, CA 90212, telephone no. (310) 623-1926, facsimile no. (310) 623-1930."  Walmart argued that this information did not strictly comply with the requirements in Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1) because Mr. Yeroushalmi is not a responsible individual within CAG, which compelled dismissal of the complaint without leave to amend.  Plaintiff argued that it complied with the pre-suit notice requirements under Cal. Code Regs., tit. 27, § 25903(b)(2)(A) by designating its attorney, Mr. Yeroushalmi, in its pre-suit notices.

---

[1] The pre-suit notices were dated July 23, 2021, August 20, 2021, August 27, 2021, October 1, 2021, November 19, 2021, December 23, 2021, and December 23, 2021.

On January 5, 2024, the Court heard Defendants Walmart Inc. and Wal-Mart.com, Inc.'s Motion for Judgment on the Pleadings.  Having considered the Motion, Plaintiff's opposition thereto, and all papers submitted, and arguments made in support of and in opposition to the Motion, the Court issued a Final Order granting the Motion.  Attached hereto as **Exhibit A** is a copy of the Final Order issued by the Court on January 5, 2024.

For the reasons stated in more detail in the attached Final Order, the Court hereby **GRANTS** the Motion for Judgment on the Pleadings. In granting the Motion, the Court finds that:

1.      Walmart's request that the Court take judicial notice of pre-suit notices of violation served by Plaintiff in this matter and pre-suit notices of violation served by other Proposition 65 private enforcers, is **GRANTED**.  These notices are attached as Exhibits 1 through 11 to Walmart's Request for Judicial Notice.

2.      Walmart's supplemental request for judicial notice is **DENIED**.

3.      Walmart's objections to the Declaration of Reuben Yeroushalmi in support of Plaintiff's opposition to the Motion are **SUSTAINED**.

4.      As a matter of law, a private Proposition 65 enforcer must strictly comply with the requirements of Cal. Code. Regs., tit. 27, § 25903(b)(2)(A)(1), which provide that "[f]or all notices, the notice shall identify . . . the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity."  The Court finds, over Plaintiff's objection, that this provision must be "strictly construed" and that "substantial compliance" is insufficient. As a result, pre-suit notices must include the required information including the responsible individual within the noticing entity.

5.      Based on the pleadings and information subject to judicial notice, as well as the statements and admissions contained in Plaintiff's papers and attached declarations related to Mr. Yeroushalmi's status as solely Plaintiff's outside attorney, the Court finds that none of the pre-suit notices associated with this case strictly complied with the requirement set forth at Cal. Code. Regs., tit. 27, § 25903(b)(2)(A)(1).  It is undisputed that Plaintiff's attorney, Mr. Yeroushalmi, was its "designated person" whose contact information was provided in the seven pre-suit notices. The Court concludes that Mr. Yeroushalmi acted solely as outside counsel when sending the pre-suit notices and

was not a responsible individual within the noticing entity as required by Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1).

       6.      Because Plaintiff's pre-suit notices did not strictly comply with Cal. Code Regs., tit. 27, § 25903(b)(2)(A)(1), this action is dismissed without leave to amend.  Since the pre-suit notices are fatally defective, the Motion is also granted as to the joining defendants Landau Uniforms, Inc. and JFC International, Inc.

       Accordingly, it is hereby **ORDERED** that:

1.   Judgment is **GRANTED** in favor of Defendants Walmart Inc., Wal-Mart.com, Inc., Landau Uniforms, Inc., and JFC International, Inc., and against the entire Complaint;

2.   Plaintiff shall take nothing by way of its Complaint; and

3.   Defendants are awarded their costs of suit (in an amount to be supported by a forthcoming Memorandum of Costs).

This action is hereby **DISMISSED** in its entirety and with prejudice.

**IT IS SO ORDERED.**

DATED:    01/19/2024                                 
                                            Hon. Mark A. Young

[PROPOSED] JUDGMENT GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Santa Monica Courthouse, Department M

**22STCV21493**                                                  January 5, 2024
**CONSUMER ADVOCACY GROUP, INC. vs WALMART**                     8:30 AM
**INC., et al.**

Judge: Honorable Mark A. Young                CSR: Jane Hong-Elsey, CSR # 11975
Judicial Assistant: K. Metoyer                ERM: None
Courtroom Assistant: J. Morgan                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Masoud Masjedi (Telephonic)

For Defendant(s): Greg Berlin; Alden Parker (Telephonic); Steven George Teraoka By: Steven

Garrett (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Judgment on the Pleadings

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956,
Jane Hong-Elsey, CSR # 11975, certified shorthand reporter is appointed as an official Court
reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court
Reporter Agreement. The Order is signed and filed this date.

The matter is called for hearing.

The Court has read and considered all documents filed hereto regarding the above-captioned
Motion and provides counsel with its written Tentative Ruling. Counsel are given the
opportunity to argue. After argument, the Court takes the matter under submission. Later, the
Court amends and adopts its Tentative Ruling as the Final Ruling as follows:

**\*\*FINAL RULING\*\***

LEGAL STANDARD

A defendant's motion for judgment on the pleadings may be made after the time to demur has
expired and an answer has been filed. (CCP § 438(f).) A motion by a defendant may be made on
the grounds that (1) the court "lacks jurisdiction of the subject of one or more of the causes of
action alleged" or (2) the complaint or cross-complaint "does not state facts sufficient to
constitute a cause of action against that defendant." (CCP § 438(c).)

A motion for judgment on the pleadings has the same function as a general demurrer but is made
after the time for demurrer has expired. Except as provided by statute, the rules governing

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Santa Monica Courthouse, Department M

**22STCV21493**                                                        January 5, 2024
**CONSUMER ADVOCACY GROUP, INC. vs WALMART**                               8:30 AM
**INC., et al.**

Judge: Honorable Mark A. Young            CSR: Jane Hong-Elsey, CSR # 11975
Judicial Assistant: K. Metoyer            ERM: None
Courtroom Assistant: J. Morgan            Deputy Sheriff: None

demurrers apply. (Cloud v. Northrop Grumman Corp. (1998) 67 Cal.App.4th 995, 999.) "A
motion for judgment on the pleadings is akin to a general demurrer; it tests the sufficiency of the
complaint to state a cause of action. The court must assume the truth of all factual allegations in
the complaint, along with matters subject to judicial notice." (Wise v. Pacific Gas and Elec. Co.
(2005) 132 Cal.App.4th 725, 738, citations omitted.) Further, like a general demurrer, a motion
for judgment on the pleadings "does not lie as to a portion of a cause of action, and if any part of
a cause of action is properly pleaded, the [motion] will be overruled." (Fire Ins. Exchange v.
Superior Court (2004) 116 Cal.App.4th 446, 452.)

EVIDENTIARY ISSUES

Defendants Walmart Inc. and Wal-Mart.com Inc. request that the Court take judicial notice of
documents, including the pre-suit notices of violation served by Plaintiff in this matter (Exs. 1-7)
and pre-suit notices of violation served by other Proposition 65 private enforcers in certain other
matters (Exs. 8-11). These pre-suit notices are official records on file with the California
Attorney General's Office. (Evid. Code § 452(c).) Therefore, these requests are GRANTED. The
Court only notices the fact that these documents exist, and the legal effect thereof, but not of the
truth of any statements contained therein. (Lockley v. Law Office of Cantrell, Green, Pekich,
Cruz & McCort (2001) 91 Cal.App.4th 875, 882.)

The supplemental request for judicial notice is DENIED.

The objections to the Yeroushalmi declaration are SUSTAINED, as the declaration contains
extrinsic evidence. The Court will consider this declaration for leave to amend purposes only.

ANALYSIS

Defendants Walmart Inc. and Wal-Mart.com Inc. move for judgment on the pleadings.
Defendants Landau uniforms inc. and JFC International Inc. join in the motion. Defendants argue
that the pre-suit notices served by Plaintiff Consumer Advocacy Group, Inc. ("CAG") fail to
comply with the Safe Drinking Water and Toxic Enforcement Act of 1986's ("Prop 65") pre-suit
notice regulations.

Notices

Prop 65 provides that no business with ten or more employees "shall knowingly and intentionally
expose any individual to a chemical known to the state to cause cancer or reproductive toxicity

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Santa Monica Courthouse, Department M

**22STCV21493**                                         January 5, 2024
**CONSUMER ADVOCACY GROUP, INC. vs WALMART**            8:30 AM
**INC., et al.**

Judge: Honorable Mark A. Young          CSR: Jane Hong-Elsey, CSR # 11975
Judicial Assistant: K. Metoyer          ERM: None
Courtroom Assistant: J. Morgan          Deputy Sheriff: None

---

without first giving clear and reasonable warning to such individual," unless an exemption or affirmative defense applies. (Health & Safety Code § 25249.6.) The statute provides for injunctive relief and imposes penalties of up to $2,500 per violation. (Id. § 25249.7(a).)

CCR Section 25903 specifies the information private enforcers "shall identify" in every pre-suit notice. While some pieces of information vary depending on the type of exposure alleged, there are four pieces of information that private enforcers must include in every notice. For all notices, the notice shall identify:

1. the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity;
2. the name of the alleged violator or violator
3. the approximate time period during which the violation is alleged to have occurred; and
4. the name of each listed chemical involved in the alleged violation.

(27 CCR § 25903(b)(2)(A), emphasis added.)

Defendants argue that the pre-suit notices of violation served by Plaintiff in this matter are ineffective, because they do not identify a person from "within" CAG. Defendants contend that Mr. Yeroushalmi is CAG's "outside" counsel working for a private law firm. Defendants note that on the face of the pleadings, his name and contact information are associated with the law firm, Yeroushalmi & Yeroushalmi. Each notice states Mr. Yeroushalmi is "designated person," and provides his contact information. (RJN, Exs. 1-7.) Defendants conclude that he is not a "responsible individual within" CAG such as an employee, officer or director, and thus, the notices were fatally defective.

As an initial matter, the Court concludes that the notice requirements of Section 25903 must be strictly construed and that substantial compliance is insufficient. A court may infer legislative intent for strict compliance when the Legislature has provided a detailed and specific mandate. (Prang v. Los Angeles County Assessment Appeals Board No. 2 (2020) 54 Cal.App.5th 1, 19.) The plain language of Prop. 65 states that a person "shall" comply with "all" the requirements. Section 25903 states that notice "shall mean a notice meeting all requirements of this section" and "No person shall commence an action to enforce the provisions of [Prop 65] except in compliance with all requirements of this section."

Section 25903 also distinguishes between specific requirements and more generalized requirements. For example, subsection (b)(2)(A) requires that the pre-suit notice provide the

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department M

**22STCV21493**                                                                 January 5, 2024
**CONSUMER ADVOCACY GROUP, INC. vs WALMART**                                    8:30 AM
**INC., et al.**

Judge: Honorable Mark A. Young                    CSR: Jane Hong-Elsey, CSR # 11975
Judicial Assistant: K. Metoyer                    ERM: None
Courtroom Assistant: J. Morgan                    Deputy Sheriff: None

"name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity," which suggests legislative intent for strict compliance. Similarly, subsection (b)(1) deals with the requirement to attach "Appendix A," which also calls for strict compliance. By contrast, other requirements within section 25903, such as those found in subsections (2)(A)(3), (2)(B), 2(D) and 2(E)(1), expressly permit less specificity, indicating that substantial compliance is sufficient as to those subsections.

For these reasons, including that the pre-suit notice requirements that are the subject of this motion are identified in a detailed and specific mandate, the Court concludes that the "Legislature evinces its intent that the statute's requirements are to be followed precisely." (Prang, supra, 54 Cal.App.5th at 19.) Additionally, the specific use of the terms "shall" and "all" confirm that the Legislature intended that "all" requirements identified "shall" be satisfied as a prerequisite to commencing a Proposition 65 action "in the public interest." Therefore, the Court finds that the notice requirements of Section 25903(b)(2)(A) must be strictly construed and that substantial compliance is insufficient. As a result, the notice requirements must include the required information including the responsible individual within the noticing entity. Providing notice of counsel's name and address would be insufficient under the plain language and strict construction of Section 25903. In this matter, it is undisputed that Plaintiff's attorney, Mr. Yeroushalmi, was its "designated person" whose contact information was provided in the Prop. 65 notices. (See RJN, Ex. 1 at p. 8; Ex. 2 at p. 21; Ex. 3 at p. 32; Ex. 4 at p. 43; Ex. 5 at p. 52; Ex. 6 at p. 63; Ex. 7 at p. 75.) The question is whether the Court can reach a conclusion on the current record regarding Mr. Yeroushalmi status as solely Plaintiff's outside attorney, or whether he was also part of CAG.

As discussed by Defendants during oral argument on this motion, the Court can rely upon Plaintiff's papers and attached declarations as admissions against it without violating the general rule of not considering extrinsic evidence. (See Setliff v. E.I.Du Pont de Nemours & Co. (1995) 32 Cal. App. 4h 1525, 1535-36.) Initially, the Court had concluded that the Court could not infer (no matter how unlikely) that Mr. Yeroushalmi was not both an employee/officer/director of CAG and at the same time, an outside lawyer for CAG. Viewing the entire record, however, the Court does find sufficient evidence for the Court to conclude that Mr. Yeroushalmi is solely outside counsel for Plaintiff. For instance, the director of CAG, Michael Marcus, declares that:

CAG has hired outside counsel since CAG would be at a disadvantage if it had hired someone other than a lawyer to handle the alleged Proposition 65 violations. CAG cannot afford its officers or directors to manage legal issues without counsel's involvement relating to litigation. CAG maintains it must be represented by its legal counsel as the primary contact for issues

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Santa Monica Courthouse, Department M

| | |
|---|---|
| **22STCV21493** | January 5, 2024 |
| **CONSUMER ADVOCACY GROUP, INC. vs WALMART** | 8:30 AM |
| **INC., et al.** | |

| | |
|---|---|
| Judge: Honorable Mark A. Young | CSR: Jane Hong-Elsey, CSR # 11975 |
| Judicial Assistant: K. Metoyer | ERM: None |
| Courtroom Assistant: J. Morgan | Deputy Sheriff: None |

regarding the notices based on the history of Proposition 65 matters. (12/21/23 Marcus Decl., ¶ 2 (emphasis added).)

Mr. Marcus further goes on to declare that Mr. Yeroushalmi is CAG's outside counsel throughout the pre-litigation stage of sending 60-day notices. (Id. at ¶ 4.) The opposition further states that Plaintiff did not want to be "directly contacted by alleged violators or their counsel" and therefore used "its attorney as a buffer to avoid threats or other hostile behaviors." (Pl. Opp., p. 9, lns 18-19; Yeroushalmi Decl., ¶ 7.) Plaintiff also argued that its attorney, Mr. Yeroushalmi, acted as an agent for Plaintiff and acted on Plaintiff's behalf as though part of Plaintiff. (Id. at p. 2, lns 1-2; Yeroushalmi Decl., ¶ 15.) Based upon these statements and admissions, the Court concludes that Mr. Yeroushalmi acted solely as outside counsel when sending the Prop. 65 notices, and was not within the organization as required by Section 25903.

Therefore, the motion must be granted. The Court will also briefly address the issue preclusion argument raised by Defendant.

Issue Preclusion

Defendants also argue that collateral estoppel requires dismissal, since other private enforcers, acting in the same "public interest" as CAG, have had suits dismissed on similar grounds. For instance, Environmental Health Advocates, Inc. ("EHA"), another Prop 65 enforcer, recently had approximately 40 lawsuits dismissed in the complex division of Alameda County Superior Court, including one filed against Walmart. Defendants represent that the court found strict compliance standard applied to pre-suit Proposition 65 notices and that, in part, EHA's failure to identify a responsible individual "within" the organization warranted dismissal. (RJN, Ex. 15.) Defendants also claim that Walmart was dismissed in another Prop 65 action on "identical" grounds. (RJN, Ex. 16.)

These noticeable facts do not provide any grounds for issue preclusion against CAG on the present action. Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." (Lucido v. Superior Court (1990) 51 Cal.3d 335, 341.) "The threshold requirements for issue preclusion are: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or was in privity with a party to the former proceeding. [Citation.]" (Castillo v. City of Los Angeles (2001) 92 Cal.App.4th 477, 481.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Santa Monica Courthouse, Department M

22STCV21493
**CONSUMER ADVOCACY GROUP, INC. vs WALMART
INC., et al.**

January 5, 2024
8:30 AM

Judge: Honorable Mark A. Young
Judicial Assistant: K. Metoyer
Courtroom Assistant: J. Morgan

CSR: Jane Hong-Elsey, CSR # 11975
ERM: None
Deputy Sheriff: None

---

The substantive issues presented in this action are not "identical" with the issues presented in the cited matters (RJN, Exs. 15-16) for preclusion purposes. This action regards certain products offered by Walmart within the state, including Flip Flops, Jelly Totes with PVC components, Electronic Abs Stimulator, Roasted Trevalli and Shredded Squid Seafood Snack, Dried Shrimp, Clear PVC Tote Bag, and Toiletry Bag with Plastic Components. These products contain DEHP, DBP, Lead and Lead Compounds, Cadmium and Cadmium Compounds, which are on the Prop 65 list. Plaintiff served seven notices on Defendants as to each item from July through December 2021. This motion raises issues with those notices. On the other hand, the other actions did not concern these same products, did not concern these same notices, and did not concern the same plaintiff. The only similarity is that the actions are all Prop 65 cases which involve Walmart. As far as the Court is aware, the issues presented in this action and, critically, this motion, have never been resolved. There is no indication on the record that CAG, or any other party representing the public interest, had a full and fair opportunity to litigate the issues presented in the notices and pleadings. The fact that similar, but different, issues have been resolved in Walmart's favor is not res judicata.

Accordingly, the motion for judgment on the pleadings is GRANTED without leave to amend. Since the notices are fatally defective, the motion is also granted as to the joining defendants. Defendant to prepare a proposed judgment.

In light of the Court's ruling, the Court vacates all future dates in this matter.

**END OF FINAL RULING**

On the Court's own motion, the Hearing on Motion for Sanctions Against Plaintiff And Plaintiff's Counsel; scheduled for 09/18/2024, Trial Setting Conference scheduled for 01/17/2024, and Informal Discovery Conference (IDC) scheduled for 01/11/2024 are vacated.

Clerk to give notice.

Certificate of Mailing is attached.

---

**CIV-130**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Consumer Advocacy Group, Inc. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: WALMART, INC., et al. | 22STCV21493 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   350 South Grand Avenue, 51st Floor, Los Angeles, CA   90071

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐  deposited the sealed envelope with the United States Postal Service.

   b. ☒  placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):* January 25, 2024

   b. from *(city and state):* Los Angeles, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

   ☒  Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached: 3

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Date: January 25, 2024

Jennifer L. Lathrop
(TYPE OR PRINT NAME OF DECLARANT)

► *Jennifer L. Lathrop*
(SIGNATURE OF DECLARANT)

**Page 2 of 2**

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

1

**PROOF OF SERVICE**

2

I, Jennifer Lathrop, declare:

3

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

4

5

On January 25, 2024, I served the document(s) described as **NOTICE OF ENTRY OF JUDGMENT OR ORDER** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

6

7

8

**U.S. MAIL**:  I am personally and readily familiar with the business practice of Alston & Bird LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

9

10

**UPS NEXT DAY AIR:**  I deposited such envelope in a facility regularly maintained by UPS with delivery fees fully provided for or delivered the envelope to a courier or driver of UPS authorized to receive such documents at Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

11

12

**ELECTRONIC TRANSMISSION WITH ATTACHMENT:**  By electronically mailing a true and correct copy through Alston & Bird LLP's electronic mail system from Jennifer.lathrop@alston.com to the email addresses set forth on the attached service list.

13

14

15

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

16

17

Executed on January 25, 2024, at Los Angeles, California.

18

19

Jennifer Lathrop

20

21

22

23

24

25

26

27

28

*Consumer Advocacy Group, Inc. v. Walmart Inc., et al.*
Los Angeles County Superior Court
Case No. 22STCV21493

**SERVICE LIST**

| | |
|---|---|
| Reuben Yeroushalmi, Esq.<br>**YEROUSHALMI & YEROUSHALMI**<br>9100 Wilshire Boulevard, Suite 240W<br>Beverly Hills, CA  90212<br>Tel:    (310) 623-1296<br>Fax:    (310) 623-1930 | Attorneys for Plaintiff<br>CONSUMER ADVOCACY GROUP, INC.<br><br>Email: reuben@yeroushalmi.com<br>alexandra@yeroushalmi.com<br>shohini@yeroushalmi.com<br>priyanshi@yeroushalmi.com<br>kendall@yeroushalmi.com<br>ryan@yeroushalmi.com<br>service@yeroushalmi.com |
| Masoud Masjedi, Esq.<br>**LAW OFFICES OF MASOUD MASJEDI**<br>1901 Avenue of the Stars, Suite 1900<br>Los Angeles, CA  90067-6020<br>Tel:    (323) 929-4414 | Attorney for Plaintiff<br>CONSUMER ADVOCACY GROUP, INC.<br><br>Email: masoudvakil@yahoo.com |
| Kenneth I. Gross<br>**KENNETH I. GROSS AND ASSOCIATES**<br>849 S. Broadway Ste. 504<br>Los Angeles, CA 90014<br>Tel:    (213) 627-0218 | Attorneys for Defendant, WALMART,<br>INC. and WALMART.COM, INC.<br><br>Email: kgross@kigrosslaw.com |
| Alden J. Parker<br>Vicki Rathke<br>Christopher J. Truxler<br>Alison Renison<br>**FISHER & PHILLIPS LLP**<br>621 Capitol Mall, Suite 1400 Sacramento,<br>California 95814<br>Tel:    (916) 210-0400<br>Fax:    (916) 210-0410 | Attorneys for Defendant LANDAU<br>UNIFORMS, INC.<br><br>Email: aparker@fisherphillips.com<br>        vrathke@fisherphillips.com<br>        ctruxler@fisherphillips.com<br>        arenison@fisherphillips.com |
| Steven Garrett<br>**TERAOKA & PARTNERS LLP**<br>Four Embarcadero Center, Ste 1400<br>San Francisco, CA 94111<br>Tel:    (415) 981-3100<br>Fax:    (415) 981-0222 | Attorneys for Defendant JFC<br>INTERNATIONAL, INC.<br><br>Email: Steve@teraokalaw.com |

**<u>Via Email and US Mail</u>**
Tara Danita HeckardBryant
AlderLaw, PC
12800 Riverside Drive, 2nd
Floor, Valley Village, CA 91607

Attorneys for Plaintiff
CONSUMER ADVOCACY GROUP, INC.

Email: theckardblaw@gmail.com

Exhibit 13

Electronically Received 12/14/2023 02:59 PM

1    BRYAN CAVE LEIGHTON PAISNER LLP
     Merrit M. Jones
2    merrit.jones@bclplaw.com
     Three Embarcadero Center, 7th Floor
3    San Francisco, California  94111-4070
     Telephone:    +1 415 675 3400
4    Facsimile:    +1 415 675 3434

5    Attorneys for Defendant
     ROOTED INNOVATIONS INC.

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF ALAMEDA

10

11   KIM EMBRY, an individual              Case No. RG20057491

12             Plaintiff,                   Assigned *to Hon. Evelio Grillo,
                                            Dept. 21*
13        v.
                                            [PROPOSED] DISMISSAL OF
14   B&G FOODS NORTH AMERICA, INC., a       ACTION WITH PREJUDICE
     Delaware corporation, RALPHS GROCERY
15   COMPANY, an Ohio corporation, DOES 1 through
     100, inclusive
16
              Defendants
17

18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────
[PROPOSED] DISMISSAL OF ACTION WITH PREJUDICE –CASE NO. 21CV002803

**FILED**
Superior Court of California
County of Alameda

01/03/2024

Chad Finke , Executive Officer / Clerk of the Court

By: _____N. Hall_____ Deputy
          N. Hall



1
2
3
4
5
6
7
8
9
10
11
12 ENVIRONMENTAL HEALTH ADVOCATES, INC.,

Case No. Case No. 21CV002803

13
14                    Plaintiff,
15             v.
16 ROOTED INNOVATIONS INC., a Delaware
17 corporation, AMAZON.COM, INC., a Delaware
   corporation, and DOES 1 through 100, inclusive,
18   Defendants.
19
20
21
22
23
24
25
26
27                                   - 2 -
28 [PROPOSED] DISMISSAL OF ACTION WITH PREJUDICE –CASE NO. 21CV002803

FIRM NAME
OFFICE ADDRESS

1
2
| ENVIRONMENTAL HEALTH ADVOCATES, INC., | Case No. 22CV006606 |

3          Plaintiff,

4            v.

5  ALDI INC., an Illinois corporation and DOES 1
6  through 100, inclusive

7          Defendants.

8

9

10
11
| ENVIRONMENTAL HEALTH ADVOCATES, INC., | Case No. RG21086510 |

12          Plaintiff,

13           v.

14  B&G FOODS NORTH AMERICA, INC., a
     Delaware corporation, AMAZON.COM, INC., a
15  Delaware corporation, BERKELEY BOWL
     PRODUCE, INC., a California corporation, and
16  DOES 1 through 100, inclusive

17          Defendants.

18

19

20
21
| ENVIRONMENTAL HEALTH ADVOCATES, INC., a California organization | Case No. HG20077077 |

22          Plaintiff,

23           v.

24  GENERAL MILLS, INC., a California corporation,
     and DOES 1 through 100, inclusive
25

26          Defendants.

27

28

- 3 -

| | |
|---|---|
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CREATIVE SNACKS COMPANY, LLC, a North Carolina corporation, HARVEST RANCH MARKET, a California corporation, and DOES 1 through 100, inclusive<br><br>    Defendants. | Case No. HG21084353 |
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PEPPERIDGE FARM, INCORPORATED, a Connecticut corporation, STATER BROS. MARKETS, a California corporation and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. HG21086232 |
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SPROUTS FARMERS MARKET, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. RG21086468 |

- 4 -

| | |
|---|---|
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>             Plaintiff,<br><br>        v.<br><br>SNYDER'S-LANCE, INC., a North Carolina Corporation, LUNDARDI'S SUPER MARKET, INC. a California corporation, and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. HG21086615 |
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>             Plaintiff,<br><br>        v.<br><br>NATURAL INTENTIONS, INC., a California corporation, PURE NATURE FOOD, LLC, a California limited liability company, SPROUTS FARMERS MARKET, INC., a Delaware corporation, and DOES 1 through 100, inclusive<br><br>             Defendants. | Case No. HG21102866 |
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>             Plaintiff,<br><br>        v.<br><br>THE HAIN CELESTIAL GROUP, INC. a Delaware corporation, JIMBO'S NATURAL FAMILY, INC., a California corporation, and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. HG21104490 |

- 5 -

| | |
|---|---|
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>BIO-NUTRITIONAL RESEARCH GROUP, INC., a California corporation, SAFEWAY INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>       Defendants. | Case No. HG21104508 |

[PROPOSED] DISMISSAL OF ACTION WITH PREJUDICE –CASE NO. 21CV002803

1

2       Pursuant to the Order re Case Management Conference; Hearing on Motion for Judgment

3   on the Pleadings filed by General Mills, Inc. (Non-Party), dated July 12, 2023, granting

4   defendants' Motion for Judgment on the Pleadings, a true and correct copy of which is attached

5   hereto as Exhibit A, Plaintiff Environmental Health Advocates, Inc.'s Complaint against

6   Defendant Rooted Innovations Inc., Case No. 21CV002803, is hereby dismissed with prejudice.

7       SO ORDERED.

8

9   Dated:    01/03/2024

10                                                _____

11                                                Hon. Evelio Grillo
                                                  Noël Wise / Judge
12                                                Alameda County Superior Court Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] DISMISSAL OF ACTION WITH PREJUDICE –CASE NO. 21CV002803

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Alameda Superior Court / RCD

| | |
|---|---|
| Kim Embry<br>  Plaintiff/Petitioner(s)<br>vs.<br>B&G Food North America, Inc. et al<br>  Defendant/Respondent(s) | No.     RG20057491<br><br>Date:   07/12/2023<br>Time:   1:30 PM<br>Dept:   21<br>Judge:  Evelio Grillo<br><br>ORDER re: Case Management Conference; Hearing on Motion for Judgment on the Pleadings filed by General Mills, Inc. (Non-Party) |

The Motion for Judgment on the Pleadings filed by General Mills, Inc. on 06/05/2023 is Granted.

The Motion of defendants for judgment on the pleadings is GRANTED.

This order applies to all of the related cases.

BACKGROUND.

See order of 5/27/22 and 4/12/23.

The court GRANTS all requests for judicial notice by both sides. This includes both the documents in the nature of legislative history that inform the legal analysis and the documents that are the Prop 65 notices in the relevant cases.

LEGAL ISSUE OR FACTUAL ISSUE

The MJOP raises a legal issue and factual issues. The court is careful to separate the two.

The legal issue is whether the law requires strict compliance or substantial compliance with the Prop 65 pre-filing notice requirements in 27 CCR 25903.

The factual setting of this motion is issue is a plaintiff who is a repeat Prop 65 public enforcer who is represented by counsel and who has a pattern or practice of failing to be in strict compliance with the Prop 65 pre-filing notice requirements. The facts suggest that each failure to comply is not a "one-off" mistake. Defendants make the implicit argument that this particular plaintiff should not be excused from their failure to comply with the pre-filing notice requirements. That noted, if court finds that the law requires strict compliance, then the law

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Alameda Superior Court / RCD

would require strict compliance without regard to the identity of a public enforcer, whether they were represented by counsel, or whether they were a repeat Prop 65 public enforcer.

The court therefore separates the law and the facts.


LEGAL ISSUE – STRICT OR SUBSTANTIAL COMPLIANCE WITH NOTICE
REQUIREMENT
THE REGULATION

Proposition 65 permits private persons to enforce Proposition 65 "in the public interest after sending "notice of an alleged violation … to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator." (H&S 25249.7(d)(1).)

The required contents of the notice are set out a regulation. (27 CCR 25903.) The portions relevant to this motion are:

(a) For purposes of Section 25249.7(d) of the Act, "notice of the violation which is the subject of the action" (hereinafter "notice") shall mean a notice meeting all requirements of this section. No person shall commence an action to enforce the provisions of the Act "in the public interest" pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section.


(b) Contents of Notice.
(1) General Information. Each notice shall include as an attachment a copy of "The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary" (see Appendix A) prepared by the lead agency. This attachment need not be included in the copies of notices sent to public enforcement agencies. A copy of this attachment may be obtained by writing to the Office of Environmental Health Hazard Assessment at P.O. Box 4010, Sacramento, CA 95812-4010.
(2)… (A) For all notices, the notice shall identify:
1. the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity;

The legal issue is whether the law requires strict compliance or substantial compliance with the notice requirements in 27 CCR 25903.

THE LEGAL FRAMEWORK

There is a presumption that the regulation requires only substantial compliance. The general rule is that "[u]nless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." (In re K.H. (2022) 84 Cal.App.5th 566, 603.) "[S]trict compliance with a statute is warranted when … (1) "the Legislature has provided

ORDER re: Case Management Conference; Hearing on Motion for
Judgment on the Pleadings filed by General Mills, Inc. (Non-
Party)                                                                    Page 2 of 7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Alameda Superior Court / RCD

a detailed and specific mandate" …, or (2) "the intent of [the] statute can only be served by demanding strict compliance with its terms." (Prang v. Los Angeles County Assessment Appeals Board No. 2 (2020) 54 Cal.App.5th 1, 19-20.)

Regarding the intent of the statute, "[t]he paramount consideration is the objective of the statute." … Thus, even when a statute uses "mandatory" terms, substantial compliance with statutory directives will suffice if the purpose of the statute is satisfied." (Manderson-Saleh, 60 Cal.App.5th at 703.) (See also Troyk v. Farmers Group, Inc. (2009) 171 Cal.App.4th 1305, 1332-1333 [ Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form.].)

DETAILED AND SPECIFIC MANDATE

The regulations include a detailed and specific mandate.

The plain language of the Prop 65 notice regulation states that a person "shall" comply with "all" the requirements. 27 CCR 25903 states that notice "shall mean a notice meeting all requirements of this section" and "No person shall commence an action to enforce the provisions of [Prop 65] except in compliance with all requirements of this section."

The plain language of the Prop 65 notice regulation distinguishes between aspects that are specific and aspects that are more general.

Certain matters in 27 CCR 25903 are specific, such as the inclusion of Appendix and stating the name, address, and telephone number of the noticing individual, the name of the alleged violator or violators, the name of each listed chemical involved in the alleged violation. (27 CCR 25903(2)(A)(1), (2), and (4).) The specificity these matters suggests that the regulation requires strict compliance with these matters. (Prang v. Los Angeles County Assessment Appeals Board No. 2 (2020) 54 Cal.App.5th 1, 19-20.)

Other matters in 27 CCR 25903 are expressly permit less specificity, such as "the approximate time period during which the violation is alleged to have occurred" (27 CCR 25903(2)(A)(3), "a general identification of the discharge or release" ((27 CCR 25903(2)(B), "the name of the consumer product or service … with sufficient specificity to inform the recipients of the nature of the items" (27 CCR 25903(2)(D), and "the general geographic location of the unlawful exposure " (27 CCR 25903(2)(E)(1).) The general nature of the information required is expressly non-specific.

Where a regulation is specific in some matters and general in others, it strongly suggests that the regulation requires strict compliance with the matters that are specific.

This suggest that strict compliance is required on the matters that are specific.

INTENT AND PURPOSE OF THE REGULATION

---

ORDER re: Case Management Conference; Hearing on Motion for Judgment on the Pleadings filed by General Mills, Inc. (Non-Party)

Page 3 of 7

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Alameda Superior Court / RCD

A Prop 65 notice serves two overall purposes: (1) notice to public officials so they can determine whether to prosecute and (2) notice to the alleged violator so it can remedy the alleged violation. (Def RJN filed 6/5/23, Exh 41 [FSOR].)

The Final Statement of Reasons on the regulations provides information about the purpose of the notice requirement generally and the itemized requirements specifically. (Def RJN filed 6/5/23, Exh 41.)

The FSOR at p2-3 states that notice is a necessary precondition to representing "the general public." The FSOR states: "Finally, it is critical to understand that under Proposition 65, the citizen plaintiff obtains the right to proceed "in the public interest." … As a condition precedent to establishing a citizen's right to proceed in the public interest on that matter, and to collect funds for the public treasury, the notice requirement should not be dismissed as a mere technicality."

The FSOR at p4-5 states that notice is mandatory, and states so in terms that are blindingly clear. The FSOR states: "While many Proposition 65 regulations adopt a "safe harbor" format (i.e., conduct outside the scope of the regulations is not prohibited, it simply is not specifically authorized), Section 12903 is not a "safe harbor" regulation. A notice must comply with these regulations, or it does not confer upon a private person the authority to commence an action under Health and Safety Code section 25249.7(d)." This could not be clearer.

Regarding the "name, address, and telephone number of the noticing individual" (27 CCR 25903(b)((2)(A)) the FSOR at p3 states "Identification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action." This is straightforward – a person who receives a notice must be able to contact the party who sent the notice and to identify that person.

Regarding communication, Plaintiff argues that the information is not strictly necessary to communication because the person who received the notice can communicate with the attorney for the person who sent the notice. There is some merit to this, but a person might want to communicate directly without the extra layer and expense of lawyers. Parties can communicate directly with each other.

Regarding identification of the person who sent the letter, that it important even if there is no communication. A person who receives a notice might want to do a search of public records to collect information about the person who sent the Prop 65 notice. The name and address of the attorney is not the same as the name and address of the individual who sent the notice. By way of analogy, Form Interrogatory 2.5 requires a party produce the name and address of the party even though the opposing party could communicate with the party through the party's counsel.

Regarding "Appendix A" (27 CCR 25903(b)(1)) the FSOR at p3 states "Many notices are sent to businesses, particularly out-of-state businesses, that are not familiar with the requirements of this law. The party giving the notice may not describe, or accurately describe, those requirements.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Alameda Superior Court / RCD

Accordingly, it was determined that a concise summary should be provided to the alleged violator. …, it was concluded that such a summary should be presented in a way that makes clear that it constitutes the lead agency's summary of the statute, not that of the private party." This is straightforward – a person who receives a notice must be provided with the agency's summary of the law so they can respond to the notice.

OTHER CONSIDERATIONS

The court considers unpublished California trial court opinions on this specific issue. These are relevant for the persuasiveness of their reasoning, but have no binding effect. (Brown v. Franchise Tax Bd. (1987) 197 Cal. App. 3d 300, 306 fn6.)

The court considers the published and unpublished federal trial court opinions on this specific issue. These are federal court decision on a matter of California law. "[D]ecisions by the lower federal courts are neither binding nor controlling on matters of state law." (T.H. v. Novartis Pharmaceuticals Corp. (2017) 4 Cal.5th 145, 175.) (See also Carrington v. Starbucks Corp. (2018) 30 Cal.App.5th 504, 527 fn 14 [federal district court opinions "at best" may be described as persuasive on matters of state law].)

The court also considers Court of Appeal opinion on other issuers but that examine whether a statute required strict or substantial compliance.

In the context of beneficiary designations for public employee pensions, a plan participant is only required to substantially comply with a beneficiary designation. (Manderson-Saleh, 60 Cal.App.5th at 698-706.) Substantial compliance is adequate because a signed UBEN 161 Election form is the procedural matter and the substantive matter is whether an employee has clearly identified their desired beneficiary.

In the context of unlawful detainer actions, a landlord must strictly comply with the requirements of a three-day notice to pay rent or quit." (Palm Property Investments, LLC v. Yadegar (2011) 194 Cal.App.4th 1419, 1425.) Strict compliance with CCP 1162(a) is presumably required because both (1) the legislature specified three means of serving a tenant, which meant that only those three means are permissible and (2) the proper service of a three day notice is a substantive element of an unlawful detainer action. (Borsuk v. Appellate Division of Superior Court (2015) 242 Cal.App.4th 607, 611.)

In the context of a "change in ownership statement" filed with the Board of Equalization, a taxpayer must strictly comply with the "informational content and location-of-filing portions of [CCP 480.1]" but is not required to use the BOE-100-B form. (Prang v. Los Angeles County Assessment Appeals Board No. 2 (2020) 54 Cal.App.5th 1, 19-20.) Strict compliance with the "informational content" is required so that the Board of Equalization has all the information that it needs to evaluate corporate transactions. (54 Cal.App.5th at 21-22.) Prang distinguished situations where a notice served the purpose of notice and gave the agency "the opportunity to reevaluate its position, reach the correct result, and obviate the need for a subsequent lawsuit." (54 Cal.App.5th at 21-22.)

---

ORDER re: Case Management Conference; Hearing on Motion for
Judgment on the Pleadings filed by General Mills, Inc. (Non-
Party)                                                                    Page 5 of 7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Alameda Superior Court / RCD

The court draws two themes from these cases. First, the cases hold the substance of the information that is conveyed is more important than whether it is on the correct form. (Prang [the BOE-100-B form]; Manderson-Saleh [the UBEN 161 Election form].) A Prop 65 notice is not required to be on some standardized form or in some format, but it must contain the identified "informational content." (Prang, 54 CDal.Pp.56th at 19-20.)

Second, the cases hold that substantial compliance with a notice requirement is adequate where the notice is the start of a procedural process, but strict compliance is required where adequate notice has substantive effect. (Palm Properties [three-day notice to quit]; Prang [notice triggers Board evaluation of transaction].) A Prop 65 notice is both. The notice to public law enforcement and to the alleged violator is in part the start of a procedural process because public law enforcement can decide to prosecute the matter and the alleged violator can remedy the violation. The notice also has substantive effect because a private Prop 65 enforcer cannot prosecute a claim "in the public interest" unless the private party has complied with the notice requirement even if public law enforcement elect to not prosecute the matter.

The court finds that where, as with a Prop 65 notice, a notice has both procedural and substantive effect, then the court should apply it in a matter that gives effect to both purposes. Substantial compliance would serve the purposes of the procedural purpose, but not the substantive purpose. Strict compliance would serve both purposes. This suggests that the court require strict compliance.

LEGAL ISSUE – CONCLUSION

The court holds as a matter of law that a private Prop 65 enforcer must strictly comply with the requirements in 27 CCR 25903 that state what "shall" be in a notice of violation. The text uses the words "shall and "all." The text requires some specific information and some general information, suggesting that the notice must contain the specific information and that a notice can be more general on the general topics. The FSOR at p4-5 states "A notice must comply with these regulations, or it does not confer upon a private person the authority to commence an action under Health and Safety Code section 25249.7(d)." The FSOR states that providing the name and contract information and the current Appendix A serves important purposes.

APPLICATION TO FACTS

The court can determine on the pleadings that 40 of the 40 notices fail to include "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity." (27 CCR 25903(b)(2)(A).)

The court can determine on the pleadings that 28 of the 40 notices fail to include the current "Appendix A." (27 CCR 25903(b)(1).)

Based on this information, the court can determine on the pleadings and the information subject to judicial notice that the plaintiffs in the identified 40 cases dd not comply with 27 CCR 25903

---

ORDER re: Case Management Conference; Hearing on Motion for
Judgment on the Pleadings filed by General Mills, Inc. (Non-         Page 6 of 7
Party)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Alameda Superior Court / RCD

and therefore cannot prosecute the Prop 65 claims "in the public interest."

APPLICATION TO FACTS – ALTERNATIVE

Assuming that plaintiffs were only required to substantially comply with 27 CCR 25903, the court would find that plaintiffs substantially complied with the requirement of "the name, address, and telephone number" but did not substantially comply with the requirement of "Appendix A."

All of the 40 notices provided the names of the private enforcers, did not provide names and addresses, but did provide and the names and contact information of their attorneys. "[A]ttorneys are agents of their client." (Rosenaur v. Scherer (2001) 88 Cal.App.4th 260, 283.) Although the notices were deficient, the notices identified the person who sent the notice and provided a means to communicate with that person, although through their agent. This was substantial compliance.

28 of the 40 notices failed to provide the current Appendix A. The current Appendix A replaced the prior version of Appendix A because the prior version was not current. The Initial Statement of Reasons (Def RJN 43) states: "The proposed amendments to the regulation are intended to harmonize the regulation with 2013 amendments to Proposition 65." If the plaintiffs were sending the outdated Appendix A, then they were sending outdated and inaccurate information. That is not substantial compliance.

CONCLUSION

The Motion of defendants for judgment on the pleadings is GRANTED. The court orders defendants to prepare and submit 40 separate proposed orders that (1) dismiss each of the 40 related cases, (2) attach a copy of this order, and (3) contain other appropriate text. (CRC 3.1312.)

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated: 07/12/2023

Evelio Grillo / Judge

---

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>07/12/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Hewitt |
| PLAINTIFF/PETITIONER:<br>Kim Embry | |
| DEFENDANT/RESPONDENT:<br>B&G Food North America, Inc. et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>RG20057491 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Case Management Conference; Hearing on Motion for Judgment on the Pleadings filed by General Mills, Inc. (Non-Party) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Alecia Elizabeth Cotton
Rogers Joseph O'Donnell
acotton@rjo.com

Carol Rene Rountree Brophy
Steptoe & Johnson LLP
cbrophy@steptoe.com

David Howard Kwasniewski
BraunHagey & Borden LLP
Kwasniewski@braunhagey.com

Deepi Miller
millerde@gtlaw.com

Eric J. Schmoll
Reed Smith LLP
eschmoll@reedsmith.com

Gregory Paul O'Hara
Nixon Peabody LLP
gohara@nixonpeabody.com

Jake William Schulte
Nicholas & Tomasevic, LLP
jschulte@nicholaslaw.org

James Turner Blaxter
Blaxter | Blackman LLP
wblaxter@blaxterlaw.com

Lauren M. Michals
Nixon Peabody LLP
lmichals@nixonpeabody.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 07/12/2023                          By:

A. Hewitt, Deputy Clerk

| SHORT TITLE: Embry  VS B&G Food North America, Inc. | CASE NUMBER: RG20057491 |
|---|---|

Jasmine Wei-Ming Wetherell
Perkins Coie LLP
JWetherell@perkinscoie.com

Noam Glick
Glick Law Group
noam@glicklawgroup.com

Minh Luong
CHUGH,LLP
minh.luong@chugh.com

Trenton Herbert Norris
Arnold & Porter
trent.norris@arnoldporter.com

Raymond Collins Kilgore
O'Melveny & Myers LLP
ckilgore@omm.com

1

**CERTIFICATE OF SERVICE**

2          I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is Wells Fargo Center, South

4 Tower, 355 S. Grand Avenue, Suite 4200, Los Angeles, California 90071-3103. On July 18, 2024,

5 I caused the service of the foregoing document described as **DEFENDANT ETSY, INC.'S**

6 **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**

7 **PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**, addressed as follows:

8

9    Rachel S. Doughty                     Attorneys for Plaintiff
    Jennifer Rae Lovko                   AS YOU SOW

10   **GREENFIRE LAW, PC**
    2748 Adeline Street, Suite A

11   Berkeley, CA 94703
    Telephone: (510) 900-9502

12   Fax: (510) 900-9502
    Email: rdoughty@greenfirelaw.com

13            rlovko@greenfirelaw.com

14

15 ☒   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it

16       would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage

17       thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.

18 ☒   **(BY ELECTRONIC TRANSMISSION):** I caused such document to be served electronically to the person's electronic service address by transmitting a PDF format copy

19       of such document(s) to each person at the e-mail addresses set forth above.

20

21          I declare under penalty of perjury under the laws of the United States of America that the

22 foregoing is true and correct.

23          Executed on July 18, 2024, at Los Angeles, California.

24

25                         /s/ Miguelina Mendez
                            Miguelina Mendez

26

27

28