Rachel S. Doughty (SBN 255904)
J. Rae Lovko (SBN 208855)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Emails:  rdoughty@greenfirelaw.com
       rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AS YOU SOW, a 501 (c)(3) non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ETSY, INC., and DOES 1-20, inclusive<br><br>    Defendants, | Case No. 24-cv-04203-MMC<br><br>**PLAINTIFF AS YOU SOW'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**<br><br>Date: October 11, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19 th Floor<br>    Federal District Court<br>    450 Golden Gate Avenue<br>    San Francisco, CA 94102<br>Hon. Maxine M. Chesney, presiding |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................... 2

   A.    Informal Pre-Notice Communication to Etsy.com ........................... 2

   B.    Complaint Allegations ...................................................................... 2

   C.    Greenfire Purchase of Products from Etsy's Website ....................... 4

   D.    ETSY Terms of Use .......................................................................... 5

III.    LEGAL STANDARDS ....................................................................... 6

   A.    Motion to Compel Arbitration .......................................................... 6

   B.    Choice of Law ................................................................................... 7

IV.    ARGUMENT ...................................................................................... 8

   A.    AYS Is Not Bound by Greenfire's Agreement to ETSY's Terms of Use ........................... 8

    1.    Defendant Has Not Shown that Greenfire Had Actual Authority to Bind AYS to ETSY's Terms of Use ............................. 8

    2.    ETSY's Terms of Use Do Not Cover the Dispute at Issue Here ...................................... 11

   B.    The Provisions in Section 11 of ETSY's Terms of Use Are Unenforceable ................... 13

    1.    Waiver of Representative Claims ..................................................... 14

    2.    Proposition 65 Law .......................................................................... 15

    3.    UCL .................................................................................................. 17

V.      CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adolph v. Uber Techs., Inc*., 14 Cal. 5th 1104 (2023) ........................................................................ 15

*America Online, Inc. v. Superior Court,* 90 Cal.App.4th 1 (2001) ........................................ 8, 13, 14

*Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83 (2000) ......................... 14

*B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527 (9th Cir. 2022) .................................................... 16

*Blanton v. Womancare, Inc*., 38 Cal.3d 396 (1985) .............................................................. 8, 9, 10

*Blizzard Energy, Inc. v. Schaefers*, 71 Cal.App.5th 832 (2021) ....................................................... 8

*California Chamber of Commerce v. Brown*, 196 Cal.App.4th 233 (2011) ..................................... 16

*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America,* 141 Cal.App.4th 46 (2006).. 16

*Consumer Defense Group v. Rental Housing Industry Members*, 137 Cal.App.4th 1185 (2006)..... 16

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995) ................................. 11, 12

*Davidson v. Sprout Foods, Inc*., 106 F.4th 842 (9th Cir. 2024) ....................................................... 4

*Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) .................................................................. 8, 13

*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377 (1992) ....................................................... 17

*Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911 (9th Cir. 2019) ............................ 8, 13

*Goshen v. Mut. Life Ins. Co*., 98 N.Y.2d 314 (2002) ..................................................................... 18

*Hall v. Superior Court*, 150 Cal.App.3d 411 (1983) .............................................................. 13, 14

*Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667 (9th Cir. 2021) ..................................................... 7

*In re Marriage of Fell*, 55 Cal.App.4th 1058 (1997) .................................................................... 14

*Inglewood Teachers Ass'n v. Pub. Emp't Relations Bd*., 227 Cal.App.3d 767 (1991) ...................... 7

*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014) ................................................... 14, 15

*Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487 (1941) ............................................................ 7

*Lee v. Amazon.com*, 76 Cal. App. 5th 200 (2022) ............................................................... 1, 5, 12

*McCann v. Foster Wheeler LLC*, 48 Cal.4th 68 (2010) ................................................................... 7

*Mikes v. Strauss*, 889 F.Supp. 746 (S.D.N.Y. 1995) .................................................................... 11

1    *Monsanto Co. v. Office of Envt'l. Health Hazard Assessment,* 22 Cal.App.5th 534 (2018) ............ 16

2    *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023) ........................... 16

3    *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459 (1992) ..................................... 8, 13

4    *Patton v. Cox*, 276 F.3d 493 (9th Cir. 2002) ..................................................... 7

5    *People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294 (1996) ............................... 2

6    *Physicians Comm. for Responsible Med. v. KFC Corp.,* 224 Cal.App.4th 166 (2014)................. 3

7    *Rakestraw v. Rodrigues*, 8 Cal. 3d 67 (1972) .................................................. 10

8    *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ....................................... 7

9    *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746 (9th Cir. 1981) 7, 8, 13

10   *Schweitzer v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 42 Cal.App.2d 536 (1941)..................... 10

11   *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ...................................... 7, 8

12   *Stoiber v. Honeychuck*, 101 Cal.App.3d 903 (1980) ............................................ 17

13   *Thomson-CSF, S.A. v. Am. Arbitration Assn'*, 64 F.3d 773 (2d Cir. 1995) ......................... 9

14   *Trinity v. Life Ins. Co. of N. Am.*, 78 Cal.App.5th 1111 (2022)............................... 6, 7

15   *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353 (N.D. Cal. 2007).......................... 8, 13

16   *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)................................... 14, 15

17   *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198 (9th Cir. 2021)...................................... 6

18   <u>Statutes</u>

19   Cal Bus. & Prof. Code § 17203 ................................................................ 17

20   Cal. Bus. & Prof. Code § 17200 ............................................................. 4, 17

21   Cal. Bus. & Prof. Code § 17204 ............................................................... 17

22   Cal. Civ. Code § 1668 ........................................................................ 14

23   Cal. Civ. Code § 3513 ........................................................................ 14

24   Cal. Health & Safety Code § 109900 ............................................................ 4

25   Cal. Health & Safety Code § 109925 ............................................................ 4

26   Cal. Health & Safety Code § 110290 ............................................................ 4

27   Cal. Health & Safety Code § 110398 ............................................................ 4

28

Cal. Health & Safety Code § 110770...................................................................................4

Cal. Health & Safety Code § 111335...................................................................................4

Cal. Health & Safety Code § 111445...................................................................................4

Cal. Health & Safety Code § 111450...................................................................................4

Cal. Health & Safety Code § 111670...................................................................................4

Cal. Health & Safety Code § 111735...................................................................................4

Cal. Health & Safety Code § 25249.6............................................................................2, 16

Cal. Health & Safety Code § 25249.7............................................................................3, 16

Cal. Lab. Code § 2699........................................................................................................15

N.Y. Gen. Bus. § 349.........................................................................................................18

Rules

Fed. R. Civ. P. 11(b)............................................................................................................6

Fed. R. Civ. P. 56................................................................................................................7

Regulations

11 Cal. Code Regs. § 3101..................................................................................................3

11 Cal. Code Regs. § 3102..................................................................................................3

PLAINTIFF AS YOU SOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
OR FOR CHANGE OF VENUE

## I.      INTRODUCTION

Plaintiff AS YOU SOW ("AYS") respectfully requests this Court deny Defendant ETSY, INC.'s ("ETSY") Motion to Compel Arbitration or, in the Alternative, Transfer Venue. Plaintiff's Complaint in this action was filed on June 7, 2024. It contains causes of action averring Defendant's violation of the Safe Drinking Water and Toxic Enforcement Act ("Proposition 65") and of California's Unfair Competition Law ("UCL") related to the sale of skin lightening products that contain mercury or mercury compounds to California consumers. Compl. at ¶¶ 1, 81-113. Plaintiff's Proposition 65 claims are brought as a private attorney general in the public interest. Id. at ¶ 9. Similarly, Defendants' UCL claim is a representative claim that avers important public interest rights have been harmed. Id. at ¶ 113.

Mercury-containing skin lightening creams are extremely dangerous products. Since 1973, the Food and Drug Administration has warned against the use of mercury in cosmetics due to ease of exposure and bioaccumulation. Id. at ¶ 60; Plaintiff's Request for Judicial Notice ("RJN") in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss at Exh. A (Amicus Brief of Black Women for Wellness and the Mercury Policy Project filed in the matter of Lee v. Amazon.com, Cal. Court of Appeal, 1st Dist., Case No. A158275; published at 76 Cal. App. 5th 200, 211 (2022) ("Lee"), pp. 19-31; Exh. B (Amicus brief of the California Attorney General, filed in Lee) at p. 8-9 (noting the high hazard of skin whitening cream containing mercury).

Defendant argues that AYS's counsel, Greenfire Law, PC ("Greenfire") accepted Terms of Use regarding arbitration, choice of forum, and choice of law. The Terms of Use also contain a waiver provision of all representative claims. Defendant's arguments necessarily fail because AYS did not authorize its counsel to enter into an agreement with ETSY regarding arbitration, choice of forum, or choice of law, and AYS's claims do not arise or relate to the products purchased by Greenfire from ETSY's website, www.etsy.com.

Further, even if AYS is bound by ETSY's Terms of Use (which Plaintiff does not concede), its provisions run contrary to fundamental policies of the State of California as regards Proposition 65 and the UCL. Finally, it would eviscerate Plaintiff's causes of action and right to pursue remedies on behalf of the public interest.

## II.      FACTUAL BACKGROUND

### A.      Informal Pre-Notice Communication to Etsy.com

On December 22, 2023, counsel for As You Sow notified Etsy.com's CEO and Chief Legal Officer that illegal mercury-content lightening creams were listed on Etsy.com in violation of law. Lovko Decl. ¶ 11, Exh. 1. The letter identified examples of such creams and where they were posted on Etsy.com, identified the source of information that the products contained mercury—primarily public health alerts, and provided test results showing mercury in the products—none of which was from a product purchased from ETSY. *Id.* at Ex 1, p. 2. The December 2023 letter is expansive and expressly *not* limited to the products list it contains:

> We do not suggest that this list of sellers of these particular brands on your website is exhaustive–there may be other sellers today or in the future of these same illegal products. The source does not change the toxicity, and your role should be to prevent consumers from being exposed through transactions involving Etsy.

*Id.* at Exh. 1, p. 1.

The letter in no way relied upon or even mentions any purchase from ETSY, in fact the letter includes a list of products *not* found on ETSY to alert ETSY so ETSY could avoid them ever being posted on its website. *Id.* at Exh. 1, Table 2. Acknowledgement of receipt of the letter was received from Etsy.com on December 23, 2023. Lovko Decl. ¶ 12. Nevertheless, skin whitening products containing mercury continued to be listed on Etsy.com thereafter. *Id.*

### B.      Complaint Allegations

Proposition 65 was overwhelmingly enacted by the voters of California in 1986 as "a remedial statute intended to protect the public" through a direct voter initiative. *Id.* at ¶ 18, quoting *People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294, 314 (1996). It provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." Cal. Health & Saf. Code § 25249.6.

On January 18, 2024, Plaintiff served a Proposition 65 Notice on Defendant, stating that

ETSY was exposing[1] California consumers to mercury-containing[2] skin creams through its website without providing the clear and reasonable warnings required by Proposition 65. Compl. at Exh. 1. A supplemental notice was sent on March 15, 2024 (collectively "Notices"). *Id.* at Exh. 2. Each Notice addressed the category of products "all skin-lightening, whitening, and "smoothing" creams containing mercury or mercury compounds" and provided a nonexhaustive list of exemplars, but stated that "[t]he Storefront is provided as a courtesy so that Etsy.com can more efficiently locate and remove dangerous products from its website." *Id.* at n. 1. The Notices made no allegations of purchased products.

Each Notice contained a signed Certificate of Merit ("COM"), as required by Proposition 65, acknowledging that Plaintiff believed there is a reasonable and meritorious case for the private action.[3] *Id.* at Exhs. 1-2. Factual information supporting these COMs was sent to the State Attorney General, which information included the identity of the persons consulted with and relied on by the certifier and the facts, studies, and other data reviewed by these persons. Lovko Decl. at ¶ 9. On March 13, 2024 and March 27, 2024, the Attorney General issued "No Merit" letters after reviewing the factual information. *Id.* Plaintiff disagrees with the Attorney General's conclusion that the factual information is insufficient to conclude there is merit to Plaintiff's Proposition 65 claims. *Id.*

California's UCL prohibits businesses from engaging in unlawful or unfair business

---

[1] Reasonably foreseeable use of skin lightening creams containing mercury causes consumers and their household members to be exposed to mercury and mercury compounds through inhalation, ingestion, or dermal absorption. Compl. at ¶ 53.

[2] Mercury and mercury compounds, which are known to the State of California to cause developmental toxicity, became subject to Proposition 65's warning requirement in 1991. *Id.* at ¶ 48.

[3] The evidence presented in support of a COM must show a reasonable or credible basis for concluding that the action has merit. *See Physicians Comm. for Responsible Med. v. KFC Corp.*, 224 Cal.App.4th 166, 179-181 (2014), citing 11 Cal. Code Regs. § 3101.) For consumer product exposures, this means the COM must include "sufficient facts, studies, or other data … for each consumer product or service, or each specific type of consumer product or service that cause the alleged violation." 11 Cal. Code Regs. § 3102(c)(1). A meritorious case may be built upon a showing of violation or threat of a violation, which may be enjoined. (Cal. Health & Saf. Code § 25249.7(a); *see also id.* at (d) (COM support reviewed by court for "credible factual basis for the certifier's belief that an exposure to a listed chemical had occurred or was threatened").

practices; it also prohibits unfair, deceptive, untrue, or false advertising. *See* Cal. Bus. & Prof Code § 17200 *et seq.* Plaintiff alleges that ETSY engaged in unlawful business practices predicated on violation of Proposition 65 and California's Sherman Law.[4] Compl. at ¶ 38. Under the Sherman Law, it is unlawful for any individual or entity to offer for sale or delivery any drug, device, or cosmetic that is misbranded or adulterated.[5] *Id.* at ¶ 105; *see also* Cal. Health & Saf. Code §§ 110398, 110770, 111445, 111450. Skin lightening products that contain mercury or mercury compounds are considered adulterated and/or misbranded drugs and cosmetics. *Id.* at ¶ 107; *see also* Cal. Health & Saf. Code §§ 110290, 111335, 111670, 111735.

As in the December 2023 letter and in both Notices, the Complaint expressly states that the scope of this action encompasses all "skin lightening, whitening, and 'smoothing' creams containing mercury or mercury compounds" and extends to the "many consumers" who are using and being exposed to mercury as a result of those consumers' purchases from www.etsy.com. (Compl. p. 12, ¶¶62, 66)

## C. Greenfire Purchase of Products from Etsy's Website

ETSY notes that two employees of Greenfire created ETSY accounts and purchased skin whitening creams through Defendant's website, www.etsy.com. ECF 6 at p.11. Plaintiff acknowledges that between September 20, 2024, and January 24, 2024, a student clerk and the office manager at Greenfire purchased skin whitening creams from ETSY's website. Lovko Decl. at ¶ 4. Some, but not all, are identified in Plaintiff's Complaint, and the category of products at issue in this case includes far more products than are named as exemplars in the Complaint. *Id.* AYS has paid for the purchase of some, but not all, of these products. *Id.* at ¶ 6.

AYS's claims do not arise from or relate to Greenfire's purchase of the creams identified

---

[4] Many claims under the UCL have been successfully predicated on Sherman Law violations despite the Sherman Law's lack of a direct private right of action. *See, e.g., Davidson v. Sprout Foods, Inc.,* 106 F.4th 842, 845 (9th Cir. 2024).

[5] Skin-lightening cream is classified as a "drug" because it is "used or intended to affect the structure or any function of the body of human beings or any other animal." Cal. Health & Saf. Code § 109925. It is also a "cosmetic" because it is "intended to be rubbed, .. . or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance." *Id.* at § 109900.

above in Paragraph 4 because AYS could have filed the Complaint regardless of whether Greenfire ever purchased any products from ETSY's website. *Id.* at ¶¶ 4-8; Fugere Decl. at ¶¶ 4-9. Plaintiff's claims for relief are not based on these purchases, on any actions or statements by ETSY in selling these products to Greenfire, or any exposures to mercury resulting from these purchases. Lovko Decl. at ¶¶ 7-8; Fugere Decl. at ¶¶ 8-9. In fact, no person was exposed to mercury from the use of any products purchased by Greenfire Law. Lovko Decl. at ¶¶ 7-8. This action is based upon the fact that ETSY offered the products for sale *other* consumers in California, and their reasonably foreseeable use of the products. *Id.* at ¶ 10.

In *Lee v. Amazon*, plaintiff alleged that Amazon was selling mercury-containing Monsepa cream. *See Lee v. Amazon.com, Inc.*, 76 Cal. App. 5th 200, 211 (2022). The mercury content of Monsepa was established through product testing conducted by the California Department of Public Health, the Department of Justice, and plaintiff's counsel. *See id.* at 211-12. While Monsepa cream was available for sale on Amazon's website, none of the tests of Monsepa creams were of products actually purchased from Amazon. *See id.* The Court held that the test results from creams purchased elsewhere could be generalized to untested units sold by Amazon. *See id.* at 225-27. In other words, purchasing a product from Defendant's website is not necessary to Plaintiff's Proposition 65 claims.

Plaintiff has not directed or authorized Greenfire to open up any ETSY accounts on AYS's behalf, to enter into any arbitration agreement with ETSY on AYS's behalf, to agree to this action being litigated in a forum outside of California, or to agree to New York law governing this action. Fugere Decl. at ¶¶ 10-11.

**D.     ETSY Terms of Use**

ETSY's Terms of Use govern disputes between the user of ETSY's services and Etsy. ECF 6-1 at p.13. Accounts are not transferable. ECF 6-1 at p.15, ¶D.

The Terms of Use contain the following provisions:

11. Arbitration Agreement and Class Action Waiver

…

**A. Disputes that We'll Arbitrate.** You and Etsy agree to mandatory individual arbitration for all claims arising from or relating to the Services, these and prior versions of the Terms, any products, data, or content bought, sold, offered, accessed, displayed, transmitted, or listed through the Services, and actions or statements by Etsy or its users, in each case including disputes that arose before the effective date of these Terms (each,

a "Dispute"). The exception is that we each may (1) bring qualifying individual claims in "small claims" court, so long as those claims remain in small claims court; and (2) seek injunctive relief in court for infringement or misuse of intellectual property rights (like trademarks, copyrights, and patents). **All other Disputes must be arbitrated, which means you and Etsy are each waiving your right to sue in court and have a court or jury trial.**

B.  Class and Representative Action Waiver. You and Etsy agree that each of us may bring claims against the other only on an individual basis, and not on a class, representative, or collective basis (and we each waive any right we have to bring such claims). …

**D. Arbitration Rules and Procedures.** … As in court, the arbitrator shall apply governing law, any counsel must comply with Federal Rule of Civil Procedure 11(b), and the arbitrator may impose any sanctions available under the AAA Rules, Rule 11, or other applicable law. The arbitrator also shall enforce statutes of limitations and other time-based defenses, offers of judgment/compromise and fee-shifting rules in the same way as a court would.

The arbitrator will have exclusive authority to resolve all issues, except that a court has exclusive authority to decide issues related to the arbitrability of a dispute, the enforceability of any part of this Section 11 … the arbitrator can award damages and other relief only in favor of the individual claimant, and only to the extent necessary to provide relief warranted by the claimant's individual claim(s).
…

**G. Opt out.** You have a limited right to opt out of this Arbitration Agreement (excluding Section 11.I). Specifically, if you are a new user of our Services, you can opt out of this Arbitration Agreement within 30 days after you first accept the Terms. …

**I. Choice of Law and Forum.** Etsy is based in New York, so if there are claims between you and Etsy that aren't subject to arbitration, you and Etsy each agree to litigate those claims exclusively in state or federal court in New York County, New York, and to submit to the personal jurisdiction of those courts. The exception is if you file in small claims court–you can do that in the county of your residence. Except as prohibited by law, these Terms, and all disputes between us, shall be governed exclusively by New York law, without regard to conflict-of-law rules, and U.S. federal law (including the Federal Arbitration Act). For clarity, this Section 11.I will continue to apply even if you validly opt out of arbitration under Section 11.G.

ECF 6-1 at Exh. A (emphasis in the original).

## III.   LEGAL STANDARDS

### A.     Motion to Compel Arbitration

In addressing a motion to compel arbitration, the Court in the first instance must decide whether an agreement has been formed between the parties. *See Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021); *Trinity v. Life Ins. Co. of N. Am.*, 78 Cal.App.5th 1111, 1123 (2022). "This approach is consistent with the principle that arbitration is a matter of contract—a

PLAINTIFF AS YOU SOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
OR FOR CHANGE OF VENUE

party cannot be compelled to arbitrate pursuant to a contract to which the party never agreed." *Trinity*, 78 Cal.App.5th at 1123; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract"). Where a valid contract exists, the Court then must determine whether the contract covers the dispute. *See Trinity*, 78 Cal.App.5th at 1123.

If the existence of a valid agreement between the parties is at issue, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021). "[A] court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved." *Id.* at 671. "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists." *Trinity*, 78 Cal.App.5th at 1120. Where issues of agency exist, the moving party has the burden of proving the existence of an agency relationship, as well as the scope of the agent's authority. *Inglewood Teachers Ass'n v. Pub. Emp't Relations Bd*., 227 Cal.App.3d 767, 780 (1991).

**B.    Choice of Law**

"When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487 (1941); *see also S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) ("*Boeing Co.*"). In California, "general choice-of-law rules have been formulated by courts through judicial decisions rendered under the common law, rather than by the legislature through statutory enactments." *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 83 (2010).

In looking at whether a contract exists between two parties, federal courts sitting in diversity look to the forum state's choice of law rules even if the contract contains a choice of law provision. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 n.4 (2021). If the existence of a contract is not at issue, federal courts in California apply the principles set forth in section 187 of the Restatement Second of Conflicts, which provide that the substantive law designated by the contract governs unless the transaction falls into either of two exceptions: 1) the chosen state has no

PLAINTIFF AS YOU SOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
OR FOR CHANGE OF VENUE

substantial relationship to the parties or the transaction, or (2) application of the law of the chosen state would be contrary to a fundamental policy of the state. *See Boeing Co.*, 641 F.2d at 749; *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 464-65 (1992). California has a "strong public policy against enforcing choice-of-law provisions that would abrogate the plaintiffs' rights to pursue remedies." *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361 (N.D. Cal. 2007). Such analysis applies equally to choice of forum provisions contained in an agreement. *See Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1085 (9th Cir. 2009); *America Online, Inc. v. Superior Court,* 90 Cal.App.4th 1, 12-13 (2001).

But, these choice-of-law rules do not apply unless an actual conflict exists between the law of California and any other potentially applicable state's law; where no conflict exists, the law of the forum jurisdiction generally governs. *See Blizzard Energy, Inc. v. Schaefers*, 71 Cal.App.5th 832, 856 (2021).

## IV.    ARGUMENT

### A.    AYS Is Not Bound by Greenfire's Agreement to ETSY's Terms of Use

#### 1.    Defendant Has Not Shown that Greenfire Had Actual Authority to Bind AYS to ETSY's Terms of Use

It is undisputed that the Terms of Use in this case were not electronically signed by Plaintiff AYS. ETSY, however, contends that AYS is bound by its attorneys' acceptance of these terms. Defendant's argument necessarily fails because ETSY has not met its burden to show that AYS authorized Greenfire, as its agent, to enter into a contract with ETSY on its behalf. In addition, Plaintiff's evidence clearly demonstrates that it is not bound by ETSY's Terms of Use.

Because this argument addresses the existence of the contract in relation to AYS, California law applies. *See Sellers*, 73 Cal. App. 5th at 462 n.4. There also is no conflict between California and New York law, with both states applying general principles of contract and agency when examining whether a nonsignatory may be bound by an arbitration agreement. *See Blizzard Energy, Inc.*, 71 Cal.App.5th at 856; *Blanton v. Womancare, Inc.*, 38 Cal.3d 396, 403 (1985); *Thomson-*

1  *CSF, S.A. v. Am. Arbitration Assn*[6], 64 F.3d 773, 777-80 (2d Cir. 1995).

2      Applying these principles to attorney-client relationships, California's Supreme Court has

3  established that "absent express authority, it is established that an attorney does not have implied

4  plenary authority to enter into contracts on behalf of his client." *Blanton v. Womancare, Inc.*, 38

5  Cal.3d 396, 407 (1985). While an attorney retained to represent a client in litigation has some

6  authority to act on behalf of the client, attorneys have "no general authority to enter into contracts

7  on behalf of [a] client." *Id.* at 407-08. <u>Even if a contract is "entered into in conjunction with pending

8  litigation," no authority is assumed</u>. *Id.* (emphasis added). "[S]imilarly, an attorney, merely by

9  virtue of his employment as such, has no apparent authority to bind his client to an agreement for

10  arbitration. … When a client engages an attorney to litigate in a judicial forum, the client has a right

11  to be consulted, and his consent obtained, before the dispute is shifted to another, and quite

12  different, forum." *Id.*

13      Here, AYS is aware that Greenfire has purchased products from ETSY for investigatory

14  purchases, but Plaintiff has not directed or authorized Greenfire to open up any ETSY accounts on

15  AYS's behalf, to enter into any arbitration agreement with ETSY on AYS's behalf, to agree to this

16  action being litigated in a forum outside of California, or to agree to New York law governing this

17  action. Fugere Decl. at ¶¶ 10-11.

18      The scope of the Greenfire's agency did not include the authority to bind AYS to ETSY's

19  Terms of Use. *Id.* Without such agency, there is no assent from AYS to enter into the agreement,

---

[6] Defendant cites *Thomson-CSF, S.A.* for the proposition that "a non-signatory may be bound to an agreement to arbitrate where the nonsignatory's agent, acting in the scope of its authority agrees to be bound." ECF 6, p.14. While the Court did mention that issues of agency apply to such situations, the case did not involve an agency relationship. Its facts involved a subsidiary of Thomson-CSF signing an arbitration agreement with E&S. *See Thomson-CSF, S.A.*, 64 F.3d at 775. The lower court held that Thomson-CSF, a nonsignatory, could be bound to the arbitration agreement based on the control it exercised over its subsidiary, as well as the fact that management of both Thomson-CSF and its subsidiary were closely related. *Id.* at 776, 779. In reviewing this ruling, the appellate court noted that a nonsignatory cannot be bound to an arbitration agreement absent a "*full* showing of some accepted theory under agency or contract law." *Id.* at 780 (emphasis in original). Finding that Thomson-CSF had not manifested an intention to be bound by the arbitration agreement, and an agency relationship did not exist between Thomson-CSF and its subsidiary at the time the arbitration agreement was signed, the judgment of the lower court was reversed. *Id.* at 777-80.

1  and as such, AYS is not a party to the agreement.

2         Perhaps realizing this, Defendant briefly argues that even in the absence of actual authority,

3  AYS is bound by the Terms of Use because it affirmed or ratified Greenfire's acceptance of

4  ETSY's Terms of Use "by paying for the products and then serving Proposition 65 Notices (and

5  pursuing this suit) on the basis of those purchases." ECF 6 at p.15 n.14.

6         First, the California Supreme Court's *Blanton* ruling (addressed above) suggests that a client

7  may never ratify an attorney's approval of an arbitration agreement; only express authorization may

8  bind a client to an arbitration agreement. *Blanton*, 38 Cal.3d at 407-408. Second, even if implied

9  ratification can apply to an attorney-client relationship, the law governing affirmation and

10  ratification does not apply in this situation.

11        An agent's originally unauthorized act may be ratified by implication where the only

12  reasonable interpretation of the principal's conduct is consistent with affirming the agent's act.

13  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972). "Ratification does not result from the affirmance

14  of a transaction with a third person <u>unless the one acting purported to be acting for the ratifier</u>."

     Restat. 2d of the Law of Agency, § 85 (emphasis added). The rationale behind this requirement is:

15
         > Where there is a transaction between the purported agent and a third person, one reason for
16       > allowing ratification to be effective as prior authorization is to give to the other party what
         > the other expected to get in dealing with the agent. This reason does not exist if the other
17       > party does not intend to deal with the principal.

18  *Id.* at Comment a. *See also Schweitzer v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 42 Cal.App.2d 536,

19  542 (1941) (referring to the Restatement 2d of the Law of Agency, this Court noted that "a

20  ratification can occur only by approving the act of the agent after the agent performs openly on

21  behalf of his principal and not himself").

22        Here, Greenfire never informed ETSY that purchases by its student clerk and office manager

23  were being made for the purpose of establishing ETSY's liability. Lovko Decl. at ¶ 4. And AYS

24  was unaware of the Etsy Terms of Use. Fugere Decl. ¶ 10. As such, no ratification by AYS can be

25  implied.

26        Moreover, even if Greenfire had indicated it was acting on behalf of AYS, the evidence does

27  not establish conduct that could be reasonably interpreted as affirming Greenfire's acceptance of the

28
                                                    10

Terms of Use. AYS believed that any purchases made from ETSY were for investigatory purposes only and were not necessary to Plaintiff's claims. Fugere Decl. at ¶¶ 5-9. And, ETSY's contention notwithstanding, the Proposition 65 Notices sent to ETSY in this case were <u>not</u> based on these purchases. Lovko Decl. at ¶ 7. Indeed, it makes no sense to argue that they were because the purchases do not cover all of the product exemplars identified in Plaintiff's Complaint and Proposition 65 Notices, and they also include purchases for products not identified in Plaintiff's Complaint or Proposition 65 Notices. *Id.* at ¶¶ 3-5; Compl. at p.13 and Exhs. 1-2.

### 2.   ETSY's Terms of Use Do Not Cover the Dispute at Issue Here

ETSY's Terms of Use state that the account user and ETSY agree to arbitration "for all claims arising from or relating to the Services, these and prior versions of the Terms, any products, data, or content bought, sold, offered, accessed, displayed, transmitted, or listed through the Services, and actions or statements by Etsy or its users, in each case including disputes that arose before the effective date of these Terms." ECF 6-1 at Exh. A. The language is broad but not without limit. *See Mikes v. Strauss*, 889 F.Supp. 746, 749 (S.D.N.Y. 1995); *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1055 (10th Cir. 2018); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517 (10th Cir. 1995).

In *Mikes*, a plaintiff former employee filed a lawsuit against her former employer based on the *qui tam* provisions of the False Claims Act. *See Mikes*, 889 F.Supp. at 749. The former employer sought to compel arbitration of this claim based upon language in the plaintiff's employment agreement, which provided that the parties would arbitrate "any disagreements, claims, questions, or controversies which may arise out of or relate to this Agreement." *Id.* at 754. The New York Court ruled that the *qui tam* claim was "completely outside the scope of the Agreement," and thus was not covered by the arbitration clause. *Id.*

> The Agreement relates solely to the terms of plaintiff's employment by [her employer]. However, plaintiff's *qui tam* claims in no way impinge on her employee status. Even if plaintiff had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the government."

*Id.*

---

In *Cavlovic*, the plaintiff entered into a rewards program agreement with J.C. Penney, whereby the plaintiff agreed to arbitrate "any dispute, claim or controversy arising from or relating to this Agreement." *Cavlovic*, 884 F.3d at 1055. Subsequently, the plaintiff filed a class action complaint against J.C. Penney for fraudulent advertising practices. *See id.* at 1053. In reviewing the scope of the agreement, the 10th Circuit noted that the language "arising from or relating to" is "broad" language. *Id.* at 1059. In determining the scope of this language, the Court recognized that its main focus is to give effect to "the written expression of the parties' intent," and "a plain reading of the arbitration provision does not support the conclusion that Cavlovic and J.C. Penney agreed to arbitrate disputes about purchases Cavlovic made at J.C. Penney on which she happened to earn J.C. Penney Rewards Points." *Id.* Plaintiff's claim did not arise from the rewards program, but rather from "J.C. Penney's alleged practice of falsely inflating their original prices." *Id.* The claim did not arise from the contract because even if the parties honored their contractual obligations in every respect under the Rewards Program agreement, the contractual compliance would not affect Cavlovic's allegations. *Id.* By way of illustration, the 10th Circuit in *Coors Brewing Co.* stated:

> For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship. … it is only the claims not related to [the parties] continuing contractual relationship that are litigable."

*Coors Brewing Co*., 51 F.3d at 1516-17.

Even if AYS were bound by ETSY's Terms of Use, the provisions in these Terms of Use do not apply because AYS's claims do not arise or relate to Greenfire's purchase of cream from ETSY, and AYS could have filed the Complaint regardless of whether Greenfire ever purchased any products from ETSY's website. *Id.* at ¶¶ 4-8; Fugere Decl. at ¶¶ 4-9; *see also*, *Lee v. Amazon.com, Inc.,* 76 Cal. App. 5th 200, 212 (2022) (California First District Court of appeal holding that case can proceed against Amazon.com under Proposition 65 where cream not purchased from website). Plaintiff's claims for relief are not based on these purchases, on any actions or statements by ETSY in selling these units to Greenfire, or any exposures to mercury resulting from these purchases. Lovko Decl. at ¶¶ 7-8; Fugere Decl. at ¶¶ 8-9. AYS's claims are

representative claims based on exposures to *other* California consumers, and the Terms of Use do not address such representative claims.

Similarly, AYS's UCL claim is based upon harm to the public interest, which interest is not covered by ETSY's Terms of Use.

**B.      The Provisions in Section 11 of ETSY's Terms of Use Are Unenforceable**

Defendant incorrectly argues that Plaintiff's Proposition 65 claims can be compelled to arbitration, or in the alternative, the case should be transferred to the U.S. District Court for the Southern District of New York.

ETSY's Terms of Use address choice of law and forum in one paragraph, labeled as Choice of Law and Forum. ECF 6-1 at Exh. A, ¶11. ETSY users may not opt out of this provision. *Id.* In this provision, New York law is identified as governing disputes regardless of whether the parties go to arbitration or litigate in New York courts. *Id.* That is, the provisions governing arbitration, choice of law, and choice of forum are inextricably bound together. The Terms of Use also state that ETSY users may not bring representative claims. *Id.*

As argued above, Defendant has failed to show the existence of a contract between AYS and ETSY. However, even if this were not the case, the provisions governing arbitration, choice of law, choice of forum, and waiver of representative claims are not enforceable.

In addressing the choice of law provision, the Court must look at 1) whether New York has a substantial relationship to the parties or the transaction, and (2) whether application of New York law would be contrary to a fundamental policy of the State of California. *See Boeing Co.*, 641 F.2d at 749; *Nedlloyd Lines B.V.*, 3 Cal. 4th at 464-65; *Gemini Techs., Inc*, 931 F.3d at 916; *Doe 1*, 552 F.3d at 1085; *America Online, Inc,* 90 Cal.App.4th at 12-13. Where application of a choice of law provision is contrary to California policy, courts "must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue … .'" *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 466, (1992) (quoting Restat 2d of Conflict of Laws, § 187(2)). Where enforcement would "abrogate the plaintiff's right to pursue remedies," California courts will abrogate the provision. *See Van Slyke*, 503 F.Supp.2d at 1361; *see also Hall v. Superior Court*, 150 Cal.App.3d 411, 416 (1983) (choice of law provision will not be given effect if

1   it would result in an evasion of a California statute that protects California citizens).

2       The analysis for a choice of forum provision is similar, with California courts refusing "to

3   defer to the selected forum if to do so would substantially diminish the rights of California residents

4   in a way that violates our state's public policy." *Am. Online, Inc. v. Superior Court*, 90 Cal.App.4th

5   1, 12 (2001) (refusing to enforce Virginia choice of law and forum provisions because Virginia law

6   did not allow consumer lawsuits to be brought as class actions and the available remedies were

7   more limited than those afforded by California law).

8       Where an arbitration agreement results in waiver of representative claims provided for by

9   California statute, it is contrary to public policy and unenforceable as a matter of law. *See Iskanian*

10  *v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 384 (2014) (overruled in part by *Viking River Cruises,*

11  *Inc. v. Moriana*, 596 U.S. 639, 662 (2022). The unwaivability of certain representative claims

12          derives from two statutes that are themselves derived from public policy. First, Civil Code
        section 1668 states: "All contracts which have for their object, directly or indirectly, to
13          exempt anyone from responsibility for his own fraud, or willful injury to the person or
        property of another, or violation of law, whether willful or negligent, are against the policy
14          of the law." "Agreements whose object, directly or indirectly, is to exempt [their] parties
        from violation of the law are against public policy and may not be enforced." (*In re*
15          *Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1065.) Second, Civil Code section 3513
        states, "Anyone may waive the advantage of a law intended solely for his benefit. But a law
16          established for a public reason cannot be contravened by a private agreement." (*Armendariz*
        *v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100.)
17

18  *Id.* at 383.

19      Where a choice of law and a choice of forum provision are inextricably bound together, a

20  court may analyze them together. *See Hall*, 150 Cal. App. 3d at 416-418. Here, the choice of law,

21  choice of forum, arbitration, and representative claims waiver are all bound together. As addressed

22  below, all of these provisions are unenforceable as they conflict with fundamental policies of the

23  State of California and would work to completely eliminate the basis for any of Plaintiff's causes of

24  action. In so doing, the rights and protections of Californians would be eviscerated.

25          **1.      Waiver of Representative Claims**

26      As noted above, the *Iskanian* Court addressed waivers of representative causes of action.

27  There, the Court examined a Private Attorney General Act ("PAGA") claim, which may be brought

28

by "an aggrieved employee on behalf of the employee and other current or former employees." Cal. Lab. Code § 2699(a). An "aggrieved employee" is one who has "personally suffered" Labor Code violations at the hand of his/her employer. *Id.* at (c)(1). Thus, PAGA claims involve *both* individual and representative injuries.

The Court ruled that that pre-dispute waivers of representative PAGA claims are prohibited. *See Iskanian*, 59 Cal. 4th at 384. Further, the Court stated that it would not sever the aggrieved Plaintiff employee's individual claims and representative claims for the purpose of arbitration. *Id.*

Defendant relies upon *Viking River Cruises, Inc.* to argue that representative claims can be compelled to arbitration; however, Defendant is incorrect. That is not what the U.S. Supreme Court ruling in *Viking River Cruises, Inc.* stands for.

In that case, the Court also focused on a PAGA claim. *Viking River Cruises Inc.*, 596 U.S. at 643. In its analysis, the Court overruled the *Iskanian* case "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Id.* at 662. A PAGA plaintiff's *individual claims* can be compelled to arbitration. *Id.* (emphasis added).[7] However, the Court did not overrule the *Iskanian* Court's finding that where a contract provision provides for the "wholesale waiver" of representative claims, it is not enforceable. *See id.*

Here, the Plaintiff has no individual claim under either the Proposition 65 claims or UCL claim. AYS's claims are representative only. Proposition 65 also does not provide for individual claims. *Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 693 (2008). As such, *Iskanian* applies, and Section 11 of ETSY's Terms of Use constitute a waiver of these claims in their entirety. For this reason, Section 11 is unenforceable.

### 2.    Proposition 65 Law

Proposition 65, directly adopted by the people of California on voter initiative, provides that "no person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear

---

[7]An order compelling arbitration of individual PAGA claims does not strip the plaintiff of standing as an aggrieved employee to litigate representative claims in court on behalf of other employees. *See Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1123 (2023)

and reasonable warning to such individual." Cal. Health & Saf § 25249.6. "Actions pursuant to this section may be brought by a person in the public interest." *Id.* at § 25249.7(d).

Proposition 65 is "a remedial statute designed in part so the people of California would 'be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm.'" *Monsanto Co. v. Office of Environmental Health Hazard Assessment,* 22 Cal.App.5th 534, 552 (2018) (quoting *California Chamber of Commerce v. Brown*, 196 Cal.App.4th 233, 258 (2011). "This scheme was seen as necessary because the people concluded 'that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs.'" *Id.*; *see also* Exh. B to Plaintiff's Request for Judicial Notice, p. 8.

"Proposition 65 was created to protect the public." *Consumer Defense Group v. Rental Housing Industry Members*, 137 Cal.App.4th 1185, 1206 (2006). And, "private-enforcement Proposition 65 actions are brought 'in the public interest.'" *Id.* at 1207. "[T]here is no provision for an individual to sue on his or her own behalf." *Consumer Advoc. Grp., Inc.*, 168 Cal.App.4th at 693 (citing Cal Health & Saf Code § 25249.7(d).) The plaintiff bringing a Proposition 65 action has no individual property right at stake in the case. *See id.* at 692. The fact that the plaintiff may potentially share in any penalties recovered in the action does not alter this. *See id.* at 693.

Further, unlike in a settlement between two parties, Proposition 65 expressly requires *judicial review* of a Proposition 65 settlement brought by a private plaintiff in order to safeguard the rights of the public. *See Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America,* 141 Cal.App.4th 46, 63 (2006).

Here, Plaintiff's Proposition 65 claims were brought on behalf of the public.[8] AYS has suffered no individual harm as Plaintiff has not been exposed to mercury-containing skin creams

---

[8] Defendant argues this is not so because the Attorney General's "No Merit" letters eliminated the right of Plaintiff to bring a representative action. ECF 6, p.16. "No Merit" letters simply do not prevent a private individual from bringing an action on behalf of the public. *See Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1267 n.1 (9th Cir. 2023) (citing § 25249.7(d)(2)); *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 533 (9th Cir. 2022). Plaintiff further addresses this in Plaintiff's Opposition to ETSY's Motion to Dismiss, which has been filed concurrently and is scheduled to be heard at the same time as this motion.

PLAINTIFF AS YOU SOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OR FOR CHANGE OF VENUE

from products sold by ETSY. Lovko Decl. at ¶ 8; Fugere Decl. at ¶ 8. ETSY's Terms of Use eliminate the ability of Plaintiff to bring any Proposition 65 claims because the terms do not allow pursuit of representative claims and because New York has no law akin to Proposition 65. Even if the choice of law provision were abrogated, the choice of forum provision would impermissibly force an individual purchaser to move a matter of *public* concern out of the state based upon a *private* contract. Further, to enforce the contract, resulting in an impermissible waiver of Proposition 65, flies in the face of the important policy and protections upon which Proposition 65 is based. *See* Lovko Decl, Exhibit B, p. 8 Moreover, California has a materially greater interest than the chosen state in the determination of this case because the harm being addressed by Plaintiff's Proposition 65 claim is harm to *California consumers*.

### 3.    UCL

The UCL is privately enforceable, and a private plaintiff may bring representative claims or relief on behalf of others. *See* Cal Bus. & Prof. Code §§ 17203-17204. To meet the "unlawful" prong of the UCL, the person suing under Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The UCL demonstrates a clear design to protect consumers as well as competitors. *See Stoiber v. Honeychuck*, 101 Cal.App.3d 903, 927 (1980).

Here, Plaintiff's UCL claims is based upon ETSY's violation of both Proposition 65 and California's Sherman Law. The public policy behind enactment of Proposition 65 was discussed above in Section IV.B.1. The Sherman Law imposes criminal liability without fault, reflecting the public policy of protecting the public from dangerous products placed on the market, irrespective of negligence in their manufacture.

Plaintiff's UCL claim has been brought to safeguard important public interest rights. As with Plaintiff's Proposition 65 claims, enforcement of ETSY's Terms of Use would effectively result in a forfeiture of Plaintiff's claim because the terms do not allow pursuit of representative claims. Even if this were not so, application of New York law would go against the fundamental policies of the State of California as regards Proposition 65, the UCL, and the Sherman Law. For while New York does have a consumer protection statute that addresses deceptive business acts and

1   practices, it does not allow representative claims to be brought by private parties in the public

2   interest. *See* NY Gen Bus L § 349. Rather, private parties can only bring such claims if they have

3   been personally injured. *See id.* Additionally, "the deception of a consumer must occur in New

4   York." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002). It was not designed to allow for

5   nationwide application. *See id.* Thus, AYS would not only be unable to bring a representative claim

6   in New York, but AYS would not have standing to bring a consumer protection claim in New York.

7       California Proposition 65, the Sherman Law, and the UCL all establish important,

8   fundamental policies that ETSY's Terms of Use go against. Plaintiff's case is based on protecting

9   the rights of California consumers, and New York law simply does not provide for this protection.

**V.     CONCLUSION**

11      ETSY is attempting to use Greenfire's investigation of Defendant as a loophole by which to

12  evade the law and allow Defendant to continue to sell harmful consumer products to Californians.

13  AYS is not bound by ETSY's Terms of Use, and AYS's complaint does not arise from or relate to

14  the services addressed by the Terms of Use. Even if this were not true, the Terms of Use cannot be

15  enforced because the representative claims waiver, choice of law and forum provision, and

16  arbitration provision directly go against important and fundamental California policies for which

17  New York has no equivalent protections. For the reasons addressed above, Plaintiff respectfully

18  requests that ETSY's motion be denied in its entirety.

19      Dated: August 20, 2024                        */s/Rae Lovko*
                                                          RACHEL S. DOUGHTY (SBN 255904)
20                                                        rdoughty@greenfirelaw.com
                                                          J. RAE LOVKO (SBN 208855)
21                                                        rlovko@greenfirelaw.com
                                                          GREENFIRE LAW, PC
22                                                        2748 Adeline Street, Suite A
                                                          Berkeley, CA 94703
23                                                        Telephone/Fax: (510) 900-9502
                                                          *Attorneys for Plaintiff*
24

25      Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval,

26  on August 20, 2024, from Rae Lovko for the filing of this declaration.

27                                                        */s/ Rachel S. Doughty*

28                                              18
────────────────────────────────────────────────