NICHOLAS J. HOFFMAN (SBN 284472)
  nhoffman@mcguirewoods.com
ARIA HANGVAL (SBN 336933)
  ahangval@mcguirewoods.com
McGUIREWOODS LLP
Wells Fargo Center – South Tower
355 S. Grand Avenue, Suite 4200
Los Angeles, California 90071-3103
Telephone: (213) 457-9840
Facsimile: (213) 457-9877

SAMUEL L. TARRY, JR. (*pro hac vice application forthcoming*)
  starry@mcguirewoods.com
McGUIREWOODS LLP
1750 Tysons Boulevard Suite 1800
Tysons, Virginia 22102-4215
Telephone: (703) 712-5425
Facsimile: (703) 712-5185

Attorney for Defendant
ETSY, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AS YOU SOW, a 501(c)(3) non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ETSY, INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 24-cv-04203-MMC<br><br>**DEFENDANT ETSY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>**Judge:** Hon. Maxine M. Chesney<br>**Date:** October 11, 2024<br>**Time:** 9:00 a.m.<br>**Location:** Courtroom 7, 19th Floor |

## <u>TABLE OF CONTENTS</u>

ISSUES TO BE DECIDED ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.      FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

III.      ARGUMENT ...................................................................................................... 3

     A.      The Amount-in-Controversy Requirement Is Satisfied .............................................. 3

         1.      Plaintiff's Alleged Attorneys' Fees and Civil Penalties Meet the Amount-in-Controversy Requirement ..................................... 4

         2.      Plaintiff's Arguments Are Irrelevant .............................................. 7

     B.      Plaintiff Has Alleged Article III Standing ................................................................ 8

         1.      Plaintiff Has Adequately Alleged Injury Based on Its Purchases ................. 9

         2.      Plaintiff Has Article III Standing to Pursue Its Proposition 65 Claim Because It Is Suing to Redress the State of California's Injury ................. 12

IV.      CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) .................................................................... 5, 6, 7

*Bergquist v. Mann Bracken, LLP*,
  592 F.3d 816 (7th Cir. 2010) ............................................................................ 16

*Brinkerhoff v. L'Oreal USA, Inc.*,
  417 F. Supp. 3d 1308 (S.D. Cal. 2019) ........................................................... 10

*Burk v. Med. Sav. Ins. Co.*,
  348 F. Supp. 2d 1063 (D. Ariz. 2004) ................................................................ 5

*Cal. Med. Ass'n v. Aetna Health of Cal., Inc.*,
  14 Cal. 5th 1075 (2023) ...................................................................................... 9

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) ....................................................................... 6

*Cent. Ariz. Water Conservation Dist. v. U.S. E.P.A.*,
  990 F.2d 1531 (9th Cir. 1993) ........................................................................... 10

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ........................................................................... 4, 5

*Consumer Def. Grp. v. Rental House Indus. Members*,
  137 Cal. App. 4th 1185 (2006) ............................................................................ 5

*Corbett v. Pharmacare U.S., Inc.*,
  544 F. Supp. 3d 996 (S.D. Cal. 2021) .............................................................. 12

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) ...................................................................................... 12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) .............................................................................................. 5

*Davis v. Ford Motor Credit Co.*,
  179 Cal. App. 4th 581 (2009) ............................................................................. 5

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ................................................................... 10, 12

*Doe v. Aetna*,
  Case No. 17-cv-07167, 2018 WL 1614392 (N.D. Cal. Apr. 4, 2018) ................. 8

ii

*Env't Research Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, L.L.C.*,
    No. 18-CV-05538, 2018 WL 11277666 (N.D. Cal. Dec. 21, 2018) ...................................... 16

*Envtl. Research Ctr. v. Heartland Prods.*,
    29 F. Supp. 3d 1281 (C.D. Cal. 2014) ................................................................. 15, 16

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ............................................................................... 11, 12

*Franz v. Beiersdorf, Inc.*,
    745 F. App'x 47 (9th Cir. 2018) ............................................................................. 10

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
    899 F.3d 785 (9th Cir. 2018) ................................................................................. 6

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ................................................................................ 5

*Gonzalez v. Starwood Hotels*,
    No. CV 16-1068, 2016 WL 1611576 (C.D. Cal. Apr. 21, 2016) ............................................ 4

*Gunther v. IBM Corp.*,
    No. 16-2541, 2016 WL 3769335 (C.D. Cal. July 14, 2016) ................................................ 16

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ......................................................................................... 11

*Henderson v. JPMorgan Chase Bank*,
    No. CV 11-3428, 2012 WL 12886831 (C.D. Cal. May 30, 2012) ..................................... 13, 15

*Ives v. Allstate Ins. Co.*,
    504 F. Supp. 3d 1095 (C.D. Cal. 2020) ....................................................................... 4

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
    28 F.4th 989 (9th Cir. 2022) ............................................................................... 6, 7

*Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*,
    No. 24-cv-00537-RFL, 2024 WL 2853973 (N.D. Cal. May 7, 2024) ...................................... 16

*Kwikset Corp. v. Superior Ct. of Orange County*,
    51 Cal. App. 4th 310 (2011) ............................................................................... 9, 11

*LaFace v. Ralphs Grocery Co.*,
    75 Cal. App. 5th 388 (2022) ................................................................................. 13

*Luna v. Johnson & Johnson*,
    No. 2:18-cv-4830, 2018 WL 4056007 (C.D. Cal. Aug. 23, 2018) ..................................... 11, 16

*Magadia v. Wal-Mart Assocs., Inc.*,
    999 F.3d 668 (9th Cir. 2021) ........................................................................... 13, 14, 15

*Malekar v. Birley*,
    No. 22-cv-06187, 2023 WL 3202664 (N.D. Cal. May 1, 2023) ............................................ 6

*Martin v. Frankin Capital Corp.*,
    546 U.S. 132 (2005) ........................................................................................................... 17

*Mateel Env't Just. Found. v. Off. of Env't Health Hazard Assessment*,
    24 Cal. App. 5th 220 (2018) ................................................................................................. 5

*Mo., Kan. & Tex. Ry. Co. v. Hickman*,
    183 U.S. 53 (1901) ............................................................................................................. 16

*Nat'l Paint & Coatings Ass'n v. California*,
    58 Cal. App. 4th 753, 763 (1997) ....................................................................................... 15

*Patel v. Nike Retail Servs., Inc.*,
    58 F. Supp. 3d 1032 (N.D. Cal. 2014) .................................................................................. 8

*Perez v. WinnCompanies, Inc.*,
    No. 1:14-cv-01497, 2014 WL 5823064 (E.D. Cal. Nov. 10, 2014) ....................................... 8

*Platt v. Moore*,
    15 F.4th 895 (9th Cir. 2021) ............................................................................................... 16

*Rodriguez v. Mondalez Global LLC*,
    No. 23-cv-00057-DMS-AHG, 2023 WL 8115773 (S.D. Cal. Nov. 22, 2023) ....................... 10

*Simmons v. PCR Tech.*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) ................................................................................. 6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................................... 13

*Tyler v. Hennepin Cnty., Minn.*,
    598 U.S. 631 (2023) ........................................................................................................... 10

*U.S. ex rel. Eisenstein v. City of New York, NY*,
    556 U.S. 928 (2009) ........................................................................................................... 16

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000) ............................................................................................... 13, 14, 15

**RULES**

Fed. R. Evid. 408 ........................................................................................................................ 4

**STATUTES**

28 U.S.C. § 1332 ......................................................................................................................... 1

DEFENDANT ETSY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No.: 24-cv-04203-MMC

28 U.S.C. § 1332(a) .................................................................................................. 3

28 U.S.C. § 1441 ....................................................................................................... 1

28 U.S.C. § 1446 ....................................................................................................... 1

28 U.S.C. § 1447(c) ............................................................................................. 16, 17

31 U.S.C. § 3729 ..................................................................................................... 13

31 U.S.C. § 3730(b)(1) ........................................................................................... 13

Cal. Bus. & Prof. Code § 17200 ............................................................................... 1

Cal. Bus. & Prof. Code § 17204 ............................................................................... 9

Cal. Civ. Proc. Code § 1021.5 .................................................................................. 5

Cal. Health & Safety Code § 25249.5 ...................................................................... 2

Cal. Health & Safety Code § 25249.7(c) ............................................................... 13

Cal. Health & Safety Code § 25249.7(d) ............................................................... 14

Cal. Health & Safety Code § 25249.7(d)(1) ............................................................ 2

Cal. Health & Safety Code § 25249.7(d)(2) ........................................................... 15

Cal. Health & Safety Code § 25249.7(e)(1)(A) ...................................................... 15

Cal. Health & Safety Code § 25249.12 .................................................................. 14

Cal. Health & Safety Code § 25249.12(c) .............................................................. 13

Cal. Health & Safety Code § 25249.12(d) .............................................................. 13

1

**ISSUES TO BE DECIDED**

2

  1.  Whether Defendant Etsy, Inc. ("Etsy") properly removed this action to this Court

3

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because the parties are citizens of different States

4

and the amount in controversy exceeds $75,000, as evidenced by Plaintiff's own prior settlement

5

demand.

6

  2.  Whether Plaintiff As You Sow has pleaded a basis for Article III standing to pursue

7

this action in federal court, where Plaintiff alleges that it suffered an injury-in-fact and purports to

8

bring claims as an assignee of the State of California's injury-in-fact.

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

10

**I.  INTRODUCTION**

11

  In this action, Plaintiff, a California corporation, is suing Etsy, a Delaware corporation with

12

its principal place of business in New York.  The amount in controversy exceeds $75,000, as

13

evidenced by Plaintiff's own prior settlement demand.  This Court therefore has federal diversity

14

jurisdiction over this action pursuant to 28 U.S.C. § 1332, and Etsy properly removed Plaintiff's

15

Complaint to this Court on that basis.  Accordingly, Plaintiff's Motion to Remand should be denied.

16

  *First,* Plaintiff devotes the majority of its Motion to arguing that the amount in controversy

17

is less than $75,000.  But Plaintiff has *already* expressed that it values this case at more than *three*

18

*times* the jurisdictional prerequisite, demanding a total of $290,802.62 to settle the case, including

19

$90,000 in penalties and over $177,000 in attorneys' fees—which are part of the amount-in-

20

controversy under Ninth Circuit law.  These assertions conclusively establish that more than $75,000

21

is at stake here.

22

  *Second*, Plaintiff devotes approximately one page at the end of its brief to the argument that

23

it did not plead an "injury in fact," a necessary predicate to pursue a claim in federal court.  Plaintiff's

24

argument is belied by the Complaint itself, which declares that Plaintiff "***has suffered injury in fact***

25

and has lost money or property" (Compl. ¶ 34 (emphasis added)), as required for its UCL[1] claim.

26

          

27

[1] Plaintiff brings claims for alleged violations of California's Unfair Competition Law, Business

28

and Professions Code § 17200 *et seq.* ("UCL") and The Safe Drinking Water and Toxic

Plaintiff alleges that it bought and paid for the items at issue in this lawsuit and, ultimately, alleges that those items should not have been on the market.  Article III standing requires nothing more.  Additionally, Plaintiff ignores that as a private Proposition 65 litigant, it is purporting to bring claims on behalf of the public interest and as an assignee of the State of California's injury.  That alleged injury, too, satisfies Article III.

For these reasons, Plaintiff's Motion to Remand should be denied.[2]

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Under Proposition 65, a party seeking to bring a lawsuit on behalf of the public interest must serve a notice of violation before filing suit.  Cal. Health & Safety Code § 25249.7(d)(1).  Plaintiff's lawsuit relates to two notices of violation, the first sent on January 18, 2024, and the second on March 15, 2024.  (Compl. (Dkt. 1-1) ¶ 72.)  In between the service of those two notices, on March 8, 2024, Plaintiff sent Etsy a formal settlement demand.   Declaration of Nicholas J. Hoffman ("Hoffman Decl."), ¶ 3, Ex. A.  In that correspondence, Plaintiff demanded over $290,000 to settle its claims, including over $90,000 in civil penalties, $142,194.50 in attorneys' fees for work relating to the first notice, and $35,000 in attorneys' fees for the forthcoming second notice:

| Plaintiff's March 8, 2024 Settlement Demand | |
| --- | --- |
| Civil Penalties | $90,000 |
| Future Monitoring | $10,000 |
| Additional Public Interest Payment | $10,000 |
| Attorneys' Fees for First Notice | $142,194.50 |

---

Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5 *et seq.* (known as "Proposition 65").

[2] Etsy maintains that Plaintiff's claims must be compelled to arbitration or, in the alternative, transferred to New York pursuant to its Terms of Use and as set forth in its Motion to Compel Arbitration or, in the Alternative, Transfer Venue. (Dkt. 6.)  Etsy further maintains that, to the extent this Court does not compel arbitration or transfer venue, Plaintiff's claims fail to state a claim for relief and should be dismissed, as set forth in its Motion to Dismiss. (Dkt. 7.)  Nothing in this brief should be construed as a waiver of any of the arguments in those Motions.

DEFENDANT ETSY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

| | |
|---|---|
| **Costs as of March 8, 2024** | $3,608.12 |
| **Attorneys' Fees for Second Notice** | $35,000 |
| **Total** | $290,802.62 |

*See id*.  Plaintiff's letter described the attorneys' fees requested as "[a]ctual fees." *Id*.  In subsequent conversations, Plaintiff's counsel affirmed that her firm incurred over $177,000 in attorneys' fees even before filing a complaint.  *See id*. at ¶ .  On March 18, 2024, Plaintiff filed an initial lawsuit in Alameda Superior Court, Case No. 24CV068179, bringing a single cause of action under Proposition 65.  RJN, Ex. 1.  Plaintiff then dismissed that action without prejudice and filed the Complaint at issue here.  *Id.*, Ex. 2.

The Complaint alleges a new cause of action absent from the first pleading: a claim that Etsy violated the UCL.  (*See* Compl. ¶¶ 100-113.)  In support of this claim, Plaintiff alleges that it "suffered injury in fact and has lost money or property as a result" of Etsy's alleged conduct. (*Id.* ¶ 35.)  Plaintiff alleges this economic injury occurred because it was required to "divert limited organizational resources away from [its] core mission" of "shareholder advocacy" to address Etsy's alleged conduct.  (*Id.* ¶¶ 7, 112.)  Plaintiff also alleges it "directed and paid for the purchase" of products from third-party vendors on Etsy's website that contain mercury.  (*Id.* ¶ 11.)  And Plaintiff asserts that these products were sold to it in violation of the Sherman Law—and thus, should not have been on the market at all.  (*See id.* ¶ 104.)

## III.    ARGUMENT

### A.    The Amount-in-Controversy Requirement Is Satisfied

This Court has diversity jurisdiction over any action in which the parties are citizens of different States and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  The parties do not dispute that they are citizens of different States:  Plaintiff is a citizen of California and Defendant is a citizen of Delaware and New York.  (*See* Dkt. 1 ¶¶ 12-13.)  Moreover, the amount in controversy exceeds $75,000, as shown by Plaintiff's own prior settlement demand of over $290,000—more than *three times* the amount in controversy needed for diversity jurisdiction.

1    The Ninth Circuit's decision in *Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002), is

2  directly on point.  There, a veterinarian sued Petsmart in state court for trademark infringement.  *See*

3  *id.* at 839.  The complaint did not specify the amount of the relief sought.  *See id.*  Petsmart removed

4  to federal court on the basis of diversity jurisdiction, "rel[ying] on a single piece of evidence: a letter

5  from Cohn to Petsmart offering to settle the dispute," which asserted his mark was "worth more

6  than $100,000" and demanded that amount in compensation.  *Id.* at 839-40.  The Ninth Circuit held

7  that "[t]his evidence [was] sufficient to establish the amount in controversy," explaining that "[a]

8  settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable

9  estimate of the plaintiff's claim[;]" *i.e.*, unless the plaintiff attempts to "disavow his letter or offer

10  contrary evidence."  *Id.* at 840; *see also Ives v. Allstate Ins. Co.*, 504 F. Supp. 3d 1095, 1097-98

11  (C.D. Cal. 2020) (holding settlement demand of $249,999 was enough to establish the amount in

12  controversy for removal purposes "because courts in this jurisdiction and in the Ninth Circuit have

13  stated that a settlement demand can be relevant evidence of the amount in controversy"); *Gonzalez*

14  *v. Starwood Hotels*, No. CV 16-1068, 2016 WL 1611576, at *5 (C.D. Cal. Apr. 21, 2016) (plaintiff's

15  written offer to settle for $150,000 was "sufficient to establish that the amount in controversy is

16  above $75,000").

17    So it is here.  Plaintiff's settlement demand valued the case at over $290,000—including

18  $90,000 in penalties and over $177,000 in attorneys' fees alone—before Plaintiff filed its initial

19  Complaint.  This "evidence is sufficient to establish the amount in controversy."  *Cohn*, 281 F.3d at

20  840.[3]  Indeed, both the attorneys' fees and the civil penalties Plaintiff is seeking each independently

21  meet the amount-in-controversy requirement.

22      **1.    Plaintiff's Alleged Attorneys' Fees and Civil Penalties Meet the Amount-**
23              **in-Controversy Requirement**

24    Plaintiff's attorneys' fees alone are sufficient to establish the amount in controversy.  It is

25  no secret that the great bulk of recoveries in these types of cases are not of civil penalties but of

26  _____

27  [3] Federal Rule of Evidence 408 does not prohibit use of the settlement demand to establish the
amount in controversy.  *See id.* at 840 n.3 ("We reject the argument that Fed. R. Evid. 408 prohibits

28  the use of settlement offers in determining the amount in controversy.").

attorneys' fees.  *See, e.g.*, *Consumer Def. Grp. v. Rental House Indus. Members*, 137 Cal. App. 4th 1185, 1219 (2006) (explaining how repeat Proposition 65 litigants obtain large fee awards).  Section 1021.5 of the California Code of Civil Procedure provides that a plaintiff who successfully sues to vindicate a public right, such as a plaintiff suing "in the public interest" under Proposition 65 or a plaintiff bringing a UCL claim, may be awarded attorneys' fees.  *See* Cal. Civ. Proc. Code § 1021.5 (court may award fees in action that "has resulted in the enforcement of an important right affecting the public interest"); *Mateel Env't Just. Found. v. Off. of Env't Health Hazard Assessment*, 24 Cal. App. 5th 220, 241 n.14 (2018) ("Proposition 65 provides monetary incentives for private enforcers, who may retain 25 percent of the civil penalties obtained . . . as well as attorney fees[.]" (citing Cal. Code Civ. Proc. § 1021.5)); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 600 (2009) ("If a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5[.]" (quotation marks and citation omitted)).  Indeed, Plaintiff cites Section 1021.5 as the basis for its request for attorneys' fees in its prayer for relief.  (*See* Compl. ⁋ 114(D).)

Because California law permits Plaintiff to seek its fees if it succeeds on either of its claims, those fees are part of the amount in controversy.  *See Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1068 (D. Ariz. 2004) ("Attorneys' fees may be included in computing the amount in controversy 'where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language.'" (quoting *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)).  Plaintiff has already demanded over $177,000 in "[a]ctual" attorneys' fees incurred—not including fees spent to file the Complaint and motion to remand.  Hoffman Decl. ¶ 4, Ex. A.  These "[a]ctual fees" conclusively establish that the amount in controversy is met.[4]

---

[4] Etsy's removal papers focused on the potential penalties sought in this lawsuit, for which Plaintiff demanded $90,000, which is alone sufficient for diversity jurisdiction. As Plaintiff is disputing the amount-in-controversy, the Court can and should consider Plaintiff's prayer and demand for attorneys' fees, plus future fees, which take this case far above the $75,000 threshold. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) ("a notice of removal 'need not contain evidentiary submissions'"); *Cohn*, 281 F.3d at 840 n.1

Plaintiff's future fees are *also* part of the amount in controversy.  *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[T]here is no question that future [attorneys' fees] are 'at stake' in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy[.]"); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) ("[T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred[.]").  Since the settlement demand, Plaintiff claims it has spent at least $7,000 more on its remand motion and expects to spend another $3,000 to $5,000 on reply.  *See* Dkt. 18-1 ¶ 5.[5]  Plaintiff's alleged "actual" fees already exceed $75,000 and will only increase as litigation progresses.  Indeed, publicly available data shows that Plaintiff sought and received an average of $331,125 in attorneys' fees per case in 2018 and 2019—in what appear to be pre-trial settlements.  *See* RJN Exs. 3 & 4 (California Attorney General data); Ex. 5 (Plaintiff receiving $900,000 in attorneys' fees and expenses); Ex. 6 (Plaintiff receiving $325,000 in attorneys' fees and costs).[6]

The amount in controversy is also satisfied given the amount of civil penalties Plaintiff is seeking.  While Etsy does not yet know Plaintiff's damages theory, Plaintiff has demanded civil

---

(affirming that a defendant may submit amount-in-controversy evidence in opposing a remand motion); *cf., e.g.*, *Malekar v. Birley*, No. 22-cv-06187, 2023 WL 3202664, at *2 (N.D. Cal. May 1, 2023) ("defects" in the allegations in a notice of removal are "cured" through an opposition to a motion to remand).

[5] Plaintiff's Motion states it has "incurred approximately $7,000 in attorney fees to date in this matter[.]" (Motion at 9.)  But Plaintiff's counsel's Declaration makes clear that this amount relates solely to the motion to remand and does not include the already-incurred fees set forth in its prior settlement demand.  *See* Dkt. 18-1 ¶ 5 ("To date, in preparing the motion to remand, Greenfire Law has expended approximately $7,000 in attorney fees[.]").)

[6] To be clear, Etsy maintains Plaintiff should not recover anything.  But in the event Plaintiff is eventually awarded its attorneys' fees, Etsy will dispute the reasonableness of those fees at the appropriate juncture.  With that said, whether Plaintiff's supposed fees are reasonable and whether it will ultimately obtain those fees is irrelevant.  The jurisdictional analysis asks only if the Plaintiff *could* obtain more than $75,000.  *See Arias*, 936 F.3d at 928; *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).  Plaintiff claims it has already incurred and is entitled to more than $177,000 in fees before meaningful litigation has even started; Plaintiff cannot argue its fees are less than that amount.

penalties totaling $90,000.  *See* Decl. of N. Hoffman ⁋ 3.[7]  Thus, while Plaintiff's attorneys' fees constitute the bulk of the amount at issue and satisfy the amount in controversy, the civil penalties Plaintiff seeks (as demonstrated in its settlement demand) also meet the amount in controversy.

### 2.      Plaintiff's Arguments Are Irrelevant

Plaintiff's contrary arguments are unavailing.  Plaintiff principally focuses on the *likelihood* that it can recover either the full civil penalties sought or its full attorneys' fees.  (*See* Motion at 11 (arguing the "median penalty" it collects is "well below $75,000");[8] *id.* at 15 (arguing Etsy must make a "showing" that Plaintiff can satisfy the "high burden" to collect its fees).)  While Etsy believes Plaintiff should ultimately recover nothing, "the likelihood of the plaintiff prevailing . . . is irrelevant to determining the amount that is at stake in the litigation."  *Arias*, 936 F.3d at 928.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.  In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover."  *Id.* at 927 (quotation marks and citation omitted); *accord Jauregui*, 28 F.4th at 994 (the amount in controversy "does not mean likely or probable liability; rather, it refers to *possible* liability" (internal citations omitted).)  Whatever Plaintiff has recovered in other cases, or whatever the likelihood Plaintiff will recover *anything* here, Plaintiff has demanded $290,000 from Etsy to resolve this matter.  The amount-in-controversy requirement asks only if Plaintiff could *possibly* obtain in excess of $75,000; Plaintiff cannot credibly dispute this in light of its own settlement demand.[9]

Plaintiff also argues that Etsy cannot "aggregate" claims to reach the jurisdictional threshold.  (Motion at 13-15).  Plaintiff appears to make two arguments—both are irrelevant.  First, Plaintiff

---

[7] Plaintiffs' settlement letter purported to arrive at this number by multiplying a civil penalty of $2,000 (which is less than the maximum civil penalty available) with the number of products listed in its first Notice.  *See* Decl. of N. Hoffman ⁋ 3, Ex. A.

[8] Plaintiff discusses the "median" penalty it has collected in Proposition 65 cases, but inexplicably omits details about the attorneys' fees it collected in those cases.  As noted *supra*, this amount alone far exceeds $75,000.

[9] Plaintiff claims Etsy "errs in suggesting that AYS seeks penalties for violations since 2020." (Motion at 12.)  But Etsy does no such thing.  Etsy is using Plaintiff's own statements about the civil penalties at issue.

7

argues that the value of the injunctive relief sought in a UCL claim should be ignored because that relief is sought "on behalf of numerous individuals." (Mot. at 13 (quotation marks and citation omitted).) But Etsy is not at this stage asserting that the Court should consider Etsy's cost to comply with any requested injunctive relief (nor does it know what type of injunction Plaintiff will be seeking).

Second, Plaintiff argues that only 25% of the civil penalties and attorneys' fees it seeks should count towards the amount in controversy because 75% of any civil penalties are paid to the State. (*Id.* at 14.) Etsy is not aware of a single court holding as much in a Proposition 65 case. Outside the Proposition 65 context, courts that have prorated attorneys' fees have done so where a representative plaintiff seeks relief on behalf of other specific non-party individuals to vindicate their individualized interests; there, "only the portion of attorneys' fees attributable to [the named plaintiff's] claims count towards the amount in controversy." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1049 (N.D. Cal. 2014). But that is not the case here: the relief sought would not be "distributed *pro rata* to all aggrieved employees," or any other individuals that "[the named plaintiff] seeks to represent." *Id.* All of Plaintiff's alleged attorneys' fees are "attributable to [its] claims." *Id.; cf. Doe v. Aetna*, Case No. 17-cv-07167, 2018 WL 1614392, at *7 (N.D. Cal. Apr. 4, 2018) (explaining "the total amount of fees incurred is attributable to the plaintiff (for purposes of amount in controversy)" when it has a "common and undivided interest" in them); *Perez v. WinnCompanies, Inc.*, No. 1:14-cv-01497, 2014 WL 5823064, at *9 (E.D. Cal. Nov. 10, 2014) (explaining that prorating attorneys' fees is proper where "the plaintiff would not ultimately be entitled to the entirety of that award upon a favorable disposition of the case").

In any event, Plaintiff seeks $90,000 in civil penalties and receives an average of at least $331,125 in attorneys' fees in Proposition 65 cases—which it concedes is relevant to calculating the amount in controversy. *See* RJN ¶¶ 3-4. Twenty-five percent of that sum is $105,281. The amount in controversy here is more than $75,000, no matter how Plaintiff tries to avoid it.

## B. Plaintiff Has Alleged Article III Standing

Plaintiff also argues it does not have Article III standing because it has not pleaded an injury-in-fact. This argument, too, is incorrect. Plaintiff has Article III standing to bring each of its claims.

First, Plaintiff alleges it suffered an injury-in-fact in order to advance its UCL claim.  As the California Supreme Court has explained, the injury-in-fact sufficient to support a UCL claim is by definition sufficient to confer Article III standing.  Moreover, Plaintiff's allegation that it purchased products from Etsy's website that were not legal for sale pleads a classic pocketbook injury-in-fact. Second, Plaintiff independently has Article III standing to pursue its Proposition 65 claim because Proposition 65 is a *qui tam*-style statute.  By attempting to sue "in the public interest" (Compl. ¶ 9), Plaintiff is stepping into the shoes of the State to redress the *State's* injury.

### 1.      Plaintiff Has Adequately Alleged Injury Based on Its Purchases

A private plaintiff may bring a UCL claim only where it "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204. Accordingly, Plaintiff alleges it "has suffered an injury in fact and lost money or property as a result of" Etsy's alleged conduct.  (Compl. ¶¶ 34, 35.)  But the injury required for a UCL claim is the same as that required for an Article III injury-in-fact.  The California Supreme Court has explained that the UCL's economic injury requirement was expressly meant to require that a plaintiff suffer an Article III injury-in-fact:

> "Injury in fact" is a legal term of art.  A long line of United States Supreme Court cases has identified injury in fact as one of the three 'irreducible minimum' requirements for federal standing under article III[.] . . .  The text of Proposition 64 establishes expressly that in selecting this phrase, the drafters and voters intended to incorporate the established federal meaning.  The initiative declares: "It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been *injured in fact under the standing requirements of the United States Constitution.*"

*Kwikset Corp. v. Superior Ct. of Orange County*, 51 Cal. App. 4th 310, 322 (2011) (citing Prop. 64, § 1, subd. (e)); *see also Cal. Med. Ass'n v. Aetna Health of Cal., Inc.*, 14 Cal. 5th 1075, 1095 (2023) ("[T]he voters in Proposition 64 intended to adopt the injury-in-fact requirement from federal standing law.").  Thus, as the *Kwikset* Court explained, where a plaintiff has standing to bring a UCL claim, it necessarily also has suffered an Article III injury-in-fact.  So it is here.  Plaintiff asserts it has alleged an injury-in-fact sufficient for its UCL claim; it has thus necessarily also alleged an injury-in-fact sufficient to confer Article III standing.  *See Kwikset Corp.*, 51 Cal 4th at 325 ("[T]he same allegations or proof that suffice to establish economic injury will generally show injury

in fact as well.").

In support of its UCL claim, Plaintiff alleges it has had to "divert limited organizational resources away from their core mission and have incurred significant costs" as a result. (Compl. ¶ 112.)  But setting aside whether "diversion of resources" constitutes an Article III injury-in-fact, Plaintiff *also* alleges it "directed and paid for the purchase of" purportedly toxic products that should not have been on the market.  (Compl. ¶ 11; *see also id.* ¶ 104 (alleging sale of the products violates the Sherman Law).)  This allegation is critical here: it is a "classic pocketbook injury" that is plainly "sufficient to give [a plaintiff] standing" under Article III.  *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 636 (2023); *see Cent. Ariz. Water Conservation Dist. v. U.S. E.P.A.*, 990 F.2d 1531, 1537 (9th Cir. 1993) ("Pecuniary injury is clearly a sufficient basis for standing." (quotation marks and citation omitted)); *see Rodriguez v. Mondalez Global LLC*, No. 23-cv-00057-DMS-AHG, 2023 WL 8115773, at *7 (S.D. Cal. Nov. 22, 2023) ("Courts in this Circuit routinely find standing based on lost money." (collecting cases)).

A plaintiff's purchase of a product that should not be on the market is, in and of itself, an injury-in-fact in the form of "lost money."  The Ninth Circuit's decision in *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47 (9th Cir. 2018), is on point.  There, the plaintiff claimed a skin lotion she purchased violated the Sherman Law, just as Plaintiff does here.  *Compare id.* at 48 *with* Compl. ¶ 104.  The district court held that she lacked standing.  But the Ninth Circuit reversed, explaining:

> Plaintiff alleges . . . she spent money on a product that should not have been on the market.  Those allegations are sufficient to establish standing under the UCL. . . .
>
> **Plaintiff likewise has standing under Article III of the United States Constitution. Plaintiff alleged injury in fact—she spent money on Nivea CoQ10.**  Defendant's allegedly illegal conduct caused that injury, insofar as Defendant allegedly sold a product in commerce that it should not have sold.  And the injury is redressable— in restitution—by a favorable court decision.

*Id.* at 48 (emphasis added)*; see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1086 (11th Cir. 2019) (plaintiffs who purchased supplements that were "banned" by federal law and "presumptively unsafe" suffered "an economic loss when they purchased" the supplements even if they did not ingest them); *Brinkerhoff v. L'Oreal USA, Inc.*, 417 F. Supp. 3d 1308, 1314 (S.D. Cal. 2019) (holding plaintiff had Article III standing where she "suffered an economic loss simply

1   because she bought a product for which Defendant lacked permission to sell").

2   *Luna v. Johnson & Johnson*, No. 2:18-cv-4830, 2018 WL 4056007 (C.D. Cal. Aug. 23,

3   2018), is on all fours with this case.  There, as here, plaintiffs brought Proposition 65 and UCL

4   claims related to the sale of products that allegedly contained toxins.  *Id.* at *1.  And there, as here,

5   Plaintiffs pled they "purchased" the products "and have suffered injury in fact and have lost money

6   or property as a result of the unlawful, unfair or fraudulent business practices and unfair, deceptive,

7   untrue or misleading advertising."  Dkt. 1-1 (Compl.) ¶¶ 105, 118, No. 2:18-cv-04380 (C.D. Cal.).

8   Defendant removed and plaintiffs argued remand was required "because of the absence of an injury-

9   in-fact[.]"  *Luna*, 2018 WL 4056007, at *1.  But the Court noted "a problem with Plaintiffs'

10  attempted maneuver: Plaintiffs *have* actually pled that they *did* suffer an injury-in-fact," pointing

11  to that exact allegation in the complaint.  *Id.*  The same problem dooms the same attempted

12  maneuver here: Plaintiff *has* pled an injury-in-fact.

13       Plaintiff cites no contrary authority.  Plaintiff suggests, without analysis, that the Supreme

14  Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), stands

15  for the proposition that the "associational standing" sufficient to confer UCL standing "may fail to

16  meet the requirements of Article III." (Motion at 16.)  This argument confuses the issues.  A UCL

17  claim *requires* an injury-in-fact.  *See Kwikset Corp.*, 51 Cal. App. 4th at 322.  Moreover, Plaintiff's

18  Article III standing here is not based on associational standing (where an organization sues for an

19  injury suffered by its members)—it is based on a *direct* economic injury to the organization, which

20  alleges it paid for purportedly worthless toxic products.  *See Havens Realty Corp. v. Coleman*, 455

21  U.S. 363, 379 (1982) (holding an organization that suffered a direct injury has standing to bring

22  claims "in its own right").[10]

23

24  [10] In *Alliance*, certain organizations created expressly to advocate and litigate against the FDA sued
    it, alleging they had expended resources in connection with that mission.  The Court held that an

25  organization "cannot spend its way into standing simply by expending money to gather information
    and advocate against the defendant's action."  602 U.S. at 394.  Here, as set forth *supra*, Plaintiff

26  alleges more than just expenditure of resources to advocate against Etsy—it alleges a direct
    pocketbook injury.    Moreover, Plaintiff alleges it has an independent mission—"corporate

27  engagement through shareholder advocacy" (Compl. ¶ 7)—from which it has been forced to "divert"
    resources (*id.* ¶ 10).  The Supreme Court took pains to recognize that where a defendant's actions

28

Plaintiff also quotes *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996 (S.D. Cal. 2021), for the proposition that "Article III standing and statutory standing [under the UCL] are distinct legal analyses." (Motion at 16 (quoting *Corbett*, 544 F. Supp. 3d at 1005).) But *Corbett* supports *Etsy's* position. There, the purchaser of certain dietary supplements brought claims under the UCL alleging that the products were "illegal to sell" under the Food, Drug, and Cosmetic Act and the Sherman Law. *Id.* at 1001. The "[d]efendant argued that Plaintiff's illegal products theory fails for lack of Article III standing and statutory standing" under the UCL. *Id.* at 1004. The court chided the parties for "conflat[ing]" the legal analysis for each issue. *Id.* at 1005. But it did not hold that the standards for UCL standing and Article III standing were substantively different. To the contrary, the court recognized that "[e]conomic injury is clearly a sufficient basis for [Article III] standing" and held that the plaintiffs established standing by alleging "an economic injury in the amount of money spent on the Products due to the sale of illegally sold and falsely advertised products." *Id.* at 1006 (citation omitted). That is *exactly* what establishes Plaintiff's Article III standing here.[11]

### 2. Plaintiff Has Article III Standing to Pursue Its Proposition 65 Claim Because It Is Suing to Redress the State of California's Injury

This Court also has jurisdiction over the Proposition 65 claim because it is a *qui tam*-style statute, similar to the False Claims Act, which partially assigns the government's claim to a private plaintiff. As the Supreme Court has held, plaintiffs in a *qui tam* action need not show injury to

---

interfere with an organization's "core business activities" (as opposed to where the organization exists simply for the purpose of bringing litigation), the organization still has standing to sue. 602 U.S. at 395 (citing *Havens*).

[11] Plaintiff's allegations also satisfy the other two elements of Article III standing: traceability and redressability. Plaintiff purchased the products from a seller on Etsy's website and using Etsy's payment platform. *See* (Compl. ¶ 11); *see also Debernardis*, 942 F.3d at 1088 ("We conclude that the plaintiffs' economic losses were fairly traceable to Europa's conduct because . . . Europa distributed the supplements each plaintiff purchased."). And Plaintiff's alleged injury is also redressable by this Court, as it can award restitution of Plaintiff's lost money in connection with its UCL claim. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000) ("A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff . . . through unfair or unlawful business practices.").

DEFENDANT ETSY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No.: 24-cv-04203-MMC

themselves because they are assignees of the State's claim and thus inherit the State's injury—which is sufficient to create federal court standing.  So too with Proposition 65.

"A *qui tam* statute permits private plaintiffs, known as relators, 'to sue in the government's name for the violation of a public right.'"  *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 345 n.1 (2016)).  The most widely-known *qui tam* statute is the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").  Under the FCA, the government may either sue directly or "a private person (the relator) may bring a *qui tam* civil action 'for the person and for the United States government,' against the alleged false claimant, 'in the name of the Government.'"  *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000) (quoting 31 U.S.C. § 3730(b)(1)).  If a private person brings an action, then he "receives a share of any proceeds"—generally ranging from fifteen to thirty percent—with the remaining proceeds paid to the State.  *Id.*

Proposition 65 functions the same way:  an action may be brought by a public prosecutor or, alternatively, by a private person "in the public interest."  Cal. Health & Safety Code § 25249.7(c), (d); *see LaFace v. Ralphs Grocery Co.*, 75 Cal. App. 5th 388, 398 (2022) ("Proposition 65 allows for enforcement by the state or by private plaintiffs on the state's behalf.").  If a private person brings an action, they too receive a portion of any civil penalties collected—25%—with the balance paid to the State.  *See id.* § 25249.12(c)&(d).  Because Proposition 65 functions in the same manner as the FCA in these respects, California courts recognize that it is "close[] to"—if not identical to—a traditional *qui tam* statute.  *Henderson v. JPMorgan Chase Bank*, No. CV 11-3428, 2012 WL 12886831, at *6 (C.D. Cal. May 30, 2012).

A *qui tam* plaintiff need not plead an injury to itself to have Article III standing.  In *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, a private plaintiff brought an action under the FCA against his former employer seeking "to remedy an injury in fact suffered by the United States . . . both the injury to its sovereignty arising from violation of its laws . . . and the proprietary injury resulting from the alleged fraud."  529 U.S. at 771.  The Supreme Court held the plaintiff had standing.  Looking to the "long tradition of *qui tam* actions in England and the American colonies," it held that a *qui tam* relator is acting on a "partial assignment of the Government's damages claim."

*Id.* at 773-74.  Accordingly, the plaintiff had an Article III injury-in-fact (even though he did not allege injury to himself) because "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."  *Id.* at 773.  Put simply, the Government suffered an injury and the *qui tam* relator is assigned that injury—which creates standing.

The same is true for Proposition 65 actions.  As in a traditional *qui tam* statute, Plaintiff purports to act as an assignee of the State's injury (both the injury to its sovereignty from the alleged violation of its laws and the proprietary injury of alleged toxic exposure to its citizens).  That injury creates Article III standing based on "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor."  *Id.* at 765.

The Ninth Circuit's decision in *Magadia v. Wal-Mart Assocs.* further confirms this conclusion.  There, the Ninth Circuit noted that "[*q*]*ui tam* standing for uninjured plaintiffs flows from an assignment theory. . . . [A] *qui tam* action is for a redress of the government's injury, and it is the government's injury that confers standing upon the private person."  999 F.3d at 674 (quotations and citations omitted).  The court then detailed the key features that render a statute equivalent to a "traditional *qui tam* action[:]" the statute "operates as an assignment from California to a relator-type plaintiff;" it permits private plaintiffs to recover civil penalties, the "lion's share" of which goes to the state; and it "permits the government to dictate whether a private plaintiff may bring a claim in the first place."  *Id.* at 675.

Proposition 65 has all of these elements.  Under Proposition 65, a private plaintiff can sue "in the public interest," Cal. Health & Safety Code § 25249.7(d), and thus creates an "assignment from California to a relator-type plaintiff."  *Magadia*, 999 F.3d at 675.  Moreover, a plaintiff recovers civil penalties, the "lion's share" of which go to the State.  *See id.*; *see also* Cal. Health & Safety Code § 25249.12.  And the State may dictate whether "a private plaintiff may bring a [Proposition 65] claim in the first place[,]" because before filing a private enforcement action a plaintiff must notify the California Attorney General's office, which can withdraw the plaintiff's

1  authority to sue or bring its own preclusive enforcement action.  *Magadia*, 999 F.3d at 675; *see* Cal.

2  Health & Safety Code §§ 25249.7(d)(2), (e)(1)(A).[12]

3      In sum, Proposition 65 functions as a *qui tam* statute.  Accordingly, Plaintiff—who purports

4  to be suing in the public interest (*see* Compl. ¶ 9)—is operating on an assignment of the State of

5  California's claim.  It thus asserts "the injury in fact suffered by the assignor." *Stevens*, 529 U.S. at

6  765.  Here, that is the injury allegedly suffered by the State of California (for alleged violation of its

7  laws and the alleged toxic exposure to its citizens).  That Plaintiff is suing under state, rather than

8  federal law, is inconsequential: as the *Magadia* court explained, a state law can confer an injury-in-

9  fact sufficient to proceed in federal court.  *See Magadia*, 999 F.3d at 680 n.9 ("Walmart seeks to

10  distinguish between injuries born of state law and those born of federal law.  But we have held that

11  state law can create interests that support standing in federal courts." (quotation marks and citation

12  omitted)).[13]  The State's alleged injury-in-fact, assigned to Plaintiff, creates Article III standing.

13      Plaintiff cites cases in which courts have remanded Proposition 65 actions for lack of

14  standing.  (*See* Motion at 15-16.)  These cases are inapplicable here: they do not involve direct

15  injuries to the plaintiffs or the purchase of allegedly illegal products, and none involved a plaintiff

16  that pleaded UCL standing and alleged it "has suffered an injury in fact and has lost money or

---

[12] *Magadia* concerned whether PAGA is a *qui tam*-style statute.  It is not, because it permits private plaintiffs to bring a claim on behalf of other "nonparty employees," and because "the State has no authority under PAGA to intervene in a case brought by an aggrieved employee." *Id.* at 676-677.  Neither of these "atypical" features of PAGA exist for Proposition 65. *Id.*  The plaintiff is not bringing the claim on behalf of anyone other than itself and the State.  And under Proposition 65, the State may "seek to intervene" in a private Proposition 65 action. *Nat'l Paint & Coatings Ass'n v. California*, 58 Cal. App. 4th 753, 763 (1997) (rejecting argument that the State is "foreclosed from supervising or controlling private [Proposition 65] enforcement actions"); *see also Henderson*, 2012 WL 12886831, at *6 (noting "Proposition 65's private right of action provision is even closer to a *qui tam*" than PAGA).

[13] One case concerning Proposition 65 has reasoned otherwise. *See Envtl. Research Ctr. v. Heartland Prods.*, 29 F. Supp. 3d 1281, 1284 (C.D. Cal. 2014) ("Congress clearly has the authority to enact statutes permitting partial assignment of a *federal* damages claim to a private citizen to enable the citizen to bring suit in federal court on the government's behalf.  But it does not follow that states have a similar authority[.]" (citation omitted)).  Etsy respectfully submits that this decision is wrong in light of the Ninth Circuit's *Magadia* decision (which the *Heartland* court did not discuss).

property [.]" (Compl. ¶ 34). And, the majority of these cases do not discuss *qui tam* standing at all. Of those that have, courts have agreed that Proposition 65 is a *qui tam*-style statute but wrongly concluded that the interests of the State of California, as the "real party in interest," destroys diversity.[14] But the fact that the State may be "a 'real party in interest' in a *qui tam* action does not automatically convert it into a 'party'" in the action. *U.S. ex rel. Eisenstein v. City of New York, NY*, 556 U.S. 928, 934 (2009). Rather, "a State's presence in a lawsuit will defeat jurisdiction under § 1332(a)(1) only if 'the relief sought is that which inures to the [State] alone.'" *Luna*, 2018 WL 4056007 at *2 (quotation marks and citation omitted). That is not the case here. *See Gunther v. IBM Corp.*, No. 16-2541, 2016 WL 3769335, at *3 (C.D. Cal. July 14, 2016) (rejecting argument that diversity did not exist because California is the "real party in interest" and the "state is not a 'citizen,'" and explaining "federal courts . . . expressly reject the theory that Plaintiff asserts here").

Finally, while Etsy believes that federal jurisdictional requirements are met for all of Plaintiff's claims, the Court should deny the motion if it concludes there is standing for even one of Plaintiff's claims. Title 28 U.S.C. § 1447(c) authorizes a remand only if a federal court lacks subject-matter jurisdiction over the entire removed "case." Section 1447(c) thus "does not apply" where certain claims "remain justiciable" by a federal court. *Platt v. Moore*, 15 F.4th 895, 909 (9th Cir. 2021); *see Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) ("Federal law does not permit a district judge to remand the complete litigation just because portions belong in state court. . . . If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction[.]"); *Luna*, 2018 WL 4056007, at *3 ("[F]ederal courts cannot remand an entire case where they properly have federal jurisdiction over part of it."). The proper outcome would thus be to, at the appropriate juncture, dismiss the claim for which Plaintiff lacks standing and proceed in this Court solely on the remaining claim. *See id.* at *2 ("Plaintiffs[] have Article III standing for their 'UCL and FAL claims' because

---

[14] *See Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, No. 24-cv-00537-RFL, 2024 WL 2853973, at *2 (N.D. Cal. May 7, 2024); *Env't Research Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, L.L.C.*, No. 18-CV-05538, 2018 WL 11277666, at *1 (N.D. Cal. Dec. 21, 2018); *Heartland Prods.*, 29 F. Supp. 3d at 1283.

of their injury-in-fact allegations, and the Court therefore has subject matter jurisdiction over the action as a whole under the principles of diversity jurisdiction . . . even if the Court might ultimately have to dismiss individual claims for standing-related defects.").[15]

## IV.     CONCLUSION

For these reasons, Etsy requests that the Court deny Plaintiff's motion to remand.

DATED: August 20, 2024                    Respectfully submitted,

McGUIREWOODS LLP

By:   /s/ Nicholas J. Hoffman
      Samuel L. Tarry, Jr. (*PHV Forthcoming*)
      Nicholas J. Hoffman
      Aria Hangval
      Attorneys for Defendant ETSY, INC.

---

[15] Plaintiff's request for attorneys' fees should be denied: "[a]bsent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Frankin Capital Corp.*, 546 U.S. 132, 141 (2005) .  Here, Etsy unquestionably has an objectively reasonable basis for seeking removal. *See generally* Section III *supra*.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **August 20, 2024**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **August 20, 2024**, at Los Angeles, California.


<u>*/s/ Nicholas J. Hoffman*</u>
Nicholas J. Hoffman
McGuireWoods LLP

Case No.: 24-cv-04203-MMC