RACHEL S. DOUGHTY (SBN 255904)
J. RAE LOVKO (SBN 208855)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
rdoughty@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AS YOU SOW, a 501 (c)(3) non-profit corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>Etsy, Inc., and DOES 1-20, inclusive<br><br>  Defendants, | Case No. 24-cv-04203-MMC<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**<br><br>Date: October 11, 2024<br>Time: 9:00 a.m.<br>Dept: Courtroom 7, 19th Floor<br><br>Hon. Maxine M. Chesney, presiding |

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL FRAMEWORK .................................................................................................. 2

    A.   Proposition 65 Civil Penalties and Standing ........................................................ 2

    B.   Private Attorney General Fees ............................................................................. 4

III.  STATEMENT OF RELEVANT FACTS ........................................................................ 4

IV.   ARGUMENT ..................................................................................................................... 5

    A.   Defendant ETSY Has Not Met Its Burden of Establishing the Amount in Controversy .... 5

        1.    The March 8, 2024 Settlement Communication Does Not Contain a Reasonable Estimate of AYS's Claims for Penalties and Fees, and ETSY Has Failed to Provide Information Regarding the Number of Mercury-Containing Skin Creams Sold to California Consumers .................................................................................... 5

        2.    Fee Awards in Unrelated AYS Cases Do Not Establish a Basis for Determining a Reasonable Estimate of the Amount in Controversy .................................... 8

        3.    ETSY's Assertions Regarding Proposition 65 Penalties Are Erroneously Based Upon Sales to California Consumers Occurring in 2020 or Later, Ignoring That the One-Year Statute of Limitations for Proposition 65 Causes of Action Limits Penalties to Sales Occurring on or After June 8, 2023 ................................................. 10

        4.    Consideration of Attorneys' Fees Under California's Private Attorney General Statute Does Not Establish a Basis for Diversity Jurisdiction ....................... 11

        5.    Penalties and Fees Cannot Be Aggregated for Representative Claims Because There is No Common and Undivided Interest Between AYS and the Public ....... 12

    B.   ETSY Has Not Established That Plaintiff Has Standing to Sue on Behalf of the Public in Federal Court .................................................................................................. 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Arias v. Residence Inn*, 936 F.3d 920 (9th Cir. 2019) ........................................................... 8

*Artiga v. Fed. Express Corp.*, No. C 03-02326 SBA, 2004 U.S. Dist. LEXIS 19997 (N.D. Cal. Sep. 27, 2004) ............................................................................................................................. 9

*As You Sow v. the Sherwin-Williams Company*, C-93-3577-VRW, 1993 U.S. Dist. LEXIS 18310 (N.D. Cal. 1993) ...................................................................................................... 4, 14

*Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889 (N.D. Cal. 2022) ................................ 11, 13

*Billingsley v. McGriff Transp., Inc.*, No. 05-4397-CV-C-NKL, 2006 U.S. Dist. LEXIS 1860 (W.D. Mo. Jan. 10, 2006) ............................................................................................................... 6

*Briest v. Knot Standard LLC*, No. CV 20-02519-CJC(PVCx), 2020 U.S. Dist. LEXIS 90047 (C.D. Cal. May 20, 2020) .............................................................................................................. 6

*Brimer v. Amash Imps., Inc.*, No. C11-5291 EMC, 2012 U.S. Dist. LEXIS 206730 (N.D. Cal. Jan. 10, 2012) .......................................................................................................................... 4, 14

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...................................... 11, 12

*Canales v. Performance Food Grp., Inc.*, No. CV 17-7464 JGB, 2017 U.S. Dist. LEXIS 197363 (C.D. Cal. Nov. 30, 2017) ............................................................................................................ 6

*Carter v. Transdev Servs. Inc.*, No. 2:24cv4128-FLA (RAOx), 2024 U.S. Dist. LEXIS 143987, (C.D. Cal. Aug. 12, 2024) ........................................................................................................... 9

*Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002) ...................................................... 5, 6

*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal.App.4th 675 (Cal. Ct. App. 2008) . 3

*DiPirro v. Bondo Corp.*, 153 Cal. App. 4th 150 (2007) ......................................................... 3

*Doe v. Aetna, Inc.*, No. 17-cv-07167-EMC, 2018 U.S. Dist. LEXIS 57771 (N.D. Cal. Apr. 4, 2018) ............................................................................................................................................ 12

*Envtl. World Watch, Inc. v. Am. Airlines, Inc.*, No. C05-1799 TEH, 2005 U.S. Dist. LEXIS 48951 (N.D. Cal. Aug. 3, 2005) ......................................................................................................... 4, 14

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ...................................................... 14

*Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018) ................... 5, 8, 10, 11

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001) ..................................................... 12

*Graham v. Bausch Health Cos.*, 2021 Cal. Super. LEXIS 24857 ........................................ 2, 7

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND—24-CV-04203-SK

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................... 14

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015) ........................... 8, 11

*J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 U.S. Dist. LEXIS 118882 (N.D. Cal. Nov. 30, 2009)............................................................... 11, 13

*Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, No. 24-cv-00537-RFL, 2024 U.S. Dist. LEXIS 101528 (N.D. Cal. May 7, 2024)................................................... 3, 14

*Keodalah v. Allstate Ins. Co.*, No. C15-1412RAJ, 2016 U.S. Dist. LEXIS 121747 (W.D. Wash. Mar. 25, 2016) .............................................................................................. 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................................. 14

*Pac. Gas & Elec. Co. v. Jesse M. Lange Distrib.*, No. CIV-S-05-1180 DFL KJM, 2005 U.S. Dist. LEXIS 35128 (E.D. Cal. Dec. 21, 2005) ...................................................... 10

*Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014) ......................... 13

*Randolph v. Albertsons LLC*, No. 2:20-CV-1896 JCM (NJK), 2020 U.S. Dist. LEXIS 225764 (D. Nev. Dec. 2, 2020) ................................................................................... 6

*Ruiz v. GEICO Gen. Ins. Co.*, No. 2:24-cv-00606-APG-BNW, 2024 U.S. Dist. LEXIS 83566 (D. Nev. May 8, 2024) .................................................................................... 6

*Skipple v. Pepsico Bev. Sales, Ltd. Liab. Co.*, No. 2:24-cv-01046 WBS CKD, 2024 U.S. Dist. LEXIS 104682 (E.D. Cal. June 11, 2024) ................................................... 11

*Stokes v. Skyfineusa, Ltd. Liab. Co.*, No. 2:23-cv-00065 WBS DB, 2023 U.S. Dist. LEXIS 63256 (E.D. Cal. Apr. 11, 2023)................................................................. 13

*Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118 (9th Cir. 2013) .................................. 12, 13

*Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195 (D. Conn. 2004) ................. 6

*Walker v. CorePower Yoga, LLC*, No. 12cv4-WQH-DHB, 2013 U.S. Dist. LEXIS 74809 (S.D. Cal. May 24, 2013)................................................................................. 6

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 1

Cal. Code Civ. Proc. § 1021.5 ...................................................................................passim

Cal. Health & Safety Code § 25249.12............................................................................ 4, 16

Cal. Health & Safety Code § 25249.6................................................................................ 1, 2, 9

Cal. Lab. Code § 1194 ...................................................................................................... 13

Cal. Lab. Code § 218.5 ................................................................................................................. 13

**Regulations**

Cal. Code Regs. tit. 11, § 3203(c) ............................................................................................. 3, 4

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND—24-CV-04203-SK

## I.      INTRODUCTION

Plaintiff As You Sow ("AYS") brought this matter pursuant to The Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.6 et seq. ("Proposition 65"), and California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL") in the Superior Court of California, County of Alameda on June 7, 2024. Each of AYS's causes of action is based on the sale of mercury-containing skin creams through Defendant ETSY INC.'s ("ETSY") online marketplace. Complaint at ¶¶81-113.

AYS does not make a specific monetary demand in its pleading, but rather, it seeks monetary relief on behalf of the public pursuant to Health and Safety Code § 25249.7(b)(1) in the form of civil penalties in the amount of up to $2,500 per day for violation of Proposition 65. *Id.* at ¶114(B). In this regard, Plaintiff identifies nine (9) mercury-containing creams offered to California consumers through 14 different storefronts on ETSY's online marketplace.[1] *Id.* at ¶¶62-67. AYS also seeks reasonable attorneys' fees pursuant to California's Private Attorney General Statute (Code Civ. Proc. § 1021.5). *Id.* at ¶114(D).

On July 11, 2024, ETSY filed its Notice of Removal, asserting that the $75,000 threshold requirement for diversity jurisdiction was "apparent" because of a potential "assessment of $2,500 per day in civil penalties" for each of the 9 mercury-containing creams sold to California consumers. ECF 1 at ¶¶14-16. ETSY's assessment was made "exclusive of interest and costs," as well as of attorneys' fees. *Id.*

AYS's Motion to Remand establishes that ETSY's calculation of a likely total penalty in this case is not objectively reasonable, ETSY's calculation fails to recognize that AYS's claims may not be aggregated to calculate the amount in controversy, and ETSY has not established that Plaintiff has standing in federal court. In opposition, ETSY incorrectly argues that the $75,000 threshold requirement is evidenced by Plaintiff's pre-filing March 8, 2024, settlement communication and documents identifying settlement fees in unrelated AYS cases.

As addressed below, ETSY has failed to satisfy its burden of demonstrating non-speculative civil penalties and attorney's fees because:

---

[1] This is fewer products and storefronts than were identified in AYS's notice letter and fewer than were addressed in AYS's March 8, 2024 settlement communication. Doughty Decl. at Exh. A, ¶3 and Table 2.

(1) the March 8, 2024 settlement communication does not contain a reasonable estimate of AYS's claims for penalties and fees;

(2) the fee awards in unrelated AYS cases do not establish a reasonable estimate of AYS's claims for penalties and fees;

(3) ETSY has failed to provide information regarding the number of mercury-containing skin creams sold to California consumers, which information is necessary for any reasonable estimate of AYS's claims for Proposition 65 penalties;

(4) ETSY's assertions regarding Proposition 65 penalties is erroneously based upon sales to California consumers occurring in 2020 or later, ignoring that the one-year statute of limitations for Proposition 65 causes of action limits penalties to sales occurring on or after June 8, 2023;

(5) consideration of attorneys' fees under California's Private Attorney General Statute does not establish a basis for diversity jurisdiction;

(6) penalties and fees cannot be aggregated for representative claims because there is no common and undivided interest between AYS and the public, and

(7) ETSY has not established that Plaintiff has standing to sue on behalf of the public in federal court.

## II. LEGAL FRAMEWORK

For the purpose of evaluating the amount of controversy for this action, ETSY asks this Court to consider only Proposition 65 civil penalties and attorney's fees. [2]

### A. Proposition 65 Civil Penalties and Standing

A company violates Proposition 65 by selling consumer goods that expose individuals in California to a chemical known to the State to cause cancer or reproductive toxicity without first giving clear and reasonable warnings to such individuals. *See* Cal. Health & Saf. Code §§ 25249.6, 25249.7; *Graham v. Bausch Health Cos*., 2021 Cal. Super. LEXIS 24857, *9-10. For each such sale, Proposition 65 allows a civil penalty not to exceed $2,500.00 per day for each violation. *See* Cal. Health & Saf. Code § 25249.7. In assessing the appropriate amount of civil penalties, "the

---

[2] Defendant concedes that it is not asking the Court to consider the value of injunctive relief for purposes of determining whether removal is appropriate. ECF 23, p.14.

court <u>shall</u> consider" each of the following factors:

> (A) The nature and extent of the violation.
> (B) The number of, and severity of, the violations.
> (C) The economic effect of the penalty on the violator.
> (D) Whether the violator took good faith measures to comply with this chapter and the time these measures were taken.
> (E) The willfulness of the violator's misconduct.
> (F) The deterrent effect that the imposition of the penalty would have on both the violator and the regulated community as a whole.
> (G) Any other factor that justice may require.

Cal. Health & Saf. Code § 25249.7 (b)(2) (emphasis added). "An award of civil penalties under [Proposition 65] is a statutory punitive exaction determined on the basis of equitable principles, designed to deter misconduct and harm, not to compensate the plaintiff for actual damages sustained." *DiPirro v. Bondo Corp.*, 153 Cal. App. 4th 150, 183 (2007).

Once a Proposition 65 case has been filed, any subsequent settlement of the action must be approved by the court, and the court may approve the settlement only if the court finds the penalty amount is reasonable based on the seven factors identified in Section 25249.7(b)(2). *See* Cal. Health & Saf. Code § 25249.7(f)(4). "Where a settlement provides that certain civil penalties are assessed, but may be waived in exchange for certain conduct by the defendant, such as, for example, reformulating products to reduce or eliminate the listed chemical, the conduct must be related to the purposes of the litigation, provide environmental and public health benefits within California, and provide a clear mechanism for verification that the qualifying conditions have been satisfied." 11 CCR § 3203(c). Where civil penalties do attach, 25% percent goes to the private enforcer, and 75% goes to California's Office of Environmental Health Hazard Assessment ("OEHHA"). *See id.* at § 3203(b); Cal. Health & Safety Code § 25249.12(d).

Any person may take enforcement action; a plaintiff need not allege or prove damages. *DiPirro v. Bondo Corp.,* 153 Cal. App. 4th 150, 184 (2007). Private enforcers do not have an individual property right at stake even though they are entitled to 25% of civil penalties. *See Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 692-93 (Cal. App. 2d Dist. 2008). The Northern District of California has repeatedly remanded Proposition 65 cases to state court, where they are allowed to proceed, because of the plaintiff's lack of Article III standing in federal courts. *See Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, No. 24-cv-00537-RFL, 2024 U.S. Dist. LEXIS 101528, at *2 (N.D. Cal. May 7, 2024); *Brimer v. Amash Imps., Inc.*, No.

C11-5291 EMC, 2012 U.S. Dist. LEXIS 206730, 11 (N.D. Cal. Jan. 10, 2012); *Envtl. World Watch, Inc. v. Am. Airlines, Inc.*, No. C05-1799 TEH, 2005 U.S. Dist. LEXIS 48951, *4-12 (N.D. Cal. Aug. 3, 2005); *As You Sow v. the Sherwin-Williams Company*, C-93-3577-VRW, 1993 U.S. Dist. LEXIS 18310, *3-9 (N.D. Cal. 1993).

**B.      Private Attorney General Fees**

Plaintiff's complaint is brought in the public interest pursuant to Proposition 65 and the UCL. In the prayer for relief, Plaintiff asks for an award of reasonable attorneys' fees pursuant to California's Private Attorney General Statute, which provides that a court "may" award attorneys' fees to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest." Cal. Code Civ. Proc. § 1021.5.

**III.    STATEMENT OF RELEVANT FACTS**

Plaintiff's Proposition 65 claim is based on ETSY permitting third parties' access to its online marketplace in order to sell 9 different mercury-containing skin lightening creams. Complaint at ¶62. Proposition 65 penalties are sought based on the sale of these 9 creams to California consumers. *Id.* at ¶¶46, 52, 58, 62-66.

On March 8, 2024, Plaintiff sent ETSY a pre-case settlement communication that asked ETSY to ensure that no mercury-containing skin lightening creams would be posted on ETSY's website in the future. Doughty Decl., Exh. A, p.4. Plaintiff's settlement communication stated that AS YOU SOW would be willing to settle for violations calculated at $2,000 for each of 45 mercury-containing skin lightening creams, for a total of $90,000 in civil penalties (allocated ¼ to AS YOU SOW and 3⁄4 to OEHHA). *Id.*, Exh. A, p.4.[3] Additionally, ETSY would agree to pay $10,000 to AS YOU SOW for future monitoring and $10,000 to Mercury Policy Project to provide education to the public regarding the dangers of mercury in cosmetics. *Id.* The communication also identified attorneys' fees of $177,194.5. *Id.* at p.5.

The settlement communication addressed 45 creams, whereas the complaint in this action only addresses 9 creams. *Id.* at Table 2; Doughty Decl. at ¶3. Defendants often want to settle potential claims along with actual claims, and the settlement communication anticipated this by

---

[3] ETSY's Notice of Removal was based on an inflated assumption of $2,500 per violation. ECF 1, p.4.

including more creams than are actually being litigated in this case. *Id.* at ¶4. The settlement communication also was intended to address the need to ensure future violations did not occur. *Id.*

The purpose of the demand for civil penalties also was, in part, to prompt Defendant to provide more information in response. *Id.* at ¶5. The demand for civil penalties in an amount of $90,000 is not a reasonable basis for estimating the amount of controversy in this action because Plaintiff had not (then or now) received discovery from Defendant regarding the number of units of listed mercury-containing skin whitening creams actually sold into California. *Id.* at ¶¶6-7. Information regarding the number of units sold to consumers in California is in Defendant's possession. *Id.* at ¶7. Defendant has not provided this information despite Plaintiff asking ETSY for an informal exchange of information, including sales information, in March and April of 2024. *Id.* at ¶7.

To formulate a demand that reflects a reasonable estimate of civil penalties, Plaintiff (and this Court) need additional information on the number of units sold to individuals in California for the year prior to the June 7, 2024 complaint filed in this action. ECF 19., pp.8, 12. Defendant has that information but has elected not to provide it for the Court.

## IV.  ARGUMENT

### A.  Defendant ETSY Has Not Met Its Burden of Establishing the Amount in Controversy

Defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *Fritsch v. Swift Transp. Co. of Ariz.*, LLC, 899 F.3d 785, 793 (9th Cir. 2018). Defendant ETSY has failed to meet this burden.

#### 1.  The March 8, 2024 Settlement Communication Does Not Contain a Reasonable Estimate of AYS's Claims for Penalties and Fees, and ETSY Has Failed to Provide Information Regarding the Number of Mercury-Containing Skin Creams Sold to California Consumers

Settlement demands may be viewed to provide evidence of the sums that are in dispute "if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (emphasis added). However, a court "must exercise considerable caution in considering such evidence. A settlement offer should not necessarily be determinative of the amount in controversy. Instead, … a settlement letter is only one factor to consider in assessing the amount in controversy and [] courts must consider the context in which such a settlement demand

was made." *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 202 (D. Conn. 2004); *see also Randolph v. Albertsons LLC*, No. 2:20-CV-1896 JCM (NJK), 2020 U.S. Dist. LEXIS 225764, at \*4-5 (D. Nev. Dec. 2, 2020) ("A settlement demand is not the only reliable evidence of the amount in controversy").

Consideration of context includes recognition that a counsel's initial settlement demand, served prior to the filing of a complaint, naturally inflates the value of a case. *Id.* at 203. A settlement demand also must be viewed in the context of other evidence before the court. *See Ruiz v. GEICO Gen. Ins. Co.*, No. 2:24-cv-00606-APG-BNW, 2024 U.S. Dist. LEXIS 83566, at \*3 (D. Nev. May 8, 2024); *Randolph*, 2020 U.S. Dist. LEXIS at \*4-5; *Billingsley v. McGriff Transp., Inc.*, No. 05-4397-CV-C-NKL, 2006 U.S. Dist. LEXIS 1860, at \*7 (W.D. Mo. Jan. 10, 2006). Where such evidence does not realistically support the settlement demand, the demand will not support removal. *See id*.

Where plaintiff's counsel acknowledges that an initial demand was inflated, was not an accurate estimate, was based on inflated assumptions as a result of no initial disclosures or discovery having occurred, and/or was intended to prompt the defendant to provide more accurate calculations in response, a demand is not a reasonable estimate of the plaintiffs' claim, and thus, is not relevant evidence of the amount in controversy. *See Briest v. Knot Standard LLC*, No. CV 20-02519-CJC(PVCx), 2020 U.S. Dist. LEXIS 90047, at \*7-9 (C.D. Cal. May 20, 2020); *Canales v. Performance Food Grp., Inc.*, No. CV 17-7464 JGB, 2017 U.S. Dist. LEXIS 197363, at \*5-6 (C.D. Cal. Nov. 30, 2017); *Keodalah v. Allstate Ins. Co.*, No. C15-1412RAJ, 2016 U.S. Dist. LEXIS 121747, at \*4 (W.D. Wash. Mar. 25, 2016); *Walker v. CorePower Yoga, LLC*, No. 12cv4-WQH-DHB, 2013 U.S. Dist. LEXIS 74809, at \*22 (S.D. Cal. May 24, 2013); *Cohn*, 281 F.3d at 840. ETSY admits that a settlement demand does not establish the amount in controversy where plaintiff has disavowed a settlement amount's reasonableness or offer of contrary evidence. ECF 23, p.10.

Here, Plaintiff has stated that the demand of $90,000 for civil penalties pursuant to Proposition 65 is not a reasonable estimate of the Plaintiff's claim. The settlement communication addressed 45 creams, whereas the complaint in this action only addresses 9 creams. *Id.* at Table 2;

Doughty Decl. at ¶7.[4] Defendants often want to settle potential claims along with actual claims, and the settlement communication anticipated this by including more creams than are actually being litigated in this case. *Id.* at ¶7. The settlement communication also was intended to address the need to ensure future violations did not occur. *Id.*

The purpose of the demand for civil penalties also was, in part, to prompt Defendant to provide more information in response. *Id.* at ¶4. The demand for penalties in an amount of $90,000 is not a reasonable basis for estimating the amount of controversy in this action because Plaintiff had not (then or now) received discovery from Defendant regarding the number of units of listed mercury-containing skin whitening creams actually sold into California. *Id.* at ¶¶5-6. Information regarding the number of units sold to consumers in California is in Defendant's possession. *Id.* at ¶3. Defendant has not provided this information despite Plaintiff asking ETSY for an informal exchange of information, including sales information, in March and April of 2024. *Id.* at ¶6.

To formulate a demand that reflects a reasonable estimate of civil penalties, Plaintiff (and this Court) need additional information on the number of units sold to individuals in California for the year prior to the June 7, 2024, complaint filed in this action. ECF 19., pp.8, 12; Cal. Health & Saf. Code §§ 25249.7(b)(2), 25249.7(f)(4).[5] Defendant has that information but has elected not to provide it for the Court.

This Court also has additional evidence before it that contradict the amount addressed in the March 8, 2024, settlement communication. In Plaintiff's Motion to Remand, Plaintiff provided information collected by the Attorney General regarding penalty amounts received in other Proposition 65 case judgments, demonstrating that it is quite rare for penalty payments in the amount of $75,000 to occur in Proposition 65 cases. ECF 18, p.8. Danielle Fugere, President and Chief Counsel for AYS also provided a declaration noting that she is not aware of a Proposition 65 judgement or settlement in which the maximum penalty award of $2,500 per unit sold without a warning was levied against a violator. ECF 18-2, p.2. And, the total median penalty for AYS's

---

[4] The settlement demand assessed penalties at $2,000 per cream. Doughty Decl., Exh. A. Applying this same approach to the 9 creams in AYS's complaint, <u>penalties would amount to no more than $18,000</u>.

[5] This information is necessary because no violation under Proposition 65 occurs where a product is listed online but is never sold to anyone in California, therefore causing no exposure. *See* Cal. Health & Saf. Code §§ 25249.6, 25249.7; *Graham*, 2021 Cal. Super. LEXIS 24857, *9-10.

1   consumer Proposition 65 cases is $8,580; the median in lieu payment is $8,500; the average penalty

2   is $10,809; the average in lieu payment is $12,080. *Id.*

3   Citing *Arias v. Residence Inn*, 936 F.3d 920 (9th Cir. 2019), ETSY argues that Plaintiff's

4   evidence goes toward the likelihood of recovery rather than the amount in controversy. Plaintiff

5   disagrees. In *Arias*, the Ninth Circuit noted that the amount in controversy is an estimate of the total

6   amount in dispute, not an assessment of defendant's liability. *See Arias*, 936 F.3d at 927. "An

7   assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely

8   because it is equally possible that damages might be" less than $75,000. *Id.* "In that sense, the

9   amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.*

10  However, this does not mean that a removing defendant can satisfy its burden based upon

11  speculation; to the extent that a defendant's showing on the amount in controversy relies on

12  assumptions, the assumptions must be reasonable, and they must have some support. *Id.*; *see also*

    *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-99 (9th Cir. 2015).

13  Here, Defendant ETSY has failed to meet its burden of establishing by a preponderance of

14  the evidence that the amount in controversy exceeds the $75,000 threshold requirement for diversity

15  jurisdiction. The settlement communication does not provide a reasonable basis upon which to

16  determine the amount in controversy, Defendant has failed to refute the evidence presented in

17  Plaintiff's Motion to Remand, and Defendant has failed to provide necessary information regarding

18  units of cream sold to California consumers. Because Defendant has failed to provide any

19  information by which to reasonably calculate civil penalties, despite having in its sole possession

20  the key factor—the number of sales of products into California, it has failed to meet its burden on

    removal. *See Fritsch*, 899 F.3d at 793.

21
22  **2.      Fee Awards in Unrelated AYS Cases Do Not Establish a Basis for
            Determining a Reasonable Estimate of the Amount in Controversy**

23  Defendant has the burden of showing that attorneys' fees exceed the jurisdictional threshold

24  by a preponderance of the evidence, with the requirement that "the defendant [] make this showing

25  with summary-judgment-type evidence." *Fritsch*, 889 F.3d at 795. A defendant may submit

26  affidavits or declarations. *See Ibarra*, 775 F.3d at 1197. In meeting its burden, a defendant must do

27  more than simply point to fee awards in other cases involving the same cause of action. *See Carter*

28  *v. Transdev Servs. Inc.*, No. 2:24cv4128-FLA (RAOx), 2024 U.S. Dist. LEXIS 143987, at *7 (C.D.

8

1  Cal. Aug. 12, 2024); *Artiga v. Fed. Express Corp.*, No. C 03-02326 SBA, 2004 U.S. Dist. LEXIS

2  19997, at *7 (N.D. Cal. Sep. 27, 2004). A defendant must, at a minimum, identify how those other

3  cases are factually similar to the at-issue case. *See Carter*, 2024 U.S. Dist. LEXIS at *7.

4        Here, Defendant states that attorneys' fees in the amount of $331,125 should be considered

5  for purposes of calculating the amount in controversy. ECF 34, p.14. This conclusion is based on

6  information related to out-of-court settlements and judgments involving Plaintiff AYS in

7  Proposition 65 cases, which Defendant obtained from the California Attorney General's website.

   ECF 24, Exhs. 3-6.[6]

8        The first "evidence" cited by Defendant consists of two one-line case summaries. *Id.,* pp. 29,

9  31. In 2018, three settlements involving AYS identifying $999,500 for attorneys' fees and costs. *Id.*

10 at p. 29. In 2019, one settlement involving AYS identifies $325,000 for attorneys' fees and costs.

11 *Id.* at p.31.  Defendant provides no other information regarding these cases. No information is

12 provided regarding whether these two cases were in anyway factually similar to the current case,

13 and as such, Defendant has failed to meet its burden. *See Carter*, 2024 U.S. Dist. LEXIS at *7.

14       Defendant also cites to a consent judgment and a proposed consent judgment involving

15 Plaintiff AYS. ECF 34, Exhs. 5-6. The consent judgment is dated 2023 and provides AYS will

16 receive $900,000 for "attorneys' fees, investigative costs, and other reasonable litigation costs and

   expenses." ECF 34, p.57. The proposed consent judgment is dated 2018 and provides AYS will

17 receive $325,000 for "attorneys' fees, investigative costs, and other reasonable litigation costs and

18 expenses." Again, Defendant ETSY makes no attempt to show why this information is factually

19 similar or relevant to an attorneys' fee calculation in the current case.

20       Even if the Court could discern what actual percentage of these amounts is associated with

21 fees versus costs (which it cannot), the fact that AYS obtained these past settlements does not mean

22 that such amounts are indicative of what AYS might obtain in this case. For example, there is no

23 evidence that the number of defendants, settlement posture, motions practice, type of product,

24 chemical at issue, number and severity of violations, or nature and extent of the violation are

25 similar. Indeed, if all that is necessary for purposes of calculating attorneys' fees is to identify

26

27 _____

   [6] Plaintiff objects to Exhibits 3, 4, and 6 of Defendant's Request for Judicial Notice as the amount
28 for attorney's fees and costs in these documents are hearsay that do not fall within any exception.

attorneys' fees and costs amounts involving AYS in the past, then ETSY should have noted that the Attorney General website also reports the following:

- In 2023, one settlement involving AYS identifies $80,000 for attorneys' fees and costs;

- In 2022, one judgment involving AYS identifies $40,100 for attorneys' fees and costs, and one settlement involving AYS identifies $3,000 for attorneys' fees and costs;

- In 2021, one judgment involving AYS identifies $28,000 for attorneys' fees and costs;

- In 2020, one judgment involving AYS identifies $27,000 for attorneys' fees and costs.

Fugere Decl., Exhs. B-F.

Defendant ETSY has failed to meet its burden, and any value assigned to potential fees under California's Private Attorney General statute remain speculative. *Fritsch*, 889 F.3d at 795.

### 3. ETSY's Assertions Regarding Proposition 65 Penalties Are Erroneously Based Upon Sales to California Consumers Occurring in 2020 or Later, Ignoring That the One-Year Statute of Limitations for Proposition 65 Causes of Action Limits Penalties to Sales Occurring on or After June 8, 2023

Civil penalties may only be assessed for violations occurring as of June 7, 2023. This is because the statute of limitations for penalties under Proposition 65 is one year. *See Pac. Gas & Elec. Co. v. Jesse M. Lange Distrib.*, No. CIV-S-05-1180 DFL KJM, 2005 U.S. Dist. LEXIS 35128, at *15-16 (E.D. Cal. Dec. 21, 2005). In *Pac. Gas & Elec. Co.*, the Court addressed a case that had UCL and Proposition 65 claims, noting that the statute of limitations for UCL claims is four years, and the statute of limitations for Proposition 65 claims is one year. *Id.* The plaintiff argued that the statute of limitations under the UCL should apply to its Proposition 65 claim for civil penalties. *See id.* at *15. The Court disagreed, stating that the "two causes of action do not become one. … PG&E cannot apply the four-year statute of limitations available under the UCL to its Proposition 65 claim for civil penalties." *Id.* at *16.

The complaint in this action was filed on June 7, 2024, so civil penalties only may accrue for violations occurring on or after June 8, 2023.[7] To the extent that ETSY's assertion of the amount in controversy relies on an improper period of potential violations from which to calculate civil

---

[7] In AYS's complaint, Plaintiff states that "[b]eginning at least in 2020 and continuing to present, Defendant ETSY, INC. has permitted third parties access to its online marketplace in order to sell" mercury-containing PRODUCTS. Complaint at ¶ 62. The 2020 data is relevant in relation to injunctive relief; however, it is irrelevant to Plaintiff's Proposition 65 claim for civil penalties.

penalties (*see* ECF 1, p.4), it is implausible, and therefore, ETSY has not met its burden on removal. *Ibarra*, 775 F.3d at 1197-99.

### 4. Consideration of Attorneys' Fees Under California's Private Attorney General Statute Does Not Establish a Basis for Diversity Jurisdiction

Defendant's argument regarding attorneys' fees relies upon *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018). In that case, the plaintiff filed a wage-and-hour class action and sought attorneys' fees pursuant to Sections 218.5 and 1194 of California's Labor Code. *Fritsch*, 889 F.3d at 790. Section 218.5 states that a court "shall" award attorneys' fees to a prevailing party; Section 1194 states that the prevailing party is "entitled to recover" reasonable attorneys' fees. Cal. Lab. Code §§ 218.5, 1194. The Ninth Circuit concluded that both actual and future attorneys' fees could be considered for purposes of calculating the amount in controversy for diversity jurisdiction, holding that "if the law <u>entitles</u> the plaintiff to future attorneys' fees if the action succeeds," then those fees are to be considered for purposes of calculating the amount in controversy. *Fritsch*, 899 F.3d at 794-96 (9th Cir. 2018) (emphasis added).

California district courts are split on how to address fees where the underlying statute does not entitle plaintiff to fees, but rather, gives the court discretion to award fees. *See Skipple v. Pepsico Bev. Sales, Ltd. Liab. Co*., No. 2:24-cv-01046 WBS CKD, 2024 U.S. Dist. LEXIS 104682, at *4 (E.D. Cal. June 11, 2024) (consideration of discretionary fees allowed); *Byars v. Hot Topic, Inc*., 656 F. Supp. 3d 1051, 1063 (C.D. Cal. 2023) (consideration of discretionary fees not allowed); *Benton v. CVS Pharmacy, Inc*., 604 F. Supp. 3d 889, 894 (N.D. Cal. 2022) (consideration of discretionary fees not allowed); *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 U.S. Dist. LEXIS 118882, at *13-15 (N.D. Cal. Nov. 30, 2009) (consideration of discretionary fees not allowed). But, both the Central and Northern Districts of California have ruled specifically on consideration of California's Private Attorney General Statute, California Code of Civil Procedure § 1021.5, ruling that attorneys' fees under this statute should not be used for addressing the amount in controversy. *See Byars*, 656 F. Supp. 3d at 1063 (attorneys' fees under California Code of Civil Procedure § 1021.5 cannot be used for determining the amount in controversy because *Fritsch* only applies where a statute mandates an award of fees); *Benton*, 604 F. Supp. 3d at 894 (attorneys' fees under California Code of Civil Procedure not considered because such fees are speculative); *J. Marymount, Inc.*, 2009 U.S. Dist. LEXIS at *13-15 (refusing to

1    consider attorneys' fees under California Code of Civil Procedure § 1021.5 because of "high

2    burden" that plaintiff has to meet in seeking recovery of fees).

3            Here, Plaintiff's only right to fees is under the Private Attorney General Statute. Plaintiff has

4    no entitlement to an amount of fees actually incurred to date or which might be incurred in the

5    future. As such, no attorneys' fees should be considered for calculating the amount in controversy.

6    *See Byars*, 656 F. Supp. 3d at 1063.

7            **5.      Penalties and Fees Cannot Be Aggregated for Representative Claims
                        Because There is No Common and Undivided Interest Between AYS and
8                       the Public**

9            Even if ETSY had provided sufficient evidence by which to calculate non-speculative

10   penalties and attorneys' fees (and it has not), the value of such penalties and fees must be prorated

11   for purposes of calculating the amount in controversy.

12           Both Plaintiff's Proposition 65 claims and UCL claim are brought as a private enforcer

13   of public interests. Complaint at ¶¶9, 90, 97, 113. Both the Ninth Circuit and Northern District of

14   California have been clear that damages and fees cannot be aggregated for representative claims

15   unless there is a common and undivided interest between the plaintiff and those whom plaintiff

16   represents. *See Urbino v. Orkin Servs. of Cal*., 726 F.3d 1118, 1122 (9th Cir. 2013); *Doe v. Aetna,

17   Inc*., No. 17-cv-07167-EMC, 2018 U.S. Dist. LEXIS 57771, at *23 (N.D. Cal. Apr. 4, 2018). "Only

18   where the claims can strictly 'be asserted by pluralistic entities as such,' or, stated differently, the

19   defendant 'owes an obligation to the group of plaintiffs as a group and not to the individuals

20   severally,' will a common and undivided interest exist." *Urbino*, 726 F.3d at 1122 (quoting *Gibson

21   v. Chrysler Corp*., 261 F.3d 927, 944 (9th Cir. 2001)).  The fact that claims may have "questions of

22   fact and law common to the group" does not mean they have a common and undivided interest. *Id.*

23           Here, neither the UCL nor Proposition 65 claims involve common and undivided interests

24   between AS YOU SOW and the public represented by these claims. Each member of the public

25   could bring a host of claims for their own injury (e.g., negligence, interference with business

26   relations, product liability, fraud). *See Urbino*, 726 F.3d at 1122. Therefore, penalties and fees must

27   be prorated. *See id.*

28           Further, specific to penalties, Proposition 65 private enforcers retain only 25% of any

     penalty; the remaining 75% is paid to OEHHA. *See* 11 CCR § 3203(b); Cal. Health & Safety Code

§ 25249.12(d). OEHHA uses penalty monies that it receives to implement and administer the Safe Drinking Water and Toxic Enforcement Fund in California. *Id.* As such, at least 75% of any reasonably estimated penalty would not be aggregated for purposes of calculating the amount in controversy for diversity jurisdiction.

This conclusion is evident and supported by the Ninth Circuit. In *Urbino*, the Court examined a case involving California's Private Attorney General Act of 2004 ("PAGA"). *See Urbino*, 726 F.3d at 1121. Under this Act, an aggrieved employee may commence a civil action on behalf of himself and other employees against the employer. *See id.* "If the representative plaintiff prevails, the aggrieved employees are statutorily entitled to 25% of the civil penalties recovered while the [Labor and Workforce Development Agency] is entitled to 75%." *Id.* The Court stated that these penalties could not be aggregated for purposes of calculating the amount in controversy. *See id.* at 1122.

As regards attorneys' fees, Defendant argues that prorating is not proper because all attorneys' fees are attributable to Plaintiff. ECF 23, p.14. In support of this argument, Defendant cites to *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1049 (N.D. Cal. 2014) – a case which does not support ETSY's position. In that case, the plaintiff's case contained allegations based upon violation of California's Private Attorney General Act ("PAGA") and the UCL. *See id.* at 1035. Defendant asserted that plaintiff's attorneys' fees would exceed $39,500, and the plaintiff responded that this amount should be prorated. *See id.* at 1049. The Court concluded that fees should be prorated under PAGA's provisions. *See id.*

As noted above, the Northern District provides that discretionary fees should not be considered. *Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889, 894 (N.D. Cal. 2022) (internal citations omitted); *see also J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 U.S. Dist. LEXIS 118882, (N.D. Cal. Nov. 30, 2009). In the Eastern District, which allows consideration of fees where the statute allows the Court discretion to award, fees under California's Private Attorney General Statute must be prorated. *Stokes v. Skyfineusa, Ltd. Liab. Co.*, No. 2:23-cv-00065 WBS DB, 2023 U.S. Dist. LEXIS 63256, at *6 (E.D. Cal. Apr. 11, 2023). Here, Plaintiff's only ability to pursue attorneys' fees is based on Section 1021.5.

1
2

**B.     ETSY Has Not Established That Plaintiff Has Standing to Sue on Behalf of the Public in Federal Court**

3
4

The party invoking federal jurisdiction must prove standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 S. Ct. 2130 (1992). Plaintiff has met California's standing requirements for

5

Proposition 65 and the UCL; however, AYS noted in its Motion to Remand that Defendant has not

6

shown Plaintiff has met Article III's standing requirements for federal court. In opposition, Defendant has failed to demonstrate that standing before this Court exists.

7
8

Numerous courts in the Northern District have concluded that Article III standing does not exist for Proposition 65 claims because they are not based on an injury-in-fact. *See Keep Am. Safe*

9

*& Beautiful*, 2024 U.S. Dist. LEXIS 101528, at *2; *Brimer*, 2012 U.S. Dist. LEXIS 206730, *11;

10

*Envtl. World Watch, Inc.*, 2005 U.S. Dist. LEXIS 48951, *4-12; *As You Sow*, 1993 U.S. Dist.

11

LEXIS 18310, *3-9.

12

This year, the Supreme Court has provided additional guidance regarding representative

13

claims. *See FDA v. All. for Hippocratic Med*., 602 U.S. 367 (2024). In *FDA*, the Court stated that

14

where a plaintiff's case is based upon harm to someone else, Article III "standing is not precluded,

15

but it is ordinarily substantially more difficult to establish." *FDA v. All. for Hippocratic Med*., 602

16

U.S. 367, 382, 144 S. Ct. 1540, 1556 (2024). In *FDA*, plaintiff doctors and medical organizations

17

challenged regulation of mifepristone, and the Supreme Court held they lacked standing because

18

they did use, sell, prescribe, manufacture, sell, or advertise mifepristone or sponsor a competing

19

drug, and as such, suffered no direct monetary or physical injuries. *Id.* at 385-86. Plaintiffs argued,

20

however, that they had organizational standing and had incurred costs "to conduct their own studies

21

on mifepristone so that the associations can better inform their members and the public about

22

mifepristone**'s** risks." *Id.* at 394. They had been forced to expend "considerable time, energy, and

23

resources." *Id.* The Supreme Court held this injury was insufficient because, at most, it

24

demonstrated that the organizations' mission had only been made more difficult by the

25

government's regulation of mifepristone. *See id.* For purposes of organizational standing, the Court

26

noted that an informational injury was necessary, referencing *Havens Realty Corp. v. Coleman*, 455

27

U.S. 363 (1982). *See id.* at 395.

28

> The relevant question in *Havens* was whether a housing counseling organization, HOME, had standing to bring a claim under the Fair Housing Act against Havens Realty, which owned and operated apartment complexes.

1

2

3

4

5

6
> Havens had provided HOME's black employees false information about apartment availability—a practice known as racial steering. Critically, HOME not only was an issue-advocacy organization, but also operated a housing counseling service. And when Havens gave HOME's employees false information about apartment availability, HOME sued Havens because Havens "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers." In other words, Havens's actions directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer.

7
*Id.*

8

9

10

11

12

13

14
Here, AYS has not used the mercury-containing skin lightening creams at issue in this case. Plaintiff's injury is the result of having to divert economic resources for this litigation. Complaint at ¶¶10-11, 34-36. Plaintiff has not suffered a direct monetary, physical, or informational injury. Neither Plaintiff nor its members have been "exposed" to mercury through use of the products at issue. This type of organization standing is sufficient under California law, but in light of the Supreme Court's recent decision in *FDA*, it may fail to meet the requirements of Article III, and Defendant has not sufficiently addressed this case for purposes of establishing Plaintiff's standing.

15
## CONCLUSION

16

17

18

19
For the foregoing reasons, Plaintiff respectfully requests that this case be remanded. Defendant has failed to meet its burden, and no evidence before this Court establishes any non-speculative basis upon which to conclude damages and fees exceed the threshold requirement of $75,000.

20

21
Dated: September 17, 2024                    */s/ Rae Lovko*

22

23

24

25

26

27
RACHEL S. DOUGHTY (SBN 255904)
rdoughty@greenfirelaw.com
J. RAE LOVKO (SBN 208855)
rlovko@greenfirelaw.com
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone/Fax: (510) 900-9502
Attorneys for Plaintiff

28

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on September 16, 2024, from Rae Lovko for the filing of this declaration.

/s/ *Rachel S. Doughty*

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND—24-CV-04203-SK