1  NICHOLAS J. HOFFMAN (SBN 284472)
     nhoffman@mcguirewoods.com
2  ARIA HANGVAL (SBN 336933)
     ahangval@mcguirewoods.com
3  McGUIREWOODS LLP
4  Wells Fargo Center – South Tower
   355 S. Grand Avenue, Suite 4200
5  Los Angeles, California 90071-3103
   Telephone: (213) 457-9840
6  Facsimile: (213) 457-9877

7
   SAMUEL L. TARRY, JR. (*pro hac vice application forthcoming*)
8    starry@mcguirewoods.com
   McGUIREWOODS LLP
9  1750 Tysons Boulevard Suite 1800
   Tysons, Virginia 22102-4215
10 Telephone: (703) 712-5425
   Facsimile: (703) 712-5185
11

12 Attorneys for Defendant
   ETSY, INC.
13

14                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
15

16 AS YOU SOW, a 501(c)(3) non-profit          NO. 3:24-cv-04203-MMC
   corporation,
17                                             **DEFENDANT ETSY, INC.'S REPLY**
                                               **IN SUPPORT OF ITS MOTION TO**
18            Plaintiff,                        **COMPEL ARBITRATION OR, IN**
                                               **THE ALTERNATIVE, TRANSFER**
19                                             **VENUE**
        v.
20                                             **Judge:** Hon. Maxine M. Chesney
                                               **Date:** October 11, 2024
21 ETSY, INC. and DOES 1-20, inclusive,        **Time:** 9:00 a.m.
                                               **Location:** Courtroom 7
22            Defendants.

23

24

25

26

27

28
   _____
   DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
                                             Case No.: 24-cv-04203-MMC

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 1

        A.      Plaintiff's Agent, Acting at Plaintiff's Direction, Agreed to Arbitrate .................... 1

        B.      Etsy's Terms of Use Cover This Dispute ................................................. 6

        C.      Plaintiff's Claims Can Be Compelled to Arbitration Pursuant to Etsy's
                Terms of Use ............................................................................... 10

        D.      Plaintiff's Claims Should Be Transferred to New York If Not Compelled to
                Arbitration .................................................................................. 14

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Online, Inc. v. Superior Ct.*,
  90 Cal. App. 4th 1 (2001).................................................................................................. 15

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................................... 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)............................................................................................................ 7

*Atl. Marine Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ........................................................................................................... 14

*Barela v. Brock USA, LLC*,
  No. SACV-15-00779, 2015 WL 12683955 (C.D. Cal. Aug. 10, 2015)................................... 7

*Blanton v. Womancare, Inc.*,
  38 Cal. 3d 396 (1985).......................................................................................................... 5

*Charles v. Portfolio Recovery Assocs., LLC*,
  No. 22-35613, 2024 WL 1672350 (9th Cir. Apr. 18, 2024) .................................................... 7

*Clifford v. Quest Software, Inc.*,
  38 Cal. App. 5th 745 (2019)................................................................................................ 13

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995)................................................................................................. 6, 7

*Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*,
  522 F.2d 369 (2d Cir. 1975)................................................................................................. 2

*Curthoys v. Diamond Resorts Int'l, Inc.*,
  No. 220-cv-00760, 2021 WL 1375247 (E.D. Cal. Aug. 12, 2021)........................................... 8

*East Bay Women's Health, Inc. v. gloStream, Inc.*,
  No. C 14-00712 WHA, 2014 WL 1618382 (N.D. Cal. Apr. 21, 2014) ........................... 14, 15

*Eiess v. USAA Fed. Sav. Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................................................. 7

*Hofer v. Emley*,
  No. 19-cv-02205-JSC, 2019 WL 457389 (N.D. Cal. Sept. 20, 2019) ................................... 13

*Independent Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
  No. 18-cv-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ............................. 3, 4, 6

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ................................................................................ 14

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   581 U.S. 246 (2017) ..................................................................................... 2, 3, 4

*Knapke v. PeopleConnect, Inc.*,
   38 F.4th 824 (9th Cir. 2022) .............................................................................. 4, 5

*Lee v. Amazon.com, Inc.*,
   76 Cal. App. 5th 200 (2022) ................................................................................. 8

*Ramirez v. Lab. Ready, Inc.*,
   No. 836186-2, 2002 WL 1997037 (Cal. Super. Ct. July 12, 2002) ....................... 11

*Shams v. Revature LLC*,
   621 F. Supp. 3d 1054 (N.D. Cal. 2022) ............................................................... 12

*SICIS N. Am., Inc. v. Sadie's Hideaway, LLC*,
   383 So.3d 1052 (Fla. 1st DCA 2023) .................................................................... 4

*Stevens v. Union Tr. Co.*,
   11 N.Y.S. 268 (Gen. Term 1980) ........................................................................ 11

*Stout v. Grubhub Inc.*,
   No. 21-cv-04545, 2021 WL 5758889 (N.D. Cal. Dec. 3, 2021) ........................... 13

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
   83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................... 14

*Tamsco Props., LLC v. Langemeier*,
   597 F. App'x 428 (9th Cir. 2015) .......................................................................... 2

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022) ........................................................................................... 12

*Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*,
   940 F.2d 513 (9th Cir. 1991) ................................................................................. 7

**Statutes**

9 U.S.C. § 4 ................................................................................................................ 5

28 U.S.C. § 1404(a) ................................................................................................. 14

Cal. Bus. & Prof. Code § 17203 ............................................................................... 11

Cal. Civ. Code § 2319 ................................................................................................ 2

Cal. Health & Safety Code § 25249.7 ................................................................ 10, 14

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
Case No.: 24-cv-04203-MMC

**Other Authorities**

Restatement (Third) of Agency § 2.02 ............................................................................. 2

Restatement (Third) of Agency § 6.03 ............................................................................. 2

Shafton, *California's Uncommon Common Law Class Action Litigation*
    Loyola L.A. L. Rev. 783, 788 (2008) ...................................................................... 11

1  **I.      INTRODUCTION**

2       Plaintiff's Opposition confirms that Plaintiff is required to arbitrate its claims against Etsy.[1]

3  Plaintiff concedes that its counsel, acting as its agent and at its direction, purchased products from

4  Etsy's website.  Plaintiff further concedes that, while doing so, its counsel agreed to arbitrate with

5  Etsy no fewer than *ten* times.  That agreement covers all claims arising from or relating to Etsy's

6  website, the products sold or listed there, or any actions taken or statements made by Etsy or its

7  users.  Plaintiff's claims fall within that broad provision.  As a result, the FAA mandates arbitration

8  of Plaintiff's claims.

9       Plaintiff makes a series of futile arguments attempting to avoid this straightforward result.

10  These arguments ignore Supreme Court and Ninth Circuit precedent, and are directly contrary to

11  decisions by other Judges in this District in closely analogous cases.  None of Plaintiff's arguments

12  alters the clear-cut application of arbitration and agency principles to these undisputed facts.

13  Accordingly, Etsy's Motion should be granted.

14  **II.     ARGUMENT**

15       **A.      Plaintiff's Agent, Acting at Plaintiff's Direction, Agreed to Arbitrate**

16       In its Complaint, Plaintiff alleged that it "directed and paid for" Greenfire Law to purchase

17  products from Etsy's website.  (Compl. ⁋ 11.)  Now, in its Opposition, Plaintiff "acknowledges that

18  . . . a student clerk and office manager at Greenfire purchased skin whitening creams from Etsy's

19  website."  (Opp. at 4 (citing Lovko Decl. ⁋ 4)).  Plaintiff does not dispute that, while carrying out

20  its direction, these Greenfire Law employees signed up for Etsy accounts and agreed to Etsy's Terms

21  of Use, including a binding arbitration provision.  As a result, Greenfire Law was acting as Plaintiff's

22  agent and within the scope of its authority when signing up for Etsy.

23       Unable to dispute these facts, Plaintiff's counsel now argues that they exceeded the scope of

24  the authority their own client granted them.  Plaintiff argues it "did not authorize its counsel to enter

25  into an agreement regarding arbitration, choice of forum, or choice of law," or otherwise to agree to

26

27  _____

[1] Capitalized terms and acronyms have the same meanings as in Etsy's Motion to Compel

28  Arbitration, or in the Alternative, Transfer Venue ("Mot. to Compel") (Dkt. 6).

Etsy's Terms of Use.  (*See id.* at 8-9.)  But settled principles of arbitration and agency law confirm that no such specific authorization was needed for Greenfire Law to bind Plaintiff.

The Supreme Court has explained that the FAA "requires courts to place arbitration agreements on equal footing with all other contracts."  *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017).  Accordingly, ordinary principles of contract formation determine whether a party has entered into an arbitration agreement, and blackletter agency law determines whether an agent can bind a principal in doing so.  Plaintiff does not dispute that its agent entered into a contract by registering for and purchasing products from Etsy and agreed to Etsy's Terms of Use no fewer than *ten* times.  Plaintiff instead argues that Greenfire Law lacked the authority to bind Plaintiff to an arbitration or venue agreement.  Plaintiff is wrong.

Allegations in the Complaint itself show that Greenfire Law had full authority to bind Plaintiff to the Terms of Use, including the arbitration clause.  When a principal grants an agent authority to carry out its direction, the agent also has authority to carry out all tasks necessary to doing so—including entering into an agreement.  *See* Cal. Civ. Code § 2319 ("An agent has authority [] to do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency[.]"); *Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 376 (2d Cir. 1975) ("As to authorization to contract, it may be inferred from authority to conduct a transaction if the making of the contract is incidental thereto, usually accompanies such a transaction or is reasonably necessary to accomplish it."); *accord* Restatement (Third) of Agency § 2.02 ("An agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives[.]").  And when an agent acting within the scope of its authority agrees to arbitrate, the principal is so bound.  *See* Restatement (Third) of Agency § 6.03 ("When an agent acting with actual authority makes a contract on behalf of an undisclosed principal, . . . the principal is a party to the contract[.]"); *Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015) ("[W]hen a nonsignatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory.").

Plaintiff "directed" Greenfire Law to purchase products from Etsy.  (Compl. ¶ 10.)  It concedes that "two employees of Greenfire created ETSY accounts and purchased skin whitening creams through Defendant's website" pursuant to that direction.  (Opp. at 4.)  As Etsy explained in its moving papers, to make those purchases, Greenfire Law had to agree to arbitrate with Etsy (with the right to subsequently opt out, which it did not do).  (*See* Dkt. 6 at 4-8.)  Because Greenfire Law had the "authority to conduct" these transactions pursuant to Plaintiff's direction, it also had "authorization to contract" with Etsy given that entering into a contract to arbitrate was "necessary to accomplish" these purchases.  *Columbia Broadcasting Sys.*, 522 F.2d at 376.  Greenfire Law thus acted within the scope of its authority when it agreed to Etsy's Terms of Use.  *See Kindred*, 581 U.S. at 255-56 (explaining "the FAA's command to place [arbitration] agreements on equal footing with all other contracts," such that states cannot impose special rules on agents' ability to enter into such agreements on behalf of principals).

Judge Seeborg's decision in *Independent Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-cv-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is directly on point.  There, the plaintiffs alleged Uber provided inferior and discriminatory service to wheelchair users.  *See id.* at *1.  In their complaint, they alleged that they had "tested a number of" locations to determine the average wait time for a car, but also claimed "never to have downloaded the Uber App[.]"  *Id.*  Plaintiffs then "conceded that the person responsible for testing the Uber App was in fact Plaintiffs' agent.  This agent was a paralegal" at their counsel's firm who "agreed to Uber's Terms of Use" in order to use it.  *Id.* at *2.

Uber moved to compel arbitration.  In granting the motion, Judge Seeborg explained that "a plaintiff who dispatches an agent to deal with a defendant on his or her behalf is bound by an arbitration agreement entered into by the agent in the course of those dealings."  *Id.* at *3.  Moreover, "[w]here a person indisputably acted on a plaintiff's behalf, that person must be considered the plaintiff's agent."  *Id.*  The plaintiffs argued that "the arbitration clause does not apply here because the agent's conduct was not the predicate for Plaintiffs' claims."  *Id.*  But the court rejected this argument, because the "test for determining whether Plaintiffs are bound by the arbitration agreement turns on whether the agent was acting within the scope of the agency when he or she

agreed to be bound."  *Id.*  Because the plaintiffs conceded the tester was acting on their behalf, she was necessarily acting within the scope of her authority—and bound the plaintiffs to arbitrate.  *See id.* at *4.

The same conclusion applies here.  Plaintiff "directed" Greenfire Law to purchase products (Compl. ¶ 11) and concedes that employees of its counsel "created ETSY accounts and purchased" products pursuant to that direction (Opp. at 4).  Plaintiff is thus "bound by an arbitration agreement entered into by the agent" while carrying out that direction.  *Id.* at *3; *see also Kindred*, 581 U.S. at 256 (holding court must enforce arbitration agreement entered into by agent in course of carrying out their duties); *SICIS N. Am., Inc. v. Sadie's Hideaway, LLC*, 383 So.3d 1052, 1056-57 (Fla. 1st DCA 2023) (holding, under FAA, "it was unnecessary for [the principal] to expressly authorize [the agent] to enter into the arbitration agreement . . . [The principal] is bound by that agreement by virtue of its agency relationship[.]").

The Ninth Circuit's decision in *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), confirms that an agent, acting within the scope of their authority, does not need special permission to enter an arbitration agreement.  There, a plaintiff sued a website for using her likeness.  *Knapke*, 38 F.4th at 828.  Prior to her suit, her attorney created an account on the website and, as a result, agreed to arbitrate.  *Id.*  The defendant moved to compel arbitration.  *Id.*  In opposing the motion, the plaintiff argued "her counsel did not discuss creating a Classmates.com account with her[.]"  *Id.* at 830.  The Ninth Circuit noted that an agent has authority "to perform the usual and necessary acts associated with the authorized services," which "can include agreeing to contracts."  *Id.* at 834. While the plaintiff argued that her counsel "did not intend to agree to the Terms of Service on her behalf," the court explained that the relevant question was "whether [counsel] acted on Knapke's behalf in agreeing to the Classmates.com Terms of Service, not, as Knapke argued, whether [counsel] intended to bind her."  *Id.* at 836.  While *Knapke* was decided under Washington law, the result is the same under California law.  *See Indep. Living*, 2019 WL 3430656, at *3.  And while the Ninth Circuit remanded for discovery into whether counsel was acting as plaintiff's agent when he registered for the website, *see Knapke*, 38 F.4th. at 834, that question is not disputed here:  Plaintiff

1   alleges it "directed" Greenfire Law to purchase products and concedes that its agent agreed to

2   arbitrate with Etsy in making the relevant purchases.  (Compl. ⁋ 11; *see* Opp. at 4.) [2]

3        Plaintiff principally cites *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (1985), in arguing

4   otherwise.  But the facts in *Blanton* were sharply different.  There, the plaintiff filed a medical

5   malpractice suit.  She told her attorney she "would only consent to arbitration if her right to a trial

6   de novo were preserved."  *Id.* at 399.  Nevertheless, on the eve of trial, he stipulated to binding

7   arbitration without her knowledge or consent.  *See id.* at 400.  "Plaintiff did not learn of this

8   stipulation . . . for nearly three months.  When apprised that her attorney had submitted her dispute

9   to binding arbitration, she immediately objected, and fired Harris."  *Id.*  Here, by contrast, Plaintiff

10  gave express authority for Greenfire Law to purchase products from Etsy (and has not fired its

11  counsel since learning they consented to arbitration on its behalf). [3]  While "an attorney, merely by

12  virtue of his employment as such, has no apparent authority to bind his client to an agreement for

13  arbitration," *id.* at 407, where the principal *directs* the agent to act and the agent binds the principal

14  in the course of doing so, it has authority.  *Blanton* does not require special permission for an agent

15  to enter into an arbitration agreement if they are otherwise acting within their authority—and,

16  moreover, such a rule would be preempted by the FAA.  *See AT&T Mobility LLC v. Concepcion*,

17  _____

18  [2] If the Court determines this issue cannot be decided on the basis of Plaintiff's pleading, the proper
    course is to order discovery and, if necessary, a hearing on this issue.  *See* 9 U.S.C. § 4 ("If the

19  making of an arbitration agreement or the failure, neglect, or refusal to perform the same be in issue,
    the court shall proceed summarily to the trial thereof.").  Etsy notes that, should discovery be

20  necessary, Plaintiff has placed its communications with its counsel directly at issue, including by
    submitting a declaration from counsel, *see* Dkt. 19-1.  *See Knapke*, 38 F.4th at 834 ("A party waives

21  the privilege by placing confidential communications at issue[.]" (quotation marks and citation

22  omitted)).

23  [3] As Etsy explained in its moving brief, Plaintiff has also ratified its agent's conduct.  (Dkt. 6 at 15
    n.14).  Plaintiff argues it did not because "AYS was unaware of the Etsy Terms of Use."  (Opp. at

24  10.)  While the timing of when Plaintiff learned of its agent's agreement to arbitrate is a factual
    issue, there is no dispute that Plaintiff knows of it *now*.  Yet Plaintiff continues to retain the same

25  counsel.  *Cf. Blanton*, 28 Cal. 3d at 400; *see also Nat'l Sales Network v. Moseley*, N.B317103, 2023
    WL 3713890, at *10 (Cal. Ct. App. May 30, 2023) ("[T]he court in *Blanton* emphasized the equally

26  important agency principle of ratification through which 'unauthorized acts of an attorney may be
    binding upon . . . [a] client.'  The court noted that ratification did not apply because the client

27  immediately fired her prior attorney upon learning of the arbitration agreement[.]" (quoting *Blanton*,
    28 Cal. at 408)).

28

563 U.S. 333, 340 (2011) (explaining arbitration agreements may not be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue").

Plaintiff also argues that its agent's agreement to arbitrate disputes with Etsy does not bind it because the "purchases were not necessary to Plaintiff's claims." (Opp. at 11.)  But this argument cannot be squared with Plaintiff's own pleadings and theory of the case.  Plaintiff alleges unlawful products are for sale on Etsy's website, which it allegedly substantiated by directing and paying for the purchase of those products. (*See* Compl. ¶ 11; *see also* Opp. at 9 (alleging purchases were made to investigate claims.))  To support its allegation that it has "spent considerable time, energy, manpower, and monetary resources," Plaintiff also alleges it "has had to fund testing on the products purchased" on Etsy's website. (Compl. ¶¶ 14, 15.)  Put simply, Plaintiff's Complaint *is* predicated on the purchase of products from Etsy.

Regardless, as Judge Seeborg explained, the test of whether the principal is bound is not whether the agent's conduct is a "predicate for Plaintiffs' claims," but "whether the agent was acting within the scope of the agency when he or she agreed to be bound." *Independent Living*, 2019 WL 3430656, at *3 (rejecting plaintiffs' argument that they were not bound by paralegal's agreement to arbitrate).  Greenfire Law was acting within the scope of its authority because it was acting at Plaintiff's direction to buy products from Etsy's website. (*See* Compl. ¶ 11.)  To do so, Greenfire Law was required to (and did) agree to Etsy's Terms of Use. (*See* Dkt. 6 at 4-8.)  These undisputed and dispositive facts conclude the analysis.

## B.    Etsy's Terms of Use Cover This Dispute

Etsy's Terms of Use provide that the parties will arbitrate "all claims arising from or relating to the Services"—defined as "Etsy.com, Pattern by Etsy, our mobile apps, and the other services provided by Etsy"—as well as "any products, data, or content bought, sold, offered, accessed, displayed, transmitted, or listed through the Services, and actions or statements by Etsy or its users." (Ex. A §§ 1, 11.A to Saad Decl. (Dkt. 6-1).)  A clause, like this one, "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (alterations and

1    citation omitted).[4]

2        The baseline presumption of arbitrability is strongest when the parties agree to a broad

3    arbitration clause.  *See id.*; *accord AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

4    650 (1986) (holding the "presumption" of arbitrability "is particularly applicable where the clause

5    is . . . broad"); *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513,

6    517 (9th Cir. 1991) ("'[W]here the contract contains an arbitration clause, there is a presumption of

7    arbitrability.'  This presumption carries particular force where the arbitration clause is phrased in

8    broad and general terms." (quoting *AT&T*, 475 U.S. at 650)).

9        In applying this presumption, the Court must "compel arbitration unless it may be said with

10   positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

11   asserted dispute."  *Collins*, 58 F.3d at 19 (quotation marks and citation omitted); *see also Charles*

12   *v. Portfolio Recovery Assocs., LLC*, No. 22-35613, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024)

13   (holding that to fall within a broad arbitration clause, "a party's factual allegations need only 'touch

14   matters' covered by the contract containing the arbitration clause" (quotation marks and citation

15   omitted)).

16       Plaintiffs' claims neatly fall within the scope of this clause.  Plaintiff alleges that Etsy

17   permits the sale of products containing mercury on its website and fails to include a warning on the

18   webpages for those products, in violation of Proposition 65.  (*See generally* Compl. ¶¶ 83-90.)  It

19   also alleges that the sale of these products violates the Sherman Law, and that Etsy is engaged in

20   "false advertising," in violation of the UCL.  (*See generally id.* ¶¶ 105-111.)  These allegations

21   "aris[e] from" Etsy's Services (as defined in the Terms of Use), as the products are allegedly sold

22   through Etsy's website.  (*See id.* ¶ 71.)  And they "relat[e] to . . . products . . . sold . . . or listed

23   through the Services," given that Plaintiff's claim is based on the unlawful sale of products, which

24   also "aris[e] from," or at minimum, "relat[e] to" "actions by [Etsy's] users."  (Ex. A § 11 to Saad

25   _____

26   [4] New York law governs interpretation of the scope of the arbitration clause in Etsy's Terms of Use.
     (*See* Ex. A § 11.I to Saad Decl.)  *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1251
27   (N.D. Cal. 2019) (applying choice of law clause to interpret agreement); *Barela v. Brock USA, LLC*,
     No. SACV-15-00779, 2015 WL 12683955, at *2 (C.D. Cal. Aug. 10, 2015) (same).  The laws of
28   New York and California do not differ materially for the purposes of the analysis, as set forth above.

1   Decl.; *see* Compl. ¶ 13 (alleging products were listed "on multiple different storefronts on

2   www.etsy.com."). Indeed, Plaintiff attaches to its counsel's declaration hundreds of pages of print-

3   outs of product listings from Etsy's website that it alleges are sold in violation of Proposition 65.

4   (*See* Dkt. 19-3, 19-4). Plaintiff's claims clearly arise directly from the sale and listing of products

5   on Etsy's website. And Plaintiff's allegation that Etsy engages in "false advertising" similarly

6   "aris[es] from or relat[es] to" "statements by Etsy[.]" (Ex. A § 11.A to Saad Decl. (Dkt. 6-1).)

7       "The burden of proving that the dispute does not fall within the scope of the arbitration clause

8   rests with the party opposing arbitration." *Curthoys v. Diamond Resorts Int'l, Inc.*, No. 220-cv-

9   00760, 2021 WL 1375247, at *3 (E.D. Cal. Aug. 12, 2021). Plaintiff argues that its claims "do not

10  arise [*sic*] or relate to Greenfire's purchase of cream from Etsy, and AYS could have filed the

11  Complaint regardless of whether Greenfire ever purchased any products from Etsy's website."

12  (Opp. at 12.) But this argument fails twice over.

13      First, as noted previously, Plaintiff's claims *do* arise from and relate to its purchase of

14  products on Etsy's website. The products at issue are the same ones that Plaintiff purchased.

15  (*Compare* Compl. ¶ 66 (listing products) *with* Saad Decl. ¶¶ 24, 35, 45 (undisputed facts regarding

16  products Plaintiffs purchased).) Plaintiff also alleges it "had to fund testing of the products

17  purchased" in order to bring its claims. (Compl. ¶ 14.) And, as noted, Plaintiff now puts screenshots

18  of various products—including those it alleges it purchased—before the Court. (*See* Dkt. 19-3, 19-

19  4 (including screenshots of "Faiza" creams, among others); Compl. ¶ 68 (listing allegedly unlawful

20  products, including "Faiza"); Dkt. 6 at 6-7 (undisputed facts showing purchase of "Faiza" creams).)[5]

21      Second, Plaintiff's argument attacks a straw man. The arbitration clause is not limited to

22  claims "arising from the user's purchase of products," as Plaintiff contends. Rather, the Terms of

23  Use require arbitration of "all claims arising from or relating to [Etsy's] Services," including

24  operation of its website, "any products . . . offered, accessed, displayed, transmitted, or listed

25  ───────────────────────

26  [5] For this reason, Plaintiff's citation to *Lee v. Amazon.com, Inc.*, 76 Cal. App. 5th 200 (2022), for
    the proposition that it can bring a Proposition 65 claim without purchasing products from Etsy is

27  misplaced. (*See* Opp. at 12.) While Etsy does not agree with that reading of *Lee*, the case is
    irrelevant because Plaintiff *did* purchase items from Etsy and relies on those purchases in its

28  Complaint. The entire dispute is thus covered by Etsy's arbitration clause.

through the Services," regardless of whether purchased or not, and any "actions or statements by Etsy or its users[.]" (Ex. A § 11 to Saad Decl.). Even if Plaintiff's claims were somehow unrelated to its purchases (despite its express allegations otherwise), they would *still* be arbitrable because they relate to Etsy's Services, the products listed on its website (whether purchased or not), and actions or statements by Etsy or its users.

Plaintiff's cited cases do not support a different result. In *Mikes v. Strauss*, a former employee alleged that the defendant improperly billed medical procedures to the United States in violation of the False Claims Act, among other claims. 889 F. Supp. 746, 748 (S.D.N.Y. 1995). The plaintiff alleged that during her employment she observed the defendants administering expensive and unnecessary tests. *See id.* at 749. She had signed an employment agreement agreeing to arbitrate "any disagreements, claims, questions or controversies which may arise out of or relate to this Agreement or out of its interpretation or any alleged breach thereof." *Id.* at 754. The court recognized that "[t]he Agreement relates solely to the terms of plaintiff's employment" and that her FCA claims "in no way impinge on her employee status." *Id.* at 755. The court thus concluded that the plaintiff's employment agreement did not require her to arbitrate an unrelated dispute over whether the defendant defrauded the United States. *Id.* at 755.[6]

In *Cavlovic v. J.C. Penney Corp.*, the plaintiff alleged J.C. Penney engaged in false advertising by marking up apparel "by a significant margin" only to then "immediately offer those products at what it represented to be steep discounts." 885 F.3d 1051, 1053 (10th Cir. 2018). She had signed a contract to enter J.C. Penny's Rewards Program, under which she earned points for purchases made at J.C. Penney's using a J.C. Penney-branded credit card. *See id.* at 1054. Under The agreement, disputes "arising from or relating to this Agreement or [Cavlovic's] [J.C. Penney] Rewards Membership will be resolved by binding arbitration[.]" *Id.* at 1055 (alterations in original). The court held that "a plain reading of the arbitration provision" led to the conclusion that "allegations of fraudulent advertising do not arise from the Rewards Program or the amount of

---

[6] While the court stated it "was not convinced" that a *qui tam* plaintiff could be bound to arbitrate, it stated that it "need not decide" the question because "[w]hether or not that is the case, . . . plaintiff's *qui tam* action clearly does not fall within her agreement to arbitrate." *Id.* at 755 & n.7.

9

Rewards Points Cavlovic received for purchases."  *Id.* at 1060 (quotation marks, alteration, and citation omitted).

These holdings have no application here.  Plaintiff's claims arise from and relate to listings it saw and products it purchased on Etsy: the Complaint alleges that Plaintiff bought and tested items from Etsy to investigate its claims and alleges the sale of those products violated the law.  (*See* Compl. ¶¶ 11, 14, 66.)  These allegations fall within the broad scope of what Plaintiff agreed to arbitrate.  This case must be arbitrated.

### C.      Plaintiff's Claims Can Be Compelled to Arbitration Pursuant to Etsy's Terms of Use

Plaintiff also opposes arbitration by arguing that Etsy's Terms of Use are unenforceable against it.  According to Plaintiff, its Proposition 65 and UCL claims are "representative" claims.  (*See* Opp. at 14.)  Section 11.B of Etsy's Terms of Use states that the user and Etsy agree they will bring claims "only on an individual basis and not on a class, representative, or collective basis (and we each waive any right we have to bring such claims)."  (Ex. A § 1 to Saad Decl.)  Plaintiff argues that this provision prohibits it from bringing its "representative" claims in the first instance, which renders it unenforceable under California law.  (*See* Opp. at 14-15.)  This argument fails in light of the nature of Plaintiff's suit.  Moreover, it mischaracterizes Etsy's Terms of Use and the nature of a Proposition 65 action.

First, Plaintiff is *not* bringing claims on behalf of anyone but itself.  As Etsy has explained elsewhere, while Proposition 65 permits a private plaintiff to sue in the "public interest," Plaintiff is not doing so here.  Cal. Health & Safety Code § 25249.7(d); *see* Dkt. 6 at 16.  That is because the California Attorney General has twice withdrawn "AYS['s] authority to file suit in the public interest[.]"  (Exs. B & D to Decl. of N. Hoffman (Dkt. 6-2) (Attorney General letters).)  As Etsy detailed in its Motion to Dismiss, the California Attorney General's letters must be given effect within Proposition 65's statutory structure: it is a *qui tam*-style action that the government maintains

inherent authority to control.  (*See* Mot. to Dismiss (Dkt. 8) at 6-9.)  The necessary result of the Attorney General's letters is that Plaintiff is *not* suing in the public interest.

Nor is Plaintiff bringing its UCL claim on behalf of anyone but itself.  Actions under the UCL can be brought as either individual or representative claims.  *See* Cal. Bus. & Prof. Code § 17203 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure[.]"); *Ramirez v. Lab. Ready, Inc.*, No. 836186-2, 2002 WL 1997037, at *10 (Cal. Super. Ct. July 12, 2002) (explaining a plaintiff may pursue either an individual UCL claim or a representative UCL claim).  The Complaint contains no allegation that Plaintiff is suing on behalf of any aggrieved individual besides itself, nor does the Complaint allege Plaintiff intends to pursue a class action pursuant to California Code of Civil Procedure § 382.

Second, Plaintiff mischaracterizes Etsy's Terms of Use and the way in which Proposition 65 works.  The Terms state that the parties agree to bring claims "only on an individual basis, and not on a class, representative, or collective basis (and we each waive any right we have to bring such claims)."  (Ex. A § 11.B to Saad Decl.)  Under both California and New York law, "representative actions" are ones where "one or more may sue" because "the question is one of a common or general interest, *of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court*[.]"  Cal. Civ. Proc. Code § 382 (emphasis added); *accord Stevens v. Union Tr. Co.*, 11 N.Y.S. 268, 273 (Gen. Term 1980) (defining "representative actions" the same way); *see also* Shafton, *California's Uncommon Common Law Class Action Litigation*, 41 Loyola L.A. L. Rev. 783, 788 (2008) (explaining Section 382 stems from New York "state statutory language authorizing class actions").  This also follows from the language of the Terms themselves: in addition to representative actions, a user also agrees to waive her right to bring class or collective actions or to consolidate her suit "with those of another person or entity."  (Ex. A § 11 to Saad Decl.)

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL

The purpose of this waiver is to prohibit actions in which the rights of multiple parties must be adjudicated in a single case – suits which are fundamentally incompatible with bilateral arbitration. *Cf. Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022) (explaining that adjudicating "the individual claims of multiple absent third parties" presents "problems of notice, due process, and adequacy of representation that render class arbitration inconsistent with arbitration's traditionally individualized form").

Indeed, on Plaintiff's interpretation, the Supreme Court's decision in *Viking River* would have come out the other way.  There, the parties' arbitration agreement required arbitration and provided the parties "could not bring any dispute as a class, collective, or representative PAGA action." *Id.* at 647.  The Supreme Court held that the plaintiff's individual claim, brought as an agent of the State, *could* be compelled to arbitration.  *See id.* at 648, 662 (explaining individual PAGA claims are brought "as agents or proxies—of the State" and holding employer "was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim"); *see also Shams v. Revature LLC*, 621 F. Supp. 3d 1054, 1057 (N.D. Cal. 2022) (holding, under *Viking River*, that waiver provision requiring parties to "submit their own individual claims in arbitration" and "not bring claims against the other in any representative capacity" does not waive "individual PAGA claims on behalf of the State"). In sum, nothing in Etsy's arbitration clause categorically forecloses a Proposition 65 claim or a UCL claim.[7]

As to remedies, Plaintiff cites to the arbitration agreement, which limits a plaintiff to individualized relief, and waives (to the extent enforceable) requests for public injunctive relief. (*See* Opp. at 15; Ex. A § 11.B to Saad Decl.)

---

[7] Plaintiff argues that Etsy's Terms of Use "provisions governing arbitration, choice of law, and choice of forum are inextricably bound together…[and] all of these provisions are unenforceable." Opp. at 13-14. As explained in Section E below, Etsy's choice of law provision is not unenforceable as a matter of public policy, and the severability clause in Section 11.B of Etsy's Terms of Use protects against these clauses being "inextricably bound together."

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
Case No.: 24-cv-04203-MMC

While this type of provision is enforceable under some states' laws, Etsy's Terms of Use explain what happens where a court determines that public injunctive relief is not waivable: if any part of Section 11.B (including the "individualized relief" limitation) "is unenforceable as to a particular claim or request for relief (e.g., public injunctive relief) then solely that particular claim or request for relief shall be severed from the arbitration and may be litigated in court (but only after the arbitrator issues an award on the arbitrable claims and remedies)."  (Ex. A § 11.B to Saad Decl.) This provision accords with both the FAA and California procedure.  *See Clifford v. Quest Software, Inc.*, 38 Cal. App. 5th 745, 750 (2019) ("If a plaintiff's . . . cause of action includes both arbitrable and inarbitrable claims, such as a request for restitution and a request for public injunctive relief, the trial court must sever the cause of action, order the arbitrable portion to arbitration, and stay the inarbitrable portion pending the completion of arbitration."); *Stout v. Grubhub Inc.*, No. 21-cv-04545, 2021 WL 5758889, at *11 (N.D. Cal. Dec. 3, 2021) (compelling arbitration of underlying claims and staying claim for public injunctive relief); *see also Hofer v. Emley*, No. 19-cv-02205-JSC, 2019 WL 457389, at *9 (N.D. Cal. Sept. 20, 2019) ("The FAA does not permit a court to decline to enforce a valid arbitration provision, even if some claims arising from the same transaction or occurrence cannot be compelled to arbitration.").

Plaintiff's Complaint seeks more than just public injunctive relief; it alleges it has sustained its own injuries, seeks to recover statutory penalties and attorneys' fees for itself, and requests unspecified relief (as to which Etsy has not had the opportunity to take discovery).  (*See* Compl. ¶¶ 112, 114(A), (D), (E).)  Thus, to the extent the Court believes any part of the arbitration agreement is unenforceable as to any of Plaintiff's claims or requested remedies, the proper course is to sever the request for injunctive relief and order the remaining claims and remedies (*i.e.*, all claims for penalties, attorneys' fees, and individualized relief) to arbitration.  *See* Ex. A § 11.B to Saad Decl.; *see, e.g.*, *Clifford*, 38 Cal. App. 5th at 750.

**D.      Plaintiff's Claims Should Be Transferred to New York If Not Compelled to Arbitration**

As Etsy detailed in its moving brief, should the Court find that Plaintiff's claims cannot be arbitrated, then they should be transferred to New York pursuant to the forum-selection provision in its Terms of Use.  (*See* Dkt. 6 at 18-20.)  Plaintiff argues doing so would violate California public policy.  (*See* Opp. at 17-18.)  Not so.  The transfer statute, 28 U.S.C. § 1404(a), "requires that a forum-selection clause be given controlling weight in all but the most exceptional cases."  *Atl. Marine Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59-60 (2013) (quotation marks and citation omitted).  Thus, courts within the Ninth Circuit "tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy *specifically related to venue*."  *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015) (quotation marks and citation omitted; emphasis added).

Here, neither Proposition 65 nor the UCL set forth any policy related to venue.  To the contrary, Proposition 65 itself states actions to enforce it may be brought "in *any* court of competent jurisdiction."  Cal. Health & Safety Code § 25249.7 (emphasis added); *cf. Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497-98 (9th Cir. 2000) (invalidating forum selection clause because California franchising law specifically restricts venue to California).  The text of the UCL similarly contains no venue restriction.  These statutes thus do not implicate any public policy restriction related to venue.  Indeed, in *East Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382 (N.D. Cal. Apr. 21, 2014), Judge Alsup decided this issue.  There, the plaintiffs brought a UCL claim along with various common-law claims.  *See id.* at *1.  The defendant sought to transfer venue to Michigan pursuant to a forum-selection clause in the parties' agreement.  *See id.* at *2.  The plaintiffs argued "enforcement of the forum selection clause would violate California's 'strong public policy' against unfair business practices."  *Id.*  The court, in granting the transfer, explained that the plaintiffs "failed to identify a fundamental public policy underlying

California's Unfair Competition Act that relates to *venue*."  *Id.* at *3 (noting "[o]ther judges in this district have found similarly" and collecting authority).[8]

Plaintiff also argues that the choice of law provision in Etsy's Terms of Use is unenforceable as a matter of public policy.  (*See* Opp. at 17-18.)  But as the *East Bay* court recognized, this puts the cart before the horse.  Plaintiff's argument that New York law "might provide them with less protection than California [law] is unavailing because it requires speculation as to the potential outcome of the litigation on the merits in the transferee forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum at the outset[.]"  2014 WL 1618382, at *3 (quotation marks, citations omitted; collecting authority).  The transferee court will decide what law applies to Plaintiff's claims.  "It may be the case that the transferee court may decide to apply the substantive law sought by plaintiffs." *Id.* at *3.[9]  But regardless of the outcome, the issue of what substantive law will govern Plaintiff's claims is not before this Court.

## III.   CONCLUSION

Etsy respectfully requests that this Court compel Plaintiff's claims to arbitration and stay this proceeding or, in the alternative, transfer this action to the U.S. District Court for the Southern District of New York.

---

[8] Plaintiff's reliance on *Am. Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th 1 (2001) is misguided. (*See* Opp. at 14.)  As the *East Bay* court explained, "the strong public policies at issue in *[Am. Online, Inc.]*, however, were allowing class actions and against waiver of protections under the CLRA. . . . [T]he basis for voiding the forum-selection clause in that action was because the clause violated the CLRA's explicit anti-waiver provision."  2014 WL 1618382, at *2.  Moreover, the forum-selection clause at issue in *AOL* mandated a state court forum, which "matter[ed] because the California Court of Appeal in *American Online* emphasized that the Virginia state-court system was procedurally incapable of hearing consumer class actions."  *Id.* at *3.

[9] Etsy's Terms of Use provides that "Except as prohibited by law, these Terms shall be governed exclusively by New York law, without regard to conflict-of-law rules, and U.S. federal law (including the Federal Arbitration Act)."  (Ex. A § 11.I to Saad Decl. (emphasis added).)  Plaintiff assumes that this means it cannot bring California statutory claims.  Etsy has not advanced this position here (given that this is not the proper forum) but reserves its right to argue about the effect of this provision in the appropriate forum.

1    Dated: September 17, 2024                    McGuireWoods LLP

2

3                                           By     /s/ Nicholas J. Hoffman
                                                Samuel L. Tarry *(PHV Forthcoming)*
4                                               Nicholas J. Hoffman
                                                Aria Hangval
5                                               Attorneys for Defendant
                                                ETSY, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
                                            Case No.: 24-cv-04203-MMC

## CERTIFICATE OF SERVICE

I hereby certify that on **September 17, 2024**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **September 17, 2024** at Los Angeles, California.

By: */s/ Nicholas J. Hoffman*
Nicholas J. Hoffman
Attorneys for Defendant
ETSY, INC.

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
Case No.: 24-cv-04203-MMC