NICHOLAS J. HOFFMAN (SBN 284472)
  nhoffman@mcguirewoods.com
ARIA HANGVAL (SBN 336933)
  ahangval@mcguirewoods.com
McGUIREWOODS LLP
Wells Fargo Center – South Tower
355 S. Grand Avenue, Suite 4200
Los Angeles, California 90071-3103
Telephone: (213) 457-9840
Facsimile: (213) 457-9877

SAMUEL L. TARRY, JR. (*pro hac vice application forthcoming*)
  starry@mcguirewoods.com
McGUIREWOODS LLP
1750 Tysons Boulevard Suite 1800
Tysons, Virginia 22102-4215
Telephone: (703) 712-5425
Facsimile: (703) 712-5185

Attorney for Defendant
ETSY, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AS YOU SOW, a 501(c)(3) non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ETSY, INC. and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 24-cv-04203-MMC<br><br>**DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>**Judge:** Hon. Maxine M. Chesney<br>**Date:** October 11, 2024<br>**Time:** 9:00 a.m.<br>**Location:** Courtroom 7 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Plaintiff Lacks Authority to Bring this Lawsuit in the Public Interest ...................... 1

        1. The Court May Take Judicial Notice of the Attorney General's Conclusion that Plaintiff Lacks Authority to Bring this Lawsuit .................. 3

        2. Plaintiff Relies on Dicta, Inapposite Authority, and an Irrelevant Legislator Comment .................................................................................... 4

        3. The Attorney General Did Not Simply Issue a Form Letter—*He Withdrew Plaintiff's Authority to Sue* .......................................................... 6

    B. Plaintiff Failed to Conduct the Mandatory Pre-Suit Investigation Prior to Serving the Notices ................................................................................................... 8

    C. Plaintiff's Opposition Confirms that Both of Plaintiff's Notices Were Defective ...................................................................................................................... 9

        1. Plaintiff Could Not "Cure" the Defect in Its First Notice of Violation by Dismissing Its First Lawsuit and Re-Filing It ........................................... 9

        2. Plaintiff Could Not "Cure" the Defect in its Second Notice of Violation By Naming It a "Supplemental" Notice ..................................... 11

    D. Plaintiff's UCL Claim Must Be Dismissed ............................................................ 14

III. CONCLUSION .................................................................................................................. 14

...

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*B&G Foods N. Am., Inc. v. Embry*,
   2021 WL 2672787 .................................................................................................. 4

*B&G Foods N. Am., Inc. v. Embry*,
   29 F.4th 527 (9th Cir. 2022) .................................................................................... 4

*City & Cnty. of San Francisco v. Garland*,
   42 F.4th 1078 (9th Cir. 2022) .................................................................................. 3

*Daugherty v. Experian Info. Solutions, Inc.*,
   847 F. Supp. 2d 1189 (N.D. Cal. 2012) ................................................................... 3

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
   2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ........................................................ 14

*Hallstrom v. Tillamook County*,
   493 U.S. 20 (1989) ....................................................................................... 10, 11, 12

*Harris v. R.J. Reynolds Vapor Co.*,
   2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) ....................................................... 14

*Magadia v. Wal-Mart Assocs., Inc.*,
   999 F.3d 668 (9th Cir. 2021) .................................................................................... 2

*In re Magnacom Wireless*,
   LLC, 503 F.3d 984 (9th Cir.2007) ............................................................................ 4

*Nat'l Ass'n of Wheat Growers v. Bonta*,
   85 F.4th 1263 (9th. Cir. 2023) .................................................................................. 4

*Nat'l Ass'n of Wheat Growers v. Zeise*,
   309 F. Supp. 3d 842 (E.D. Cal. 2018) ............................................................... 4, 5, 7

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. Guild*,
   334 F. Supp. 3d 1057 (E.D. Cal. 2018) .................................................................... 1

*Nichols v. Brown*,
   945 F. Supp. 2d 1079 (C.D. Cal. 2013) ................................................................... 3

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) .................................................... 10, 11, 12

*United States v. Johnson*,
   256 F.3d 895 (9th Cir. 2001) (*en banc*) ................................................................... 4

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022) ................................................................................................... 1, 2

**California Cases**

*Consumer Advoc. Grp., Inc. v. Food Land*,
    Case No. 19STCV18754, Los Angeles Super. Ct., February 8, 2024 .................................... 13

*Consumer Def. Grp. v. Rental Hous. Indus. Members*,
    137 Cal. App. 4th 1185 (2006) .............................................................................................. 2

*Council for Educ. & Rsch. on Toxics v. Starbucks Corp.*,
    84 Cal. App. 5th 879 (2022) ................................................................................................ 11

*DiPirro v. Am. Isuzu Motors, Inc.*,
    119 Cal. App. 4th 966 (2004) .............................................................................................. 11

*Embry v. B&G Food N. Am., Inc.*,
    Case No. RG20057491, Alameda Super. Ct. Aug. 14, 2023 ................................................ 13

*Iskanian v. CLS Transp. L.A., LLC*,
    59 Cal.4th 348 (2014) ........................................................................................................... 2

*Lee v. Amazon.com, Inc.*,
    76 Cal. App. 5th 200 (2022) ................................................................................................. 9

*Physicians Comm. for Responsible Med. v. KFC Corp.*,
    224 Cal. App. 4th 166 (2014) ............................................................................................... 8

*In re Vaccine Cases*,
    134 Cal. App. 4th at 459 ..................................................................................................... 11

*Yeroushalmi v. Miramar Sheraton*,
    88 Cal. App. 4th 738 (2001) .................................................................................... 10, 11, 12

**Federal Statutes**

Resource Conservation and Recovery Act ("RCRA") ................................................................. 10

**California Statutes**

Cal. Code Regs. Title 27
    § 25903 ............................................................................................................................... 11
    § 25903(a) .......................................................................................................................... 12
    § 25903(a) and (b)(2)(A) .................................................................................................... 13
    § 25903(b)(2)(A) ................................................................................................................ 12

Cal. Health & Safety Code
 § 25249.7(c) .................................................................................................................. 2
 § 25249.7(d) ................................................................................................................ 12
 § 25249.7(d)(2) ............................................................................................................. 2
 § 25249.7(e)(1)(A) ................................................................................................ 5, 7, 8

**Other Authorities**

1A Cal. Jur. 3d Actions § 31 ............................................................................................. 1

Fed. R. Evid. 201(b) ......................................................................................................... 3

U.S. Constitution, First Amendment ............................................................................... 5

I.   INTRODUCTION

Plaintiff's Opposition concedes the key points from Etsy's Motion, and confirms this case should be dismissed.  First, Plaintiff concedes that the California Attorney General determined that Plaintiff *lacks authority* to pursue its claims in the public interest.  Plaintiff does not, and cannot, explain what this withdrawal of authority accomplishes if not the obvious:  it prevents Plaintiff from suing as an agent of the State.

Second, Plaintiff does not deny that it failed to abide by the statutorily mandated "waiting period" before filing its first lawsuit.  Plaintiff's failure to do so is incurable.  Holding otherwise would vitiate the purpose of the waiting period, which is why *all* relevant caselaw holds that a failure to comply with *any* of Proposition 65's mandatory pre-suit requirements cannot be cured.

Finally, Plaintiff concedes that it failed to name the "responsible individual" in its second notice of violation.  Under Proposition 65, *each* notice of violation must stand on its own and follow *all* mandatory pre-suit requirements.  Any claims based on a defective notice must be dismissed.  For these reasons, Etsy respectfully requests that the Court grant its Motion.

II.   ARGUMENT

    A.   **Plaintiff Lacks Authority to Bring this Lawsuit in the Public Interest**

As explained in Etsy's opening brief, the California Attorney General has issued a letter for each of Plaintiff's two notices of violation, unequivocally stating that the "**notice does not give [Plaintiff] authority to file suit in the public interest[.]**"  Dkt. 9, Exs. 2 and 4 (emphasis added).  Plaintiff asks the Court to disregard the Attorney General's actions withdrawing Plaintiff's authority to sue.  This position ignores both the State's status as the real party in interest, as well as the Attorney General's statutory authority in a Proposition 65 action.

As the Supreme Court explained in *Viking River*, where the State is the "real party in interest" to a lawsuit it necessarily "retains inherent authority to manage" it.  *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 645 n.2 (2022) ("[R]eal-party-in-interest status is based on ownership and control over the cause of action." (citing 1A Cal. Jur. 3d Actions § 31)).  The "real party in interest" is the party "who has the right to sue under the substantive law." *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. Guild*, 334 F. Supp. 3d 1057, 1064 (E.D. Cal. 2018); *see also* 48 Cal. Jur. 3d

Parties § 31 (explaining that "every action must be prosecuted in the name of the real party in interest," which is the party "who has the right to sue under the substantive law"). For Proposition 65, the real party in interest is the State acting through a public prosecutor. *See* Cal. Health & Safety Code § 25249.7(c).

As with other *qui tam* statutes, a private plaintiff can step into the State's shoes and bring a claim only when a public prosecutor does not commence an action. *See id.* § 25249.7(d)(2). Still, as the real party in interest, the State "retains inherent authority to manage" Proposition 65 suits. *Viking River,* 596 U.S. at 645 n.2. This is also evidenced by the Attorney General's ability to act in the State's interest at any time. *See Consumer Def. Grp. v. Rental Hous. Indus. Members*, 137 Cal. App. 4th 1185, 1203-13 (2006) (reversing trial court's approval of Proposition 65 settlement based on Attorney General's post-settlement objection that plaintiff did not comply with the mandatory pre-suit requirements; ordering trial court to dismiss case); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 677 (9th Cir. 2021) ("[A] traditional *qui tam* action acts only as a *partial* assignment of the Government's claim. The government remains the real party in interest throughout the litigation and may take complete control of the case if it wishes." (quotation marks and citations omitted)).

Plaintiff argues that this analysis does not apply because Proposition 65 "was adopted through the initiative process, specifically to ensure that private citizens could act on behalf of the public interest when state government agencies failed to do so." Dkt. 20 at 12. But PAGA was enacted for the same reason. *See Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 383 (2014) ("[T]he Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the Agency by empowering employees to enforce the Labor Code as representatives of the Agency." (overruled on other grounds)). The Supreme Court nevertheless recognized that the State "retains inherent authority to manage PAGA actions" because it is the real party in interest. *Viking River*, 596 U.S. at 645 n.2. And more fundamentally, Plaintiff offers no principled reason for *why* a statute passed through a ballot initiative would function differently from one passed through legislative process. *See People v. Nash*, 52 Cal. App. 5th 1041, 1054 (2020) ("[T]he same principles that govern statutes enacted by the Legislature apply to voter initiatives."). Here, the State exerted control over the causes of action in this lawsuit by *twice declaring Plaintiff has no authority*

2
DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No.: 24-cv-04203-MMC

*to sue on its behalf.* Plaintiff cannot proceed in light of the Attorney General's conclusion that Plaintiff lacks authority to pursue this lawsuit.

### 1. The Court May Take Judicial Notice of the Attorney General's Conclusion that Plaintiff Lacks Authority to Bring this Lawsuit

Plaintiff filed a separate Opposition to Etsy's request for judicial notice of the Attorney General's letters. *See* Dkt. 21. Rather than burden the Court with additional filings, Etsy briefly addresses it here. In short, the Court can and should take judicial notice of the Attorney General's conclusion.

Plaintiff concedes that the Attorney General's letters are authentic. *See* Dkt. 20 at 5; *see also* Dkt. 21 at 2 ("Plaintiffs are not contesting that these letters exist[.]"). The *fact* that the Attorney General determined that Plaintiff has no authority to pursue these claims in the public interest is thus undisputed. Moreover, the Attorney General's conclusion can be readily determined from a reliable source—*i.e.,* the Attorney General's own official letters, published on the Attorney General's publicly available website.

It is thus appropriate for the Court to take judicial notice of the Attorney General's conclusion as documented in the two letters. A court may properly take judicial notice of an adjudicative fact when it is "not subject to reasonable dispute" because it "can be accurately and readily determined" from reliable sources. Fed. R. Evid. 201(b). The Attorney General's conclusion about Plaintiff's lack of authority to sue—which is documented in two official letters on the Attorney General's website—easily qualifies. *Cf. City & Cnty. of S.F. v. Garland*, 42 F.4th 1078, 1084 n.3 (9th Cir. 2022) (taking judicial notice of the DOJ's non-enforcement of challenged conditions since it was included in a "Legal Notice" on the Office of Justice Program's publicly available website); *see also Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) ("The opinions of State Attorney Generals are judicially noticeable."); *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1091 n.4 (C.D. Cal. 2013) (same).

Plaintiff argues the Court should not take judicial notice of the Attorney General's letters because it "disputes the Attorney General's conclusions[.]" Dkt. 21 at 2. But Plaintiff's *disagreement* with the Attorney General does not render the Attorney General's conclusion

inappropriate for judicial notice. The Court can and will determine the relevance of those letters to this action—and, as set forth above, Etsy maintains they require dismissal. Both the existence of these letters and the Attorney General's conclusions are clearly appropriate for judicial notice.

### 2. Plaintiff Relies on Dicta, Inapplicable Authority, and an Irrelevant Legislator Comment

Plaintiff's argument on the merits relies on *dicta* in two Ninth Circuit opinions stating that no-merit letters do not preclude private parties from suing. *See* Dkt. 20 at 8 (*citing Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1267 & n.1 (9th. Cir. 2023), and *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527 (9th Cir. 2022)). Plaintiff concedes, however, that neither case even *involved* issuance of a no-merit letter—much less a position from the California Attorney General that a plaintiff lacks authority to sue. *See id*. The statements in these two cases are *dicta* in every sense—comments made in a passing reference to Proposition 65, without any analysis or authority, and without any bearing on the actual issues in those cases. *See In re Magnacom Wireless*, LLC, 503 F.3d 984, 993-94 (9th Cir.2007) ("In our circuit, statements made in passing, without analysis, are not binding precedent."); *see also United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (*en banc*) (explaining that "not every statement of law in every opinion is binding"— "[w]here it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention…").[1]

The only other case that Plaintiff cites is *National Association of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018), which is the district court case underlying the decision of *Nat'l Ass'n of Wheat Growers v. Bonta*. *Zeise* reaffirms that none of these cases have any precedential value for the issues here. In *Zeise*, an agricultural group sought a preliminary injunction against the California Attorney General and OEHHA's director, Dr. Lauren Zeise, alleging that they

---

[1] In fact, the dicta here can be traced back to statements from the parties' *briefs*—where the statements were made *without citation*—and apparently were adopted by the Ninth Circuit in its recitation of the background of Proposition 65. *See, e.g.*, 2021 WL 2672787, at *18 (appellees' brief in *B&G Foods N. Am., Inc. v. Embry*); 2021 WL 2022327, at *18 (appellees' brief in *Nat'l Ass'n of Wheat Growers v. Bonta*).

violated the First Amendment by adding glyphosate to the Proposition 65 list. *Zeise*, 309 F. Supp. 3d at 845. Not only did the case have nothing to do with a "no merit letter," but the case was filed in November 2017, *before* Health & Safety Code § 25249.7(e)(1)(A)—which instituted the "no merit letter" requirement—even went into effect.

Plaintiff cites footnote 7 of *Zeise* as purported "evidence" that plaintiffs have pursued a lawsuit after receiving a "no merit letter." *See* Dkt. 20 at 9 n. 7. But *Zeise* offers no such evidence. The footnote in *Zeise* was referencing a 2006 letter from the Attorney General to the U.S. Department of Agriculture. Supplemental Request for Judicial Notice ("Supp. RJN"), Ex. 1. That letter was not a "no merit" letter at all; it was an advisory letter from the California Attorney General on whether Proposition 65 conflicted with federal law. *Id*. The letter—issued 12 years *before* Health & Safety Code § 25249.7(e)(1)(A) went into effect—was addressed to a federal agency, not a private enforcer, and did not take a position on any private enforcer's *authority* to sue under Proposition 65. *Id*.

Plaintiff's only remaining argument is that a March 2017 document from the legislative history of Assembly Bill 1583—the bill that added Proposition 65's "no merit" letter requirement—states that the issuance of a no-merit letter "is not prohibitive on the noticing party's ability to bring an action against the alleged violator, but letters typically discourage noticing parties from doing so." *See* Dkt. 20 at 8.[2] This argument likewise fails for multiple reasons.

First, Plaintiff's cited document is not a legitimate indicator of legislative intent. The subject sentence is included only in a section that includes "comments" by the bill's author about Assembly Bill 1583. Dkt. 22-3 at 4-5. Generally, the motive or understanding of an individual legislator (even the author of the bill) is not properly received as evidence of the Legislature's collective intent or understanding. *See Quintano v. Mercury Cas. Co.*, 11 Cal.4th 1049, 1062 (1995) ("[T]he statements of an individual legislator, including the author of a bill, are generally not considered in construing

---

[2] Plaintiff seeks judicial notice of the legislative document. *See* Dkt. 22 at 3. The Court should deny judicial notice as outlined in concurrently filed Etsy's Objection to Plaintiff's Request for Judicial Notice.

a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation."); *see also In re Kelly*, 841 F.2d 908, 912 n. 3 (9th Cir. 1988) (explaining that "[s]tray comments by individual legislators…cannot be attributed to the full body that voted on the bill.").

Second, contrary to Plaintiff's representations, the legislative document is not referencing the proposed *forward-looking* impact of a "no-merit letter" once Health & Safety Code § 25249.7(e)(1)(A) was implemented (*i.e.,* after the bill was enacted). To the contrary, the author was apparently summarizing his own understanding of the impact of a letter from the Attorney General *prior* to enactment of the bill—when the Attorney General would sometimes send an informal letter to a private enforcer. *See* Dkt. 22-3 at 5 ("…the **current practice** of the office is to send a letter to the noticing party and the alleged violator…") (emphasis added). The author was not, as Plaintiff suggests, describing the effect of the bill under consideration—which would require the Attorney General to issue a formal no-merit letter when it found the Plaintiff's investigation lacking. The understanding of this single legislator passed many years prior is not determinative of the Legislature's collective intent or understanding of how the proposed no-merit requirement would operate. Further, Plaintiff presents no evidence that the author's purported understanding was expressed in testimony or argument to the full Legislature.

Moreover, the broader legislative history shows that Plaintiff's cherry-picked sentence was then removed from *all* other legislative materials pertaining to Assembly Bill 1583. *See* Supp. RJN, Exs. 2-8. For example, none of the readings or votes on the bill—nor any of the other legislative materials between April 2017 and the passage of the bill in October 2017—include Plaintiff's quoted language or anything similar. *See id*. If anything, this suggests that the broader Legislature did *not* agree with that language and intentionally removed it.

### 3. The Attorney General Did Not Simply Question the Merits of Plaintiff's Claims—*He Concluded that Plaintiff Lacks Authority to Sue*

Finally, even if Plaintiff is correct that a "no-merit" letter does not inherently preclude suit by the recipient, the letters issued here plainly do. The language of the Attorney General's letters to Plaintiff must be considered and given effect. ***And here, the Attorney General expressly withdrew Plaintiff's authority to sue.***

The Attorney General often issues a "no merit" letter questioning the merits of a Proposition 65 case, without going so far as to tell the Plaintiff it lacks authority to sue. For example, even before Proposition 65 was amended to codify the "no merit" letter process, the Attorney General sometimes issued letters that discussed the merits of notices of violation. The letter mentioned above in *Zeise* is one example. *See* Supp. RJN, Ex. 1 (letter from Attorney General to a federal agency; did not purport to *withdraw the authority* of a private enforcer to pursue a Proposition 65 suit). Another example is a March 14, 2006 letter issued by the Attorney General to a plaintiff's lawyer who, over the previous six months, had issued 45 notices of violation for alleged "second-hand smoke…near bank entrances and ATM machines." Supp. RJN, Ex. 9. In the letter, the Attorney General expressed "concern" that there may not be merit to the notices, including, for example, because "it is not clear whether the recipients have sufficient control over the premises to be liable for the alleged violations." *Id*. at 2. But the Attorney General did not go so far as to tell the plaintiff that they lacked authority to pursue the claims. On the contrary, the letter conveyed that the plaintiff could still sue. *See id.* at 3 ("… if you bring litigation in this case….").

Even *after* Health & Safety Code § 25249.7(e)(1)(A) went into effect in 2018 (requiring the Attorney General to issue a "no merit letter" when the certificate of merit is inadequate or a case otherwise appears to lack merit), the Attorney General has continued to issue these same type of letters—*i.e.,* letters which express *doubt* about the merits but stop short of telling the private enforcer they *lack authority* to pursue the lawsuit. By way of example:

- On December 7, 2018, the Attorney General sent a letter to a plaintiff's attorney who served notices of violation about certain juices allegedly containing lead. Supp. RJN, Ex. 10. The letter concluded that the "evidence of violations is *tenuous* at best, and not likely to stand up against statutory and regulatory defenses to the warning requirement." *Id*. at p. 2 (emphasis in original). The letter, however, contemplated that the plaintiff could still pursue the claims. *See id*. at 2 ("If you decide to pursue the notices,…then we will look for evidence that….").

- On April 27, 2020, the Attorney General sent a letter to a plaintiff's attorney who served notices of violation about the alleged sale of laboratory chemicals without a warning. Supp. RJN, Ex. 11. The Attorney General stated a belief that there was "no merit to the action," including because there may not have been exposures "during the statute of limitations time period." *Id*. at 2-3. The letter did not, however, conclude that the plaintiff lacked authority to pursue the lawsuit.

- On April 30, 2020, the Attorney General sent another letter to the same plaintiff's attorney regarding the alleged sale of laboratory chemicals without a warning. Supp. RJN, Ex. 12. Once again, the Attorney General questioned the merit of the action, but did not tell Plaintiff it lacked the authority to pursue a lawsuit.

In short, not all Attorney General "no merit" letters are the same. Even since Health & Safety Code § 25249.7(e)(1)(A) went into effect, the Attorney General sometimes expresses concern about the merits of the case (or that the claim is "tenuous at best"), and other times concludes resolutely that the case has no merit. Here, the Attorney General's letters leave no doubt that Plaintiff's claims have zero merit, and the Attorney General *took the further step of* withdrawing *Plaintiff's authority* to pursue the lawsuit. *See* Dkt. 9 at 22-23 ("[The] notice does not give [Plaintiff] authority to file suit in the public interest, or to settle claims based on the alleged violations, and we ask that you withdraw the notice immediately."), *id*. at 32-33 (same). Accordingly, even assuming that not *all* "no-merit letters" preclude a private enforcer from pursuing a Proposition 65 lawsuit, the letters at issue in this dispute did, as made clear by their own explicit terms.

### B. Plaintiff Failed to Conduct the Mandatory Pre-Suit Investigation Prior to Serving the Notices

The Court should also dismiss this action because Plaintiff failed to comply with the mandatory pre-suit requirement of providing the Attorney General with the information required by Health & Safety Code § 25249.7(d)(l). *See* Dkt. 8 at 16-17. The Attorney General has twice explained that Plaintiff failed to comply with § 25249.7(d)(l) by sending the Attorney General the underlying "facts, studies, or other data regarding the alleged exposure to the listed chemical." *See* Dkt. 9, Exs. 2 and 4. Under Proposition 65, a plaintiff must provide this information to demonstrate to the Attorney General that they performed an adequate investigation *prior* to serving a notice of violation. *See Physicians Comm. for Responsible Med. v. KFC Corp.*, 224 Cal. App. 4th 166, 182 (2014) ("[a] notice that is unsupported by adequate investigation and information is equivalent to no notice at all"). As outlined in Etsy's Motion, the Attorney General's conclusion is the final word on the issue because the statute vests the Attorney General with the authority to decide whether Plaintiff has complied with the statute as a precondition for granting Plaintiff the right to sue in its place. *See* Cal. Health & Safety Code § 25249.7(e)(1)(A).

In response, Plaintiff claims that "trial courts can only rule on [certificate of merit] support sufficiency once the case has concluded." Dkt.. 20 at 12. Not true. In *Physicians Comm. for Responsible Med. v. KFC Corp.*, for example, the trial court dismissed the action after concluding—at the demurrer stage—that plaintiff's "notice and certificate of merit were not supported by facts sufficient to provide a basis for [plaintiff] to believe that it could support the elements of its Proposition 65 claim." *Physicians Comm.*, 224 Cal. App. 4th at 182. The court of appeal affirmed the dismissal with prejudice. *Id*. at 182-83.

Here, as in *Physicians Comm.*, Plaintiff indisputably failed to satisfy the Attorney General's requirement that it had conducted an adequate pre-suit investigation to support its claims, triggering the no-merit letter. *See* Dkt. 9, Exs. 2, 4. Moreover, even after the Attorney General engaged in further meet and confer efforts with Plaintiff's counsel, Plaintiff still could not provide materials demonstrating that it had conducted an adequate investigation before serving Etsy with the two notices. *See id*. The Court should also dismiss Plaintiff's claims on this basis.[3]

### C. Plaintiff's Opposition Confirms that Both of Plaintiff's Notices Were Defective

Plaintiff's claims must also be dismissed because both of Plaintiff's notices were defective—and Plaintiff cannot "cure" the defects retroactively. *All* the pertinent caselaw explains that Proposition 65 requires *strict* compliance with the pre-suit requirements. Absent strict compliance, this Court cannot hear the claims.

#### 1. Plaintiff Could Not "Cure" the Defect in Its First Notice of Violation by Dismissing Its First Lawsuit and Re-Filing It

As explained in Etsy's Motion, Plaintiff's first notice of violation was defective since Plaintiff failed to wait the statutorily required number of days before suing. Dkt. 8 at 14-18. In response, Plaintiff effectively concedes that it violated the mandatory waiting period before filing

---

[3] Plaintiff's Opposition discusses a separate case, *Lee v. Amazon.com, Inc.*, 76 Cal. App. 5th 200 (2022), and seeks judicial notice of the Attorney General's amicus brief from that case. *See* Dkt. 22 at 2. But that case has no relevance here. The Court need not look to the Attorney General's impressions in a different case, involving a different party, since the Court has the Attorney General's conclusion *in this case*, involving *this* Defendant, in the Attorney General's two official letters. *See* Dkt. 9, Exs. 2 and 4 (Attorney General letters).

its initial lawsuit.  *See* Dkt. 20 at 6, 10.  Rather than waiting *more than* 70 days after service of the notice on Etsy, and *more than* 65 days after service on the California Attorney General, Plaintiff concedes that it filed its initial lawsuit only "60 days after the January Notice of Violation was served."  *Id*. at 6.  Failure to satisfy the mandatory waiting period requires dismissal with prejudice.  *See* Dkt. 8 at 14-18.

Plaintiff argues it "cured" this violation by dismissing its initial lawsuit and refiling it later.  But Plaintiff cites no authority to support this argument.  *See* Dkt. 20 at 13-14.  There is none.  The pertinent caselaw, including the U.S. Supreme Court's decision in *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989), rejects Plaintiff's argument.  *Hallstrom* involved the 60-day delay requirement under the Resource Conservation and Recovery Act ("RCRA"), but California courts have recognized that the decision is instructive for Proposition 65, which adopted the same type of notice provision as the federal environmental statutes.  *See Yeroushalmi v. Miramar Sheraton*, 88 Cal. App. 4th 738, 748 (2001) (citing *Hallstrom* as instructive for Proposition 65); *Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 790 (N.D. Cal. 2015) (same).

Prior to *Hallstrom*, there was a circuit split regarding whether a failure to comply with the RCRA's mandatory waiting period was a curable or incurable defect.  *Hallstrom* resolved that split by holding that such failure is incurable.  There, the plaintiff prematurely sued before allowing the RCRA's mandatory sixty-day waiting period to expire.  *Hallstrom,* 493 U.S. at 23-24.  The district court held that the notice defect was cured by the plaintiff's later notification to the State and EPA on March 2, 1983, one day after the motion for summary judgment.  *Id.* at 24.  On appeal, the Ninth Circuit held that the plaintiff's failure to comply with the sixty-day notice provision was incurable and ordered the case dismissed with prejudice.  *Hallstrom,* 844 F.2d at 600-01.  The Supreme Court affirmed, explaining that "[u]nder a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit."  *Hallstrom,* 493 U.S. at 26; *see also Sciortino*, 108 F. Supp. 3d at 790 (explaining that Supreme Court held that the "60–day notice provision in [RCRA] was strict condition precedent to bringing suit and could not be given a pragmatic construction; *e.g.,* notice requirement was not satisfied through post-filing 60–day stay of the action").

California precedent agrees. *See, e.g.*, *Yeroushalmi*, 88 Cal. App. 4th at 746 (rejecting private enforcer's argument that private enforcement action could proceed on the basis that its pre-suit notices "substantially complied" with the regulation); *DiPirro v. Am. Isuzu Motors, Inc.*, 119 Cal. App. 4th 966, 975 (2004) (affirming dismissal without leave to amend and holding that a private enforcer cannot cure its failure to comply with the pre-suit requirements); *Council for Educ. & Rsch. on Toxics v. Starbucks Corp.*, 84 Cal. App. 5th 879, 900 (2022) ("Failure to comply with pre-suit notice requirements is grounds for dismissal, and *deficiencies cannot be cured after the complaint is filed*." (emphasis added)). The caselaw in this District is also in accord. *See Sciortino*, 108 F. Supp. 3d at 790 ("[I]f a Plaintiff commenced an action under Proposition 65 without providing suitable statutory notice, the Plaintiff should not be able to maintain that action. Dismissal with prejudice would be proper, because *improper notice cannot be retroactively cured*." (emphasis added)).

Moreover, as shown in Etsy's opening brief, Plaintiff's "cure" argument would undermine the very purpose of the notice period itself, by permitting plaintiffs to sue prematurely to try to extract an early settlement, only to then dismiss the case and cure later. That would be directly contrary to the goals of the pre-suit requirements, which seek to discourage frivolous lawsuits and to give alleged violators *time* to assess the allegations and correct any issues *before* facing a lawsuit. *See DiPirro*, 119 Cal. App. 4th at 969 (allowing a retroactive cure would impair "the statutory goal of reducing frivolous lawsuits"); *Hallstrom,* 844 F.2d at 601 (allowing a plaintiff to cure its failure to comply with the mandatory waiting period would mean that "no one would ever comply with th[e] requirement…thus rendering it meaningless"); *see also In re Vaccine Cases*, 134 Cal. App. 4th at 459 ("By guaranteeing time for cooperation and agency enforcement, notice also ensured that some citizen suits could be avoided, thereby lessening the burden of citizen suits shouldered by the courts....'").

### 2. Plaintiff Could Not "Cure" the Defect in its Second Notice of Violation By Naming It a "Supplemental" Notice

Plaintiff's second notice of violation, meanwhile, was defective since it did not comply with the requirements of Cal. Code Regs. tit. 27, § 25903, which states that each notice of violation "***shall***

identify" the name and contact information of "the noticing individual."  Cal. Code Regs. tit. 27, § 25903(b)(2)(A) (emphasis added); *see* Dkt. 8, pp. 20-15.  When a private enforcer fails to comply with one of the requirements in § 25903, the enforcer has *no authority* to "enforce the provisions of the Act 'in the public interest.'"  Cal. Code Regs. tit. 27, § 25903(a).  Tellingly, Plaintiff offers no caselaw or other authority to dispute this fact.  *See* Dkt. 20 at 14.  Instead, Plaintiff argues, without authority, that the second notice of violation was a "supplemental" notice and could somehow rely on the information from the first notice.  *Id*.  This argument fails for multiple reasons.

First, as outlined above, the first notice of violation was rendered defective by Plaintiff's failure to comply with the mandatory waiting period.  The January 18, 2024 notice cannot form the basis of any claim since it was defective and must be disregarded.  *Hallstrom,* 493 U.S. at 33; *Sciortino*, 108 F. Supp. 3d at 790.

Second, the Proposition 65 statutory framework does not recognize or allow for a "supplemental" notice of violation.  Proposition 65 mandates that *each* notice of violation must strictly comply with *all* the pre-suit requirements.  *See* Health & Safety Code § 25249.7(d).  The statute's implementing regulation also makes this clear, *twice*:

> For purposes of Section 25249.7(d) of the Act, "notice of the violation which is the subject of the action" (hereinafter "notice") shall mean ***a notice meeting all requirements of this section***.  No person shall commence an action to enforce the provisions of the Act "in the public interest" pursuant to Section 25249.7(d) of the Act except in compliance with ***all requirements of this section***.

Cal. Code Regs. tit. 27, § 25903(a) (emphases added).

One of those explicit requirements is that each notice "shall identify" the name and contact information of "the noticing individual."  *Id*. at (b)(2)(A).  The caselaw is equally clear.  *See, e.g.*, *Yeroushalmi*, 88 Cal. App. 4th at 746 (rejecting argument that plaintiff could proceed based on substantial compliance, rather than strict compliance, with the notice requirements).

Plaintiff also argues that the strict requirement should be forgiven since Etsy *should have known* that the responsible individual based on the first notice.  Dkt. 20 at 14 n. 12.  This argument fails.  As California courts recognize, the mandatory pre-suit requirement to name a responsible individual in *each* notice is a "detailed and specific mandate" and "substantial compliance is

12

DEFENDANT ETSY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No.: 24-cv-04203-MMC

insufficient." *See* Dkt. 9 at 107-08 (*Consumer Advoc. Grp., Inc. v. Food Land*, Case No. 19STCV18754, Los Angeles Super. Ct., February 8, 2024). Whether Defendant *could* have contacted Plaintiff's attorney or *should* have known the responsible individual is irrelevant: Plaintiff failed to meet Proposition 65's explicit mandate. Permitting Plaintiff to ignore the explicit mandate would render the requirement meaningless.

Moreover, Plaintiff's argument would frustrate the purpose of the requirement, which is to allow the accused violator an opportunity to investigate the claims, to research the responsible individual for that notice (including to determine whether that individual pursues worthwhile or frivolous claims), and to contact that responsible individual directly to discuss or informally resolve the notice. *See, e.g.*, Dkt. 9 at 164 (*Embry v. B&G Food N. Am., Inc.*, Case No. RG20057491, Alameda Super. Ct. Aug. 14, 2023) ("A person who receives a notice might want to do a search of public records to collect information about the person who sent the Prop 65 notice."). Here, Etsy was not afforded that opportunity since Plaintiff failed to identify *any* "responsible individual" for the second notice.

Etsy also disputes Plaintiff's argument that it could *assume* that Danielle Fugere was the responsible individual. Plaintiff, a habitual Proposition 65 plaintiff that has served well over 700 notices of violation, names all sorts of different "responsible individuals" in its notices.[4]

Proposition 65 makes clear that Etsy did not need to *guess* which of Plaintiff's rotating cast of "responsible individuals" was responsible for the second notice. Plaintiff's failure to identify the "responsible individual" for the second notice of violation rendered it fatally defective under Cal. Code Regs. tit. 27, § 25903(a) and (b)(2)(A). Any claims based on the second notice of violation must be dismissed with prejudice.

In sum, Plaintiff's notice defects cannot be cured, and the Proposition 65 claims should be dismissed on that basis.

---

[4] For example, in just a sample of notices served by Plaintiff As You Sow in other cases, Plaintiff has sometimes named no responsible individual at all [Supp. RJN, Ex. 13], and other times has named individuals such as Jonathan Kirkland [*id.* at Ex. 14], Sylvia Wu [*id.* at Ex. 15], and Ellison Folk [*id.* at Ex. 16].

### D. Plaintiff's UCL Claim Must Be Dismissed

Finally, Plaintiff's UCL claim must be dismissed because it impermissibly seeks to plead around Proposition 65's requirements. Plaintiff does not dispute this with any legal argument or authority. *See generally* Dkt. 20. The law is clear: "A plaintiff cannot sidestep [the notice] requirements by trying to use" consumer protection statutes, such as the unfair competition law or false advertising law, "to plead around a claim that would be barred under Proposition 65." *Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016); *see also Gutierrez v. Johnson & Johnson Consumer, Inc.*, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("any claim under the CLRA, FAL or UCL predicated on a duty to disclose certain carcinogenic substances is dismissed as an attempt to plead around Proposition 65").

## III. CONCLUSION

For all these reasons, the Court should grant Etsy's Motion.

DATED: September 17, 2024          Respectfully submitted,

McGUIREWOODS LLP

By:   */s/ Nicholas J. Hoffman*
      Samuel L. Tarry (*PHV Forthcoming*)
      Nicholas J. Hoffman
      Aria Hangval
      Attorneys for Defendant
      ETSY, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 17, 2024**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **September 17, 2024** at Los Angeles, California.

By: */s/ Nicholas J. Hoffman*
Nicholas J. Hoffman
Attorneys for Defendant
ETSY, INC.
