**EXHIBIT H
to Declaration of Rachel S. Doughty**

Clifford A. Chanler, State Bar No. 135534
CHANLER, LLC
72 Huckleberry Hill Road
New Canaan, CT 06840
Telephone: (203) 594-9246
Facsimile:  (203) 702-5011
Email:      Clifford@ChanlerLLC.com

Steven Y. Chen, State Bar No. 243200
STEVEN Y. CHEN, APLC
2650 River Avenue, Unit A
Rosemead, CA 91702
Telephone: (626) 782-5017
Facsimile:  (626) 307-1657
Email:      Schen@Schenlaw.com

Attorneys for Plaintiffs
PAUL WOZNIAK and LAURENCE VINOCUR

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/03/2023**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| PAUL WOZNIAK,<br><br>                    Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC.,<br><br>                    Defendant. | Case No. CGC-21-594849<br>(*Consolidated for trial with CGC*-21-595147)<br><br>**DECLARATION OF CLIFFORD A. CHANLER IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF [PROPOSED] CONSENT JUDGMENT; AFFIDAVIT OF COMPLIANCE**<br><br>Date:     March 7, 2023<br>Time:     9:30 a.m.<br>Dept.:    302<br>Judge:    Hon. Richard B. Ulmer, Jr.<br><br>Trial Date:  March 13, 2023 |

I, Clifford A. Chanler, declare:

1. I am an attorney licensed to practice law in the State of California. I have been involved in the investigation and litigation and settlement negotiations of this action (herein referred to as "Solder Action") as well as the other two related cases: *Vinocur v. Amazon*, CGC-21-595147 (herein referred to as "Sinker Action") and *Vinocur v. Amazon*, CGC-22-598060, (herein referred to as "Ingot Action"). I have personal knowledge of the matters set forth below and would competently testify hereto if called upon to do so.

2. Plaintiff Paul Wozniak (Wozniak) is a citizen enforcer, as that term is defined in Proposition 65, seeking to promote awareness of exposures to toxic chemicals and improve human health by reducing or eliminating hazardous substances contained in consumer products.

3. Plaintiff Laurence Vinocur (Vinocur) is a citizen enforcer, as that term is defined in Proposition 65, seeking to promote awareness of exposures to toxic chemicals and improve human health by reducing or eliminating hazardous substances contained in consumer products.

4. In early 2020, on behalf of Wozniak and Vinocur, my staff and I began investigating various lead-based products available for sale in California to determine whether they were being marketed in accordance with Proposition 65. On or about August 8, 2020, my firm, on behalf of Vinocur, sent Amazon.com, Inc., (Amazon or Defendant) and the various public enforcers eleven sixty-day notices alleging that Amazon had been distributing and selling certain fishing sinkers in California without a warning and that those products had exposed consumers to lead. Vinocur sent Amazon and the public enforcers a supplemental notice on October 30, 2020. The additional notice concerned additional lead-based fishing sinkers.

5. On April 29, 2021, my firm, on behalf of Wozniak, sent Amazon and the various public enforcers a sixty-day notice alleging that Amazon had been distributing and selling certain solder wires in California without a warning and that those products had exposed consumers to lead. Wozniak sent Amazon and the public enforcers a supplemental notice on September 10, 2021. The subsequent notice concerned additional solder wire products.

1

DECLARATION OF CLIFFORD A. CHANLER IN SUPPORT OF MOTION TO APPROVE SETTLEMENT;
AFFIDAVIT OF COMPLIANCE

6. On December 6, 2021, my staff, on behalf of Vinocur, sent Amazon and the various public enforcers a sixty-day notice alleging that Amazon had been distributing and selling certain "ingots" in California without a warning and that those products had exposed consumers to lead.

7. On September 13, 2021, after the initial sixty-day notice period had run without the intervention of a public prosecutor, my firm, on behalf of Wozniak, filed the instant action relating primarily to solder wires containing lead, naming Amazon and 250 doe defendants for the alleged violations of Proposition 65. Defendant filed its answer on December 3, 2021. On December 10, 2021, Wozniak dismissed the Solder Wire Action as to all of the Doe defendants. On February 3, 2022, the Court entered an order setting the matter for a bench trial to commence on March 13, 2023. On June 22, 2022, Wozniak filed an amended complaint.

8. Meanwhile, on September, 14, 2021, after the initial sixty-day notice period had run without the intervention of a public prosecutor, my firm, on behalf of Vinocur, filed the Sinker Action relating to fishing sinkers containing lead, naming Amazon and 250 doe defendants for the alleged violations of Proposition 65. Defendant filed its answer on December 3, 2021. On December 10, 2021, Vinocur dismissed the Sinker Action as to all of the Doe defendants. On February 3, 2022, the Court entered an order setting the matter for a bench trial to commence on March 13, 2023. On March 11, 2022, I associated my co-counsel, Steven Chen, in the Sinker Action. On July 5, 2022, Vinocur filed an amended complaint.

9. And, on September, 14, 2021, after the initial sixty-day notice period had run without the intervention of a public prosecutor my firm, on behalf of Vinocur, filed the Ingot Action relating lead ingots, naming Amazon as a defendant for the alleged violations of Proposition 65. Defendant filed its answer on December 1, 2022.

10. In three separate enforcement actions (and 17 sixty-day notices that preceded and followed the filing of the initial complaints), plaintiffs alleged that Amazon had been distributing, marketing, and selling soldering wire, fishing sinkers and ingots made primarily from lead (Product or Products) to consumers, without first providing the required toxicity warning to purchasers.

11. In the autumn of 2021, my firm asked Amazon's counsel to provide informal discovery regarding the products at issue in the Solder Wire Action and Sinker Action and the sales of those products to California customers during the relevant period. Amazon refused to do so. In response, on November 16, 2021, my firm propounded formal discovery on Amazon asking the company to identify each specific product within the categories of lead-based solder wire and fishing sinkers, to provide information about transactions in which those products were shipped to California addresses during the relevant period, and to state whether and when those products' pages were modified to include the required health hazard advisory.

12. Over the course of the next three months (on January 3, January 22, and March 9, 2022), Wozniak and Vinocur gave Amazon several extensions of time in which to respond to the discovery in the Solder Wire and Sinker Action. During this period, on March 3, my firm served Amazon with the same discovery request in the Ingot Action. In March 2022, Amazon served its unverified responses in the Solder Wire and Sinker Action, consisting of roughly 15 largely boilerplate objections, unaccompanied by any substantive information whatsoever. In May 2022, plaintiffs filed a motion to compel further responses for both the Solder Wire Action and Sinker Action. On June 28, 2022, the Court ordered Amazon to provide "full and complete verified responses" within 30 days. In July 2022—the due date for Amazon's verified responses in the Solder Wire Action and Sinker Action—came and went without any production. Then, on August 18, the parties to both actions entered into an agreement under which, in exchange for plaintiffs' forbearance from seeking to enforce the Court's orders, Amazon committed to taking a number of actions and to provide information by various deadlines ranging from August 19 through September 16. Although Amazon provided various pieces of information over the course of the next two months, however most of the information that it had agreed to provide was not forthcoming. In December 2022, the parties exchanged numerous emails and participated in several lengthy telephone conversations, and Amazon continued to provide various discrete pieces of information in a slow trickle. But still, Amazon did not provide any responses—much less full, verified responses. Defendant's refusal to comply resulted in plaintiffs' January 9, 2023

1  motion for issue, evidence and monetary sanctions against defendant for their failure to provide
2  "full and complete verified responses," in the Solder Wire Action and Sinker Action.

3        13.    Meanwhile, on October 18, 2022 my firm sent Amazon a notice of the deposition of
4  Amazon's corporate representative(s) with accompanying document demands in the Solder Wire
5  Action and Sinker Action, set for October 31.  Several days before the deposition was scheduled
6  to take place, Amazon informed me that the company would not be appearing due to
7  inconvenience.  They did not propose alternative dates.  On November 7, 2022, I provided
8  Amazon a second amended notice of deposition.  Amazon again objected to the timing of the
9  deposition.  On December 6, 2022, plaintiffs requested defendant's expert witnesses list.  On
10 February 6, 2023, plaintiffs provided defendant with its third amended notice of deposition.  On
11 February 10, 2023, plaintiffs disclosed their expert information.  On February 14, 2023, defendant
12 served plaintiffs its notice of deposition and requests for production of documents for plaintiffs'
13 expert.

14       14.    During this period, I asked Amazon's counsel to stipulate to the joinder of the
15 Solder Wire Action and Sinker Actions for trial—a reasonable request, since the two actions
16 presented numerous overlapping issues and were already set for a bench trial on the same day
17 (March 13, 2023).  Amazon did not respond to the request.  So on October 24, my firm filed
18 motions in both cases to consolidate the two actions for trial.  Amazon did not oppose the
19 motions.  On November 17, the Court granted the motions and consolidated the actions for trial,
20 designating the Solder Wire Action as the lead case.  No trial date has been set for the Ingot
21 Action.

22       15.    Shortly after the filing of the initial complaint, Amazon's counsel and I began to
23 discuss the terms of a possible settlement on behalf of Wozniak and Vinocur.  Parallel with
24 plaintiffs discovery disputes, the parties began to ensure that Amazon's third-party sellers take
25 necessary injunctive measures to comply with Propositions 65.  Amazon identified and contacted
26 certain third-party sellers of the lead-based solder wires, sinkers and ingots who shipped such
27 items to consumers in California  Thereafter, plaintiffs secured some of the suppliers'
28

4

DECLARATION OF CLIFFORD A. CHANLER IN SUPPORT OF MOTION TO APPROVE SETTLEMENT;
AFFIDAVIT OF COMPLIANCE

commitments to (i) stop sale of the Product, (ii) reformulate the Product to eliminate the presence of lead, or (iii) transmit the required health warning on amazon.com and all online websites where it lists its product for sale for California citizens.

16. In February 2023, Wozniak, Vinocur and Amazon (the "parties") jointly concluded their extensive settlement negotiations, just two weeks before the start of trial, culminating with the [Proposed] Consent Judgment. The injunctive relief, set forth in Section 2, requires Amazon to take one of four steps with respect to each Product:

   i. Ensure that the Product is reformulated so as to ensure essentially that it contains only trace amounts of lead—specifically, that it: (a) contains lead in concentrations that do not exceed 90 parts per million, equivalent to 0.009%, in any exterior parts analyzed pursuant to U.S. Environmental Protection Agency (EPA) methodologies 3050B and 6010B, or (b) yields a result of no more than 1.0 micrograms of lead when sampled according to NIOSH 9100 protocol and analyzed according to EPA 6010B;

   ii. Ensure that any third-party supplier or vendor of the Product provides a clear and reasonable Proposition 65 warning regarding not only the risk of reproductive harm (on which the complaints focused) but also the risk of cancer;

   iii. Independently provide a clear and reasonable Proposition 65 warning; or

   iv. Prohibit the shipment of the Product from Amazon.com to California addresses.

17. Based on my personal observation and those of other retained by my law firm, Amazon's website has undergone a meaningful transformation since the enforcement actions were filed. Specifically, Amazon has delisted hundreds, if not thousands, of the Products subject to the litigation, dramatically increased the availability of lead-free alternative for two of the three product categories (i.e., fishing sinkers and solder wire), and began to implement a warning compliance system for those remaining lead items available for sale in California.

18. Under Section 3.1 of the Consent Judgment, Amazon has also agreed to make a payment of $500,000 in civil fines, with three quarters going to the State of California, one eighth to Wozniak and one eighth to Vinocur.

19. The civil fines assessed took into consideration the following factors, including: (i) confidential sales data provided by Amazon indicates an extensive amount of the Products sold in California during the relevant period; (ii) many of those sales were made without the required warnings; (iii) the amount of the penalty is sufficient to remind Amazon that they must remain aware of and consistently address Proposition 65's requirements; and (iv) Amazon's payment of the penalty, as well as plaintiffs' attorneys' fees and costs and its own attorneys' fees and costs, will provide an incentive for Amazon to ensure its compliance with Proposition 65. The Consent Judgment will also be a matter of public record. Therefore, other online retailers which provide a platform for independent suppliers who sell similar lead products, will be encourage to comply with Proposition 65. In light of these circumstances, the amount of $500,000 in penalties is a fair and reasonable assessment.

20. On several occasions over the past two years, plaintiffs proposed to negotiate the fee component of the settlement after submitting the Consent Judgment to this Court. However, Amazon wanted to negotiate plaintiffs' legal fee claim as part of the final resolution. As a result, under Section 3.2, Amazon agreed to pay $1,710,000 in fees and costs to the plaintiffs and their counsel. The parties further agreed that Amazon would continue to identify third-party sellers of the Products and, through its best efforts, require them to take the injunctive measures set forth in Sections 2.1, 2.2 and 2.3 of the Consent Judgment for Products on amazon.com and all other retail websites that sell Products to California consumers.

21. On February 23, 2022, in accordance with Proposition 65 and its implementing regulations [Health & Saf. Code section 25249.7(f); 11 Cal. Code Regs. section 3003], I served a copy of the proposed settlement on the California Attorney General's Office. I did so again on February 28, 2023, pointing out the parties' intent to submit an *ex parte* application for an order shortening time to hear a motion for entry of Consent Judgment on March 1, 2023. On the same day, the Attorney General requested plaintiffs to delete a parenthetical within the release provisions of the agreement. I contacted Amazon and, in turn, the parties agreed to make the requested revision. Later that day, I shared the revised draft Consent Judgment with the Attorney

1   General's Office and the agency acknowledged receipt of the revision. The Attorney General has
2   not communicated any further comments or concerns since then.

3       22.    As described more fully below, plaintiffs counsel's lodestar in the three
4   enforcement actions is approximately twice the agreed-upon amount to be paid by Amazon
5   without any enhancer. Furthermore, in this instance, plaintiffs would be entitled to a significant
6   multiplier in the range of 2.5 for their counsel's lodestar to compensate them for, among other
7   things, the contingent nature of their legal work, delayed revenue stream, and the resulting
8   significant public benefits. In order to facilitate the settlement of this case, however, plaintiffs
9   have agreed to accept the above stated amount of $1,710,000 as a resolution of their attorneys,
10  investigation and expert fees and costs incurred from Amazon as set forth in the Consent
11  Judgement. I believe that the amount of these fees is reasonable and is supported by the records
12  that I have maintained and reviewed.

13      23.    I have provided, below, a task-based summary of the extensive efforts undertaken to
14  successfully conclude this action. This summary is submitted in an effort to categorize the time
15  records into helpful categories.

16      24.    My firm, my co-counsel's firm, our assistants, para-professionals and investigators,
17  have divided the attorney and para-professional time into five general categories of effort:

18      25.    Category one includes the time communicating with investigators to conduct an
19  extensive investigation of potential violations across Amazon's many categories of products, as
20  well as the time of counsel to assist in the investigation, in order to determine if potential
21  violations existed. Category one also includes any time spent on: attorney review of investigation
22  reporting, attorney communications with investigators, attorney review of investigation and
23  competitor product information, and issuance of sixty-day notices.

24      26.    Category two includes time spent exchanging numerous e-mails and telephone calls
25  between and among the parties. Category two also includes any time spent on: discussing the
26  matter with co-counsel, drafting and filing the various complaints, telephone conferences with
27  opposing counsel, reviewing testing data, drafting working memoranda regarding case strategy,
28

1   various client communications, drafting, editing and serving special interrogatories, drafting,
2   editing and serving request for production of documents, drafting, editing and serving deposition
3   notices, reviewing Defendant's response to written discovery, meeting and conferring with
4   opposing counsel regarding its discovery objections, drafting motions to compel, case
5   management activities and sanctions motions.

6       27.   Category three is for negotiating a settlement in this matter, and includes: Consent
7   Judgment drafts and negotiation with opposing counsel; several consultations with the clients, co-
8   counsel and internal communications evaluating the various settlement offers and frameworks for
9   resolution.

10      28.   Category four is time for the review and revision of the motion to approve and
11  supporting documents as well as *ex parte* applications.  This category includes time for legal
12  research on a variety of issues throughout the course of the litigation (that are distinct from those
13  research efforts committed with specific motions), review of the fees and costs in this matter, and
14  cost data in preparation of categorizing the fees and costs, compliance with the Attorney
15  General's reporting requirements and other work necessary to bring the case to this point.

16      29.   Category five is the costs related to this suit and the upcoming hearing, which
17  includes: investigation costs (initial general investigation of Amazon's operation, investigation of
18  the products at issue, chemical and exposure investigation, field investigation, investigation
19  reporting) evidence costs; expert costs; product testing costs; and professional charges: court
20  filing fees messenger, telephone, overnight mail, postage and copying charges.

21      30.   Additionally, I believe that the hourly rates charged by my colleagues, assistants,
22  para-professionals and me to be reasonable.  My colleagues and I have substantial experience in
23  litigating Proposition 65 cases such as the instant matter.

24      31.   The California Courts have approved my annual billing rate in 24 of the past 32
25  years since I began representing environmental groups and concerned citizens seeking to enforce
26  Proposition 65 against the regulated community.  Further, this Court has not reduced my
27  submitted billing rate in any of the past 32 years, nor has any neutral associated with an ADR

organization, such as AAA or JAMS, in binding proceedings to resolve a post-enforcement fee application. In 1995, the Court (Justice Pollak presiding, before his appointment to the First District) awarded my full billing rate for work representing an environmental group in a Proposition 65 action for calendar years 1992, 1993, 1994 and 1995. Justice's Pollak award, under section 1021.5 of the Code of Civil Procedure, was upheld by an unanimous panel of the Court of Appeal in *As You Sow v. Cotter & Company*. Since then, my billing rate has been court approved, without exception, in over 200 instances by this Court including in connection with challenges to fee applications and settlement recoveries. My billing rate is currently $1,450 per hour; for the past several years, it was $1,380—a rate that was recently approved in the *Etsy* case.

32. My co-counsel's billing rate is currently $870 per hour—a rate that was also recently approved in the *Etsy* case for the calendar years 2021 and 2022. The para-professionals and investigators have been and are currently billed at rates between $185 and $385 per hour and were recently approved in the *Etsy* case.

**Affidavit of Compliance**

33. I hereby verify that the report of settlement required by subdivision (f)(1) of section 252497 of the Health and Safety Code was accurately completed and submitted to the Attorney General on March 2, 2023.

34. I hereby verify that plaintiffs have complied with all requirements of Chapter 1 of Division 4 of Title 11 of the California Code of Regulations.

35. All of the documents that were required to be served on the Attorney General by section 3008 of Title 11 of the California Code of Regulations have been served on the Attorney General.

36. Pursuant to section 3003 of Title 11 of the California Code of Regulations, the failure of the Attorney General to comment on a settlement shall not be construed as endorsement of or concurrence in the settlement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed the 2nd day of March, 2023, at New Canaan, Connecticut.

_____
Clifford A. Chanler

10
DECLARATION OF CLIFFORD A. CHANLER IN SUPPORT OF MOTION TO APPROVE SETTLEMENT;
AFFIDAVIT OF COMPLIANCE